**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>          Plaintiffs,<br><br>     v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>          Defendant. | Civil Action No.: 04-10884-RGS |

**JOINT STATEMENT PURSUANT TO LOCAL RULE 16.1**

In accordance with Local Rule 16.1, Plaintiffs Massachusetts Institute of Technology ("MIT") and Repligen Corporation ("Repligen") and Defendant ImClone Systems, Inc. ("ImClone") respectfully submit this Joint Statement in preparation for the upcoming Scheduling Conference, currently set for Monday, August 9, 2004 at 3:30 p.m. This joint statement follows the telephonic conference among counsel held on Wednesday, July 21, 2004.

**I.     CONCISE SUMMARY OF ISSUES**

   **A.     Plaintiffs' Brief Statement**

This is a patent infringement case concerning technology crucial to the manufacture of ImClone's colon cancer therapy, Erbitux™.[1] But far from the typical patent infringement case, where the parties may genuinely dispute whether the defendant is employing the patented technology, this case presents a very straightforward story of blatant and willful infringement.

The patent-in-suit concerns, *inter alia,* technology for genetically engineering enhanced production of proteins. Working at MIT in the early 1980's, Dr. Susumu Tonegawa and Dr. Stephen Gillies discovered that cells that produce antibodies contain tissue-specific "enhancers."

---
[1] Erbitux was the product at the center of the cases against Sam Waksal and Martha Stewart and their trading in ImClone stock.

Tonegawa and Gillies discovered that by using these enhancers and techniques for inserting such enhancers into mammalian cells, protein production is dramatically increased (or "enhanced") beyond that which the cells would normally produce. In this fashion, large quantities of protein-based therapies can be economically and efficiently manufactured using cell lines that make the protein of interest, in this case, Erbitux.[2] MIT received the '281 patent for the Gillies/Tonegawa invention in 1988. The '281 patent expired in early May of this year, but not before ImClone employed the patented technology to make what it reports as $1 billion worth of stockpiled inventory.[3]

There is no question that the accused cell line incorporates the patented technology. Indeed, the accused cell line was made by Dr. Gillies. In the late 1980's, MIT's licensee and Repligen's predecessor, Damon Biotech, contracted with the National Cancer Institute ("NCI") to create a genetically-engineered antibody, C225, as well as a genetically-engineered cell line to produce the antibody. (C225 is the active ingredient in Erbitux.) Dr. Gillies, employed by Damon Biotech at the time, supervised the creation of the C225 antibody and the cell line for producing C225. Dr. Gillies incorporated the technology claimed in the '281 patent into the cell line for producing C225.

The principal open question is how ImClone obtained the patented cell line. At no time did Damon Biotech, Repligen, or MIT grant NCI any rights to give this cell line to third parties such as ImClone. Nevertheless, ImClone somehow obtained this cell line from the NCI without permission or prior knowledge of Plaintiffs. In its Answer, ImClone admits: (1) that it obtained the cell line from NCI; (2) that it used the cell line to produce C225; and (3) that C225 is the active ingredient in Erbitux™—a treatment projected to be a $1 billion per year product. Indeed in its Answer, ImClone alleges that it has an implied license to use the cell line, or that Plaintiffs exhausted their rights in the cell line, or that Plaintiffs' claim for compensation is otherwise

---

[2] Antibodies are proteins. The active ingredient in Erbitux is a chimeric antibody that binds to certain types of cancer cells.

[3] ImClone received FDA approval to market Erbitux in February 2004.

barred by laches, estoppel or other equitable defenses. Since ImClone cannot dispute that it is infringing the '281 patent, it appears that ImClone is left arguing that Plaintiffs have no right to compensation for ImClone's infringement.

ImClone has declined to substantively discuss settlement. On May 21, 2004, responding to a request from ImClone, Plaintiffs made a written settlement proposal. ImClone did not provide a written response. During the 26(f) conference on July 21, 2004, counsel for ImClone orally rejected Plaintiffs' proposal without any counter-proposal.

At the Rule 26(f) conference, Plaintiffs proposed a schedule consistent with the 270 days that the Court ordinarily permits for discovery and filing of dispositive motions. ImClone proposes an unduly extended schedule—more than twice as long as the Court's typical schedule. But the facts demonstrate that this is a straight-forward case. Somehow, ImClone obtained the cell line created by Dr. Gillies that incorporates the patented technology for producing C225, i.e., Erbitux. ImClone used the cell line to produce Erbitux. ImClone had no express right or license to use this patented cell line, and has not substantiated any implied right. Accordingly, infringement is essentially a foregone conclusion and the only issues that need to be litigated are ImClone's equitable defenses. Plaintiffs' proposed schedule provides more than adequate time for the parties to explore these issues and to reach summary disposition or trial. By contrast, the schedule proposed by ImClone well exceeds this Court's maximum normal schedule and appears designed primarily to delay ImClone's day of reckoning. Plaintiffs' respectfully request the adoption of their proposed schedule so that this matter may proceed expeditiously to trial.

### B.    Defendant's Brief Statement

This is a patent infringement action brought by plaintiffs Massachusetts Institute of Technology ("MIT") and Repligen Corporation ("Repligen") against defendant ImClone Systems, Inc. ("ImClone") after the plaintiffs and their attorneys learned about the FDA approval and initial marketing of ImClone's valuable new product called "Erbitux®." Although the patent is now expired, plaintiffs contend that ImClone's initial manufacture and sale of Erbitux®

infringed their rights in U.S. Patent No. 4,663,281 (the "'281 patent"), which is owned by MIT and exclusively licensed to Repligen, because Repligen's predecessor, Damon Biotech ("Damon"), originally prepared a cell line for the National Cancer Institute ("NCI"), which was later transferred from NCI to ImClone and used by ImClone in the manufacture of Erbitux®.

ImClone contends that plaintiffs' claims are barred by the doctrines of patent exhaustion, implied license, laches and estoppel because, inter alia, Repligen's predecessor Damon produced the cell line that plaintiffs now rely upon as the basis for their infringement charge under contract with and for NCI, and pursuant to that contract Damon sold and delivered that cell line to NCI without restriction, thereby exhausting any patent rights plaintiffs may have had in the delivered cell line or its future use.

In addition, ImClone contends that the '281 patent is not infringed because, whether or not Damon used any aspect of its alleged patented technology to prepare the original cell line for NCI, ImClone's manufacturing process for Erbitux® does not infringe any claim of the '281 patent, and ImClone's Erbitux® product is not covered by any claim of the '281 patent. In addition, ImClone contends that the '281 patent in suit is invalid for failure to comply with one or more requirements of the patent statute, Title 35, Section 101 *et seq.*

Since ImClone's defenses of patent exhaustion and implied license may well prove dispositive of the case without the need to reach the complex technical patent issues, ImClone suggests that discovery proceed in phases, with discovery on the relevant contract and patent exhaustion issues proceeding first. After dispositive motions and/or a bifurcated hearing on the contract and patent exhaustion issues, discovery (if necessary) could proceed on the more complicated technical issues relating to infringement and validity of the '281 patent.

If the Court is not disposed to bifurcate the case in this manner, discovery could proceed on all issues simultaneously. However, ImClone submits that the complexity of the issues, the age of some of the contractual and technical documents that need to be located, and the need to locate and take discovery from present and likely former Government employees will require a longer discovery schedule than in an ordinary patent case. Defendant's proposed schedule (if discovery is not divided into separate phases) is set forth in Section III below.

## II.  PENDING MOTIONS AND DISCOVERY REQUESTS

There are no currently pending motions.

## III.  PROPOSED DISCOVERY AND MOTION PLAN

The parties have met and conferred, but are unable to agree on the amount of time required for discovery.

Plaintiff contends that the 270 days the Court ordinarily permits for discovery is more than adequate for this case.

Defendant contends that expanded discovery will be needed for a fair resolution of the issues in this case, because the case involves complex technology and complicated contracts involving several third parties and the Federal Government, and because both the work which led to the patent in suit and the work which was later carried out under these contracts and which led to the cell line now alleged to infringe occurred over 20 years ago.

Pursuant to Local Rules 16.1(D)(1) and (2), the parties' proposed discovery and motion schedules are as follows:

| **Deadline** | **Plaintiffs' Proposed Schedule** | **Defendant's Proposed Schedule** |
|---|---|---|
| Deadline for filing motions to add parties or amend pleadings | September 15, 2004 | September 15, 2004 |
| Fed. R. Civ. P. 26(a)(1) initial disclosures completed on or before | | August 27, 2004 |

| | | |
|---|---|---|
| Discovery Cutoff (fact discovery) | February 4, 2005 | October 6, 2005 |

- deadline for completing all non-expert depositions

- deadline for responding to all written discovery requests

- deadline for all document production

- deadline for responding to Requests for Admission (except for those propounded for authentication purposes)

| | | |
|---|---|---|
| Deadline for the parties to identify trial experts for their case-in-chief | February 25, 2005 | November 3, 2005 |
| Deadline to serve the written reports for each such expert pursuant to Rule 26 | February 25, 2005 | December 1, 2005 |
| Deadline for the parties to identify any rebuttal experts | March 18, 2005 | December 15, 2005 |
| Deadline to serve the written reports for each such rebuttal expert pursuant to Rule 26 | March 18, 2005 | January 12, 2006 |
| Deadline for completing expert depositions and deadline for responding to Requests for Admission propounded for authentication purposes | April 15, 2005 | May 11, 2006 |
| Deadline for filing dispositive motions | May 6, 2005 | July 13, 2006 |
| Final Pretrial Conference | July 2005 | |
| Trial | August 2005 | |

## IV.  TRIAL BY MAGISTRATE JUDGE

The parties do not consent to trial by Magistrate Judge.

-6-

## V. PHASED DISCOVERY

Plaintiffs do not believe that it is necessary to phase discovery for a realistic assessment of the case. Defendant believes that it may be appropriate to phase discovery, as discussed above.

The parties expect that they will each require more than ten (10) fact depositions per side. Plaintiffs believe twelve (12) fact depositions preside is an appropriate limit. Considering the amount of third party discovery that may be necessary, defendant believes the parties should work together to schedule depositions as needed with no specific limit.

In addition, the parties agree to receive and respond to more than two (2) sets of document requests per side due to the nature of discovery expected for this case.

## VI. SETTLEMENT PROPOSALS

In accordance with Local Rule 16.1(c), Plaintiffs made a settlement proposal on May 21, 2004. ImClone responded to the proposal on July 21, 2004 during a telephone conference between counsel.

## VII. CERTIFICATIONS

Local Rule 16.1(d)(3) certifications for the parties and counsel to this action are attached hereto as Appendix A and B.

FISH & RICHARDSON, P.C.

Dated:  August 6, 2004

/s/ Gregory A. Madera
Gregory A. Madera (BBO #313,020)
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

Of Counsel:
Jonathan E. Singer
Michael J. Kane
Chad A. Hanson
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 335-5070

Juanita Brooks
FISH & RICHARDSON, P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Attorneys for Plaintiffs
Massachusetts Institute of Technology and
Repligen Corporation


PROSKAUER ROSE, LLP

/s/ Mark W. Batten
Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
One International Place
Boston, MA 02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY 10004-1050
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Attorneys for Defendant
ImClone Systems, Inc.