1999 WL 528806                                                                                                Page 1
1999 WL 528806 (D.Mass.)
**(Cite as: 1999 WL 528806 (D.Mass.))**

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.

In re '639 PATENT LITIGATION

No. 97-12416-RCL.

June 15, 1999.

Bernard J. Bonn, III, Timothy C. Blank, Kara W. Swanson, Dechert, Price & Rhoads, Boston, MA, Diego Scambia, Henry J. Renk, Stevan J. Bosses, Robert L. Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York, NY, for Smithkline Beacham, Plaintiff.

Thomas M. Hemnes, Philip C. Swain, Michael A. Albert, Foley, Hoag & Eliot, Boston, MA, Stanton T. Lawrence, Pennie & Edmonds, Washington, DC, for Copley Pharmaceutical, Defendants.

Robert J. Muldoon, Jr., Margaret H. Paget, Sherin & Lodgen, Boston, MA, Steven J. Lee, Elizabeth J. Holland, Frederick H. Rein, Lawrence B. Ebert, Kenyon & Kenyon, New York, NY, for Teva Pharmaceuticals, Defendants.

Mark C. Rosenthal, Steven N. Farber, Palmer & Dodge, Boston, MA, for Eon Labs, Defendants.

Ian Crawford, Todd & Weld, Boston, MA, Peter I. Bernstein, Mark J. Cohen, Scully, Scott, Murphy & Presser, Garden City, NY, for Invamed, Inc., Defendants.

FINDINGS AND RECOMMENDATION ON
DEFENDANTS' JOINT MOTION FOR A SEPARATE
TRIAL
AND A STAY OF DISCOVERY ON THE ISSUE OF
WILLFUL INFRINGEMENT

ALEXANDER, Magistrate J.

**\*1** Defendants Copley Pharmaceutical, Inc. ("Copley"), Teva Pharmaceuticals USA, Inc. ("Teva"), and Eon Labs Manufacturing, Inc., ("Eon") have each filed an abbreviated new drug application ("ANDA") with the Food and Drug Administration to market generic versions of Plaintiffs', SmithKline Beecham Corporation and Beecham Group, p.l.c. ("SKB"), Relafen tablets. [FN1] Each of the ANDA applications filed by the Defendants contained a "paragraph IV" certification alleging that the claims contained in the '639 patent are invalid and unenforceable. Upon receiving notice of Defendants' ANDA filings and certifications, Plaintiffs, pursuant to 21 U.S.C. § 355(j)(5)(B)(iii), sued each of the Defendants for infringement and also alleged willful infringement.

> FN1. Under 35 U.S.C.A. § 271(d)-(h), the "Hatch-Waxman Act," a pharmaceutical manufacturer may seek expedited approval from the Food and Drug Administration ("FDA") to market a generic version of an already approved patented drug. See *Bristol-Myers Squibb Co. v. Royce Laboratories, Inc., 69 F.3d 1130, 1131 (Fed.Cir.1995)*. To bring the drug to market as soon as the patent owner's patent expires, a manufacturer may submit an abbreviated new drug application ("ANDA"). Hatch-Waxman makes it possible for companies to make, use and sell patented inventions "solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs," 35 U.S.C.A. § 271(e)(1), without committing an act of infringement. This allows competing companies to engage in otherwise infringing activities for the purposes of filing for regulatory approval. Prior to Hatch-Waxman, a patent owner's monopoly rights in the patented invention were effectively extended for the length of time it took for competing manufacturers to gain regulatory approval due to the prohibition on use of a patented invention to apply for approval. See *Eli Lilly and Co. v. Medtronic, 496 U.S. 661, 670 (1990)*; *Glaxo Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1567 (Fed.Cir.1997)*.

An ANDA applicant must certify one of four things, see 21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV), and Defendants here have filed a "paragraph IV" certification stating that the patent on the drug for which the ANDA is submitted is invalid and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

unenforceable. Inclusion of a "paragraph IV" certification is deemed an act of infringement. *See* 35 U.S.C.A. § 271(e)(2)(A). This statutorily defined act of infringement has been characterized as "somewhat artificial" by the Supreme Court. *See Eli Lilly,* 496 U.S. 661, 676 (J. Scalia). § 271(e)(2) is artificial in the sense that it is contrived for the sole purpose of providing patent owners with a specifically defined act of infringement that creates a case or controversy sufficient to satisfy Article III so that the federal court may exercise its jurisdiction to quickly resolve any disputes concerning a patent claim's validity, enforceability, and/or infringement. *See Glaxo,* 110 F.3d 1562 at 1569. The court's analysis of infringement in a suit brought under § 271(e)(2) is the same as in any other suit for infringement. *See id.* The only difference is that in an action brought under § 271(e)(2), the potentially infringing generic drug has not yet been manufactured. The infringement inquiry must focus on the product the ANDA applicant will likely market. In other words, the fact that infringement has occurred upon an ANDA applicant's filing is not in any way determinative of whether or not the applicant's generic drug will actually infringe the pioneer's patent.

The nature of ANDA litigation is particularly time sensitive. One court recently observed, "[R]ecognizing that time is of the essence, [the Court] has moved with great dispatch so as not to delay a ruling that might possibly allow consumers greater access to [generic versions of approved drugs] sooner rather than later." *Eli Lilly and Co. v. Barr Laboratories, Inc.,* No. IP 96-0491-C-B/S at 4 (S.D.Ind. May 28, 1998).

Defendants have moved for a separate trial on the issue of willfulness, to commence, if necessary, after resolution of the liability issues, and for a stay of discovery as to willful infringement pending resolution of the liability issues. As grounds for the motion for bifurcation, Defendants state that (1) they will be relying on opinions of counsel to defend the claim of willful infringement, that this reliance will require the production of otherwise privileged documents, and that production of this privileged material prior to litigation of the willfulness issue could prejudice their liability defense; (2) the issues of liability and willfulness involve separate and distinct inquiries, and so are appropriate candidates for bifurcation; and (3) bifurcation would conserve judicial resources. Plaintiffs object to bifurcation on the grounds that (1) there will be substantial evidentiary overlap; and (2) bifurcation would result in an undue burden to Plaintiffs. To prove their claim of willful infringement, Plaintiffs are seeking discovery relating to whether Defendants sought competent legal counsel. Defendants seek a stay of this discovery for reasons related to the privilege issue.

Rule 42(b) of the Federal Rules of Civil Procedure confers upon this Court the discretion to bifurcate a trial if such action would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). The party seeking separation bears the burden of demonstrating that judicial economy would be promoted and that no party would be prejudiced by separate trials. *See Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 45 U.S.P.Q.2d 1757, 1758 (D.N.J.1997).

At least one court has tried the issues of willfulness and liability in the same trial where the defendant submitted a paragraph IV certification alleging that the pioneer's patent was invalid for obviousness. *See e.g., Yamanouchi Pharmaceutical Co. LTD v. Danbury Pharmacal, Inc.,* 21 F.Supp.2d 366 (S.D.N.Y.1998) (addressing merits of willfulness claim in findings pursuant to bench trial where bifurcation was not at issue).

The Federal Circuit has expressed in carefully considered dicta, however, that

**\*2** "Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving

the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the issue of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the defendant is indeed confronted with this dilemma. While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney-client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases." [Quantum Corporation v. Tandon Corporation, 940 F.2d 642, 643-44 (Fed.Cir.1991)](upholding trial court's order denying bifurcation subsequent to its in camera review of privileged documents on grounds that order was not immediately appealable and issue did not bring appeal within the scope of the Cohen collateral order doctrine set forth in [Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949)](https://...)).

The reasoning for this approach is clear: the disclosure of the opinions of counsel on which Defendants relied to make their decisions to file the ANDA applications and the paragraph IV certifications alleging invalidity and unenforceability of the claims of the '639 patent could, depending on the content of the opinion documents, influence a fact finder's determination of the liability issues. Moreover, if the Defendants choose to not waive the privilege, they conceivably run the risk that a fact finder would draw an unfavorable inference from Defendants' silence on the issue of opinion of counsel in relation to their willfulness defense.

Determination of liability here will focus on: (1) whether or not the challenged claims of the '639 patent were rendered obvious or anticipated by prior art; (2) claim construction in light of the prosecution history and specification; and (3) whether SKB complied with its duty of candor to the PTO during prosecution. Determination of willfulness, which need be resolved in the event that the liability issues are decided in favor of SKB, will focus on whether or not the Defendants had a good faith basis for filing their respective paragraph IV certifications.

Defendants wish to rely on pre-litigation opinion letters of counsel regarding the '639 patent to present their defense to the willfulness allegation. While the factual materials that formed the basis on which the attorneys' opinions rested-the '639 patent's file wrapper (on file with the PTO), representations made by the patentee to the PTO during prosecution, and potential prior art-are publicly available and non-privileged, the conclusions and opinions of counsel are certainly privileged.

**\*3** Defendants overstate their case when they argue that to compel disclosure at this point would present the Plaintiffs with the foundation of their "entire defense strategy." (Defs.' Memo. in Support of Joint Motion at 7.) The purpose of the Federal Rules of Civil Procedure with regard to discovery is to minimize the possibility of surprise at trial and to facilitate parties' preparation of their respective cases through the pre-trial exchange of materials reasonably calculated to lead to the discovery of admissible evidence. In other words, at this point, the parties *should* have a strong sense of opposing counsels' strategy for trying the relevant issues. The Court does recognize, however, that compelling disclosure of the privileged attorney-client communications at issue could potentially serve to tip Defendants' hand by providing Plaintiffs with a more detailed plan of the arguments Defendants intend to use at trial than that revealed in the ordinary course of discovery.

This Court also disagrees with the Defendants who argue that there will be "little, if any" significant overlap of evidence relevant to the issues of liability and willfulness. (Defs.' Memo. at 7.) Evidence relevant to the issues of liability may also tend to demonstrate the good faith basis for the Defendants' challenges to the validity and enforceability of the '639 patent. There will likely be some, if not a significant amount, of overlap of evidence.

Defendants have cited to *Eli Lilly and Co. v. Barr Labs,* No. IP 96-0491-C-B/S (S.D.Ind. October 29, 1998) in support of their motion for bifurcation. While the Court in *Lilly* did grant defendant Barr's motion for bifurcation, it is clear that Barr's central argument for bifurcation centered on the fact that Lilly did not raise the claim of willful infringement

1999 WL 528806  
1999 WL 528806 (D.Mass.)  
**(Cite as: 1999 WL 528806 (D.Mass.))**

Page 4

until very late in the game. *See id.* at 2. Barr claimed that it would not have enough time to prepare its defense to the willfulness claim prior to the scheduled trial date which was fast approaching. *See id.* The Court's entry reflects that the primary reason on which it based its decision to bifurcate was avoidance of prejudice to Barr caused by inadequate time to prepare its defense. *See id.* The facts leading up to the Court's decision in *Lilly,* are, in at least one significant respect, quite distinct from the case *sub judice,* therefore, as Plaintiffs here raised the claim of willful infringement against each of the respective Defendants in its original complaints.

This Court does agree, however, that the Defendants should not be compelled to litigate both the issues of liability and willfulness in a single trial, or to disclose privileged documents absent *in camera* review of the documents to determine if Defendants really are faced with the Hobson's choice of having to either waive attorney-client privilege in order to present a willfulness defense--at the risk of prejudicing the resolution of the liability issues--or maintain the privilege at the risk of being found a willful infringer if liability is found. Accordingly, this Court will conduct an *in camera* review of the opinions of counsel on which Defendants intend to rely.

**\*4** Even if a review of the documents reveals potential prejudice to the Defendants, the bifurcation motion could still be denied based upon other considerations if those considerations, e.g., unnecessary expense and delay and/or duplication of evidence, outweigh the potential prejudice to the Defendants. Additionally, other alternatives, such as organization of the trial into two phases before the same jury may present a more reasonable solution. *See e .g., Neorx Corp. v. Immunomedics Inc., 28 U.S.P.Q.2d 1395, 1397 nn. 4 & 5 (D.N.J.1993)* (noting that a court could decide to direct disclosure of the attorney opinion, but also order a two-phased trial before the same jury, with infringement addressed in the first phase and willfulness in the second phase).

Accordingly, Defendants Copley, Teva, and Eon are hereby ORDERED to produce for *in camera* examination all opinions of counsel on which they intend to rely in defense of Plaintiffs' willfulness charge against them. It is further ORDERED that discovery on the issue of willfulness is stayed until the resolution of the bifurcation issue.

SO ORDERED,

1999 WL 528806 (D.Mass.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.