Not Reported in F.Supp.  Page 1
1994 WL 74989 (N.D.Ill.)
**(Cite as: 1994 WL 74989 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

UNITED STATES GYPSUM COMPANY, Plaintiff,
v.
NATIONAL GYPSUM COMPANY, Defendant.

**No. 89 C 7533.**

March 10, 1994.

MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

**\*1** The facts of the case are extensively set out in an earlier Opinion, *see United States Gypsum v. National Gypsum Co.,* No. 89 C 7533 (N.D.Ill. Jan. 27, 1993) (Plunkett, J.), and we need not restate them herein. Suffice it to say that USG sued National for infringement of two patents involving lightweight joint compound. National filed a Counterclaim alleging that USG's enforcement of the patents was a bad faith attempt to interfere with National's business relationships in violation of antitrust laws. After years of litigation and at least four Memorandum Opinion and Orders from this court, this case is finally ready to try, and is before us once again today so that we may decide how we will proceed at trial.

Plaintiff USG argues that we should bifurcate the trial of the patent infringement from the antitrust counterclaims. Defendant National, on the other hand, argues that bifurcation of the antitrust and patent issues will result in needless duplication of evidence and will not necessarily result in saving any trial time. National also argues that a separate trial of the damages phase is the norm that should be followed in the present case. USG opposes that suggestion because it anticipates presenting its proof of damages in a short and uncomplicated fashion.

*Discussion*

Rule 42(b) of the Federal Rules of Civil Procedure states, in pertinent part:

   The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, crossclaim, counterclaim or third-party claim, or of any separate issue or of any number of claims ... always preserving inviolate the right of trial by jury....

Fed.R.Civ.P. 42(b). The question of bifurcation, or, as in this case, trifurcation, is to be decided by the trial court on a case-by-case basis. *Lis v. Robert Packer Hosp.,* 579 F.2d 819, 824 (3d Cir.), *cert. denied,* 439 U.S. 955 (1978); *PPG Indus. v. LIbbey-Owens-Ford Co.,* No. 90 C 6067, slip op. at 2 (N.D.Ill. Sept. 23 1992) (Marovich, J.); *Avia Grp. Intn'l v. Nike,* 22 U.S.P.Q.2d 1475, 1476 (D.C.Or.1991). The trial court's discretion here is broad, and is guided by its sense of what format will "be conducive to the promotion of judicial economy and the avoidance of prejudice." *PPG,* slip op. at 2 (citing *Naxon Telesign Corp. v. GTE Info. Sys.,* 89 F.R.D. 333, 341 (N.D.Ill.1980)). Though the court should not routinely order separate trials, " 'issues of validity, title, infringement, and damages in patent and copyright cases may be separately tried unless this course will inconvenience the court or seriously prejudice the rights of some of the parties." *PPG, id.* (quoting *Swofford v. B. & W.,* 34 F.R.D. 15 (S.D.Tex.1963), *aff'd,* 336 F.2d 406 (5th Cir.1964), *cert. denied,* 379 U.S. 962 (1965)). However, the major consideration is which choice is "most likely to result in a just final disposition of the litigation." *In re Innotron Diag.,* 800 F.2d 1077, 1084 (Fed.Cir.1986) (citing 9 Charles Wright & Arthur Miller, *Federal Practice and Procedure, § 2388 (1971)*).

**\*2** As to the bifurcation of the patent infringement from the antitrust trial, it is common practice to bifurcate these issues so that the complex antitrust issues are reached only if a showing of fraud, necessary to a *Walker Process* antitrust recovery, is still tenable after litigating the issue of inequitable conduct in procuring the patent:

   Deferral of trial on antitrust issues, with their additional requirements of proof of the various elements of an antitrust violation and of injury to the complaining party, would be likely in many cases to lead to a complete avoidance of a complex antitrust trial by settlement after trial of the patent issues, as in *Walker Process.*

James B. Pegram, *Separate Trial in Patent-Antitrust and Patent-Unenforceability Litigation,* 64 F.R.D. 185, 200

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10884-RGS   Document 20-9   Filed 12/06/2004   Page 2 of 2

Not Reported in F.Supp. Page 2
1994 WL 74989 (N.D.Ill.)
**(Cite as: 1994 WL 74989 (N.D.Ill.))**

(footnotes omitted). *See also Innotron,* 800 F.2d at 1084 (bifurcating patent and antitrust trials is "now standard practice").

We feel that bifurcation of the quite complex, and at this point, contingent, antitrust trial from the patent issues, in accordance with the general practice, best serves the interests of justice in this case. Though, as National points out, there is a degree of overlap between the evidence as to inequitable conduct element in their invalidity defense on USG's infringement claim and the common law fraud element in their *Walker Process* counterclaim, should the patents be found valid and enforceable in the patent trial, a motion for a directed verdict on the Defendant's *Walker Process* counterclaims may be in order. *See, e.g. FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1417 (Fed.Cir.1987) ("FMC's failure to establish inequitable conduct precludes a determination that it had borne its greater burden of establishing the fraud required to support its *Walker Process* claim."). *See also Hewlett Packard Co. v. Bausch & Lomb,* 882 F.2d 1556, 1563 (Fed.Cir.1989) (noting that an "extremely high level of misconduct, actual fraud, is necessary to sustain a *Walker Process* claim ..."), *cert. denied,* 493 U.S. 1076 (1990).

As to the question of separating liability from willfulness, we also feel bifurcation is called for. *See Pittway Corp. v. Maple Chase Co.,* No. 91 C 3582, 1992 WL 392584, 1992 U.S.Dist. LEXIS 19237, *16 (N.D.Ill. Dec. 15, 1992) (Zagel, J.) (bifurcating liability and willfulness). National points out that, if these issues are not separated, it is faced with the unpleasant choice of either waiving its attorney-client privilege as to documents it hopes to use to defend itself on the willfulness question, or retaining the privilege to keep the documents out on the liability issue. If both issues are tried together, National will either be deprived of a colorable defense to the willfulness claim or be damaged by the admissions in those documents in the liability phase. That is an untenable situation. *See Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed.Cir.1991) (court recognizes the problem, and, in *dicta,* suggests that "[t]rial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications ... reveal that the defendant is confronted with this dilemma.")

**\*3** Aside from the willfulness issue, however, we do not believe damages should be bifurcated. The Plaintiff has represented to us that they do not expect to take more than a day to put their damages case in evidence. Where, as here, the damages case is not overly complex or extensive, there is no need to bifurcate. *See, e.g., Output Tech. Corp. v. Data Prod. Corp.,* 22 U.S.P.Q.2d 1072 (W.D.Wash.1991) (bifurcation of damages denied in two-week trial where damages were not expected to take more than a day to present).

*Conclusion*

For the reasons stated above, we "trifurcate" this trial into patent liability, willfulness, and antitrust phases.

1994 WL 74989 (N.D.Ill.)

END OF DOCUMENT