LEXSEE 1992 U.S. DIST. LEXIS 22077

**LAWRENCE B. LOCKWOOD, Plaintiff, v. AMERICAN AIRLINES, INC., Defendant.**

Civil No. 91-1640-E(CM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

*1992 U.S. Dist. LEXIS 22077*

**October 27, 1992, Decided
October 28, 1992, Filed**

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] ENRIGHT

**OPINIONBY:** WILLIAM B. ENRIGHT

**OPINION:**

MEMORANDUM DECISION AND ORDER

BACKGROUND

This is a patent infringement action brought by Mr. Lockwood against American Airlines, Inc. Mr. Lockwood is the inventor and owner of the two patents involved in this suit. These patents relate to interactive, audiovisual systems and apparatus useful in computerized reservation systems. American's recent enhancement of its computerized "Sabre" reservation system, Sabrevision, provides interactive visual presentation of information, e.g. descriptions of resorts, hotels and cruises beyond the traditional scheduling and prices. Thus, plaintiff Lockwood has brought this action against American to protect his patent rights.

On July 24, 1992, defendant filed a Motion for Protective Order Re: Disclosure of Confidential Discovery Materials. American had demanded, as a condition for allowing Lockwood access to all of its confidential and proprietary information produced in this litigation, that Lockwood agree not to make any improvements to any of the technology involved in the litigation. Lockwood refused. Thus, American moved for entry of a protective order which places a two-tiered designation on documents and other [*2] information as either "Confidential" or "Confidential -- Attorneys Eyes Only." Plaintiff is not authorized to review the materials designated "Attorneys Eyes Only."

After performing an in camera review of approximately 650 pages of the documents which defendant had designated as "Attorneys Eyes Only", Judge McKee issued a two-part order providing that: 1) the Sabrevision Installation and Technical Reference Manual (approximately 100 pages) shall not be disclosed to plaintiff because it contains trade secrets; and 2) consideration and review of the remaining documents (approximately 550 pages) is stayed "until the damages phase of the suit is reached." Judge McKee stated that "bifurcation of the infringement and damages issues in this case will substantially promote quick and economical resolution of this lawsuit." (August 25, 1992 Order) Judge McKee denied plaintiff's September 4, 1992 request for reconsideration.

I. Objection to Judge McKee's August 25, 1992 Order

Plaintiff objects to Judge Mckee's August 25 order on the grounds that it was based on findings of fact that are clearly erroneous, is wrong on the law, is fundamentally unfair to plaintiff and places an intolerable [*3] burden on plaintiff's counsel. Plaintiff requests that this court enter a protective order allowing plaintiff access to all confidential information produced by American during this litigation.

The magistrate judge's decision on a nondispositive issue will be reviewed by the district judge under a clearly erroneous standard. *Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991),* cert. denied,

Case 1:04-cv-10884-RGS   Document 20-12   Filed 12/06/2004   Page 2 of 4

Page 2
1992 U.S. Dist. LEXIS 22077, *

*116 L. Ed. 2d 639, 112 S. Ct. 617 (1991)*. Thus, plaintiff has a heavy burden.

First, plaintiff argues that Judge McKee's finding that plaintiff is a competitor of American is clearly erroneous because plaintiff is an individual and not a "business competitor" of defendant's. Plaintiff stated in his declaration that he is not now engaged in, nor does he have any intention of becoming engaged in the travel business, the computer industry or the airline industry. However, plaintiff is admittedly actively engaged in the business of inventing and patenting travel reservation systems. Furthermore, plaintiff admits that he is always considering possible improvements to his patented technology and he intends to apply [*4] for patents on them, if such improvements occur to him.

This court finds that Judge McKee's finding that plaintiff was a competitor of defendant's was not clearly erroneous. Defendant is engaged in a business which involves the use of travel reservation systems. Plaintiff is trying to prevent defendant from using the reservation system of its choice. Thus, plaintiff's patents and efforts to obtain more patents place him in sufficient competition with defendant in the travel reservation system market that an "attorney's eyes only" designation on certain confidential documents is appropriate in this case. Plaintiff should not get the benefit of defendant's work product merely because he has filed this lawsuit.

Second, plaintiff suggests that Judge McKee misapplied the law by relying on *Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir. 1992)*, cert. denied, *1992 US Lexis 5362 (1992)*. In Brown Bag, the Ninth Circuit approved the district court's grant of the defendant's motion for a protective order preventing plaintiff's in house counsel from having access to "attorneys' eyes only" material. Id. Plaintiff [*5] argues that Brown Bag has little application to this case because in Brown Bag, the parties were both corporations who were engaged actively in the very same business.

This court finds that Judge McKee correctly applied the law by relying on Brown Bag. In Brown Bag, the Ninth Circuit reasoned that any person involved in competitive decision making for a party would be placed in an untenable position upon receiving the confidential information of an opposing party. *Id. at 1471*. The recipient of the confidential information would be required not to use that information in his own business enterprises, while at the same time making decisions about how best to compete against the opposing party in the marketplace. Id. This reasoning applies with even greater force in this case because plaintiff is not merely responsible for giving legal advice to a party regarding marketing strategy, as were the attorneys in Brown Bag. Here, plaintiff is actually a party and would, therefore, be placed in a more tenable position than the in-house counsel in Brown Bag because he must make all of his own individual business decisions. Thus, it would [*6] presumably be even more difficult for plaintiff to refrain from using the information gained from defendant's documents for his own business purposes.

Third, plaintiff argues that Judge McKee's order places an unfair burden on plaintiff and his attorneys because it forces him to pay the cost of hiring an expert and takes the decision-making ability out of plaintiff's hands. However, this court believes it is the nature of this litigation, not Judge McKee's decision which causes the burdens which plaintiff has identified.

II. Defendant's Motion for Separate Trials on Liability and Damages and to Stay Proceedings on Damages Issues

Judge McKee recommended bifurcation of the infringement and damages issues because he felt it would promote efficiency. Defendant now moves this court to hold separate trials on liability and damages pursuant to *Fed. R. Civ. P. 42(b)*. In general, plaintiff does not object to defendant's motion. Plaintiff's only disputes are over the litigation schedule and whether willful infringement should be tried at the damage phase of the trial as defendant suggests.

This court refers the parties to Judge McKee to discuss and set the litigation schedule.

The only [*7] other dispute remaining between the parties on this motion is whether the issue of willful infringement should be tried with the damages or the liability stage of the trial. Defendant argues that the willfulness issue should be tried after liability because to do otherwise would prejudice the defendant by forcing it to relinquish its attorney client privilege and allowing the jury to hear evidence on willfulness before determining liability.

First, the Federal Circuit has recommended that district courts try the issue of willfulness separate from the issue of liability to protect the attorney-client privilege when necessary. *Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643 (Fed. Cir. 1991)*. Defendants commonly rebut willful infringement charges by waiving the attorney-client privilege and showing it acted carefully and within the advice of its attorney. See, e.g. *Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1546 (Fed. Cir. 1991)*. The Quantum court noted the dilemma with which a defendant is faced when it is forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in [*8] which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it

may risk being found to be a willful infringer if liability is found. *Quantum, 940 F.2d at 644.*

This court does not believe that defendant should be faced with such a dilemma. Plaintiff should not get the benefit of American's work product to assist him in the liability phase of the litigation.

Second, defendant argues that the most efficient and least prejudicial solution would be to try the liability issue first. The great weight of authority supports trying the willfulness issue with damages, rather than liability because the jury will not need to reach the issue of wilfulness unless liability is found. See *Quantum, 940 F.2d at 643; Amsted Industries, Inc. v. National Castings, Inc., 1990 U.S. Dist. LEXIS 8553, 16 U.S.P.Q. 2d 1737, 1739 (N.D. Ill. 1990).*

Plaintiff argues that the Quantum concern for protecting the attorney-client privilege is inapplicable to this case because there will be a substantial overlap of evidence on the issues of willfulness [*9] and liability. See *Kimberly-Clark Corp. v. James River, 131 F.R.D. 607 (N.D. Ga. 1989).*

Plaintiff points to two main areas of overlap. Plaintiff argues that overlap will exist as a result of defendant's intervening rights defense based on *35 U.S.C. § 252*. This defense provides that because of certain activity before the grant of a re-issue patent, an infringer might enjoy a "personal intervening right" to continue what would otherwise be infringing activity. The underlying rationale of the defense is that the public has a right to use what is not claimed. An attorney's opinion is normally an integral part of such defense because an important element of the defense is reliance on some defect of the original patent that was cured by the re-issue. See *Seattle Box Co. v. Industrial Crating & Packing, 756 F.2d 1574, 1580 (Fed. Cir. 1985).* Thus, plaintiff argues that since defendant will most likely put forth the same attorney opinions for its intervening rights defense and its arguments on the willfulness issue, willfulness should be tried at the liability stage of the trial.

Defendant argues [*10] that plaintiff's arguments concerning the possibility of overlap are irrelevant because in fact there will be no overlap of proof between the issues of willfulness and intervening rights. It notes that only opinions of counsel obtained before reissuance of plaintiff's patent (in 1986) are relevant to the defense of intervening rights. See Id. In contrast, defendant's opinions of counsel on which it could rely to defend the charge of willful infringement were obtained years after the reissuance of plaintiff's patent. Furthermore, it notes that even the Northern District of Georgia, which decided Kimberly-Clark, on which plaintiff relies, has recently ordered trial of willfulness in the damages phase of the bifurcated trial. *FMT Corp. Inc., v. Nissei ASB Co., 1992 U.S. Dist. LEXIS 21500, 24 U.S.P.Q. 2d 1073 (N.D. Ga. 1992).*

Plaintiff also argues that evidence relating to the issue of willful infringement is relevant to the issue of patent validity. In contrast, defendant argues that the desire or intent to infringe a patent is irrelevant to the question of infringement. See *Wilden Pump v. Pressed & Welded Products Co., 655 F.2d 984 (9th Cir. 1981).* [*11] Furthermore, as defendant notes, plaintiff does not cite any specific evidence that is relevant to both issues.

Finally, defendant argues that in addition to being forced to reveal its work product to plaintiffs, defendant is likely to be prejudiced before the jury if plaintiff tries the willfulness of defendant's infringement before the jury finds any infringement.

III. Stay of Consideration of Non-Technical Marketing and Licensing Documents

Implicit in Rule 42b to grant separate trials is the power to stay proceedings, including discovery, on the deferred issues until the end of the first trial. *Ellingson Timber Co. v. Great Northern Railway Co., 424 F.2d 497, 499 (9th Cir.), cert denied, 400 U.S. 957, 27 L. Ed. 2d 265, 91 S. Ct. 354 (1970).* Defendant argues that a stay of proceedings on the damages issues should be granted in this case because such proceedings will be costly and possibly unnecessary.

Plaintiff argues that even if bifurcation is ordered, a stay of consideration of the non-technical documents reviewed by Judge Mckee is nevertheless inappropriate because the documents are [*12] relevant to liability issues. The non-technical documents marked "Attorney's Eyes Only" by defendant and submitted to Judge McKee for review include marketing and licensing documents through which defendant was able to develop and market its Sabrevision system. Plaintiff argues that these documents are pertinent to liability issues concerning the validity of plaintiff's patents.

This court requests that Judge Mckee review the marketing and licensing documents to which plaintiff refers to determine their relevance to the liability stage of the trial. If they are pertinent to liability, the court requests Judge McKee to lift the stay on the remaining "attorneys eyes only" documents and grant immediate consideration by plaintiff's attorneys and experts of these specific documents.

CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby:

1. Upholds Judge McKee's issuance of a protective order designating the Sabrevision Installation and Technical Reference Manual and its revision for "attorneys eyes only."

2. Upholds Judge McKee's order and grants defendant's motion to stay consideration [*13] of the rest of the damages-related documents until the damage phase of the trial, with the possible exception of the marketing and licensing documents which may relate to liability. This court requests Judge McKee to review these documents to determine if they are relevant to liability. If so, the court requests Judge McKee to lift the stay and grant immediate consideration by plaintiff's attorneys and experts of these specific documents.

3. Grants the defendant's motion to bifurcate the trial on liability and damages issues. The willfulness issue should be tried with the damage phase of the trial.

4. Refers the parties back to Judge McKee to discuss a discovery cut-off date and trial schedule.

DATED: October 27, 1992.

WILLIAM B. ENRIGHT, Judge

United States District Court

ORDER

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby:

1. Upholds Judge McKee's issuance of a protective order designating the Sabrevision Installation and Technical Reference Manual and its revision for "attorneys eyes only."

2. Upholds Judge McKee's order and grants defendant's motion to stay consideration [*14] of the rest of the damages-related documents until the damage phase of the trial, with the possible exception of the marketing and licensing documents which may relate to liability. This court requests Judge McKee to review these documents to determine if they are relevant to liability. If so, the court requests Judge McKee to lift the stay and grant immediate consideration by plaintiff's attorneys and experts of these specific documents.

3. Grants the defendant's motion to bifurcate the trial on liability and damages issues. The willfulness issue should be tried with the damage phase of the trial.

4. Refers the parties back to Judge McKee to discuss a discovery cut-off date and trial schedule.

DATED: October 27, 1992.

WILLIAM B. ENRIGHT, Judge

United States District Court