LEXSEE 15 U.S.P.Q. 2D 1795

**THE GILLETTE COMPANY, v. S.C. JOHNSON & SON, INC.; S.C. JOHNSON & SON, INC., v. THE GILLETTE COMPANY**

Civil Action Nos. 83-2657-N, 83-3201-N

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*1990 U.S. Dist. LEXIS 3395; 15 U.S.P.Q.2D (BNA) 1795*

**March 28, 1990, Decided**

**PRIOR HISTORY:** [*1] Original Opinion of July 31, 1989, Reported at: *1989 U.S. Dist. LEXIS 8880.*

**LexisNexis(R) Headnotes**

**COUNSEL:**

COUNSEL FOR THE GILLETTE COMPANY: Robert E. Hillman, Esquire, Robert W. Furlong, Esq., Gregory Madera, Esq., William E. Booth, Esq., Frank P. Porcelli, Esq., FISH & RICHARDSON, Boston, Massachusetts.

COUNSEL FOR S.C. JOHNSON & SON, INC: Robert L. Baechtold, Esq., Henry J. Renk, Esq., Nicholas N. Kallas, Esq., FITZPATRICK, CELLA, HARPER & SCINTO, New York, New York, and John M. Kahn, Esq., HILL & BARLOW, Boston, Massachusetts, and Jerome P. Facher, Esq., Joan A. Lukey, Esq., HALE & DORR, Boston, Massachusetts.

**OPINIONBY:**

COLLINGS, Magistrate

**OPINION:**

MEMORANDUM AND ORDER ON GILLETTE'S MOTION FOR RECONSIDERATION AND TO ALTER AND AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FOR AMENDMENT AND ENTRY OF NEW JUDGMENT PURSUANT TO FED.R.CIV.P. 52 AND 59 (#161)

ROBERT B. COLLINGS, UNITED STATES MAGISTRATE

Gillette seeks reconsideration of the Court's findings that (a) the Monson invention was not "obvious" and (b) that Gillette's infringement of the Monson patent was "willful" and the Court's conclusion that S.C. Johnson is entitled to an award of attorney's fees.

OBVIOUSNESS

In the Opinion (#159) entered July 31, 1989, the Court undertook a considerable exegesis of the standards currently [*2] applicable in making the determination as to whether an invention was "obvious." Nothing in the case law upon which Gillette relies prompts me to alter my opinion.

In the case of *In re O'Farrell, 853 F.2d 894* (Fed. Cir., 1988), the Court of Appeals affirmed the denial of a patent on grounds of "obviousness" where the prior art reference ". . . contained detailed enabling methodology for practicing the claimed invention, a suggestion to modify the prior art to practice the claimed invention, and evidence suggesting that it would be successful." *Id. at 902.* This scenario is clearly not present in the instant case. However, in the O'Farrell case, the Court of Appeals re-affirmed its prior holdings that "obvious to try" was an "impermissible standard" and attempted to answer the question: "when is an invention that was obvious to try nevertheless nonobvious?" *Id. at 903.* In this connection, the Court wrote:

The admonition that "obvious to try" is not the standard has been directed mainly at two kinds of error.

Case 1:04-cv-10884-RGS   Document 20-13   Filed 12/06/2004   Page 2 of 5

Page 2
1990 U.S. Dist. LEXIS 3395, *; 15 U.S.P.Q.2D (BNA) 1795

In some cases, what would have been "obvious to try" would have been to vary all parameters or try each of numerous possible choices until one possibly arrived at [*3] a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful. E.g., *In re Geiger, 815 F.2d [686] at 688 2 USPQ2d [1276] at 1278* [Fed. Cir., 1987], *Novo Industri A/S v. Travenol Laboratories, Inc., 677 F.2d 1202, 1208, 215 USPQ 412, 417 (7th Cir. 1982); In re Yates, 663 F.2d 1054, 1057, 211 USPQ 1149, 1151* (CCPA, 1981); *In re Antonie, 559 F.2d [618] at 621, 195 USPQ [6] at 8-9* [CCPA, 1977]. In others, what was "obvious to try" was to explore a new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it. *In re Dow Chemical Co., 837 F.2d 469, 473, 5 USPQ2d 1529, 1532* (Fed.Cir., 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1380, 231 USPQ 81, 90-91* (Fed. Cir., 1986), cert. denied, U.S. , 107 S. Ct. 1606, 94 L. Ed. 2d 792 (1987); *In re Tomlinson, 363 F.2d 928, 931, 150 USPQ 623, 626* (CCPA, 1966).

*In re O'Farrell, supra, 853 F.2d at 903.*

In my opinion, [*4] the instant case presents the second type of situation described in the quotation from O'Farrell, i.e., the situation in which Mr. Monson "explore[d]" a "new . . . general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention . . .". Under current law, it would be error to find that, in such a situation, the invention was "obvious." What is lacking in the instant case is any "clear suggestion of the claimed subject matter" in the prior art. *Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1449* (Fed. Cir., 1984). In the absence of such a clear suggestion, "obviousness" has not been proven.

In the case of *Merck & Co. Inc. v. Biocraft Laboratories Inc., 874 F.2d 804* (Fed. Cir., 1989), the Court of Appeals discussed the first type of the two "obvious to try" errors which it had set out in the O'Farrell case, i.e. "where the prior art [gives] either no indication of which parameters [are] critical or no direction as to which of many possible choices is likely to be successful." *Merck, supra, 874 F.2d at 807* quoting from *O'Farrell, supra, 853 F.2d* [*5] *at 903*. As indicated supra, I do not think that the instant case involves a question of "which parameters are critical" or "directions as to which of many possible choices is likely to be successful." Rather, this case involves the second type of situation described in O'Farrell.

Gillette also points to three 1983 cases of the Court of Appeals for the Federal Circuit as support for its position. These are *Aktiebolaget Karlstads Mekaniska Werkstad v. United States International Trade Commission, 705 F.2d 1565* (Fed.Cir., 1983), *Orthopedic Equipment Company, Inc. v. All Orthopedic Appliances, Inc., 707 F.2d 1376* (Fed. Cir., 1983) and *In re Mulder, 716 F.2d 1542* (Fed. Cir., 1983). In each, the invention was found to be an "obvious" extension of the prior art. Gillette seeks to have the cases read broadly while, at the same time, urges the Court to read the Kimberly-Clark case narrowly. The distinction which Gillette seeks to draw is that in the three cases as well as the instant case, the substituted "ingredient" or "mechanism" was known in the particular field whereas in the Kimberly-Clark case, "no dual purpose adhesive had ever been used for any purpose [*6] in the field to which the invention related." Gillette's Memorandum, Etc. (#168) at p. 9. This is somewhat of a misstatement of Kimberly-Clark. What the Court held was lacking in the Kimberly-Clark case was any suggestion in the field of an adhesive which performed the dual function sealing the wrapper and undergarment attachment. *Kimberly-Clark, supra, 745 F.2d at 1448.* I do not read the Court's opinion as indicating that dual purpose adhesives are so far removed from the field of sanitary napkins that it would not have been obvious to experiment with using them in that field. What was lacking in the prior art was any "clear suggestion" to use the adhesive for the two purposes indicated.

Similarly, in the instant case, there was no "clear suggestion" in the prior art to use water-soluble polymers to make a post-foaming shaving product. Gillette argues that in the instant case, a sufficient "suggestion" or "incentive" is found because:

. . . one of ordinary skill in the art would have perceived water-soluble gelling agents as merely duplicating the anti-separation function admittedly achieved by Bluard, and offering the added advantages--recognized in the prior art--of [*7] increased lubricity and consistency regulation.

Gillette's Memorandum, Etc. (#268) at p. 4.

Gillette then goes on to refer to my finding that it was well-established in 1967 that "these lubricity and consistency regulation functions were well-established for water-soluble gelling agents." Id. And so they were, but there is no evidence whatsoever, indeed no suggestion whatsoever (much less a clear suggestion), that these water-soluble gelling agents would be any more lubricious and/or do any more to improve consistency than Bluard's ingredients.

Case 1:04-cv-10884-RGS    Document 20-13    Filed 12/06/2004    Page 3 of 5

Page 3

1990 U.S. Dist. LEXIS 3395, *; 15 U.S.P.Q.2D (BNA) 1795

In short, Gillette's argument rests on the unproven premise that there is a suggestion in the prior art that in making a post-foaming shaving product, water-soluble polymers would result in a product which would be an improvement in lubricity and consistency over Bluard's product.

In contrast, the Aktiebolaget case involved the application of the same principles used in a machine to make single-ply paper to machines which made multi-ply paper. The structure and function of the two machines were "substantially the same." *Aktiebolaget, supra, 705 F.2d at 1576.* The prior art taught how to convert a machine which made single-ply [*8] paper into a machine which made multiply paper. The patent for the machine making single-ply paper described its advantages. The Court concluded:

One skilled in the art, deemed to be aware of these teachings, would have had ample reason to take the natural and obvious step of carrying them over to the closely-related, well known multiply papermaking art . . .

*Id. at 1577.*

In the instant case, I see no evidence of an "ample reason."

In the Orthopedic Equipment case, the issue was the substitution of fastening by velcro (which could be disconnected) for fastening by sewing (resulting a fastener which could not be disconnected) In that case, the Court found the improvement "obvious" noting that a prior patent disclosed:

. . . an instance where an inventor in the orthopedic soft goods field took a product whose members had previously been sewn to the cover and made those members detachable and adjustable by using a "Velfoam" cover and "Velcro"-type fastening hooks on the members to be adjusted.

*Orthopedic Equipment, supra, 707 F.2d at 1381.*

In the instant case, there is no prior art suggesting the use of water-soluble polymers in post-foaming shaving products. [*9]

Lastly, the case of *In re Mulder, supra,* is distinguishable not only on the ground that the specified improvements were clearly suggested in the prior art but also on the fact that the applicant who sought a patent had the burden to prove that the invention was not obvious and thus patentable.

In sum, I stand by the analysis set forth in my July 31, 1989 opinion; none of the cases or arguments on the obviousness issue advanced in Gillette's motion persuade me that I was in error.

WILLFULNESS

There is no question but that the question of willfulness and whether the case was "exceptional" permitting an award of attorney's fees was an issue to be decided as part of the liability phase of this case. The parties stipulated to the issues to be tried at the liability phase; the third principal issue is stated to be:

If any of the . . . claims [of the Monson patent] is infringed and is not invalid, whether Johnson is entitled to increased damages under *35 U.S.C. § 284* and/or attorney's fees under *35 U.S.C. § 285.*

That is not how I would have preferred to deal with the issue; in my opinion, increased damages and attorney's fees are more properly tried as part of the damage phase of [*10] the case. However, when I mentioned my preference during closing arguments, counsel both indicated that I should decide the issue after completion of the evidence at the liability phase of the case. I did so.

My view as to what I would have preferred has not changed. Counsel's attention during the liability phase is simply not principally directed toward issues of increased damages and attorney's fees. This case is an example. In Gillette's 85-page filing entitled Gillette's Proposed Findings of Fact and Conclusions of Law, no more than three and one-half pages are devoted to the issue. See pp. 48-50, 84-85. Only three cases were cited. The first two sentences of the argument read as follows:

Gillette proceeded in good faith and with reasonable basis to believe that it was not infringing any valid patent rights of Johnson. Gillette fulfilled what the Federal Circuit in *Underwater Devices Inc. v. Morrison-Knudson Co., 717 F.2d 1380, 1384* (Fed.Cir., 1983) termed its "affirmative duty to exercise due care to determine whether or not [it] is infringing" by performing experiments followed by confirmatory testing that demonstrated no infringement in accordance with the analysis [*11] and advice of counsel.

Gillette's Proposed Findings of Fact and Conclusions of Law at pp. 84-85.

Since counsel for Johnson also cited the case of Underwater Devices Inc., I analyzed the issue according to the principles set forth in that case. Yet in Gillette's Memorandum, Etc. (#168 at p. 21-22, 29) filed in support of the instant motion, Gillette seems to fault the Court for applying the principles enunciated in Underwater Devices. This seems to me to be a classic example of an attempt to sandbag the Court.

Case 1:04-cv-10884-RGS    Document 20-13    Filed 12/06/2004    Page 4 of 5

Page 4
1990 U.S. Dist. LEXIS 3395, *; 15 U.S.P.Q.2D (BNA) 1795

I stand by my decision on willfulness. I did not base the finding on any notion that there is an absolute requirement in all cases to obtain legal advice before taking action which might infringe an existing patent. But I did find that in the circumstances of this case, such an opinion was required in order to demonstrate good faith. I stand by that finding. As I indicated, when Gillette starting producing and selling its product in August and September, 1983, Gillette had known of the Monson patent for some years and had tried to design around it by not using water-soluble polymers and had failed. It must have known that Carter-Wallace had begun manufacturing and selling [*12] its infringing product in 1980 and had been sued for infringement in the Southern District of New York in 1981, some two years, more or less, before Gillette took its infringing action. Gillette's in-house legal department had been contacted and had given an "initial opinion" respecting whether there would be infringement if the water-soluble polymer did not contribute to gellation and indicated that it would submit the issue to an independent law firm. Considering that I view Gillette's position on infringement to be less than robust, in all the circumstances of this case, going forward with the possible infringing action without an opinion of counsel would demonstrate a lack of due care.

The standard is an objective one.

The test is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed. See *Central Soya Co. v. Geo.A. Hormel & Co.*, 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir. 1983).

*Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir., 1988).

As I indicated in my July 31st Opinion, I see a clear distinction between the issue of infringement [*13] and the issue of validity. If there was any evidence that Gillette had formulated the opinion of validity which it put forth at trial, I would not have found that its infringement was willful. Rather, I would have found that Gillette could have conducted itself with some "confidence that the Court might hold the patent invalid." Id. But there is no evidence that Gillette formulated its position with respect to validity before it was sued.

However, on the issue of infringement, without an opinion of counsel which the Court could analyze, I find that Gillette could not, simply on the basis of Mr. Barnett's experiments and Legal's "initial opinion," be said to have acted "prudently" and "reasonably" and "with any confidence that a court might hold the patent uninfringed." *Ryco. Inc., supra*, 857 F.2d at 1418.

Lest there be any doubt, I find that on this record, the evidence upon which I rely for my finding of "willful infringement" is clear and convincing.

Gillette complains that it is being penalized for its invocation of its attorney-client privilege. I recognize the dilemma, as has the Federal Circuit. But that is of no help to Gillette. As Chief Judge Markey wrote in *Fromson* [*14] *v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1572-3 (Fed. Cir., 1988):

Western [the infringer] refused to answer interrogatories on whether it obtained counsel's opinion before it began infringement in 1965 or on the content of any such opinion, saying it would disclose such matters only if it were found liable for infringement at trial, in essence suggesting a separate trial on willfulness, e.g., as part of a separate trial on damages. That approach may be useful in meeting the attorney-client privilege problem. Here, however, willfulness and damages were tried with liability, and Western did not offer an opinion of counsel. Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention.

Id. (emphasis supplied) citing *Kloster Speedstell, A.B. v. Crucible Inc.*, 793 F.2d 1565, 1579-80, 230 USPQ 81, 90-91 (Fed. Cir., 1986).

I end where I began; I would have much preferred to have left the issues of willfulness and attorney's fees to the damage phase [*15] of the trial. Considering that at the time of trial, the Underwater Devices case had been the law of the Federal Circuit for more than a year, it is incredible that Gillette did not foresee the dilemma which invocation of the attorney-client privilege would cause for it and file a motion seeking to defer the issues of "willfulness" and "attorney's fees" to the damage phase of the trial. I should have thought that after the decision in Underwater Devices, such a motion would be "standard operating procedure" for one accused of infringement who wanted to retain the attorney-client privilege during the liability phase of the trial but who was also accused of "willful" infringement. See *Rohm & Haas Company v. Mobil Oil Corporation*, 654 F. Supp. 82, 85-6 (D. Del., 1987).

ATTORNEY'S FEES

Gillette complains that I only devoted the last two sentences in my Opinion to the question of attorney's fees. However, at that point in the Opinion, I had just finished my findings and conclusions on the issue of "willfulness" and the use of the term "all the circumstances" was meant to refer to those findings and

Case 1:04-cv-10884-RGS   Document 20-13   Filed 12/06/2004   Page 5 of 5

Page 5

1990 U.S. Dist. LEXIS 3395, *; 15 U.S.P.Q.2D (BNA) 1795

conclusions. It was on the basis of the finding of "willfulness" that I found [*16] this to be an exceptional case; the finding of "willfulness" is a "sufficient basis for finding a case 'exceptional' . . ." *Ryco. Inc., supra, 857 F.2d at 1429.*

Of course I am interested in a "fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son v. Carter-Wallace Inc., 781 F.2d 198, 201* (Fed. Cir., 1986). But it seems to me that in a case in which an infringer does not act "prudently" and "reasonably" before engaging in infringing action, it is only "fair" to allocate to the infringer the costs which the patent holder has to incur in order to seek redress. In short, the finding that this is an "exceptional case" permitting an award of attorney's fees flows from the finding that Gillette was a "willful" infringer.

I have reviewed the decision in S.C. Johnson & Son v. Carter-Wallace Inc., supra, after remand to the District Court. *S.C. Johnson & Son v. Carter-Wallace Inc., 231 USPQ 668* (S.D.N.Y., 1986). In that case, although finding the case "exceptional," the Court declined to award attorney's fees. First, Judge Keenan noted that Johnson prevailed on only one of three claims and that there was no "true winner." *Id. at 669.* [*17] That is not the situation in the instant case; Johnson prevailed on all of its claims. Second, the Court noted that Underwater Devices was not decided until September, 1983 and "Carter made its relevant decisions . . . several years before Underwater Devices was decided and this Court believes that Underwater Devices did more than simply restate the earlier law on willfulness." *S.C. Johnson & Son v. Carter-Wallace Inc., supra, 231 USPQ at 669.* In the instant case, as indicated supra, Gillette made no such argument before I rendered my decision, and, in fact, cited Underwater Devices as stating the legal principles with which I should guide my decision. Further, I am dubious about Judge Keenan's statement about the extent to which Underwater Devices represented a change in the law. Certainly, the Federal Circuit Court of Appeals did not seem to think it was changing the law; rather, it states the proposition in a matter of fact manner and cites prior cases in three circuits decided between 1967 and 1980 to the same effect.

Third, Judge Keenan notes that there are other cases more "reprehensible." That is also true of this case. But, with all due respect, [*18] I do not think that it is necessary to show that a party's conduct was "reprehensible" in order for the case to be deemed "exceptional" as that term is used *35 U.S.C. § 285.*

Lastly, Judge Keenan notes the high caliber of counsel and the praiseworthy manner in which the case was litigated. That is also true in this case, as I stated on the record. But, again, I do not believe that a superior performance by Gillette's counsel at trial, in the circumstances of this case, outweighs the basic fairness of allocating Johnson's burden of pursuing this litigation upon an infringer such as Gillette which did not act "reasonably" and "prudently" before initiating possibly infringing action.

CONCLUSION

For all of the above-stated reasons, it is ORDERED that Gillette's Motion For Reconsideration And To Alter And Amend Findings Of Fact And Conclusions Of Law And For Amendment And Entry Of New Judgment Pursuant To *Fed.R.Civ.P. 52* and *59* (#161) be, and the same hereby is, DENIED.