UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>        Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>        Defendant. | Civil Action No. 04-10884-RGS |

**MEMORANDUM OF REASONS SUPPORTING MIT AND REPLIGEN'S
FIRST MOTION TO COMPEL DISCOVERY FROM IMCLONE**

**INTRODUCTION**

ImClone sells the C225 antibody under the trade name Erbitux™ for use as a cancer therapy. After almost a decade in clinical trials, ImClone received FDA approval to sell Erbitux in February 2004. Anticipating FDA approval, ImClone used the C225 cell line to amass an estimated billion-dollar commercial inventory of Erbitux. This cell line incorporates technology claimed in the `281 patent, a patent assigned to MIT and licensed to Repligen. As such, ImClone's use of the C225 cell line infringed the `281 patent, and entitled Plaintiffs to a reasonable royalty for that use.

Last summer, MIT and Repligen served requests for documents relating to ImClone's use of the C225 cell line and the resulting reasonable royalty. In response, ImClone first promised to produce documents, and then assured MIT and Repligen that documents were being gathered. Now eight months after the requests and less than two months before the close of fact discovery, ImClone still has not produced responsive documents. For example, ImClone has not produced documents showing when the inventory of Erbitux was made, where it was made, or how much

was made. ImClone has not produced documents showing when the inventory of Erbitux was sold, to whom it was sold, or the revenue ImClone received in connection with the sale of the inventory. Indeed, ImClone has not even produced its contract with its marketing partner, Bristol-Myers Squibb, under which Erbitux is sold in the United States and under which ImClone received nearly three-quarters of a billion dollars in milestone payments. Likewise, ImClone has not produced the financial information relating to its commercial sales of Erbitux or the documents showing the royalties it has paid to others for those commercial sales. In sum, ImClone has stonewalled Plaintiffs' requests for damage-related documents and precipitated this motion to compel production of these critical documents.

Also last summer, Plaintiffs served contention interrogatories, including an interrogatory relating to ImClone's validity defense. The interrogatory asks ImClone to state the basis for each its contentions and, for any prior-art-based defenses, to specifically substantiate its contentions with a claim chart that compares each claim to the prior art. Such interrogatories are standard in patent litigation and consistent with the requirements of controlling Federal Circuit case law. In response, ImClone raised an obviousness defense based on two pieces of prior art. And although ImClone raised no objection to the claim chart, it failed to provide the claim chart. ImClone response also included a one-sentence, conclusory statement that the `281 patent is invalid for lack of enablement and written description.

By statute, patent claims are presumptively valid, and ImClone bears the burden of proving otherwise. Plaintiffs are entitled to know the basis of ImClone's validity contentions. Thus, ImClone should be ordered to provide a complete answer to the validity interrogatory.

**ARGUMENT**

**I.    Document Requests**

**A.    ImClone Has Not Produced the Documents It Agreed to Produce.**

Plaintiffs served document requests last July.  (Hanson Ex. A).  After making certain boiler-plate objections, ImClone agreed to produce documents.  (Hanson Decl. Ex. B.)  Last November, MIT and Repligen wrote ImClone about its discovery responses, and, in December, the parties held a discovery conference.[1]  (Letter from Kane to Loughnane of Nov. 5, 2004, Declaration of Chad A. Hanson "Hanson Decl." Ex. C; Letter from Giaccio to Kane of Dec. 10, 2004, Hanson Decl., Ex. D.)  During the conference, ImClone represented its document production was underway.  (Hanson Decl. ¶ 17.)

In February, having learned of additional responsive license agreements from ImClone's web site, and still waiting for ImClone's damages-related documents, MIT and Repligen again wrote ImClone.  (ImClone press release of Jan. 26, 2005, Hanson Decl. Ex. E; Letter from Hanson to Loughnane of Feb. 25, 2005, Hanson Decl. Ex. F.)  The letter asked ImClone about the document requests that are now part of this motion; highlighted categories of responsive documents known to be missing from ImClone's document production, including the Bristol-Myers Squibb agreement; and, finally, to cover the remote possibility that ImClone had produced such documents, asked ImClone to identify where such responsive documents were if ImClone had indeed produced documents.  The letter also asked ImClone if it had completed its document production.

---

[1]    The various discovery conferences referenced in this memorandum occurred during business hours and lasted anywhere from a few minutes to an hour or more.  On these calls, Mike Kane and Chad Hanson represented MIT and Repligen, and one or more of Richard Delucia, Paul Richter, Jr., Michael Loughnane, and Anthony Giaccio represented ImClone.

3

More discovery conferences followed. On March 3, ImClone confessed it had yet to begin gathering financial and other damages-related documents. (Hanson Decl. ¶ 18.) ImClone's counsel asked for an extension because their "contact" at ImClone was away from work. (*Id.*) ImClone promised to produce documents by March 18. (Letter from Hanson to Giaccio of Mar. 11, 2005, Hanson Decl. Ex. G.) On March 16, ImClone downgraded its promise a pledge to use its "best efforts" to produce responsive documents. (Letter from Giaccio to Kane of Mar. 16, 2005, Hanson Decl. Ex. H.) On March 25, ImClone produced only the prosecution files for a patent unrelated to this motion, copies of certain license agreements, and one letter. (Hanson Decl. ¶ 19.) No other documents arrived. No financial documents. No manufacturing documents.

The last eight months have provided more than enough time for ImClone to gather and produce its documents. ImClone's delay is prejudicing MIT and Repligen. Fact discovery will close on May 31, 2005—in less than two months. (Docket Entry Number "D.I." 17.) Fact depositions are underway. Thus, it is imperative that ImClone produce its documents now.

   **B.**  **MIT and Repligen's Document Requests Are Proper, Focused, and Relevant.**

MIT and Repligen are entitled to no less than a reasonable royalty for ImClone's infringement. *See* 35 U.S.C. § 284. To determine the royalty amount, the fact finder pretends a willing licensor and licensee met and negotiated a royalty just as the infringing activity began. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *see also Smithkline Diagnostics, Inc. v. Helena Laboratories, Corporation*, 926 F.2d 1161, 1168 (Fed. Cir. 1991) (citing *Georgia-Pacific*). The analysis also supposes that certain facts relevant to the license negotiations were before the parties. *Georgia-Pacific* illustrates the following relevant facts:

- the royalty rates for other patents comparable to the patent in suit;

- the nature and scope of the licenses;
- the infringing product's effect in promoting sales of other products;
- the profitability of the infringing product;
- the success of the infringing product;
- the popularity of the infringing product;
- the benefits to those who have used the invention;
- the extent to which the infringer has made use of the invention;
- the evidence probative of the use infringer has made of the invention; and
- the portion of the infringer's profit use the attributable to the invention.

Thus, documents and things concerning licenses; manufacturing and sales agreements; manufacturing, marketing and sales documents; the volume of product made, used, and sold using the patented technology; the benefits of using the patented technology; and other similar bits of information are all relevant and necessary for determining the reasonable royalty. Comparing the subset of *Georgia-Pacific* factors shown above with MIT and Repligen's document requests below shows that the requests are proper, focused, and relevant.

Perhaps more importantly, ImClone's responses, served last September, demonstrate that except for one request (request number 63) ImClone agreed to produce responsive documents. For convenience, we have grouped the requests according to ImClone's various responses.

### *(1)    Request numbers 40, 51, 53, 54, 56, 66, and 67*

REQUEST FOR PRODUCTION NO. 40.

All documents and things Defendant contends provide Defendant the right to make, use, sell, or offer to sell the C225 antibody or the C225 cell line including all documents concerning any license.

REQUEST FOR PRODUCTION NO. 51.

All documents and things concerning any method for making the C225 antibody or Erbitux™ including laboratory or technical notebooks or other working papers, notes or notebooks of anyone conducting any research, study, or testing concerning such methods.

REQUEST FOR PRODUCTION NO. 53.

All documents and things concerning the manufacture of each batch of the C225 antibody or Erbitux™ including all documents and things concerning the date(s) each batch was manufactured and the materials and methods used to manufacture each batch.

REQUEST FOR PRODUCTION NO. 54.

All documents and things concerning the distribution of each batch of the C225 antibody or Erbitux™ including all documents and things concerning the date(s) each batch was distributed to any other Person, the identity of each Person to whom a batch was distributed, the location of each batch at all times since the batch was manufactured, and the payment or other consideration received by Defendant for distribution of each batch.

REQUEST FOR PRODUCTION NO. 56.

All documents and things concerning DNA vectors or other DNA constructs for producing the C225 antibody.

REQUEST FOR PRODUCTION NO. 66.

All documents and things provided to Defendant's shareholders including Defendant's annual reports and Defendant's annual shareholder letters.

REQUEST FOR PRODUCTION NO. 67.

All documents and things concerning any utility or advantages of the C225 antibody, the C225 cell line, or Erbitux™ over other products for treating EGFR-Expressing Cancer.

For request numbers 40, 51, 53, 54, 56, 66, and 67 ImClone agreed to produce documents without restriction: "Subject to, and without waiver of, its General and Specific Objections, ImClone will produce non-privileged documents responsive to this request." MIT and Repligen have not received responsive documents.[2]

### *(2) Request number 55*

REQUEST FOR PRODUCTION NO. 55.

All documents and things concerning any standard operating procedure for manufacturing the C225 antibody or Erbitux™.

For request number 55, ImClone agreed, "Subject to, and without waiver of, its General and Specific Objections, ImClone will produce non-privileged documents relating to ImClone's

---

[2]    Per request number 56, MIT and Repligen have received documents concerning the C225 vector but not other vectors.

6

standard operating procedure of its FDA approved product within ImClone's possession, custody or control." MIT and Repligen have not received responsive documents.

Further, it is not clear what ImClone plans to withhold from production. MIT and Repligen understand that to obtain FDA's approval to manufacture C225 and Erbitux in the United States, each facility planning to manufacture C225 and Erbitux had to submit its standard operating procedures to the FDA and submit to inspections by the FDA. MIT and Repligen understand that ImClone and its manufacturing partners combined their efforts in obtaining approval. Thus, MIT and Repligen are unaware of any standard operating procedures that are outside ImClone's possession, custody, or control. ImClone has identified none.

### *(3) Request numbers 58-62, and 65*

REQUEST FOR PRODUCTION NO. 58.

All sales figures, sales projections, sales forecasts, and marketing studies for Erbitux™ including all sales figures, sales projections, and marketing studies, both foreign and domestic.

REQUEST FOR PRODUCTION NO. 59.

All documents concerning the profitability of Erbitux™ on a year-by-year basis including budgets, projections, and documents sufficient to discern Defendant's methods for allocation of selling, general and administrative, and overhead expenses for Erbitux™.

REQUEST FOR PRODUCTION NO. 60.

All documents concerning any selling price of Erbitux™.

REQUEST FOR PRODUCTION NO. 61.

All documents concerning the commercial value of the inventory of C225 or Erbitux™.

REQUEST FOR PRODUCTION NO. 62.

All documents concerning any assessment or study of any market for Erbitux™ or the C225 antibody including Defendant's past, current, or anticipated market share.

REQUEST FOR PRODUCTION NO. 65.

Documents sufficient to discern the complete line of products and services offered by Defendant concerning the C225 antibody, or Erbitux™.

For request numbers 58-62, and 65, ImClone responded, "Subject to, and without waiver of, its General and Specific Objections, ImClone will produce non-privileged documents responsive to this request prior to the expiration date of the patent in suit."

ImClone's agreement to produce only responsive documents that are dated "prior to the expiration date of the patent in suit" is unsupportable. MIT and Repligen are asserting that ImClone's production of its commercial inventory of Erbitux before the expiration of the `281 patent infringed their rights. For request numbers 58-62 and 65, if there are documents generated after the expiration of the `281 patent that relate to the commercial inventory of Erbitux made before the expiration of the `281 patent (*e.g.*, sales of that inventory), they are relevant and should be produced. Furthermore, MIT and Repligen have also subpoenaed third parties for this type of information. The third parties have objected and stated that the information should be available from ImClone. (Letter from Tsai to Hudson of March 25, 2005 and letter from Rouvalis to Hudson of March 18, 2005, Hanson Decl. Ex. I and Ex. J.) If the information is available from ImClone, ImClone's timely production of responsive documents would ease the burden on the third parties. Finally, MIT and Repligen have a pending patent-term-extension application before the United States Patent and Trademark Office that, if granted, will extend the expiration date of the `281 patent to May 5, 2009. (Excerpt of patent term extension application, Hanson Decl. Ex. K.) Thus, the expiration of the `281 patent is presently unknown. MIT and Repligen have not received responsive documents dated before or after the expiration date of the `281 patent.

      *(4)    Request number 63*

REQUEST FOR PRODUCTION NO. 63.
All documents and things concerning milestone payments received or to be received by Defendant from Defendant's marketing partners in connection with Erbitux™ or the C225 antibody.

8

ImClone has refused to produce documents responsive to this request. Milestone payments received by ImClone are directly relevant to many of the *Georgia Pacific* factors, including the nature and scope of the licenses, the profitability of the infringing product, the success of the infringing product, the popularity of the infringing product, the benefits to those who have used the invention, and the portion of the infringer's profit attributable to the invention. *See Georgia-Pacific*, 318 F. Supp. 1116 at 1120; and *Smithkline*, 926 F.2d at 1168. It is absurd to pretend, that had the parties negotiated a license to the `281 patent, they would have ignored ImClone's well-publicized $650 million dollars, and then some, in milestone payments. (ImClone's amended answer, D.I. 10 at ¶ 32.) Documents related to all of ImClone's milestone payments are relevant to the reasonable royalty award. ImClone should produce the documents.

### *(5)     Request number 68*

REQUEST FOR PRODUCTION NO. 68.

All documents and things concerning any license, negotiation for license, or other agreement concerning the right to sell Erbitux™ including all documents and things concerning any royalty rates for Erbitux™.

For request number 68, ImClone agreed, "Subject to, and without waiver of, its General and Specific Objections, ImClone will produce non-privileged documents responsive to this request pertaining to rights to sell Erbitux in the U.S."

There are two problems here. First, despite its promise to do so, ImClone has not produced the documents **related to** any of the negotiations of licenses or other agreements regarding Erbitux. Second, despite producing some agreements, ImClone has yet to produce its agreement with Bristol-Myers Squibb—ImClone's only marketing partner for Erbitux sales in the United States—and, as the Court might expect, ImClone has not produced any documents related to the BMS agreement. The request clearly seeks all documents concerning the

9

agreements, including negotiation documents, and ImClone agreed in its answers to produce those documents. ImClone should do so.

In sum, the Court should not condone ImClone's dilatory conduct; the Court should order ImClone should produce its responsive documents—without restriction—immediately.

## II.    Interrogatory Number Two

### A.    Since Last Summer, MIT and Repligen Have Waited Patiently for ImClone to Provide Complete Answers to Interrogatory Number Two.

Last July, MIT and Repligen served nine simple interrogatories; seven coincided with ImClone's affirmative defenses and counterclaims. (Hanson Decl. Ex. L.) After a one-month extension, ImClone timely provided incomplete answers. (Hanson Decl. Ex. M.) After the December discovery conference, ImClone confirmed in writing, "we agreed to supplement our objections and responses to Interrogatories [sic] numbers 2-8 next week." (Hanson Decl. Ex. D.) The next week came and went without a supplement. A brief discovery conference took place on February 24, 2005. (Hanson Decl. Ex. F.) ImClone was unprepared and unwilling to discuss its answers. The parties agreed to reschedule. On March 3, ImClone agreed to supplement by March 11. (Hanson Decl. Ex. G at 2.)

ImClone finally supplemented on March 16 adding one sentence to its previous answer: "Documents which support our conclusion include the `281 prosecution file history and cited prior art therein, and documents I02926-I02933 and I03732-I03739." (Hanson Decl. Ex. N.) ImClone's supplement failed to comply with this Court's local rule 26.5(c)(8). And plainly, ImClone's supplement violated the three-month understanding among the parties—that ImClone was genuinely working on a complete answer and would provide the claim chart requested by interrogatory two.

10

### B.     MIT and Repligen's Interrogatory Is Clear and Proper.

Each patent claim enjoys a presumption of validity. 35 U.S.C. § 282. To overcome the presumption, ImClone must clearly and convincingly prove invalidity for each claim. *See, e.g., Union Carbide Chemicals & Plastics Technology Corporation v. Shell Oil Company*, 308 F.3d 1167, 1186 (Fed. Cir. 2002). Thus, the detailed explanation expressly requested for each claim by the following interrogatory is appropriate.

> <u>INTERROGATORY NO. 2</u>:
>
> State the basis for your contention that each of the claims of the `281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (e.g., 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

(Hanson Decl. Ex. L.)

A complete answer to the interrogatory has two requirements: identification and explanation. Since there are many ways to assert invalidity under the patent laws, each with its own legal requirements, MIT and Repligen drafted the interrogatory to ensure a complete identification and explanation no matter what ImClone contended. The interrogatory expressly asks ImClone to identify the statutory basis for each contention, and to "state the basis" for each contention—the latter requirement invoking this Court's local rule 26.5(c)(8).

And for those contentions that rely on prior art, section (b) asks for a claim chart. Claim charts are a common request in patent litigation because the Federal Circuit mandates that the prior art must disclose every limitation of a claim to invalidate the claim. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1577 (Fed. Cir. 1987); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-72 (Fed.Cir.2000).

11

Finally, for prior art contentions that assert obviousness (the combination of two or more prior art references), section (c) asks ImClone to include in its claim chart the motivation to combine and the reasonable expectation of success for any such combinations. These two requirements are express and fundamental features of the obviousness determination. *See, e.g.*, *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir.1999).[3] Obviousness is a legal determination based on underlying factual findings. (*Id*. at 998.) The motivation to combine and reasonable expectation of success are essential evidentiary components of the determination. *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991). Both the motivation and expectation must be found in the prior art. *Dembiczak*, 175 F.3d at 999; *Vaeck*, 947 F.2d at 493. They may come from a variety of sources, but there must be "actual evidence" and the showing must be "clear and particular." (*Dembiczak*, 175 F.3d at 999.) ImClone's answer fails to do this.

ImClone's answer identifies three invalidity contentions: obviousness, enablement, and written description. ImClone's answer fails to state the basis of its contentions and, for its obviousness contention, fails to include a claim chart.

### C. ImClone's Obviousness Contention Lacks the Detail Requested by the Interrogatory.

ImClone contends invalidity through the combination of two pieces of prior art: deVilliers and Alt. In pertinent part, it reads:

> All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9(23), 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. DeVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it

---

[3] Abrogated on other grounds by *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Specifically, it was abrogated for reasons related to the standard of review for federal agencies.

> discloses that deletions of a regulatory element between VDJ and Cμ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt et al. teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type.

(Hanson Decl. Ex. M and Ex. N.)

ImClone's prior-art-based contention triggers section (b) of the interrogatory, which asks for a claim chart with a detailed claim-by-claim, limitation-by-limitation, and element-by-element comparison between the claims and the prior art. ImClone's answer, however, left out the claim chart and thus lacks a detailed comparison. ImClone's general reference to "All claims in the `281 patent" is not a claim-by-claim analysis. The general reference to deVilliers as teaching "processes, vectors, and cell lines that use an enhancer element" does not identify where deVilliers teaches processes, vectors, cell lines, and enhancers. It also does not show how deVilliers's teachings match any claim limitations. Likewise, the general reference to Alt as teaching "an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance" does not identify where Alt teaches a tissue specific cellular DNA element or increased production of an endogenous proteinaceous substance. It does not show how Alt's teachings match any claim limitations.

Further, because ImClone's contention is one of obviousness, ImClone must establish both why a skilled artisan would have been motivated to combine the teachings of Alt with deVilliers, why a skilled artisan would have reasonably expected such a combination to result in a specific claim, and show that the combination would, in fact, result in each claim. *See, e.g., In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999). Put another way, ImClone must explain, in detail, how the prior art teaches a skilled artisan to apply its teachings to a different teaching. While ImClone's answer alludes to a motivation to combine, it does not specifically identify where Alt discloses this motivation, how Alt would be applied to deVilliers, or why

13

skilled artisans would expect success if they combined those references. Or even if they were successful, how the resulting combination would result in each claim of the '281 patent. ImClone's answer lacks the required showing.

Much is left unsaid, on a topic that ImClone bears the burden of proof. MIT and Repligen are entitled to know ImClone's contentions concerning Alt and deVilliers, and ImClone should be ordered to provide a full and complete answer.

### D.     ImClone's Written Description and Enablement Answer Lacks Evidence.

Unsupported conclusions are not evidence. In pertinent part, ImClone's answer reads

> In addition, all claims in the `281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement.

(Hanson Decl. Ex. M and Ex. N.) Again, each claim of the `281 patent is presumed valid, and ImClone has the burden of clearly and convincingly proving otherwise. ImClone's answer refers generally to claims, but does not specify any claim. The answer identifies a legal theory, but no more: no facts for its conclusion, no evidence of invalidity. ImClone must identify its evidence that certain claims are invalid.

ImClone's supplement did nothing to complete any of its invalidity contentions. Its answer remains deficient. Thus, the Court should order a full and complete answer.

### CONCLUSION

To prevent further prejudice to MIT and Repligen by ImClone's dilatory conduct, MIT and Repligen respectfully request that the Court:

(1)    Order ImClone to immediately produce all nonprivileged documents that are responsive to MIT and Repligen's document request numbers 40, 51, 53-56, 58-

14

63, and 65-68 and to certify to the Court that all responsive documents have been produced;

(2) Order ImClone to completely state the basis of its prior-art-based-invalidity contentions by explaining the factual basis for each of its contentions with a claim chart that

    (a) compares each piece of prior art with each claim of the '281 patent on a claim-by-claim, limitation-by-limitation, and element-by-element basis, including in the claim chart references (for each piece of prior art relied on) to each pertinent page, paragraph, and line;

    (b) specifically identifies and explains any motivation to combine any two or more pieces of prior art, including in the claim chart references (for each piece of prior art relied on) to each pertinent page, paragraph, and line;

    (c) specifically identifies and explains any reasonable expectation of success expected by skilled artisans that would have combined any two or more pieces of prior art, including in the claim chart references (for each piece of prior art relied on) to each pertinent page, paragraph, and line; and

    (d) otherwise complies fully with sections (a), (b) and (c) of interrogatory number two;

(3) Order ImClone to completely explain in detail each of its other invalidity contentions;

| | |
|---|---|
| Dated: April 1, 2005 | /s/ Gregory A. Madera<br>Gregory A. Madera (BBO #313,020)<br>FISH & RICHARDSON P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804<br>Telephone: (617) 542-5070<br>Facsimile: (617) 542-8906 |

Of Counsel:

Jonathan E. Singer
Michael J. Kane
Chad A. Hanson
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita R. Brooks
FISH & RICHARDSON P.C., P.A.
12390 El Camino Real
San Diego. CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099
Attorneys for Plaintiffs
MASSACHUSETTS INSTITUTE OF TECHNOLOGY AND REPLIGEN CORPORATION

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served by hand or electronically upon the attorney of record for each other party on April 1, 2005.

/s/ Gregory A. Madera
Gregory A. Madera