# EXHIBIT E

**ImClone Systems Signs License Agreements with Genentech and Centocor for Patent Rights Relating to Antibodies Targeting the Epidermal Growth Factor Receptor**

NEW YORK--(BUSINESS WIRE)--Jan. 26, 2005--ImClone Systems Incorporated (NASDAQ: IMCL) announced today that it has signed license agreements with Genentech (NYSE: DNA) and Centocor, Inc. (a Johnson & Johnson Company) for the rights to patents covering various aspects of antibody technology (U.S. Patent 4,816,567, U.S. Patent 6,331,415, the Cabilly patents of Genentech; and U.S. Patent 5,807,715, the Morrison patent of Centocor) and certain use of epidermal growth factor receptor (EGFR) antibodies (U.S. Patent 5,770,195, the Hudziak patent of Genentech).

These licenses relate to Erbitux(R), an IgG1 monoclonal antibody approved for use in irinotecan resistant or refractory, EGFR-expressing metastatic colorectal cancer, and IMC-11F8, an investigational fully-human EGFR-targeted antibody currently in Phase I clinical testing.

For Erbitux use in combination with anti-neoplastic agents, ImClone Systems' gross royalty expense for all licenses, including Genentech, Centocor, Aventis and the University of California, is approximately 12.75 percent of North American sales and is effective from February 24, 2004. ImClone Systems receives reimbursements for a portion of these royalty expenses, resulting in a net royalty expense to ImClone Systems of 8.25 percent. After the first quarter of 2006, gross royalty expense will decrease to 9.75 percent and net royalty expense will decrease to 7.25 percent. For Erbitux monotherapy use, gross and net royalty expenses will be reduced because certain licenses are not applicable. As a condition of these agreements, certain terms, including enumerated royalty payments, will not be publicized. Fourth-quarter 2004 royalty expenses include adjustments required to bring estimated royalty expenses through the first nine months of the year in line with actual obligations.

For sales outside of North America, of Erbitux manufactured in the U.S., such expenses will be passed through to ImClone Systems' partner Merck KGaA as a component of cost of goods for commercial product.

"We are pleased to have concluded these negotiations and to be in a position to give greater clarity to our investors with regard to our Erbitux royalty expenses," stated Daniel S. Lynch, Chief Executive Officer of ImClone Systems.

About ImClone Systems Incorporated

ImClone Systems Incorporated is committed to advancing oncology care by developing and commercializing a portfolio of targeted biologic treatments designed to address the medical needs of patients with a variety of cancers. The Company's three programs include growth factor blockers, angiogenesis inhibitors and cancer vaccines. ImClone Systems' strategy is to become a fully integrated biopharmaceutical company, taking its development programs from the research stage to the market. ImClone Systems' headquarters and research operations are located in New York City, with additional administration and manufacturing facilities in Branchburg, New Jersey.

Certain matters discussed in this news release may constitute forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 and the Federal securities laws. Although the company believes that the expectations reflected in such forward-looking statements are based upon reasonable assumptions it can give no assurance that its expectations will be achieved. Forward-looking information is subject to certain risks, trends and uncertainties that could cause actual results to differ materially from those projected. Many of these factors are beyond the company's ability to control or predict. Important factors that may cause actual results to differ materially and could impact the company and the statements contained in this news release can be found in the company's filings with the Securities and Exchange Commission including quarterly reports on Form 10-Q, current reports on Form 8-K and annual reports on Form 10-K. For forward-looking statements in this news release, the company claims the protection of the safe harbor for forward-looking statements contained in the Private Securities Litigation Reform Act of 1995. The company assumes no obligation to update or supplement any forward-looking statements whether as a result of new information, future events or otherwise. ·

```
CONTACT: ImClone Systems Incorporated
         Investors:
         Andrea F. Rabney, 646-638-5058
         or
         Stefania Bethlen, 646-638-5058
         or
         Media:
         David M. F. Pitts, 646-638-5058

SOURCE: ImClone Systems Incorporated
```

"Safe Harbor" Statement under the Private Securities Litigation Reform Act of 1995: Statements in this press release regarding ImClone Systems Incorporated's business which are not historical facts are "forward-looking statements" that involve risks and uncertainties. For a discussion of such risks and uncertainties, which could cause actual results to differ from those contained in the forward-looking statements, see "Risk Factors" in the Company's Annual Report or Form 10-K for the most recently ended fiscal year.

# EXHIBIT F

# FISH & RICHARDSON P.C.,P.A.

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Frederick P. Fish
1855-1930

February 25, 2005

Telephone
612 335-5070

W.K. Richardson
1859-1951

Michael D. Loughnane
Kenyon & Kenyon
One Broadway
New York, NY 10004

Facsimile
612 288-9696

Web Site
www.fr.com

Re:    *Repligen and MIT v. ImClone Systems, Inc.*
       USDC-D. Mass. (Boston) - Civil Action No. 04-10884-RGS

Dear Mike:



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

We write today regarding several unresolved discovery topics. As we agreed in our teleconference yesterday, we are sending you this letter reiterating the topics of our discussion to facilitate discovery-dispute conference at 10 A.M. (Minnesota time) on March 1, 2005.

First, regarding Mr. Feit, we request a firm date for the deposition of Irving Feit. As you know, the Court ruled on your motion on January 7, 2005, and stated that we could depose Mr. Feit in the normal course. We requested a date for his deposition on January 10, 2005 and again on January 25, 2005. You have not responded. Also in your last correspondence regarding Mr. Feit, you stated that "[t]here are no responsive documents that are not covered by privilege." Please confirm that Mr. Feit has retained only three responsive documents?

With reference to Michael Kane's November 5, 2004 letter (attached), about which we have already had at least one discovery-dispute conference, we believe the following topics remain unresolved.

- Are you presently withholding any documents: (1) that are responsive to our document requests, and (2) are not listed on your privilege log?

- Has ImClone completed its document production regarding our first set of document requests? If not, what subjects are you still searching for or preparing to produce? When can we expect you to complete your document production?

  o On the topic of document production, your document production appears to lack documents responsive to at least request numbers 21, 28, 29, 40, 47, 48, and 50-68. If you have produced documents responsive to these requests, we ask that you identify examples of the documents you consider responsive.

  o We believe the following categories are absent from your document production:

FISH & RICHARDSON P.C., P.A.

Michael D. Loughnane
February 25, 2005
Page 2

- License, manufacturing, and sales agreements, including those with Genentech, Centocor, Inc., Aventis, Lonza, Merck KGaA, and Bristol-Myers Squibb (*see, e.g.*, request numbers 40 and 68);

- Damages type documents, including marketing and sales, cost of goods sold, profit margin, inventory value, etc. (*see, e.g.*, document request numbers 47, 48, and 58-68); and

- Documents sufficient to identify each batch of C225 antibody ImClone has made with the C225 cell line, and explain to what use ImClone put each batch of C225 (*see, e.g.*, request numbers 51 and 53-57).

- Before Christmas, you stated before that you would follow up on our request for the patent prosecution files relating to publication WO96/40210. Have you had sufficient time to discuss the issue with your client?

- We request a date certain by which you will supplement your privilege log. On January 31, 2005, we asked you to remedy the deficiencies we identified in your privilege log by February 14. In particular, we remain concerned about the lack of description for your various assertions of work product immunity. We realize that on February 4th you agreed to revise your privilege log. Yesterday, however, you said you still were not prepared to provide us with a revised log, but expected it would be ready sometime next week. Is that still the case?

- My secretary sent Mr. Giaccio a draft of a proposed amendment to the current protective order. Do you agree with our proposed language?

Thank you for your attention to these topics.

Very truly yours,

*Chad A. Hanson*

Chad A. Hanson

Enclosure

CZH/cjs

60272386.doc

# EXHIBIT G

# FISH & RICHARDSON P.C.,P.A.

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

March 11, 2005

**Via Facsimile 212-425-5288**
Anthony Giaccio, Esq.
Kenyon & Kenyon
One Broadway
New York, New York 10004-1050



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:     *Repligen and MIT v. ImClone Systems, Inc.*
        USDC-D. Mass. (Boston) - Civil Action No. 04-10884-RGS

Dear Anthony:

We write to follow up on our discovery teleconference held on March 3 to discuss the topics described in letters we exchanged on February 25. From the call, Mike and I understood that Richard DeLucia, Paul Richter, Michael Loughnane, and you participated in the call. This letter details our understanding of the outcome of our discussion. We address the topics in the order they were presented in our letters, beginning with our letter.

### Hanson Letter of February 25, 2005

**Feit subpoena for deposition and documents:** You represented to us that Mr. Feit is out of the country, but will return sometime this month. You said you would get a date for his deposition sometime during the last week of March.[1] You also said there were no additional responsive documents in Mr. Feit's (or his law firm's) possession because he did very little work for ImClone after he left its employ.

**Document production:** You told us you have not completed your document production in response to our first set of document requests. Specifically, you have yet to produce documents responsive to at least three categories of requests we highlighted in our letter: C225 damages information, C225 production records, and C225 license agreements. (*See* Hanson letter, top of page 2.) You said you will produce the damages information and production records by March 18. You said you would produce the Aventis, Lonza, and Bristol-Myers Squibb license agreements, and you are considering our request for the Merck, Genentech, and Centocor license agreements. We expect you to produce all the license agreements by March 18. We

---

[1] Also during the call, you said, for the first time, that you would be representing Mr. Landes in connection with his subpoena for documents and deposition. You asked, and we agreed, to extend your deadline for formally responding to the Landes subpoena until March 16. You said you would check on dates for his deposition during the last week of March.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 2

think that you have had sufficient time to consider our requests. It is now March 2005; we served the requests in July 2004.

**Interrogatories:** You said you will supplement your interrogatory responses by March 11.

**Publication WO96/40210:** You agreed to give us the patent prosecution files related to this series of patent applications by March 18.

**Privilege log:** We have received your updated privilege log on March 4. You indicated during our call that you might produce some of the documents listed on your privilege log. Are you producing any documents originally listed on your privilege log? A number of the privilege log entries that previously claimed work-product immunity now recite attorney-client communication privilege. The work-product and attorney-client communication doctrines are not synonymous. Notably, the attorney-client communication doctrine requires what is says—a communication. Simply switching a designation on your privilege log from a work-product designation to an attorney-client-communication designation does not make a document privileged or satisfy the standard for attorney-client-communication privilege. Thus, certain of your current designations remain deficient, mainly because many of these documents are not privileged. Nevertheless, we trust that you will stand by your new designations, and will not revert back to claiming work-product immunity. Also, we notice that you have added to your privilege log, including entries for information exchanged with the MRC Collaborative Centre, a third party. No privilege exists between ImClone and MRC. Please produce the MRC documents immediately.

**Proposed amendment to the protective order:** We understand that you will file with the Court the amendment to the current protective order that contains your proposed changes. We asked you to do that on March 8.

### *Giaccio Letter of February 25, 2005*

We now turn to the topics described in your letter of February 25.

Before we begin, we reiterate that, aside from a few issues recently raised or clarified by you, e.g., organizational charts, we have completed our document production. We ask that you promptly do the same.

**Redactions:** We are not presently willing to provide you with an unredacted version of the MIT and Repligen license agreement. (REP001405-001425.) We understand your concern to be that the redacted portion of the agreement contained information relating to Repligen's standing in this action. Unequivocally, we told you the redacted portion has nothing to do with Repligen's standing in this case. Further, the redacted portion is not responsive to any of your document requests. Also, the redacted portion is not relevant to any claim or defense of any party in this action.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 3

Finally, you also told us that you plan to make the agreement a trial exhibit. Thus, there exists a real need to redact that portion of the agreement because any use by you of the information from that portion at trial would be improper.

**Lab notebooks:** We understood your representations concerning the laboratory notebooks to concern particularized pages. On closer inspection, your list simply designates the entire laboratory notebook production as deficient. That is not the case. I personally reviewed these documents before production. They are readable. And while I agree that some of the pages are less than perfect, in certain instances poor, you now understand that the notebooks are stored on microfiche at Abbott, and that the produced notebooks are printouts from these microfiche. Thus, reprinting will not generate better copies. If there are certain pages that concern you, please let us know and we will consider your request. Otherwise, we stand by our production. In addition, we confirmed for you that MIT and Repligen have conducted a good-faith search for, and produced, all notebooks that could be relevant and are in their possession or control.

**Electronic records:** In response to your recent request for "computerized" documents, we are searching for records archived in an electronic format. If responsive documents are found, we will produce them. We cannot agree to a date upon which we can produce the documents because, to date, we have not identified any responsive documents.

**Contract between Damon and NCI:** We have no more responsive documents on this topic.

**NIH grant:** We believe we have located a microfiche that contains records related to the NIH grant that ultimately funded the research that led to the '281 patent. We are waiting for a printout. Recognizing your concerns about microfiche, we have asked for the best printout MIT can generate from the microfiche. We anticipate producing the records shortly.

**NIH Contracts:** It is our understanding that you are working on a more focused request on this topic.

**Interrogatory # 4:** We still disagree with your assessment of ImClone's interrogatory number four—we consider it vague and indefinite. Nevertheless, we agreed to prepare a response insofar as we understand interrogatory number four. You will receive it shortly.

**Protein A and Secretin:** We confirmed that Protein A and Secretin are not made with the '281 patented technology.

**Employment agreements:** We confirmed we are not withholding any employment agreements between MIT and either Susumu Tonegawa or Stephen Gillies. We also noted that their employment agreements, to the extent any exist or did exist, are not relevant to a claim or defense of any party.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 4

**Prosecution documents for the `281 patent:** We confirmed we are not withholding any prosecution documents for the `281 patent.

**Patent term extension:** We confirmed we have not received any additional information from the USPTO about the pending application for patent term extension for the `281 patent. Likewise, you confirmed ImClone has not received any additional information from the USPTO about its pending application for patent term extension.

**Documents concerning the `533, `653, `578, and `682 patents:** We confirmed we are not withholding any documents related to these patents.

**Documents concerning Repligen's awareness of ImClone's infringement:** We confirmed we are not withholding any documents on this topic.

**Documents concerning organizational charts:** You clarified that, although your requests seek all organizational charts, you actually want organizational charts for just the MIT Technology Licensing Office and Dr. Tonegawa's lab. We said we will ask if such documents exist.

**Document REP000532:** You indicated you would like to view our copy of this document. We said we would arrange for this to happen, perhaps at the deposition of Mr. Witt.

**MIT document production:** We confirmed MIT made a good-faith effort to search for responsive documents. We, of course, disagree with your assessment of MIT's document production.

**Ms. Rivard's resume:** We told you we will provide you with information sufficient for you to clear her under the protective order. You should receive the information shortly.

Very truly yours,

Chad A. Hanson

CZH/cjs

60282102.doc

# EXHIBIT H



Anthony Giaccio
Direct 212.908.8419
agiaccio@kenyon.com

One Broadway
New York, NY 10004-1050
212.425.7200
Fax 212.425.5288

March 16, 2005

**By Facsimile**

Michael J. Kane, Esq.
Fish & Richardson P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402

Re:    RepliGen and MIT v. ImClone Systems, Inc.

Dear Mike:

We write to provide you with our summary of the issues discussed in our March 3rd and March 15th conference calls.

**From ImClone:**

Dr. Feit will be available to be deposed here in New York City at Kenyon & Kenyon on March 31st, 2005. Neither Dr. Feit nor Hoffman & Baron are withholding any non-privileged responsive documents.

Kenyon & Kenyon is representing John Landes. Mr. Landes will be available to be deposed here in New York City at Kenyon & Kenyon on March 30th. It was agreed that Mr. Landes had an extension until March 23rd to respond to the document subpoena.

We intend to produce additional documents concerning the U.S. sales and U.S. production of Erbitux®. We are discussing this with ImClone and are making our best efforts to have documents to you by March 18th.

We will consider your request to produce the following licenses and agreements:

*Merck KGaA European Distribution Agreement:* We will produce this agreement.

*BMS Distribution Agreement:* Although you already have this agreement from our SEC filings, we will produce an un-redacted copy of this document to you.

New York    Washington, DC    Silicon Valley    www.kenyon.com



*Lonza Manufacturing Agreement:* We agree to produce this agreement to you only on the condition that you agree that we may redact highly-confidential manufacturing information. During our March 3rd, 2005 conference call you agreed to this condition.

*Aventis License:* We will produce this agreement.

*Genentech and Centocor Licenses:* We will produce these agreements to you subject to the confidentiality provisions within the agreements.

We will produce documents responsive to your request relating to WO96/40210 later this week.

We will send you updated interrogatory responses citing document references today.

Finally, we stated that we have not yet allowed anyone at ImClone to review confidential documents covered by the Protective Order. We have signed and sent the amended Protective Order to your Boston office for signing and filing.

## From RepliGen and MIT:

The lab notebooks produced by RepliGen thus far are illegible. You stated to us on March 3rd that you had not made any reductions in copying the lab notebooks and that you had obtained these materials from Abbott on microfiche. In addition, you agreed to speak to Abbott about obtaining the original microfiches to provide to us. However, according to the 1st, 2nd and 3rd letters of Chad Hanson dated March 11th, 2005, Chad says your copies are mostly legible and that you "stand by" your production. Please confirm that you intend to try to obtain the Abbott microfiche for us as promised. If not, please produce a first-generation printout from the microfiche so that we are also able to read the lab notebooks.

We also noted that, to date, no lab notebooks have been produced relating to the conception and reduction to practice of the alleged invention of the '281 patent. You confirmed that neither MIT nor the inventors are withholding any lab notebooks.

We asked you to confirm that the Plaintiffs have conducted searches of their computerized records including searches of their e-mail archives and electronic document databases for responsive documents. You stated that you were unsure if this had been done but that you would complete a search and produce any responsive documents to us in two weeks. In addition, please provide us with the details of the completed searches (e.g. which databases were searched, search terms used, etc.).

You confirmed that the Plaintiffs have produced all documents currently in Plaintiffs' possession relating to the contract between Damon and NCI.

Michael J. Kane, Esq.
March 16, 2005
Page 3



You advised us that MIT had found portions of NIH Grant NIH-5-R01-AI17879-02, the original grant from NIH to MIT under which the technology underlying the '281 patent was developed, on microfiche, and that they would be produced. You also indicated that MIT was continuing to look for additional responsive documents on microfiche.

We asked that you please produce for inspection all contracts between MIT, Damon, or RepliGen and NCI or NIH in which MIT, Damon, or RepliGen made a reservation of intellectual property rights. You told us that RepliGen had found some responsive documents and will produce all contracts between RepliGen and NIH. In terms of the agreements between MIT and NIH or NCI, however, you claimed that there are thousands of these agreements. We agreed to make our request more specific. Therefore we request all contracts concerning or involving Susumu Tonegawa and Steven Gillies. We also request all contracts for goods and services where MIT, Damon, or RepliGen had pre-existing patent rights that would cover the subject matter of the contract in question.

You confirmed that RepliGen does not use this technology in the production of its Protein A or Secretin products.

MIT has not produced any agreements or contracts that it has had or currently has with Susumu Tonegawa and Steven Gillies (see ImClone's First Set of Requests for Documents and Things). You stated that no documents have been found.

In our letter of December 10th, we also pointed out that many of the documents concerning the prosecution of the '281 patent are still missing (see ImClone's Second Set of Requests for Document Things, Requests 40-42.) You stated that none of these documents have been found.

We asked that you advise as to whether RepliGen has received any further notice from the USPTO regarding their patent term extension application for the '281 patent. You said that you had not had any recent communication from the USPTO.

In our letter of February 9th, we also asked that you confirm whether or not the Federal government has responded to your request for information under the Freedom of Information Act. You advised us that the lawyers for the government have asked you to withdraw your FOIA request and that the government would produce all of the responsive documents only under your subpoena to NIH and NCI. You also stated that you expect to receive these documents soon and will send them to us when you receive them. What is the status of this production?

Neither of the Plaintiffs has produced documents responsive to Requests 24 through 31 and 46 of ImClone's Second Set of Requests for Documents and Things. Specifically, we ask that you produce all documents related to the '533, '653, '578, and '682 patents, including any and all contracts or agreements related to these patents. You stated that you had produced everything related to the '533 patent but that RepliGen continues to search for documents related to the other patents. What is the status of this production?

Michael J. Kane, Esq.
March 16, 2005
Page 4



We asked that you please provide all documents reflecting the date the Plaintiffs first became aware of ImClone's possession of the C225 cell line and/or the date that the Plaintiffs had reason to believe that ImClone was possibly infringing the '281 patent. See ImClone's Second Set of Document Requests, Requests 53. You stated that you had no other documents to produce related to this request.

Request 57 of ImClone's Second Set of Document Requests asked for organizational charts identifying all officers and employees of MIT, Damon, Abbott and RepliGen from 1980 to the present. You stated on several occasions that you would produce these documents, yet none have been produced to date. Of course, this would include organizational charts of Dr. Tonegawa's lab at MIT, the MIT Technology Transfer Office, and whichever department or office is responsible for records-keeping at MIT. You agreed to produce these documents.

You agreed to produce the original of REP000532 so that we may inspect it. Please confirm that you will be bringing the original to the deposition of John Landes on March 30th.

Generally, we have major concerns regarding the document production by MIT, particularly with respect to ImClone's Second Set of Document Requests. Their document production is clearly deficient. You confirmed that MIT has undertook a thorough search of its records and that the only documents to be produced were the documents referred to in items 5, 6, 15, and, possibly, 1 above. You did however also state that MIT continues to search through their microfiche records and will produce additional documents, if found.

We received Ms. Rivard's CV on March 11th and will provide you with objections, if any, by March 25st. You confirmed that Ms. Rivard has not had access to any of ImClone's confidential documents.

On March 15th, we asked that you clarify the scope of the subjects upon which you intend to depose Dr. Mendelsohn. You made it clear that you intend to depose Dr. Mendelsohn about issues that we feel are entirely irrelevant to this patent infringement case, namely his testimony before Congress. We object to this.

You have also indicated that you intend to depose Sam Waksal. Since such a deposition will require you to seek approval from the Court, we will respond at that time.

You also stated that Dan Witt will be available for us to depose on any Wednesday or Friday in April.

You have not yet provided a date to us for the depositions of Susumu Tonegawa or Lita Nelson.

Finally, we continued to be very concerned by the fact that you refuse to provide us with an un-redacted copy of the 2004 License Agreement between MIT and RepliGen. In our

Michael J. Kane, Esq.
March 16, 2005
Page 5



conference call of March 3rd, you stated that you would consult your client about this matter. Chad Hanson then sent us a letter on March 11th stating that you were not prepared to produce this document. We find it unusual then that yesterday, when we stated that we are prepared to file a motion to compel production, you stated that you wish to consult with your client once again. We feel that you are deliberately delaying the production of this highly relevant document. We ended the conversation on this matter by stating in no uncertain terms that we will seek relief from the Court if we do not receive an un-redacted copy of this document by 2 pm Eastern Time on March 18th, 2005.

Very truly yours,

KENYON & KENYON

Anthony Giaccio

# EXHIBIT I

# McLane

## McLane, Graf, Raulerson & Middleton

*Professional Association*

NINE HUNDRED ELM STREET • P.O. BOX 326 • MANCHESTER, NH 03105-0326
TELEPHONE (603) 625-6464 • FACSIMILE (603) 625-5650

MARK C. ROUVALIS
Direct Dial: (603) 628-1329
Internet: mark.rouvalis@mclane.com
Also licensed to practice in Massachusetts

OFFICES IN:
MANCHESTER
CONCORD
PORTSMOUTH

March 18, 2005

RECEIVED

MAR 2 8 2005

FISH & RICHARDSON, P.C.
NEW YORK CITY OFFICE

**Via Email and Regular Mail**
Irene E. Hudson, Esq.
Fish and Richardson, P.C.
Citigroup Center
52nd Floor
153 East 53rd Street
New York, NY 10022-4615

Re:    Subpoena for documents and deposition in connection with litigation pending
       in the U.S. District Court, District of Massachusetts
       <u>(Repligen & MIT v. ImClone Systems, Inc. (1:04-cv-1088 4-RGS))</u>

Dear Attorney Hudson:

On February 18, 2005, Lonza Biologics, Inc. ("Lonza") received, by hand delivery at its Portsmouth, New Hampshire office, your subpoena for a FRCP 30(b)(6) deposition and for documents pertaining to the so called "281" patent and the "C225" cell line. The subpoena issued from the United States District Court for the District of Massachusetts with the above caption. The subpoena commanded Lonza to produce documents at your Boston office on March 9, 2005, and to produce a FRCP 30(b)(6) witness for a deposition on March 30, 2005 in Boston. At our request, you granted Lonza an extension until March 18, 2005 to respond to the subpoena, including the submission of a FRCP 45(c)(2)(B) objection. For the following reasons, Lonza objects to the subpoena pursuant to FRCP 45(c)(2)(B).

According to your clients' Complaint in the underlying case, the issues are whether the 281 patent is valid and whether ImClone infringed the 281 patent. More particularly, your clients allege that ImClone infringed the 281 patent by using the so-called "Gillies Cell Line" to produce C225, and/or by inducing others to do so. The Complaint contains no allegations against Lonza. As you are apparently aware, in 1999, ImClone contracted with Lonza Biologics, PLC ("Lonza PLC"), not Lonza Biologics, Inc., to produce C225 for ImClone. ImClone provided the cell line and process to Lonza PLC to manufacture C225. Lonza has not manufactured C225 since 2003.

The subpoena is unduly burdensome because the information requested should be, or already has been, requested from ImClone through discovery in the underlying case. We have

Irene E. Hudson, Esq.
March 18, 2005
Page 2

reviewed interrogatories and requests for production of documents that you propounded on ImClone. Those requests encompass all of the information that your subpoena demands from Lonza. Because of the protective order in the underlying case, we do not know precisely what information has been exchanged to date. However, we understand that you are currently in negotiations with ImClone's counsel regarding discovery. We also understand that no depositions have been taken in the underlying case.

Accordingly, the broad requests in the subpoena to Lonza are premature, cumulative and/or duplicative, and would cause Lonza unnecessary expense. You can and should, if you have not already done so, request information from ImClone pertaining to the manufacturing contract with Lonza. All of the liability and damages information plausibly pertaining to the Lonza contract with ImClone should be, or already has been, requested from ImClone. Until you have fully exhausted requests for discovery from ImClone, it is improper to burden Lonza, a nonparty, with a subpoena. Indeed, the United States Court of Appeals for the First Circuit recently addressed this very issue in a third party subpoena matter. Judge Selya notes in pertinent part as follows in In Re Cusumano, 162 F.3d 708 (1st Cir. 1998):

> The discovery rules apply to subpoenas issue under Fed. R. Civ. P. 45. (citation omitted). Thus, we begin with Fed. R. Civ. P. 26(b)(2), which admonishes generally that:
>
> > the…extent of the use of the discovery methods otherwise permitted under these rules…shall be limited by the court if it determines that: (i) *the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive*; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.
>
> > \* \* \*
>
> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the competing needs. (citations omitted).

Id. at 714, 717 (emphasis added). Thus, the First Circuit has made it clear that discovery should first be sought from parties before burdening non-parties.

Irene E. Hudson, Esq.
March 18, 2005
Page 3

The subpoena for documents is also overbroad and unduly burdensome because it requests information that is irrelevant and/or unnecessary to the claims against ImClone. While at present Lonza is uncertain of the number of documents responsive to the subpoena, it is clear that Lonza generated many thousands of documents in connection with manufacturing C225 for ImClone. Lonza roughly estimates that two-hundred linear feet of documents were generated, perhaps more, pertaining to the manufacture of C225 for ImClone. Additionally, many Lonza personnel communicated by email during the manufacturing process. Approximately twenty people on two shifts monitored each batch and numerous other people were involved with the process as well. Lonza estimates that in excess of one hundred people were involved with the C225 project at various levels. Some of those people are no longer employed by Lonza. It would take a herculean effort and great expense just to retrieve the documents and emails, let alone, review them to determine which pertain to the contracts with ImClone. Many thousands of emails would need to be reviewed to determine which are responsive to your requests. Lonza estimates that it would take in excess of six months to retrieve and review all of the documents demanded by your subpoena. Your subpoena is unreasonable because the vast majority of those documents are entirely irrelevant to the underlying case. The documents generated by Lonza pertain to the particularities of the manufacturing process. They do not pertain to the liability or damages issue in the underlying case against ImClone.

Furthermore, information peculiar to Lonza's manufacturing expertise, which is proprietary, is expressed within those documents. The methods by which Lonza manufactured C225 for ImClone are trade secrets. The methods are of independent economic value to Lonza and are not generally known to others. Lonza takes great care to protect such information. Lonza requires its employees to undergo confidentiality training and requires non-disclosure and non-competition agreements with employees in order to protect such information. Lonza's manufacturing expertise is, in large part, the value offered to its customers. Such know how gives Lonza a competitive edge. ImClone agreed to keep Lonza's know how confidential. Lonza's know how is irrelevant to your clients' claims against ImClone, yet it is encompassed by your subpoena. It would take Lonza many months, and great expense, to review the documents requested by your subpoena in order to separate out such proprietary information. As noted above, that burden is not necessary because you can request pertinent liability and damages information directly from ImClone. Furthermore, we understand that the protective order in the underlying case does not extend to third parties, which would place Lonza's proprietary information at risk if disclosed.

In addition, ImClone's agreement with Lonza contains a non-disclosure provision in favor of ImClone. Your subpoena essentially demands that Lonza violate that non-disclosure provision. Placing Lonza in that position is unnecessary where the information can be requested directly from ImClone.

Rule 45(c)(1) imposes an affirmative duty upon attorneys issuing subpoenas to take reasonable steps to avoid imposing an undue burden or expense on the person subject to it. Indeed, in another third party subpoena case, a United States District Court Judge stated that, "[i]t is incumbent upon counsel in the first instance to order discovery demands, particularly

Irene E. Hudson, Esq.
March 18, 2005
Page 4

against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented." Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 218 F.R.D. 423, 424 (2003). FRCP 26(g)(2)(C) provides that the signature of an attorney on a discovery request, "constitutes a certification" that the request is "not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." In light of the above, you should not burden Lonza with a subpoena, at all, until you have fully exhausted efforts to obtain information from ImClone.

In summation, Lonza objects to your subpoena pursuant to FRCP 45(c)(2)(B) and, accordingly, will not produce the documents requested. Lonza also objects to your subpoena for a Rule 30(b)(6) deposition for the reasons expressed above. Because that deposition appears contingent upon your subpoena for documents, we presume that you do not want to go forward with it as scheduled and Lonza will not produce a witness on that date. However, if you nevertheless intend to go forward with that deposition as scheduled, please let us know immediately so that we can file a motion to quash with a request for costs and fees. See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd, 333 F.3d 38, 41 (1st Cir. 2003) ("...Fed.R.Civ.P. 45(c)(3)(A)(iv) commands that a court 'shall' quash or modify a subpoena if the subpoena 'subjects a person to undue burden.'").

Should you have any questions, do not hesitate to contact the undersigned.

Very truly yours,

Mark C. Rouvalis

MCR/mas

# EXHIBIT   J

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Christopher C. Angell
Susan F. Bloom
Henry P. Bubel
Laura E. Butzel
William F. Cavanaugh, Jr.
Lisa E. Cleary
Edward F. Cox
John Delli Venneri
Gregory L. Diskant
David W. Dykhouse
Philip R. Forlenza
Hugh J. Freund
Paul G. Gardephe
Eugene M. Gelernter
David M. Glaser
Antonia M. Grumbach
Erik Haas
Andrew L. Herz
Dana W. Hiscock
Scott Horton
Scott B. Howard
Kenneth J. King
Rochelle Korman
Robin Krause
Jeffrey E. LaGueux
Kim J. Landsman
Robert W. Lehrburger
Jeffrey I.D. Lewis
Robert P. LoBue

Ellen M. Martin
Maureen W. McCarthy
Thomas C. Morrison
Bernard F. O'Hare
Gloria C. Phares
Clay J. Pierce
Thomas W. Pippert
Herman H. Raspé
Robert M. Safron
Karla G. Sanchez
Kenneth L. Sankin
John Sare
Peter J. Schaeffer
Andrew D. Schau
John E. Schmeltzer, III
John P. Schmitt
Arthur D. Sederbaum
Karl E. Seib, Jr.
Alexander Shapiro
Saul B. Shapiro
Michael J. Timmons
Peter W. Tomlinson
Richard R. Upton
Frederick B. Warder III
William W. Weisner
John D. Winter
Stephen P. Younger
Steven A. Zalesin

Of Counsel

Harold R. Tyler

Anthony P. Coles
David F. Dobbins
George S. Frazza
Alan Gettner
Robert M. Pennoyer
Stephen W. Schwarz
Robert B. Shea

Direct Phone
(212) 336-2632

March 25, 2005

RECEIVED

MAR 29 2005

FISH & RICHARDSON, P.C.
NEW YORK CITY OFFICE

**By Fax and First-Class Mail**

Irene Hudson
Fish & Richardson
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611

Re:    **MIT and Repligen Corp. v. ImClone Sys. Inc.**
       **Civil Action No. 04-10884-RGS (D. Mass.)**

Dear Irene:

        This will confirm our phone calls over the last week that this firm represents sanofi-aventis Group concerning the third-party subpoena directed to the sanofi-aventis Group in the above-mentioned case (the "Subpoena"). Because the Subpoena has not been properly served, we are not obligated to respond. Nonetheless, this letter will serve as an "informal" set of objections since our goal is to work out the issues in an amicable manner.

        As discussed in our telephone call on Monday, March 14, 2005, the Subpoena was not properly served. First, the individual named in the affidavit of service, Philip LoScalzo, informed the process server that he was not authorized to accept service of the Subpoena on behalf of either the sanofi-aventis Group or more specifically Timothy Rothwell of Sanofi-Synthelabo Inc. Nevertheless, the process server left the papers with Mr. LoScalzo and executed the affidavit of service. Second, you indicated that your intent was to serve the Subpoena on the

Irene Hudson
March 25, 2005
Page 2

sanofi-aventis Group, a French entity. They have no direct presence in the United States and cannot be served via Mr. Rothwell (let alone via Mr. LoScalzo). Proper service on the sanofi-aventis Group for discovery requires use of the Hague Convention and cannot be effected through service on either Mr. Rothwell or Mr. LoScalzo.

Nonetheless, because we would like to cooperate without the need for added complexity, we made an effort to determine what specific information was sought by the Subpoena. I understand from our telephone conversation on Friday, March 18, 2005, that you are primarily interested in obtaining a certain license agreement between Rhone-Poulenc Rorer and ImClone Systems Incorporated ("ImClone"). That information is equally available from ImClone, we have confirmed that ImClone has copies, and the law is clear that any attempt to obtain information from a third party that is equally available from a party is inappropriate. E.g., In re Penn Cent. Commercial Paper Litig., 61 F.R.D. 453, 467 (S.D.N.Y. 1973) ("The rationale for permitting an independent action for production of documents and things from a nonparty witness presumes a situation in which the items sought are unavailable from a party or are not otherwise obtainable by the movant's own efforts.")

Since you have limited your subpoena requests to that license for now, we are not addressing other possibly requested documents in these objections. However, to the extent Plaintiffs may also seek correspondence between ImClone and Aventis related to the license, that too is equally available from a party, ImClone, and ought not to be the subject of third-party discovery from our client. (Other internal documents largely are objected to as privileged or immune from discovery.)

Because the Subpoena was not properly served and the only documents you now seek are equally available to you through ImClone, a party to this litigation, our client objects to the Subpoena and will not produce any documents in response. I look forward to speaking with you further, if you have additional questions.

Sincerely yours,

Betsy Tsai

cc:    Michael D. Loughnane, Esq.

# EXHIBIT K

Attorney Docket No. 00231-112001

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No. : 4,663,281
Patentee  : Gillies et al.
Issue Date : May 5, 1987
Appl. No. : 06/592,231
Filed    : March 22, 1984
Title    : ENHANCED PRODUCTION OF PROTEINACEOUS MATERIALS IN
         EUCARYOTIC CELLS

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## APPLICATION FOR EXTENSION OF PATENT TERM UNDER 35 U.S.C § 156

I.      Pursuant to 35 U.S.C. § 156, RepliGen Corporation ("RepliGen"), a Delaware

corporation with its principal place of business in Waltham, Massachusetts, hereby applies for an

extension of patent term for United States Patent No. 4,663,281 ("the '281 patent"), issued on

May 5, 1987. (Exhibit 1). The '281 patent covers a method of manufacturing ERBITUX$^{TM}$

(hereinafter "ERBITUX"), which the FDA approved for marketing on February 12, 2004.

II.     RepliGen certifies that it is the exclusive agent of Massachusetts Institute of Technology

(MIT) for the purposes of pursuing interim and permanent patent term extensions for the '281

patent, by virtue of the Authorization to Apply for Extension of Patent Term attached as Exhibit

2. In that authorization, MIT certifies that it is the assignee of 100% of the right, title, and

interest in the '281 patent by virtue of an assignment to MIT from Stephen D. Gillies and

Susumu Tonegawa recorded at the U.S. Patent and Trademark Office on December 21, 1984

under Reel 004343 and Frame 0743. (Exhibit 3). In May 1987, MIT granted to Damon Biotech,

Inc. ("Damon") a license to the '281 patent, including the right to sublicense. (Declaration of

Daniel P. Witt, Ph.D. ("Witt Declaration") ¶ 4 (Exhibit 4)). Abbott Laboratories, Inc. later

acquired Damon, in its entirety, and renamed Damon as Abbott Biotech, Inc. ("Abbott Biotech").

(Id.). In May 1992, RepliGen acquired certain assets of Abbott Biotech. (Id.). As part of this

transaction, RepliGen received a sublicense to the '281 patent, under the MIT license to Damon,

including the right to grant further sublicenses. (Id.).

Confidential Outside Counsel Only

Patentee  : Gillies et al.                          Attorney Docket No. 00231-112001
Patent No. : 4,663,281
Issued    : May 5, 1987
Page      : 20

13.     The length of the extension requested is five (5) years, as determined by the following calculation:

    (1) Effective date of IND:        November 30, 1994.[12]

    (2) Date BLA initially submitted:    October 31, 2001.

    (3) Date of approval of NDA:      February 12, 2004.

The span under 35 U.S.C. § 156(g)(1)(B)(i) between the effective date of the IND and the date the BLA was initially submitted equals 2527 days. The span under 35 U.S.C. § 156(g)(1)(B)(ii) between the date the BLA was initially submitted and the date of approval of the NDA equals 834 days.

|  |  |
|---|---|
| (i) one-half of the span under § 156(g)(1)(B)(i) equals: | 1263 days. |
| (ii) the span under § 156(g)(1)(B)(ii) equals: | 834 days. |
| Sum of (i) and (ii) equals: | 2097 days. |

The maximum extension allowable is five years, under 35 U.S.C. § 156(g)(6)(A). Because 2097 days exceeds five years, the '281 patent should be extended for a period of five years beyond the current date that the term expires, such that the '281 patent will expire on May 5, 2009.

14.     RepliGen acknowledges a duty to disclose to the Commissioner of Patents and Trademarks and the Secretary of Health and Human Services any information which is material to the determination of entitlement to the extension sought by this application.

15.     Pursuant to 37 C.F.R. § 1.20(j)(1), the prescribed fee of $ 1,120.00 for receiving and acting upon the application for extension is enclosed. Please apply all other charges or credits to Deposit Account No. 06-1050.

---

[12] The IND became effective sometime during November 1994 (Business Wire, May 24, 1995 (Exhibit 8)). The precise date is not necessary because the statutory maximum extendable term of five years is exceeded in this calculation, even using a conservative estimate of IND approval on November 31, 1994.

Patentee   : Gillies et al.
Patent No. : 4,663,281
Issued     : May 5, 1987
Page       : 21

Attorney Docket No. 00231-112001

16.    All inquiries and correspondence relating to this application for patent term extension should be directed to:

Terry Mahn
Fish & Richardson P.C.
1425 K Street, N.W.
11th Floor
Washington, DC 20005
Telephone (202) 783-5070
Facsimile (202) 783-2331

17.    The application is accompanied by two additional copies of the application.

V.    It is respectfully requested that this Application for Extension of Patent Term Under 35 U.S.C. § 156 of the U.S. Patent No. 4,663,281 be granted.

Respectfully submitted,

Date: 4/9/2004

Scott B. Markow
Reg. No. 46,899

Fish & Richardson P.C.
1425 K Street, N.W.
11th Floor
Washington, DC 20005
Telephone  (202) 783-5070
Facsimile  (202) 783-2331

Enclosures: Exhibits 1-11.

40207748.16.doc

# EXHIBIT L

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

        Plaintiffs,

    v.

IMCLONE SYSTEMS, INC.,

        Defendant.

Civil Action No. 04-10884-RGS

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs Massachusetts Institute of Technology and Repligen Corporation ("Plaintiffs")

serve the following interrogatories on Defendant ImClone Systems, Inc. ("Defendant"). The

interrogatories are propounded according to Rule 33 of the Federal Rules of Civil Procedure.

The rules require that ImClone answer, separately and fully in writing under oath, within thirty

days after service.

## DEFINITIONS FOR ANSWERING THE INTERROGATORIES

Plaintiffs incorporate-by-reference the definitions found in Plaintiffs' first set of requests

for production of documents and things into this set of interrogatories.

## INSTRUCTIONS FOR ANSWERING THE INTERROGATORIES

1.    In answering these interrogatories, Defendant shall abide by the local rules of the

United States District Court for the District of Massachusetts, including, but not limited to, Rules

26.5 and 33.1.

2.    Unless otherwise specified, these interrogatories cover all time periods.

3.    The use of a verb in any tense shall be interpreted as the use of the verb in all other tenses.

4.    The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the interrogatory all information, documents, or things that might otherwise be construed to be outside of its scope.

5.    The use of the singular form of any word includes the plural and vice versa.

6.    Whenever in these interrogatories there is a request to identify a document or to provide the identity of a document, please include in the answer: (1) the identity of the person(s) who drafted the document; (2) the identity of the person(s) who received (as addressee, "cc," "bcc," or otherwise) or approved the document or a copy thereof; (3) the date of the document; (4) the present location of the document; (5) the present custodian of the document; (6) the type of document (e.g., letter, memorandum, tape recording, or other form of document); (7) a description of the general subject matter of the document with the specificity required to allow it to be requested by a subpoena or a request for production of documents; and (8) the document production number if the document has been produced.

7.    Each response shall include such information as is available to you or within your custody, possession, or control.

8.    If, after exercising due diligence to secure the information requested, you cannot fully answer an individual interrogatory or any part thereof, please state the reasons for the inability to fully answer, answer the individual interrogatory to the fullest extent possible, and state what information, knowledge, or belief you have concerning the unanswered portion.

9.    For any information deliberately withheld, please provide a written statement setting forth: (1) the identity of each person from and to whom the information has been

2

communicated; (2) a brief description of the subject matter of the information; (3) the legal ground relied on in withholding the information; and (4) the relevant dates for the information.

10.    Any information or document withheld on the basis of privilege must be listed on a privilege log in accordance with the instructions in Plaintiffs' First Request for Production of Documents and Things.

11.    Unless otherwise stated in a particular interrogatory, these interrogatories are continuing in nature pursuant to Fed. R. Civ. P. 26(e), so that with respect to any interrogatory herein, or any part thereof, as to which Defendant, after answering, acquires additional knowledge or information, Plaintiffs direct Defendant to serve supplemental answers promptly after acquiring such additional knowledge or information.

<u>INTERROGATORY NO. 2</u>:

State the basis for your contention that each of the claims of the '281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (e.g., 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

<u>RESPONSE:</u>

Dated: July 22, 2004

FISH & RICHARDSON, P.C.

_Gregory A. Madera (BBO #313,020)_
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

Of Counsel:
Jonathan E. Singer
Michael J. Kane
Chad A. Hanson
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 335-5070

Juanita Brooks
FISH & RICHARDSON, P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070

Attorneys for Plaintiffs
Massachusetts Institute of Technology and
Repligen Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorney of record for each other party by mail/hand on July 22, 2004.

_Gregory A. Madera_

60232062.doc

13

# EXHIBIT M

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION, <br><br>            Plaintiffs, <br><br>     v. <br><br> IMCLONE SYSTEMS INC., <br><br>            Defendant. | Civil Action No. 04 10884 RGS |

**IMCLONE SYSTEMS INC.'S**
**OBJECTIONS AND RESPONSES TO PLAINTIFFS'**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ImClone Systems Incorporated ("ImClone") hereby submits the following responses and objections to Plaintiffs' Massachusetts Institute of Technology ("MIT") and Repligen Corporation ("Repligen") First Set of Interrogatories ("Interrogatories").

**GENERAL OBJECTIONS**

ImClone asserts each of the following General Objections and Comments (the "General Objections"), and expressly incorporates them into each response set forth below. By providing a specific response to any Interrogatory, ImClone does not waive or otherwise limit these General Objections. Furthermore, reference to these General Objections in any specific response shall not waive or otherwise limit the applicability of these General Objections to each and every other response.

1. ImClone objects to Plaintiffs' definitions and instructions to the extent that they impose obligations on ImClone that exceed or are different from the obligations imposed by the Federal Rules of Civil Procedure or the local rules of the Court. ImClone will comply with the Federal Rules of Civil Procedure and the local rules of the Court.

2. ImClone objects to each Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody or control of, ImClone. Such requests are beyond the scope of Fed. R. Civ. P. 26 and 33. The responses given herein may only be based upon information within ImClone's possession, custody or control.

3. To the extent that ImClone provides information, ImClone does not necessarily concede that the information requested is relevant to this action. ImClone expressly reserves the right to object to further discovery into the subject matter of the Interrogatories and the introduction into evidence of any document or portion thereof.

4. ImClone objects to any Interrogatory to the extent that it calls for information protected by any privilege, including without limitation the attorney-client privilege, and any other available and valid grounds for withholding information. Such information will not be provided. Any inadvertent release of privileged information shall not constitute a waiver of any applicable privilege.

5. ImClone objects to these interrogatories to the extent that they request ImClone's legal contentions or conclusions or expert opinions as being premature. Such interrogatories are best answered after fact discovery has occurred.

6. ImClone further objects to these interrogatories as premature. Discovery in this action is ongoing, and each of the following response is based on discovery

provide a description of the information on which plaintiffs relied on in each infringement contention, and to rank the infringement claims in their order of importance. ImClone will supplement this response after plaintiffs have complied with the Court's August 10th Order.

INTERROGATORY NO. 2:

State the basis for your contention that each of the claims of the '281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (*e.g.*, 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and ImClone's legal contentions. ImClone further objects to this Interrogatory as premature in that discovery has just begun and the plaintiff has failed to identify any claims in the '281 patent that it asserts is infringed by ImClone as required by the Court's August 10th Order. Subject to and

4

without waiving these objections, ImClone answers as follows: All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9, 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. deVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it discloses that deletions of a regulatory element between VDJ and Cμ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt *et al.* teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type. In addition, all claims in the '281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement. ImClone reserves the right to supplement this response after plaintiffs have complied with the Court's August 10th Order.

## INTERROGATORY NO. 3

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of laches.

## RESPONSE TO INTERROGATORY NO. 9:

ImClone objects to this Interrogatory to the extent that it calls for information that is protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory as premature in that the Court, in its August 10th Order, has required, *inter alia*, plaintiffs to identify the patent claims it asserted against ImClone; to identify where each element of the claim is found in ImClone's product; to provide a description of the information on which plaintiffs relied on in each infringement contention, and to rank the infringement claims in their order of importance. ImClone will supplement this response after plaintiffs have complied with the Court's August 10th Order. In addition, ImClone will schedule privileged documents responsive to this request from which most of the requested information will be provided.

As to Responses:

Dated:

By: _____
Thomas C. Gallagher, Esq.
Vice President of Intellectual Property
IMCLONE SYSTEMS, INC.


As to Objections:

Dated: September 23, 2004

_____
Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Tel: (617) 526-9600
Fax: (617) 526-9899

13

# EXHIBIT N

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>       Plaintiffs,<br><br>    v.<br><br>IMCLONE SYSTEMS INC.,<br><br>       Defendant. | Civil Action No. 04 10884 RGS |

**IMCLONE SYSTEMS INC.'S**

**SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**

**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ImClone Systems Incorporated ("ImClone") hereby submits the following second supplemental objections and responses to Plaintiffs' Massachusetts Institute of Technology ("MIT") and Repligen Corporation ("Repligen") First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

ImClone repeats and incorporates by reference each and every objection and comment raised in ImClone's General Objections and Comments (the "General Objections"), and expressly incorporates them into each response set forth below.

## SPECIFIC OBJECTIONS, RESPONSES, AND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2:

State the basis for your contention that each of the claims of the '281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (*e.g.*, 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

### RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this

2

Interrogatory to the extent it calls for legal conclusions and ImClone's legal contentions. ImClone further objects to this Interrogatory as premature in that discovery has just begun and the plaintiff has failed to identify any claims in the '281 patent that it asserts is infringed by ImClone as required by the Court's August 10th Order. Subject to and without waiving these objections, ImClone answers as follows: All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9(23), 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. deVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it discloses that deletions of a regulatory element between VDJ and Cμ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt *et al.* teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type. In addition, all claims in the '281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement. ImClone reserves the right to supplement this response after plaintiffs have complied with the Court's August 10th Order.

3

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and ImClone's legal contentions. ImClone further objects to this Interrogatory as premature in that discovery has just begun and the plaintiff has failed to identify any claims in the '281 patent that it asserts is infringed by ImClone as required by the Court's August 10th Order. Subject to and without waiving these objections, ImClone answers as follows: All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9(23), 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. deVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it discloses that deletions of a regulatory element between VDJ and Cμ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt et al. teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type. In addition, all claims in the '281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host

4

chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement. ImClone reserves the right to supplement this response after plaintiffs have complied with the Court's August 10th Order. Documents which support our conclusion include the '281 patent, the '281 prosecution file history and cited prior art therein, and documents I02926-I02933 and I03732-I03739.

## INTERROGATORY NO. 3

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of laches.

## RESPONSE TO INTERROGATORY NO. 3

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought

5

I04274, I04276-I04295, I04392-I04409, I05063-I05082, I05112-I05122, I05139-I05145,

I05160-I05162, I05296-I05135, and I05299-I05315.

As to Responses:

Dated: March 16, 2005                By:_____

Thomas C. Gallagher, Esq.
Vice President of Intellectual Property
IMCLONE SYSTEMS, INC.

As to Objections:

Dated: March 16, 2005                By:_____

Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Tel: (617) 526-9600
Fax: (617) 526-9899

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Paul Richter
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY 10004-1050
Tel: (212) 425-7200
Fax: (212) 425-5288

Attorneys for Defendant
ImClone Systems, Inc.

15