# FISH & RICHARDSON P.C., P.A.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

March 11, 2005

**Via Facsimile 212-425-5288**
Anthony Giaccio, Esq.
Kenyon & Kenyon
One Broadway
New York, New York 10004-1050

Re:   *Repligen and MIT v. ImClone Systems, Inc.*
      USDC-D. Mass. (Boston) - Civil Action No. 04-10884-RGS

Dear Anthony:

We write to follow up on our discovery teleconference held on March 3 to discuss the topics described in letters we exchanged on February 25. From the call, Mike and I understood that Richard DeLucia, Paul Richter, Michael Loughnane, and you participated in the call. This letter details our understanding of the outcome of our discussion. We address the topics in the order they were presented in our letters, beginning with our letter.

### *Hanson Letter of February 25, 2005*

**Feit subpoena for deposition and documents:** You represented to us that Mr. Feit is out of the country, but will return sometime this month. You said you would get a date for his deposition sometime during the last week of March.[1] You also said there were no additional responsive documents in Mr. Feit's (or his law firm's) possession because he did very little work for ImClone after he left its employ.

**Document production:** You told us you have not completed your document production in response to our first set of document requests. Specifically, you have yet to produce documents responsive to at least three categories of requests we highlighted in our letter: C225 damages information, C225 production records, and C225 license agreements. (*See* Hanson letter, top of page 2.) You said you will produce the damages information and production records by March 18. You said you would produce the Aventis, Lonza, and Bristol-Myers Squibb license agreements, and you are considering our request for the Merck, Genentech, and Centocor license agreements. We expect you to produce all the license agreements by March 18. We

---

[1] Also during the call, you said, for the first time, that you would be representing Mr. Landes in connection with his subpoena for documents and deposition. You asked, and we agreed, to extend your deadline for formally responding to the Landes subpoena until March 16. You said you would check on dates for his deposition during the last week of March.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 2

think that you have had sufficient time to consider our requests. It is now March 2005; we served the requests in July 2004.

**Interrogatories:** You said you will supplement your interrogatory responses by March 11.

**Publication WO96/40210:** You agreed to give us the patent prosecution files related to this series of patent applications by March 18.

**Privilege log:** We have received your updated privilege log on March 4. You indicated during our call that you might produce some of the documents listed on your privilege log. Are you producing any documents originally listed on your privilege log? A number of the privilege log entries that previously claimed work-product immunity now recite attorney-client communication privilege. The work-product and attorney-client communication doctrines are not synonymous. Notably, the attorney-client communication doctrine requires what is says—a communication. Simply switching a designation on your privilege log from a work-product designation to an attorney-client-communication designation does not make a document privileged or satisfy the standard for attorney-client-communication privilege. Thus, certain of your current designations remain deficient, mainly because many of these documents are not privileged. Nevertheless, we trust that you will stand by your new designations, and will not revert back to claiming work-product immunity. Also, we notice that you have added to your privilege log, including entries for information exchanged with the MRC Collaborative Centre, a third party. No privilege exists between ImClone and MRC. Please produce the MRC documents immediately.

**Proposed amendment to the protective order:** We understand that you will file with the Court the amendment to the current protective order that contains your proposed changes. We asked you to do that on March 8.

*Giaccio Letter of February 25, 2005*

We now turn to the topics described in your letter of February 25.

Before we begin, we reiterate that, aside from a few issues recently raised or clarified by you, e.g., organizational charts, we have completed our document production. We ask that you promptly do the same.

**Redactions:** We are not presently willing to provide you with an unredacted version of the MIT and Repligen license agreement. (REP001405-001425.) We understand your concern to be that the redacted portion of the agreement contained information relating to Repligen's standing in this action. Unequivocally, we told you the redacted portion has nothing to do with Repligen's standing in this case. Further, the redacted portion is not responsive to any of your document requests. Also, the redacted portion is not relevant to any claim or defense of any party in this action.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 3

Finally, you also told us that you plan to make the agreement a trial exhibit. Thus, there exists a real need to redact that portion of the agreement because any use by you of the information from that portion at trial would be improper.

**Lab notebooks:** We understood your representations concerning the laboratory notebooks to concern particularized pages. On closer inspection, your list simply designates the entire laboratory notebook production as deficient. That is not the case. I personally reviewed these documents before production. They are readable. And while I agree that some of the pages are less than perfect, in certain instances poor, you now understand that the notebooks are stored on microfiche at Abbott, and that the produced notebooks are printouts from these microfiche. Thus, reprinting will not generate better copies. If there are certain pages that concern you, please let us know and we will consider your request. Otherwise, we stand by our production. In addition, we confirmed for you that MIT and Repligen have conducted a good-faith search for, and produced, all notebooks that could be relevant and are in their possession or control.

**Electronic records:** In response to your recent request for "computerized" documents, we are searching for records archived in an electronic format. If responsive documents are found, we will produce them. We cannot agree to a date upon which we can produce the documents because, to date, we have not identified any responsive documents.

**Contract between Damon and NCI:** We have no more responsive documents on this topic.

**NIH grant:** We believe we have located a microfiche that contains records related to the NIH grant that ultimately funded the research that led to the '281 patent. We are waiting for a printout. Recognizing your concerns about microfiche, we have asked for the best printout MIT can generate from the microfiche. We anticipate producing the records shortly.

**NIH Contracts:** It is our understanding that you are working on a more focused request on this topic.

**Interrogatory # 4:** We still disagree with your assessment of ImClone's interrogatory number four—we consider it vague and indefinite. Nevertheless, we agreed to prepare a response insofar as we understand interrogatory number four. You will receive it shortly.

**Protein A and Secretin:** We confirmed that Protein A and Secretin are not made with the '281 patented technology.

**Employment agreements:** We confirmed we are not withholding any employment agreements between MIT and either Susumu Tonegawa or Stephen Gillies. We also noted that their employment agreements, to the extent any exist or did exist, are not relevant to a claim or defense of any party.

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
March 11, 2005
Page 4

**Prosecution documents for the '281 patent:** We confirmed we are not withholding any prosecution documents for the '281 patent.

**Patent term extension:** We confirmed we have not received any additional information from the USPTO about the pending application for patent term extension for the '281 patent. Likewise, you confirmed ImClone has not received any additional information from the USPTO about its pending application for patent term extension.

**Documents concerning the '533, '653, '578, and '682 patents:** We confirmed we are not withholding any documents related to these patents.

**Documents concerning Repligen's awareness of ImClone's infringement:** We confirmed we are not withholding any documents on this topic.

**Documents concerning organizational charts:** You clarified that, although your requests seek all organizational charts, you actually want organizational charts for just the MIT Technology Licensing Office and Dr. Tonegawa's lab. We said we will ask if such documents exist.

**Document REP000532:** You indicated you would like to view our copy of this document. We said we would arrange for this to happen, perhaps at the deposition of Mr. Witt.

**MIT document production:** We confirmed MIT made a good-faith effort to search for responsive documents. We, of course, disagree with your assessment of MIT's document production.

**Ms. Rivard's resume:** We told you we will provide you with information sufficient for you to clear her under the protective order. You should receive the information shortly.

Very truly yours,

Chad A. Hanson

CZH/cjs

60282102.doc