UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,

    Plaintiffs,

v.

IMCLONE SYSTEMS INC.,

    Defendant.

Civil Action No. 04 10884 RGS

## IMCLONE SYSTEMS INC.'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ImClone Systems Incorporated ("ImClone") hereby submits the following second supplemental objections and responses to Plaintiffs' Massachusetts Institute of Technology ("MIT") and Repligen Corporation ("Repligen") First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

ImClone repeats and incorporates by reference each and every objection and comment raised in ImClone's General Objections and Comments (the "General Objections"), and expressly incorporates them into each response set forth below.

## SPECIFIC OBJECTIONS, RESPONSES, AND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2:

State the basis for your contention that each of the claims of the '281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (*e.g.*, 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

### RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this

2

chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement. ImClone reserves the right to supplement this response after plaintiffs have complied with the Court's August 10th Order. Documents which support our conclusion include the '281 patent, the '281 prosecution file history and cited prior art therein, and documents I02926-I02933 and I03732-I03739.

### INTERROGATORY NO. 3

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of laches.

### RESPONSE TO INTERROGATORY NO. 3

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought

5

this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' delay in bringing this action was unreasonable and inexcusable and has materially prejudiced ImClone.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent

6

and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' delay in bringing this action was unreasonable and inexcusable and has materially prejudiced ImClone. Documents which support our conclusions include documents I02579-I02580, I02586-I02589, I02592-I02593, I02610-I02612, I02627-I02628, I02635, I02828-I02831, I04239, I04255-I04256, I05137, REP0511, REP0512-REP0515, REP0516-REP0531, and REP0532-REP0533.

**INTERROGATORY NO. 4:**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of estoppel including equitable estoppel.

**RESPONSE TO INTERROGATORY NO. 4:**

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as

7

follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' years of silence and delay in bringing this action led ImClone to infer that plaintiffs had abandoned its claim against ImClone. ImClone relied on plaintiffs' silence in proceeding to market and sell Erbitux, and ImClone will be materially prejudiced if plaintiffs are allowed to proceed with this infringement claim.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' years of silence and delay in bringing this action led

9

ImClone to infer that plaintiffs had abandoned its claim against ImClone. ImClone relied on plaintiffs' silence in proceeding to market and sell Erbitux, and ImClone will be materially prejudiced if plaintiffs are allowed to proceed with this infringement claim. Documents which support our conclusions include documents I02579-I02580, I02586-I02589, I02592-I02593, I02610-I02612, I02627-I02628, I02635, I02828-I02831, I04239, I04255-I04256, I05137, I05210, REP0511, REP0512-REP0515, REP0516-REP0531, REP0532-REP0533, MIT0812, REP0466, REP0467-REP0468, REP0534-REP0536, REP0537, REP0538-REP0539, REP0540-REP0541, and REP0542.

**INTERROGATORY NO. 5:**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of patent exhaustion including in your answer the basis for your contention that all patent rights under the '281 patent to the C225 cell line and C225 antibody supplied by Damon Biotech (predecessor of Repligen) to NCI under contract with the federal government were exhausted upon the delivery of those materials to NCI.

**RESPONSE TO INTERROGATORY NO. 5:**

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. ImClone further objects to this Interrogatory as premature in that many of the underlying documents that ImClone intends to rely on in support of its patent exhaustion defense are in the possession of plaintiffs and have not yet been produced. ImClone may therefore supplement this response after plaintiff have provided the

10

I04274, I04276-I04295, I04392-I04409, I05063-I05082, I05112-I05122, I05139-I05145, I05160-I05162, I05296-I05135, and I05299-I05315.

As to Responses:

Dated: March 16, 2005                By:_____

Thomas C. Gallagher, Esq.
Vice President of Intellectual Property
IMCLONE SYSTEMS, INC.

As to Objections:

Dated: March 16, 2005                By: /s/ Anthony Giaccio

Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Tel: (617) 526-9600
Fax: (617) 526-9899

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Paul Richter
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY 10004-1050
Tel: (212) 425-7200
Fax: (212) 425-5288

Attorneys for Defendant
ImClone Systems, Inc.

15