# EXHIBIT D

# FISH & RICHARDSON P.C., P.A.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

April 11, 2005

<u>Via Facsimile 212-425-5288</u>
Anthony Giaccio, Esq.
Kenyon & Kenyon
One Broadway
New York, New York 10004-1050



AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Re:   *Repligen and MIT v. ImClone Systems, Inc.*
      USDC-D. Mass. (Boston) - Civil Action No. 04-10884-RGS

Dear Anthony:

We received the three letters you sent last Friday. Generally, the letters addressed issues of answers to ImClone's interrogatories, MIT and Repligen's document production, and MIT and Repligen's first motion to compel discovery of ImClone. With this letter, we take this opportunity to address your concerns and provide our response to those letters.

But first we want to address the general tone of your letters, which we found improper. You made a number of petulant assertions and inflammatory accusations that are not supported in fact. For example, you wrote that we "claim that this [NIH] grant no longer exists," that we "made repeated representations" that we cannot locate the master agreement award, and that we "have been improperly withholding electronic documents." These are all examples of statements we did not make and actions we did not take. In the future, we ask you to refrain from these types of unsupported assertions and accusations.

## ImClone's Interrogatories

This is the first time you have mentioned that our answer to ImClone's interrogatory number one is less than complete. Further, we believe that our answer to this interrogatory is complete. The interrogatory asks MIT and Repligen to identify certain documents and persons related to the NCI contract N01-CM-87253-01, i.e., the contract that led Damon to create the C225 antibody, the C225 vector, and the C225 cell line. Plaintiffs' answer identified the responsive documents of which they are aware and possess. The answer identified NCI's master agreement announcement, Damon's technical and business proposals in response to NCI's announcement, and the C225 master agreement order. The answer also identified the persons involved. Finally, the answer stated that Plaintiffs are presently unaware of documents evidencing payment. We do not understand how the answer fails to fully

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
April 11, 2005
Page 2

and completely answer the interrogatory. What additional information are you seeking?

This is also the first time we have heard from you on interrogatory number two. Again, we believe that our answer to the interrogatory is complete. That said, we certainly strive to avoid any unnecessary motion practice. Therefore, we agree to supplement the answer. In the interim, we can let you know that that statutory provisions for the Bayh-Dole act are found at 35 U.S.C. §§ 200-212. That section of the patent code should answer most of the questions you raised.

### MIT and Repligen's Document Production

As an initial matter, we have an issue with the final sentence of Friday's letter on document production. You wrote: "If there are any documents that you have not produced, we expect them by Monday." Did you really mean that? Why is it that it is appropriate for you to demand production of MIT and Repligen in one day, but somehow ImClone needs months to produce the damages-related documents that it first agreed to produce last fall? Perhaps that is something you could explain to the Court when you address MIT and Repligen's first motion to compel discovery of ImClone.

Further, we also disagree with your assertions regarding MIT and Repligen's document production. The MIT and Repligen production was timely and complete. We agree with you that we represented some time ago that the document production was nearly complete. It was complete except for a few odds and ends on additional topics that were raised by you after Plaintiffs produced their documents. We note here, too, that ImClone has yet to make an equivalent representation about its document production.

As for the various odds and ends that have required additional production or discussion, we address the concerns raised in your letter below.

    **Organizational charts:** We have already produced organizational charts.

- **Drafts of agreements:** We have completed a search for responsive drafts of agreements. We have produced the nonprivileged, responsive documents. In particular, your letter mentioned drafts of contracts regarding the sale of certain assets of Abbott Laboratories to Repligen. There are no additional drafts of those agreements of which Plaintiffs are aware. Your letter also mentioned the 2004 MIT and Repligen license. We produced drafts of that agreement last week.

- **Electronic documents:** We have completed a search for responsive electronic files. We have produced the nonprivileged, responsive documents.

FISH & RICHARDSON P.C P.A

Anthony Giaccio, Esq.
April 11, 2005
Page 3

> **"Express reservation of patent rights" contracts:** We remain confused by your assertions on this point. To this end, we have produced a contract that we thought was responsive to your request, i.e., the Damon and NCI contract. Your position, however, was that that contract is not a contract that contains an express reservation of patent rights. Thus, the confusion. As a compromise, we agreed to generally look for grants, contracts, and such where Repligen would receive NIH or other federal agency funding. We produced those documents last week.

- **Gillies and Tonegawa Employment agreements:** Plaintiffs are presently unaware of any such employment agreements.

> **Minutes of Board meetings:** This is the first time we have heard from you on this topic. Is there an ImClone document request to which this category of documents is responsive? On this topic, when can we expect you to complete your production of the Minutes of ImClone's board meetings? Your document production contains only 13 instances of ImClone's board meeting minutes—only one of which is after the year 2000. Since it appears that the board meetings occur monthly, we would expect that there are many more board meeting minutes that discuss C225, the C225 cell line, or the C225 vector.

> **All scientific or technical work performed by Repligen that involved the '281 technology:** This is the first time we have heard from you on this topic. We understand that this new request seeks all scientific or technical work performed by Repligen, Abbott, or Damon that, in any way, involves the '281 technology. Is there an ImClone document request to which this category of documents is responsive? Additionally, how are projects unrelated to the creation of the C225 antibody, the C225 vector, and the C225 cell line relevant to any claim or defense of any party to this action?

- **Laboratory notebooks:** We responded to your concerns previously on this point. The laboratory notebooks are largely legible. Yet, we agreed to request the microfiche from Abbott, and we now possess the microfiche. Consistent with our previous representations, we remain willing to have a different copy center, one that meets your approval, renumber and reprint these notebooks provided that you pay for the reprinting and renumbering. (See my letter to you dated March 18, 2005.)

**MIT and Repligen's First Motion to Compel Discovery of ImClone**

We believe that your time on this point would have been better spent complying with our discovery requests than drafting this letter. Still, if you completely answer the interrogatories, produce the requested documents, and certify that you have produced

FISH & RICHARDSON P.C., P.A

Anthony Giaccio, Esq.
April 11, 2005
Page 4

all responsive documents, we will withdraw our motions. Absent compliance, however, there simply is not enough time left in discovery to wait for you to comply. Your repeated failures to comply with our discovery requests over the last eight months make us seriously question whether you intend to comply at all.

Your feigned surprise to our motion to compel is silly. We told you on March 18, 2005, we intended to compel on interrogatory number two. I have reproduced a section of that letter below for your convenience:

> Thank you for ImClone's supplemental interrogatory responses. We still generally have issues with the completeness of the answers. For example, the newly added information consists of listing—at the end of each answer—bates ranges for documents ImClone now apparently intends to rely on. There is no additional discussion of the documents and no explanation of their relevance. The interrogatories do not ask ImClone to list documents. The interrogatories ask ImClone to explain its defenses. **We will respond in more detail later.**
>
> ImClone's answer to interrogatory number two, however, is a different story. We have repeatedly asked for complete interrogatory answers, including interrogatory number two. You promised to supplement, but your purported supplement, adding a bates-number listing for two documents already referenced in the first answer—added nothing. Interrogatory number two requires a claim chart comparing, on a limitation-by-limitation and element-by-element basis, the asserted claims to the asserted prior art. That ImClone still has not done despite our repeated requests. **We plan to compel on interrogatory number two.**

"We plan to compel on interrogatory number two," seems clear to us. And "We will respond in more detail later," also seems clear that we would send you a letter addressing the other interrogatories on a later date—March 28 to be exact. The March 28 letter addressed the additional deficiencies ImClone's supplemental answer created for interrogatories other than number two. For those interrogatories, the letter asked for your compliance by April 4. Your failure to comply with that request has prompted yet another motion to compel.

Turning to the document requests, the document requests in the motion to compel are proper, and, except for request number 63, ImClone has repeatedly agreed to produce responsive documents. We ask again, please produce the documents—now.

More importantly, and contrary to your assertions, we have continued, throughout this case, in our efforts to obtain these responsive documents. We refer you to our letters

FISH & RICHARDSON P.C., P.A.

Anthony Giaccio, Esq.
April 11, 2005
Page 5

of November 5, 2004; February 24, 2005; March 11, 2005; and March 18, 2005. All letters that requested you comply with our document requests. The following section of the March 18, 2005 letter is instructive:

> Our understanding is that you confirmed on March 3 that your document production was still incomplete and you were working to produce the documents responsive to the request numbers set forth in my letter to Michael Loughnane dated February 25, 2005[, a letter that included Michael Kane's November 5, 2004, letter and raised the document requests now pending in our first motion to compel document production]. Please let us know immediately if you have a different understanding.

Since we heard nothing, we concluded that Mr. Richter did not have a different understanding. Still, we waited two more weeks before we filed our first motion to compel.

Finally, we address the two specific points you raised on our document requests. First, the method-of-manufacture-related and batch-record-related requests are not directed to methods of manufacturing the C225 cell line. We all know that Damon made the C225 cell line. Those requests ask for the method of manufacturing C225 using the '281 technology, e.g., with the C225 cell line and C225 vector. ImClone agreed to produce such documents. Second, we did not agree to a summary document of C225 made for sale in the United States and sold in the United States during the life of the '281 patent for the reasons identified in our motion to compel. The document requests are broader than that. For example, the requests include C225 made in the U.S. and sold outside the U.S. That said, we express no opinion as to whether your proposed summary sheet would suffice. Please produce it and verify its accuracy and completeness, and we will consider whether it provides sufficient information.

Thank you for your attention to these matters. In particular, we hope that you take the time to fully comply with our discovery requests so that the parties can avoid continued costly motion practice. To this end, we take this opportunity to inform you that we also intend to compel production of certain documents that are improperly listed on your privilege log. We intend to file that motion this week. Please refer to our letters of March 11, 2005, and March 25, 2005.

Very truly yours,

Chad A. Hanson

Case 1:04-cv-10884-RGS    Document 34-5    Filed 04/15/2005    Page 7 of 7    ☒001

# FISH & RICHARDSON P.C., P.A.

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

April 11, 2005

**To** Anthony Giaccio

**Facsimile number** 00231-00253531 / 212-425-5288

Chad A. Hanson

**Re** *Repligen and MIT v. ImClone Systems, Inc.*
Our Ref.: 00231-002LL1

**Number of pages including this page**  6

**Message**

NOTE: This facsimile is intended for the addressee only and may contain privileged or confidential information. If you have received this facsimile in error, please immediately call us collect at 612 335-5070 to arrange for its return. Thank you.