# **EXHIBIT 1**

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF

TECHNOLOGY and REPLIGEN

CORPORATION,

                Plaintiffs,

       v.

IMCLONE SYSTEMS INC.,

                Defendant.

Civil Action No. 04 10884 RGS

## IMCLONE SYSTEMS INC.'S

## SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant ImClone

Systems Incorporated ("ImClone") hereby submits the following second supplemental

objections and responses to Plaintiffs' Massachusetts Institute of Technology ("MIT")

and Repligen Corporation ("Repligen") First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

ImClone repeats and incorporates by reference each and every objection and comment raised in ImClone's General Objections and Comments (the "General Objections"), and expressly incorporates them into each response set forth below.

## SPECIFIC OBJECTIONS, RESPONSES, AND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 2:

State the basis for your contention that each of the claims of the '281 patent is invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 101 *et seq.*, include in the answer for each claim (a) the identity of each specific statutory provision (*e.g.*, 35 U.S.C. §§ 101, 102, 103, or 112) that has not been complied with; (b) a claim chart comparing on a limitation-by-limitation basis each claim to any element found in any allegedly invalidating prior art, and (c) the motivation-to-combine and the reasonable expectation-of-success for any combinations of prior art under 35 U.S.C. § 103.

## RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this

2

Interrogatory to the extent it calls for legal conclusions and ImClone's legal contentions. ImClone further objects to this Interrogatory as premature in that discovery has just begun and the plaintiff has failed to identify any claims in the '281 patent that it asserts is infringed by ImClone as required by the Court's August 10th Order. Subject to and without waiving these objections, ImClone answers as follows: All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9(23), 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. deVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it discloses that deletions of a regulatory element between VDJ and C$\mu$ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt *et al.* teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type. In addition, all claims in the '281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written description and enablement. ImClone reserves the right to supplement this response after plaintiffs have complied with the Court's August 10th Order.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2

ImClone objects to this Interrogatory as over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ImClone also objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and ImClone's legal contentions. ImClone further objects to this Interrogatory as premature in that discovery has just begun and the plaintiff has failed to identify any claims in the '281 patent that it asserts is infringed by ImClone as required by the Court's August 10th Order. Subject to and without waiving these objections, ImClone answers as follows: All claims in the '281 patent are invalid under 35 U.S.C. 103 for obviousness in view of deVilliers et al., Nuc. Acids Res. 9(23), 6251-6264 (1981) and Alt et al., Nature 296, 325-331 (1982). Each and every element of the claims of the '281 patent are provided by the references. deVilliers et al. teaches processes, vectors, and cell lines that use an enhancer element to increase production of a proteinaceous substance. Alt et al. provides an endogenous tissue specific cellular DNA element that increases production of an endogenous proteinaceous substance. Alt et al. provides the motivation to combine the references because it discloses that deletions of a regulatory element between VDJ and Cμ exons of a cell line expressing immunoglobulin heavy chain are correlated with decreased heavy chain production. Alt *et al.* teaches one of skill in the art to look at cells of a specific tissue type for a DNA element that controls expression of a proteinaceous substance that is expressed that tissue type. In addition, all claims in the '281 patent directed to mammalian host cell lines in which cloning vectors are integrated into the host

4

chromosome are invalid under 35 U.S.C. § 112, first paragraph for insufficient written

description and enablement. ImClone reserves the right to supplement this response after

plaintiffs have complied with the Court's August 10th Order. Documents which support

our conclusion include the '281 patent, the '281 prosecution file history and cited prior

art therein, and documents I02926-I02933 and I03732-I03739.


**INTERROGATORY NO. 3**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine
of laches.


**RESPONSE TO INTERROGATORY NO. 3**

ImClone objects to the Interrogatory to the extent that it seeks information

protected by the attorney client privilege and/or work product doctrine. ImClone further

objects to this Interrogatory to the extent it calls for legal conclusions and legal

contentions. Subject to and without waiving these objections, ImClone answers as

follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware

that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs

were aware or should have been aware that ImClone was using C225. Also, at least as

early as August 1997, Repligen accused ImClone of infringing the '281 patent based on

Repligen's belief that ImClone was conducting commercial activities with respect to the

C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a

license under the '281 patent based on ImClone's alleged infringement. As Repligen is

aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent

and made no further claims that ImClone was infringing the '281 patent until it brought

this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' delay in bringing this action was unreasonable and inexcusable and has materially prejudiced ImClone.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent

and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' delay in bringing this action was unreasonable and inexcusable and has materially prejudiced ImClone. Documents which support our conclusions include documents I02579-I02580, I02586-I02589, I02592-I02593, I02610-I02612, I02627-I02628, I02635, I02828-I02831, I04239, I04255-I04256, I05137, REP0511, REP0512-REP0515, REP0516-REP0531, and REP0532-REP0533.

**INTERROGATORY NO. 4:**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of estoppel including equitable estoppel.

**RESPONSE TO INTERROGATORY NO. 4:**

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as

follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' years of silence and delay in bringing this action led ImClone to infer that plaintiffs had abandoned its claim against ImClone. ImClone relied on plaintiffs' silence in proceeding to market and sell Erbitux, and ImClone will be materially prejudiced if plaintiffs are allowed to proceed with this infringement claim.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. Subject to and without waiving these objections, ImClone answers as follows: As shown in the Complaint, since at least as early as 1994, plaintiffs were aware that ImClone was testing C225 antibody in human clinical trials. Moreover, plaintiffs were aware or should have been aware that ImClone was using C225. Also, at least as early as August 1997, Repligen accused ImClone of infringing the '281 patent based on Repligen's belief that ImClone was conducting commercial activities with respect to the C225 antibody. Also, at least as early as September 1997, Repligen offered ImClone a license under the '281 patent based on ImClone's alleged infringement. As Repligen is aware, ImClone did not accept Repligen's license offer. Thereafter, Repligen was silent and made no further claims that ImClone was infringing the '281 patent until it brought this suit. Thereafter, plaintiffs were aware or should have been aware from the publicity surrounding ImClone's Erbitux product that ImClone was preparing to market Erbitux pending fast-track FDA approval in December 2001 and again in early 2004. Despite plaintiffs' awareness of ImClone's activities with respect to the Erbitux product, plaintiffs delayed bringing this action for more than six years after Repligen first accused ImClone of infringement. In fact, plaintiffs did not initiate this action until the penultimate day of the life of the '281 patent, after ImClone had been selling Erbitux for several months, and after ImClone had manufactured sufficient quantities of Erbitux to satisfy the immediate demand for the product. Plaintiffs' years of silence and delay in bringing this action led

9

ImClone to infer that plaintiffs had abandoned its claim against ImClone. ImClone relied on plaintiffs' silence in proceeding to market and sell Erbitux, and ImClone will be materially prejudiced if plaintiffs are allowed to proceed with this infringement claim. Documents which support our conclusions include documents I02579-I02580, I02586-I02589, I02592-I02593, I02610-I02612, I02627-I02628, I02635, I02828-IO2831, I04239, I04255-I04256, I05137, I05210, REP0511, REP0512-REP0515, REP0516-REP0531, REP0532-REP0533, MIT0812, REP0466, REP0467-REP0468, REP0534-REP0536, REP0537, REP0538-REP0539, REP0540-REP0541, and REP0542.

**INTERROGATORY NO. 5:**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of patent exhaustion including in your answer the basis for your contention that all patent rights under the `281 patent to the C225 cell line and C225 antibody supplied by Damon Biotech (predecessor of Repligen) to NCI under contract with the federal government were exhausted upon the delivery of those materials to NCI.

**RESPONSE TO INTERROGATORY NO. 5:**

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. ImClone further objects to this Interrogatory as premature in that many of the underlying documents that ImClone intends to rely on in support of its patent exhaustion defense are in the possession of plaintiffs and have not yet been produced. ImClone may therefore supplement this response after plaintiff have provided the

discovery ImClone has requested. Subject to and without waiving these objections,

ImClone answers as follows: Repligen's predecessor Damon produced the C225 cell line

that plaintiffs rely upon as the basis for their infringement charge under National Cancer

Institute Contract N01-CM-87253-01 ("NCI/Damon contract"). Under the terms of the

NCI/Damon contract, Damon made the C225 cell line and C225 antibody from the M225

cell line that NCI had received from the University of California under a Material

Transfer Agreement, and that NCI provided to Damon under the NCI/Damon contract.

The NCI/Damon contract contained no restrictions on how NCI may use or distribute the

C225 cell line or C225 antibody. Under the NCI/Damon contract, Damon was paid for

the production and delivery of the C225 antibody and C225 cell line to NCI without any

restriction on NCI's right to provide the C225 cell line or C225 antibody to others,

including ImClone. Consequently, to the extent that plaintiffs argue that the C225 cell

line is covered by a claim of any valid U.S. patent, such a patent right was exhausted

upon Damon's delivery of the C225 cell line to NCI without restriction.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

ImClone objects to the Interrogatory to the extent that it seeks information protected by

the attorney client privilege and/or work product doctrine. ImClone further objects to this

Interrogatory to the extent it calls for legal conclusions and legal contentions. ImClone

further objects to this Interrogatory as premature in that many of the underlying

documents that ImClone intends to rely on in support of its patent exhaustion defense are

in the possession of plaintiffs and have not yet been produced. ImClone may therefore

supplement this response after plaintiff have provided the discovery ImClone has

requested. Subject to and without waiving these objections, ImClone answers as follows: Repligen's predecessor Damon produced the C225 cell line that plaintiffs rely upon as the basis for their infringement charge under National Cancer Institute Contract N01-CM-87253-01 ("NCI/Damon contract").  Under the terms of the NCI/Damon contract, Damon made the C225 cell line and C225 antibody from the M225 cell line that NCI had received from the University of California under a Material Transfer Agreement, and that NCI provided to Damon under the NCI/Damon contract. The NCI/Damon contract contained no restrictions on how NCI may use or distribute the C225 cell line or C225 antibody. Under the NCI/Damon contract, Damon was paid for the production and delivery of the C225 antibody and C225 cell line to NCI without any restriction on NCI's right to provide the C225 cell line or C225 antibody to others, including ImClone. Consequently, to the extent that plaintiffs argue that the C225 cell line is covered by a claim of any valid U.S. patent, such a patent right was exhausted upon Damon's delivery of the C225 cell line to NCI without restriction. Documents which support our conclusions include documents REP0105-REP0124, REP0125-REP0140, REP0234-REP0312, REP0313-REP0380, I04232-I04238, I04271-I04274, I04276-I04295, I04392-I04409, I05063-I05082, I05112-I05122, I05139-I05145, I05160-I05162, and I05299-I05315.


**INTERROGATORY NO. 6:**

State the basis for your contention that Plaintiffs' claims are barred by the doctrine of implied license including in the answer the basis for your contention that the sale of the C225 cell line and the C225 antibody by Damon Biotech to NCI gives NCI an

implied license to use and sell the materials delivered free of any claim of patent infringement under the `281 patent.

**RESPONSE TO INTERROGATORY NO. 6:**

ImClone objects to the Interrogatory to the extent that it seeks information protected by the attorney client privilege and/or work product doctrine. ImClone further objects to this Interrogatory to the extent it calls for legal conclusions and legal contentions. ImClone further objects to this Interrogatory as premature in that many of the underlying documents that ImClone intends to rely on in support of its patent exhaustion defense are in the possession of plaintiffs and have not yet been produced. ImClone may therefore supplement this response after plaintiffs have provided the discovery ImClone has requested. Subject to and without waiving these objections, ImClone answers as follows: Repligen's predecessor Damon produced the C225 cell line that plaintiffs rely upon as the basis for their infringement charge under National Cancer Institute Contract N01-CM-87253-01 ("NCI/Damon contract"). Under the terms of that NCI/Damon contract, Damon made the C225 cell line and C225 antibody from the M225 cell line that NCI had received from the University of California under a Material Transfer Agreement and that NCI provided to Damon under the NCI/Damon contract. The NCI/Damon contract contained no restrictions on how NCI may use or distribute the C225 cell line or C225 antibody. Under the NCI/Damon contract, Damon sold and delivered the C225 antibody and C225 cell line to NCI without any restriction on NCI's right to provide the C225 cell line or C225 antibody to others, including ImClone. Consequently, NCI has an implied license under any patents of the plaintiffs cover the C225 cell line or any uses of the C225 cell line that might be reasonably contemplated.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

ImClone objects to the Interrogatory to the extent that it seeks information

protected by the attorney client privilege and/or work product doctrine. ImClone further

objects to this Interrogatory to the extent it calls for legal conclusions and legal

contentions. ImClone further objects to this Interrogatory as premature in that many of

the underlying documents that ImClone intends to rely on in support of its patent

exhaustion defense are in the possession of plaintiffs and have not yet been produced.

ImClone may therefore supplement this response after plaintiffs have provided the

discovery ImClone has requested. Subject to and without waiving these objections,

ImClone answers as follows:  Repligen's predecessor Damon produced the C225 cell line

that plaintiffs rely upon as the basis for their infringement charge under National Cancer

Institute Contract N01-CM-87253-01 ("NCI/Damon contract"). Under the terms of that

NCI/Damon contract, Damon made the C225 cell line and C225 antibody from the M225

cell line that NCI had received from the University of California under a Material

Transfer Agreement and that NCI provided to Damon under the NCI/Damon contract.

The NCI/Damon contract contained no restrictions on how NCI may use or distribute the

C225 cell line or C225 antibody. Under the NCI/Damon contract, Damon sold and

delivered the C225 antibody and C225 cell line to NCI without any restriction on NCI's

right to provide the C225 cell line or C225 antibody to others, including ImClone.

Consequently, NCI has an implied license under any patents of the plaintiffs cover the

C225 cell line or any uses of the C225 cell line that might be reasonably contemplated.

Documents which support our conclusions include documents REP0105-REP0124,

REP0125-REP0140, REP0234-REP0312, REP0313-REP0380, I04232-IO4238, I04271-

I04274, I04276-I04295, I04392-I04409, I05063-I05082, I05112-I05122, I05139-I05145, I05160-I05162, I05296-I05135, and I05299-I05315.

As to Responses:

Dated: March 16, 2005            By:_____

Thomas C. Gallagher, Esq.
Vice President of Intellectual Property
IMCLONE SYSTEMS, INC.


As to Objections:

Dated: March 16, 2005            By:_____

Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Tel: (617) 526-9600
Fax: (617) 526-9899

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Paul Richter
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY  10004-1050
Tel: (212) 425-7200
Fax: (212) 425-5288

Attorneys for Defendant
ImClone Systems, Inc.