**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>          Plaintiffs,<br><br>     v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>          Defendant. | Civil Action No. 04-10884-RGS<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**IMCLONE'S FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENT(S)**

Defendant ImClone Systems, Inc. ("ImClone") respectfully submits this brief in support of its motion to compel Plaintiffs RepliGen Corporation ("RepliGen") and Massachusetts Institute of Technology ("MIT") to produce a complete, un-redacted copy of the license MIT granted Repligen under U.S. Patent No. 4,663,281 ("the '281 patent"). That license agreement between the two Plaintiffs ("the License Agreement") was entered on May 4, 2004, the day before the '281 patent expired and the same day this lawsuit was filed. Indeed, Plaintiffs' sole purpose in entering the License Agreement was to enable them together to sue ImClone on the '281 patent. Given that sole purpose and the broad scope of discovery under the Federal Rules, it is incredible that Plaintiffs could withhold parts of the License Agreement from ImClone by selectively redacting it, based on the purported "irrelevance" of those redacted portions.

Plaintiffs should be ordered to hand over a complete, un-redacted copy of the License Agreement immediately.

**BACKGROUND FACTS**

RepliGen and MIT filed this lawsuit against ImClone on May 4, 2004, alleging willful patent infringement. The Court entered an order setting a completion date for fact discovery of May 31, 2005. ImClone's First Set of Requests for Documents and Things were served on Plaintiffs long ago, on August 25, 2004. (Exhibit 1, attached hereto). At least two of those requests (Nos. 8 and 12) plainly included within their scope the License Agreement and any documents related thereto.[1] Yet, the License Agreement (even in its redacted form) was not immediately produced to ImClone, notwithstanding that one would think its seminal nature relative to this lawsuit would make it the very first such document to be produced. Rather, a long history of discussions about this document ensued.

In a letter dated November 4, 2004, ImClone asked to confer with the Plaintiffs regarding deficiencies in their document production. (Exhibit 2). ImClone sent another letter to the Plaintiffs on November 16, 2004. (Exhibit 3). In this letter, ImClone specifically expressed concerns regarding the Plaintiffs responses to ImClone's Request nos. 8 and 12 (see pages 7 and 8 of Exhibit 3, respectively).

After a discovery conference call held on November 17, 2004 between the parties' respective counsel, ImClone sent another letter to the Plaintiffs on November 18, 2004 summarizing the issues discussed during the conference call. (Exhibit 4). This letter confirmed ImClone's understanding that the Plaintiffs had agreed to make a good faith effort to produce all the license agreements. (See page 2 of Exhibit 4).

---

[1] Request number 8 specifically asked for "Any and all licenses between Damon, Abbott, Repligen, and MIT concerning or relating to the '281 patent technology." Request 12 asked for "All documents and things concerning or relating to Damon's, Abbott's, MIT's, or Repligen's efforts to enforce the '281 patent."

On November 22, 2004, the Plaintiffs sent a letter back to ImClone (Exhibit 5) in response to ImClone's November 18. In Plaintiffs' November 22 letter, the Plaintiffs stated (with two exceptions which are not important for the purposes of this motion) that they intended "…to produce the balance of the MIT and RepliGen documents this week or by early next week." (See page 1 of Exhibit 5). This clearly should have included the RepliGen/MIT License Agreement.

On December 7, 2004, the Plaintiffs and ImClone held a second discovery conference call in order to again discuss outstanding discovery issues. This conference call was memorialized by ImClone in a letter to the Plaintiffs dated December 10, 2004. (Exhibit 6). In that conference call, the Plaintiffs stated that they had recently located and were about to produce an exclusive license agreement between MIT and RepliGen that gave RepliGen the standing to bring this action against ImClone. (See page 2 of letter of December 10, 2004).

On December 9, 2004, the Plaintiffs finally produced a redacted version of the License Agreement to ImClone. (Exhibit 7, to be filed under seal)[2]. Indeed, redactions had been made to most of section 7.5, entitled "Recovery", and to the entirety of Appendix "B", which has no title.

On February 25, 2005, ImClone sent another letter to the Plaintiffs outlining the issues to be discussed in a discovery conference call to be held on March 1, 2005. (Exhibit 8). In that letter, ImClone complained that the License Agreement had been redacted and asked the Plaintiffs to produce an un-redacted copy of the license agreement.

On March 3, 2005, ImClone and the Plaintiffs held another discovery conference call. At that time, ImClone once again asked the Plaintiffs to produce an un-redacted copy of the License Agreement. Plaintiffs responded by stating that they would take the matter under consideration.

---

[2]  Because Exhibit 7 has been designated by Plaintiffs as confidential under the Stipulated Protective Order entered in this case, this exhibit will be filed under seal.

-3-

The Plaintiffs responded over a week later in a letter dated March 11, 2005. (Exhibit 9). In that letter (see page 2 of Exhibit 9), the Plaintiffs stated that they were not willing to provide ImClone with an un-redacted copy of the License Agreement.

On March 15, 2005, the Plaintiffs and ImClone held yet another discovery conference call and, once again, discussed the redacted copy of the License Agreement. The Plaintiffs were informed that ImClone intended to file a motion to compel them to produce the complete License Agreement. Plaintiffs then changed their position from that stated in their letter of March 11, 2005 and stated that they would (once again) consider the request. This discussion, along with the conference call of March 3, 2005, was memorialized by ImClone in a letter dated March 16, 2005. (Exhibit 10).

In its March 16, 2005 letter (see pages 4 and 5 of Exhibit 10), ImClone stated that it appeared that the Plaintiffs were deliberately delaying the production of this highly-relevant document and that ImClone would seek relief from the Court if an un-redacted copy of the License Agreement was not produced by March 18, 2005.

In response, on March 18, 2005, the Plaintiffs sent a letter to ImClone in which they: (1) stated their understanding (which was mistaken) that the only reason ImClone wanted the License Agreement was to test Repligen's standing as a plaintiff in this case; (2) reaffirmed that they would not produce a complete, unredacted copy of the License Agreement; and (3) indicated that the redacted portions contained information relating only to the fee arrangement between Plaintiffs and their counsel, Fish & Richardson. (Exhibit 11).

In a final effort to resolve this matter without having to file the instant motion, ImClone sent Plaintiffs a letter on March 22, 2005. (Exhibit 12). ImClone's letter first stated that Plaintiffs were wrong to assume that ImClone's only purpose in seeking the License Agreement

was to test Repligen's standing, and then offered to review the complete, unredacted License Agreement on an "attorneys' eyes only basis" pursuant to the Protective Order, meaning that only ImClone's outside lawyers could look at it absent a Court order the contrary. Plaintiffs simply did not follow up on that offer, necessitating this motion.

## ARGUMENT

I.  **THE PLAINTIFFS SHOULD BE ORDERED TO PRODUCE A COMPLETE, UN-REDACTED COPY OF THE LICENSE AGREEMENT.**

The Federal Rules clearly state that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). The License Agreement, including the redacted portions, plainly meets this broad definition of discoverable material. Indeed, the License Agreement is the seminal document in this case because the litigation would never have occurred without it having been entered. Prior to the entry of the License Agreement, Repligen apparently had no standing to file suit on the '281 patent.

Moreover, ImClone is entitled to see the redacted portions of the License Agreement given the highly unusual circumstances under which this document was executed. Namely, the License Agreement was entered between the two Plaintiffs, MIT and Repligen, on the same day this law suit against ImClone was filed, and a single day before the '281 patent expired. The selective redactions on the License Agreement raise a host of issues, as the entries under the headings "Recovery" and "Appendix B" that were redacted could relate to the motivations and machinations of the parties in bringing this lawsuit against ImClone, all of which is highly relevant. This is particularly relevant since ImClone does not believe MIT or Repligen even had any patent rights to assert against it, since all such rights were exhausted by MIT's licensee (Damon Biotech) sale of the C225 cell line that is accused of infringement here.

-5-

Further, even if the redacted information relates only to fee arrangements, as Plaintiffs assert, ImClone should be able to review that information to assess the motivations and possible biases of potential witnesses in the case. For example, during the recent deposition of Mr. Witt of Repligen, he suggested that there was at least the possibility that the two named inventors on the '281 patent, Drs. Gillies and Tonegawa, might be entitled to a part of any recovery by Plaintiffs against ImClone in this suit.[3] (Exhibit 13). If that is true, that information no doubt falls within the redacted material under the heading "Recovery" in the License Agreement. ImClone plans to depose both Dr. Gillies and Dr. Tonegawa in this case and certainly has the right to know if either witness has an economic interest in the outcome of this litigation.

The test for relevance is undoubtedly a broad one. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Plaintiffs have offered no legitimate reason for having redacted any information from the License Agreement -- the redacted information is neither privileged nor proprietary. For all of the above reasons, the production of a complete, unredacted copy of the License Agreement

---

[3]   Mr. Witt testified at pages 47-48 of his deposition transcript, as below:
Q.   Okay. What is your understanding of how any -- how any potential settlement or award that might come out of the current litigation will be allocated?
A.   I don't recall what the terms are.
Q.   Do you recall which parties will share in any award or settlement?
A.   I certainly know some of the parties that share. I don't know that I know all of them.
Q.   Okay. Which parties are you aware of that will share in the award or settlement?
A.   Repligen, MIT, and Fish & Richardson.
Q.   Any others that come to mind?
A.   It's conceivable the inventors may. I don't know.
Q.   Do you know if the inventors names are on Page 9 of Exhibit 2 [the License Agreement?
A.   Page 9? I have no idea.

by the Plaintiffs to ImClone is entirely likely to lead to the production of other discoverable evidence concerning RepliGen's standing in the case, the overall motivation for the lawsuit and the potential motivations and biases of key witnesses. It is, therefore, unquestionably relevant to RepliGen's claim of infringement and ImClone's corresponding defense against that claim.

The Court has entered a Stipulated Protective Order (D.I. 22) in this case to govern the confidentiality of documents. Therefore, there should be no issue that the redacted information is proprietary to the Plaintiffs, because they can take advantage of the protections of the Stipulated Protective Order and mark the complete, un-redacted version of the License Agreement accordingly. Indeed, the Plaintiffs have marked the redacted version of the License Agreement as "Confidential Outside Counsel Only."

The Plaintiffs may not withhold this information simply because it may be potentially embarrassing to them. In any case, any such concerns are outweighed by ImClone's right to have a fair opportunity to defend itself. It is simply unjust for ImClone not to be permitted to have a complete copy of the seminal and single-most important agreement forming the basis of this lawsuit, in which ImClone is being sued for substantial damages.

## **CONCLUSION**

For all of the foregoing reasons, ImClone respectfully requests an order from the Court requiring that the Plaintiffs produce immediately to ImClone a complete, un-redacted copy of the May 4, 2004 License Agreement between MIT and RepliGen concerning the '281 patent.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), ImClone hereby requests that this Court set this motion for oral argument. ImClone believes that oral argument would assist the Court in considering the motion. ImClone respectfully requests that the motion be set for hearing as soon as practicable.

Dated: April 22, 2005

Respectfully submitted,

IMCLONE SYSTEMS, INC.

By its Attorneys,

/s/ Jeremy P. Oczek
Mark W. Batten (BBO #566211)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Tel: (617) 526-9600
Fax: (617) 526-9899

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Paul M. Richter, Jr.
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY  10004-1050
Tel: (212) 425-7200
Fax: (212) 425-5288

## Certificate Of Service

I hereby certify that on April 22, 2005, a true and correct copy of the foregoing document was served on counsel for Plaintiffs by use of the Court's ECF system.

/s/ Jeremy P. Oczek
Jeremy P. Oczek