# EXHIBIT 10



**Anthony Giaccio**
Direct 212.908.6419
agiaccio@kenyon.com

One Broadway
New York, NY 10004-1050
212.425.7200
Fax 212.425.5288

March 16, 2005

**By Facsimile**

Michael J. Kane, Esq.
Fish & Richardson P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402

Re:   **RepliGen and MIT v. ImClone Systems, Inc.**

Dear Mike:

      We write to provide you with our summary of the issues discussed in our March 3rd and March 15th conference calls.

**From ImClone:**

      Dr. Feit will be available to be deposed here in New York City at Kenyon & Kenyon on March 31st, 2005. Neither Dr. Feit nor Hoffman & Baron are withholding any non-privileged responsive documents.

      Kenyon & Kenyon is representing John Landes. Mr. Landes will be available to be deposed here in New York City at Kenyon & Kenyon on March 30th. It was agreed that Mr. Landes had an extension until March 23rd to respond to the document subpoena.

      We intend to produce additional documents concerning the U.S. sales and U.S. production of Erbitux®. We are discussing this with ImClone and are making our best efforts to have documents to you by March 18th.

      We will consider your request to produce the following licenses and agreements:

*Merck KGaA European Distribution Agreement:* We will produce this agreement.

*BMS Distribution Agreement:* Although you already have this agreement from our SEC filings, we will produce an un-redacted copy of this document to you.

Michael J. Kane, Esq.
March 16, 2005
Page 2



  *Lonza Manufacturing Agreement:* We agree to produce this agreement to you only on the condition that you agree that we may redact highly-confidential manufacturing information. During our March 3rd, 2005 conference call you agreed to this condition.

  *Aventis License:* We will produce this agreement.

  *Genentech and Centocor Licenses:* We will produce these agreements to you subject to the confidentiality provisions within the agreements.

  We will produce documents responsive to your request relating to WO96/40210 later this week.

  We will send you updated interrogatory responses citing document references today.

  Finally, we stated that we have not yet allowed anyone at ImClone to review confidential documents covered by the Protective Order. We have signed and sent the amended Protective Order to your Boston office for signing and filing.

**From RepliGen and MIT:**

  The lab notebooks produced by RepliGen thus far are illegible. You stated to us on March 3rd that you had not made any reductions in copying the lab notebooks and that you had obtained these materials from Abbott on microfiche. In addition, you agreed to speak to Abbott about obtaining the original microfiches to provide to us. However, according to the 1st, 2nd and 3rd letters of Chad Hanson dated March 11th, 2005, Chad says your copies are mostly legible and that you "stand by" your production. Please confirm that you intend to try to obtain the Abbott microfiche for us as promised. If not, please produce a first-generation printout from the microfiche so that we are also able to read the lab notebooks.

  We also noted that, to date, no lab notebooks have been produced relating to the conception and reduction to practice of the alleged invention of the '281 patent. You confirmed that neither MIT nor the inventors are withholding any lab notebooks.

  We asked you to confirm that the Plaintiffs have conducted searches of their computerized records including searches of their e-mail archives and electronic document databases for responsive documents. You stated that you were unsure if this had been done but that you would complete a search and produce any responsive documents to us in two weeks. In addition, please provide us with the details of the completed searches (e.g. which databases were searched, search terms used, etc.).

  You confirmed that the Plaintiffs have produced all documents currently in Plaintiffs' possession relating to the contract between Damon and NCI.



You advised us that MIT had found portions of NIH Grant NIH-5-R01-AI17879-02, the original grant from NIH to MIT under which the technology underlying the '281 patent was developed, on microfiche, and that they would be produced. You also indicated that MIT was continuing to look for additional responsive documents on microfiche.

We asked that you please produce for inspection all contracts between MIT, Damon, or RepliGen and NCI or NIH in which MIT, Damon, or RepliGen made a reservation of intellectual property rights. You told us that RepliGen had found some responsive documents and will produce all contracts between RepliGen and NIH. In terms of the agreements between MIT and NIH or NCI, however, you claimed that there are thousands of these agreements. We agreed to make our request more specific. Therefore we request all contracts concerning or involving Susumu Tonegawa and Steven Gillies. We also request all contracts for goods and services where MIT, Damon, or RepliGen had pre-existing patent rights that would cover the subject matter of the contract in question.

You confirmed that RepliGen does not use this technology in the production of its Protein A or Secretin products.

MIT has not produced any agreements or contracts that it has had or currently has with Susumu Tonegawa and Steven Gillies (see ImClone's First Set of Requests for Documents and Things). You stated that no documents have been found.

In our letter of December 10th, we also pointed out that many of the documents concerning the prosecution of the '281 patent are still missing (see ImClone's Second Set of Requests for Document Things, Requests 40-42.) You stated that none of these documents have been found.

We asked that you advise as to whether RepliGen has received any further notice from the USPTO regarding their patent term extension application for the '281 patent. You said that you had not had any recent communication from the USPTO.

In our letter of February 9th, we also asked that you confirm whether or not the Federal government has responded to your request for information under the Freedom of Information Act. You advised us that the lawyers for the government have asked you to withdraw your FOIA request and that the government would produce all of the responsive documents only under your subpoena to NIH and NCI. You also stated that you expect to receive these documents soon and will send them to us when you receive them. What is the status of this production?

Neither of the Plaintiffs has produced documents responsive to Requests 24 through 31 and 46 of ImClone's Second Set of Requests for Documents and Things. Specifically, we ask that you produce all documents related to the '533, '653, '578, and '682 patents, including any and all contracts or agreements related to these patents. You stated that you had produced everything related to the '533 patent but that RepliGen continues to search for documents related to the other patents. What is the status of this production?

Michael J. Kane, Esq.
March 16, 2005
Page 4



      We asked that you please provide all documents reflecting the date the Plaintiffs first became aware of ImClone's possession of the C225 cell line and/or the date that the Plaintiffs had reason to believe that ImClone was possibly infringing the '281 patent. See ImClone's Second Set of Document Requests, Requests 53. You stated that you had no other documents to produce related to this request.

      Request 57 of ImClone's Second Set of Document Requests asked for organizational charts identifying all officers and employees of MIT, Damon, Abbott and RepliGen from 1980 to the present. You stated on several occasions that you would produce these documents, yet none have been produced to date. Of course, this would include organizational charts of Dr. Tonegawa's lab at MIT, the MIT Technology Transfer Office, and whichever department or office is responsible for records-keeping at MIT. You agreed to produce these documents.

      You agreed to produce the original of REP000532 so that we may inspect it. Please confirm that you will be bringing the original to the deposition of John Landes on March 30th.

      Generally, we have major concerns regarding the document production by MIT, particularly with respect to ImClone's Second Set of Document Requests. Their document production is clearly deficient. You confirmed that MIT has undertook a thorough search of its records and that the only documents to be produced were the documents referred to in items 5, 6, 15, and, possibly, 1 above. You did however also state that MIT continues to search through their microfiche records and will produce additional documents, if found.

      We received Ms. Rivard's CV on March 11th and will provide you with objections, if any, by March 25st. You confirmed that Ms. Rivard has not had access to any of ImClone's confidential documents.

      On March 15th, we asked that you clarify the scope of the subjects upon which you intend to depose Dr. Mendelsohn. You made it clear that you intend to depose Dr. Mendelsohn about issues that we feel are entirely irrelevant to this patent infringement case, namely his testimony before Congress. We object to this.

      You have also indicated that you intend to depose Sam Waksal. Since such a deposition will require you to seek approval from the Court, we will respond at that time.

      You also stated that Dan Witt will be available for us to depose on any Wednesday or Friday in April.

      You have not yet provided a date to us for the depositions of Susumu Tonegawa or Lita Nelson.

      Finally, we continued to be very concerned by the fact that you refuse to provide us with an un-redacted copy of the 2004 License Agreement between MIT and RepliGen. In our

Michael J. Kane, Esq.
March 16, 2005
Page 5



conference call of March 3rd, you stated that you would consult your client about this matter. Chad Hanson then sent us a letter on March 11th stating that you were not prepared to produce this document. We find it unusual then that yesterday, when we stated that we are prepared to file a motion to compel production, you stated that you wish to consult with your client once again. We feel that you are deliberately delaying the production of this highly relevant document. We ended the conversation on this matter by stating in no uncertain terms that we will seek relief from the Court if we do not receive an un-redacted copy of this document by 2 pm Eastern Time on March 18th, 2005.

Very truly yours,

KENYON & KENYON

Anthony Giaccio