# **<u>EXHIBIT B</u>**



**Kenyon & Kenyon**
Intellectual Property Law

**Anthony Giaccio**
Direct 212 908-6419
agiaccio@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

April 1, 2005

*Via Facsimile (612) 288-9696*
Chad A. Hanson
Fish & Richardson P.C., P.A.
3300 Dain Rauscher Plaza
60 South Street Minneapolis, Minnesota
55402

    Re:    *RepliGen and MIT v. ImClone Systems, Inc.*
           *USDC-D. Mass. (Boston) -Civil Action No. 04-108884-RGS*

Dear Chad:

        We write this letter to once again express our concerns with certain entries appearing on the privilege logs of MIT and RepliGen. After reviewing this letter, please let me know when you are available to meet and confer regarding these long-outstanding privilege log issues, as we intend to file a motion to compel each of the documents identified below if we cannot reach an agreement with you to resolve our issues. Please let me know which days next week that you are available for such a conference.

        Below is a general outline of our concerns, which is followed by a detailed discussion with regard to each privilege log entry with which we remain concerned:

        1.    By our count, a total of twenty-two (22) documents that were listed on your original privilege logs were removed from your supplemental privilege logs, but have not been produced to us. You have had over two months to produce these documents. Please produce them immediately or explain why you are continuing to withhold them.

        2.    Many entries in the supplemental privilege logs clearly do not comply with the Federal Rules, as the descriptions of the withheld documents are insufficient for us to ascertain the basis for your privilege assertion.

        3.    There are many documents that are listed on the privilege logs that simply do not appear to be privileged. These documents should be produced immediately.

        4.    There are a host of troubling discrepancies between the original and supplemental privilege logs for which we need an explanation.

Mr. Chad Hanson
April 1, 2005
Page 2



5.  Both privilege logs clearly contain errors, which we ask you to correct immediately.

6.  Both of your privilege logs fail to describe the form of each particular document (e.g. letter, memo, etc.) listed on the logs, which you should have done under the Federal Rules.

Our specific concerns are further outlined below.

### RepliGen's Supplemental Privileged Document Log

### Missing Entries:

You removed items from RepliGen's original privilege log, but did not produce these documents to us. For example, item 17 was removed from the original privilege log. This was a "communication" by Dana Wainrib "to file" dated March 21, 1988. Also, item 51 on RepliGen's original privilege log, a "communication" from Thomas J. Engellener, Esq. to R. Dana Ono, dated November 2, 1983, was likewise removed from the Supplemental Privilege Log. Please produce both of these document to us immediately.

### Entries 1 & 2:

There are no dates provided for these entries. We are unable to determine if your claim of attorney work product privilege is valid without knowing when these documents were generated. How can we (or you yourself for that matter) be sure that this document was produced in anticipation of litigation with ImClone? Without providing us with at least an approximate date as to when these documents were produced, your "descriptions" amount to nothing more than a blanket assertion of attorney work-product privilege. Please update your privilege log to provide the dates on which these documents were generated or retract your assertion of attorney work-product privilege.

### Entry 3:

This document is simply not privileged. There was no "joint" or "common interest" between (Karin Rivard of) MIT and (Daniel Witt of) RepliGen at the time this document was generated. RepliGen simply had absolutely no interest in this litigation at that time, but was a third party with no rights whatsoever. RepliGen only acquired an interest in this litigation when it signed it's License Agreement (the one which you have redacted) with MIT on May 4, 2004. Thus, your assertion of attorney work product privilege is untenable.

Likewise, Ms. Rivard was not acting as an attorney for RepliGen. There is, therefore, no attorney-client privilege attached to this document.

Mr. Chad Hanson
April 1, 2005
Page 3



Since no privilege whatsoever attaches to this document, we ask that you produce it immediately.

**Entries 4, 6, 7:**

From your descriptions, these entries are also not privileged. These documents were communicated from an employee of RepliGen to a third-party, namely Allan P. Jarvis, Jr. of Abbott. How then is it possible for you to assert attorney-client or attorney work product privilege over these documents? Please produce these documents.

We also disagree with your assertion that the attorney-work product privilege somehow attaches to these documents. Please explain what litigation it was in particular that these documents were prepared in anticipation of. It is our position that these documents were produced in the ordinary course of business and, therefore, the attorney work-product privilege does not apply.

**Entries 5, 8-13:**

RepliGen's original Privilege Log indicated that these documents were subject only to attorney-client privilege. Then, in RepliGen's Supplemental Privilege Log, RepliGen now indicates that these documents are apparently also subject to attorney work-product privilege.

Regardless, this assertion has the same problem related to your assertion of attorney work-product privilege discussed above. Please explain the particular litigation that these documents were prepared in anticipation of. Simply referring to "litigation involving the sale of Abbott Biotech" does not satisfy the Federal Rules.

Also, it is our understanding that Abbott Biotech was not in fact sold to RepliGen; only certain assets of Abbott Biotech were sold to RepliGen and RepliGen obtained a field-of-use license to the '281 patent. Please provide us with a more detailed explanation of what it is that you are referring to or produce these documents to us.

**Entries 15-17, 20:**

In response to our request to clarify your descriptions of the documents on RepliGen's original privilege log, you changed these entries from "…providing legal advice regarding patent issues" to "…providing legal advice regarding licensing issues for the '281 patent". We feel that this description remains inadequate and is merely a blanket assertion of privilege.

Indeed, this problem arises not only because of RepliGen's lack of description of these documents on the privilege logs, but also because you have repeatedly failed to respond to our requests to produce to us an organizational chart describing the positions and functions of the

Mr. Chad Hanson
April 1, 2005
Page 4



various Damon employees (not to mention organizational charts for MIT, RepliGen, and Abbott as well). See document request 57. We ask you, once again, to do so immediately so that we can avoid having to seek relief from the Court on that issue as well.

**Entries 21 and 23:**

These entries do not indicate that these documents were confidential. This may have been an oversight but we have noted that you were careful to designate all of your other entries as "confidential". Was this simply an oversight?

Of course, if these documents are not confidential, they cannot be protected by attorney-client privilege. Please amend your privilege log to indicate that these documents are confidential and were not therefore communicated to any third-party. Otherwise, please produce these documents.

Another problem with these entries is that they are not "communications." Note that this issue also arises with entries 19, 23, 32-36, 40-41, 43-44 on MIT's Supplementary Privilege Log as well.

**Entry 28:**

You indicate in RepliGen's supplemental privilege log that this communication was from Edmund Pitcher, Esq. to Anne Ephrussi of Harvard. It appears to us that Ms. Ephrussi is a third-party and that this communication is not subject to the attorney-client privilege. You do indicate that Ms. Ephrussi is formerly of MIT, however it is not clear as to why that is relevant.

Please clarify for us why you are claiming privilege with respect to this document. Was Ms. Ephrussi represented by Mr. Pitcher? What connection did she have to "patent prosecution issues for the '281 patent?" Please provide a more complete explanation for this entry or produce this document. It is our position that this document is not privileged based on the information you have presently provided to us.

**Entry 32 & 48:**

These entries in RepliGen's supplemental privilege log indicate that the author is Clare Wake of Damon. The descriptions of these entries describe Ms. Wake as a "patent liaison". However, once again, the lack of any organizational chart for Damon requires us to ask that you clarify Ms. Wake's position, role, and duties at Damon or simply produce these documents, as they do not appear privileged to us in any respect.

**Entries 33 & 34:**

Mr. Chad Hanson
April 1, 2005
Page 5



These entries contain the same date. Please confirm for us that these documents were both created on the same date, or that they are two copies of the same document. Alternatively, is this simply an error?

**Entry 35:**

The original RepliGen privilege log indicated that this communication took place on August 29, 1989. However, RepliGen's supplemental privilege log indicates that this communication took place on July 21, 1989. Please explain this discrepancy. Again, was this simply an error or have you switched these two documents on the logs?

**Entry 36:**

The original RepliGen privilege log indicated that this communication was authored by Clare Wake. The supplemental privilege log on the other hand indicates that Edmond Pitcher authored this document. Please explain this discrepancy. Again, was this simply another error on your part?

**Entries 37-41 & 49:**

These document were all internal communications between and among employees and in-house counsel of Abbott. How is it then that RepliGen is claiming attorney-client privilege over these documents? Furthermore, these communications cannot be confidential, as you assert, since they are now in the hands of RepliGen, a third-party. Even Abbott itself can no longer assert privilege over these documents.

Therefore, these documents are not privileged in any way and must be produced to us at once.

**Entries 39 & 40:**

These documents were created on the same date, by the same author, and addressed to the same parties. Has this entry been mistakenly included twice?

**Entry 41:**

The description for this entry indicates that the document relates to "chimeric antibody 14.18". Is this another term for the C225 antibody? Please explain.

Also, you assert attorney work-product privilege for this document, but fail to identify the specific litigation or potential litigation for which it was prepared. Please clarify this for us. Otherwise, it is our position that this document was produced in the ordinary course of business and attorney work-product privilege does not apply.

Mr. Chad Hanson
April 1, 2005
Page 6



Finally, it is not clear that this document was prepared for the purpose of providing legal advice, as you assert. Please provide us with an explanation of the role S. Weinstock, Esq. played at Abbott.

**Entry 44:**

Your original entry for this document on RepliGen's original privilege log indicated that someone named "W. Tsang" also received this document. However, RepliGen's supplemental privilege log indicates that this person did not receive this document. Please explain this error and confirm that W. Tsang was not a third-party. If he was a third-party and did receive a copy of this document, it is no longer confidential and therefore no longer protected by attorney-client privilege. If so, please produce this non-privileged document.

**Entry 46:**

Clearly, the date on this entry is incorrect. It is apparently an internal Damon communication made in 1997, almost seven years after Damon merged into Abbott Biotech. Please correct the date on this entry.

**Entry 47:**

RepliGen's supplemental privilege log indicates that a person named "W. Terry" also received this document. This person was not included on RepliGen's original privilege log, however. Please inform as to which log is in error.

## MIT's Supplemental Privileged Document Log

**Missing Entries:**

There are 20 entries from MIT's original privilege log that were removed from MIT's supplemental privilege log, but these documents were not produced to us. Other documents appear to have been added. Again, you have had almost two months to produce these removed documents to us. Please produce them immediately.

Mr. Chad Hanson
April 1, 2005
Page 7



**Entries 9-11:**

The entries for these documents (and for several others on your log) state that they are communications involving Patrea L. Pabst, Esq. of Kenway & Jenny, and that these communications were made for the purpose of "…providing legal advice regarding patent prosecution issues for the '281 patent." However, it also appears from your logs that the '281 patent prosecution was handled by the firms of Lahive & Cockfield and Testa, Hurwitz & Thibeault. Please explain how Ms. Pabst, whose firm was not involved in the prosecution of this patent, could have provided legal advice relating to its prosecution.

**Entries 19-20, 22-24:**

These entries include communications involving one "Paul J. Cook, Esq." Who is he and who is he affiliated with?

**Entry 26:**

This entry is undated and does not identify the author. Thus, we do not know how you can contend that it is "an intraoffice communication." Please explain.

**Entry 27:**

This entry is not privileged. MIT and Damon did not have a "joint and common" interest at the date that this document was produced. Please produce this document.

**Entries 29 & 31:**

We are unaware of the position that Jarmilla Hrbek occupied at MIT at the time this document was written. Please explain so that we can understand why you are asserting privilege over these documents. Also, as mentioned before, please produce the organizational charts that you have promised us so that we may, for example and among other necessary things, properly understand Ms. Hrbek's function at MIT.

**Entry 31:**

The description of this document differs considerably in the supplemental privilege log from the entry for the same document in the original MIT privilege log.. Please explain and indicate which one was in error.

**Entry 43:**

The description for this document in the supplemental privilege log denotes it as reflecting a communication from "Paul Quinn." Who is he and how is this document privileged?

Mr. Chad Hanson
April 1, 2005
Page 8



### Entry 46:

This document is not privileged in any way. Again, it is not subject to attorney-client privilege, since there was no joint or common interest when this document was created. It was also communicated to a third-party, so attorney-client privilege does not apply. Please produce this document immediately.

### Entry 48:

No date has been provided for this entry. Please provide one and explain your privilege assertion.

\* \* \*

We look forward to hearing from you with an explanation with regard to all of the above (or production of the identified documents) and a date next week on which you are available to meet and confer about these issues. We do not wish to file a motion to compel production of the above documents, but we will do so if you cannot satisfy our inquiries.

Very truly yours,

Anthony Giaccio