UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>Defendant. | Civil Action No. 04-10884-RGS |

**PLAINTIFFS' RESPONSE TO IMCLONE'S FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

This is a patent infringement case. Nonetheless, it is clear that ImClone will be doing everything in its power to shift the focus of this case to Plaintiffs' fee arrangements and Plaintiffs' "motivations and machinations" in bringing this lawsuit. (ImClone Br. at 5.) That explains why ImClone, without citing any caselaw whatsoever, has filed a Motion to Compel Production of information detailing how Plaintiffs RepliGen Corporation and Massachusetts Institute of Technology and their law firm have agreed to divide up any damages received from this lawsuit.

ImClone's failure to cite any authority supporting its position is not surprising, given the great weight of authority on this issue actually supports *Plaintiffs'* position that the type of evidence ImClone seeks is irrelevant. And while the parties have pled a number of claims and defenses in this case, not one of those claims or defenses relates to how Plaintiffs might split up a potential recovery. ImClone has not shown that the requested information is relevant to a claim or defense in this case as is required under Fed. R. Civ. P. 26, and for that reason, ImClone's motion should be denied.

## BACKGROUND

There are two provisions of the MIT-Repligen License Agreement at issue in this motion. First, ImClone seeks to compel production of a redacted half-page portion of Page 9 of the Agreement under the subheading "Recovery." Second, ImClone seeks to compel production of Plaintiffs' fee agreement with its counsel, which is reflected in Appendix "B" to the motion under a section entitled "Partial Contingent Fee Agreement."

As to the half-page portion on Page 9 of the agreement, ImClone is wrong in asserting that the section speaks to inventor compensation. That section of the agreement speaks only to how a potential damage award or settlement might be divided between the two Plaintiffs in this case, MIT and RepliGen, and the Plaintiffs' law firm, Fish & Richardson.[1] The redacted portion of the agreement does not, as ImClone claims, relate to or even discuss how the inventors of the patent-in-suit are to share in any recovery.[2] As discussed in the accompanying declarations submitted by Daniel Witt of Repligen and Karin Rivard from MIT, the inventors are not named or discussed in that section at all. (Witt Decl. ¶ 2, Rivard Decl. ¶ 2.) ImClone's claim that it "certainly has to the right to know if either [inventor] has an economic interest in the outcome of this litigation" is moot, as the redacted portion of the agreement ImClone seeks does not relate to the inventors' potential compensation.

---

[1] Should the Court wish to view the unredacted RepliGen-MIT license, Plaintiffs are willing to submit the unredacted license to the Court for an in camera inspection.

[2] While ImClone claims that Mr. Witt "suggested the possibility" of the inventors sharing in a recovery in his deposition, Mr. Witt simply testified that he had "no idea" of whether the inventors' names were on Page 9 of the License Agreement.

Plaintiffs have consistently asked ImClone to articulate why ImClone believes that the potential division of a damages award and Plaintiffs' fee agreement with their counsel is relevant to the claims and defenses in this case, and ImClone has offered little more by way of explanation to Plaintiffs than it has offered the Court in its brief – a vague assertion that ImClone believes the timing during which the license was entered into is somehow relevant, and that ImClone believes Plaintiffs' "motivations" for bringing suit are relevant. Plaintiffs unequivocally stated in letters dated March 11 and March 18 their disagreement with ImClone's position, and Plaintiffs have always maintained their position that neither the redacted portion of the License Agreement nor Plaintiffs' fee agreement with counsel are relevant to the claims or defenses of the parties (Exs. 9 and 11).

## ARGUMENT

### I. Courts Have Overwhelmingly Held That Evidence Relating To A Party's "Motivation" For Bringing A Lawsuit Is Not Relevant.

ImClone repeatedly claims that Plaintiffs' "overall motivation for the lawsuit" and Plaintiffs' "motivations and machinations for bringing this lawsuit" are fair game for discovery. (ImClone Br. at 1, 5, 7.) But ImClone makes only a passing attempt to explain how discovery relating to Plaintiffs' motivation for bringing suit is relevant to the claims or defenses of any of the parties to this litigation as required under Fed. R. Civ. P. 26(b).

As an initial matter, ImClone's unsupported claim that motivation evidence is "unquestionably relevant" is blatantly inconsistent with well-established precedent. *See, e.g. Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) ("The court's ruling that the motive of plaintiff in bringing the action is irrelevant is consistent with well-settled law." (*citing NAACP v. Button*, 371 U.S. 415 (1962); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958)). Another court declined to force witnesses to answer questions directed to plaintiff's instigation of the

3

lawsuit, holding that such testimony was irrelevant. *Foremost Promotions, Inc. v. Pabst Brewing Co.*, 15 F.R.D. 128, 129 (N.D. Ill. 1953).

This Court, following the reasoning in *Foremost*, granted a protective order to prevent the very type of discovery that ImClone is now seeking. In *Digital Equipment Corp. v. System Indus., Inc.*, 108 F.R.D. 742, 743-44 (D. Mass. 1986), Magistrate Judge Alexander held that a defendant's request to "inquire into the motive for instituting th[e] lawsuit" was improper:

> It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim. The responses might lead to embarrassing admissions of champerty or unconscionable arrangements as to fees and expenses, but these excesses are not in any way relevant to the trial of the particular issue.

108 F.R.D. at 744 (*citing Foremost Promotions, Inc.*, 15 F.R.D. at 130). Magistrate Judge Alexander further noted the "unambiguous and persuasive majority trend" in denying discovery into motivation evidence and, in granting Plaintiffs' motion for protective order, wrote that "this Court adopts the rationale of *Foremost* and the subsequent decisions predicated thereon." *Id.*

Although ImClone argues that Plaintiffs' motivation for bringing this lawsuit is somehow relevant to ImClone's implied license claim, that argument has been rejected as well. *See, e.g., AMP Inc. v. United States*, 389 F.2d 448, 451 n.3 (Ct. Cl. 1968) (holding that plaintiff's motive in acquiring patent "does not have any probative weight as to the legal issue of implied license.") And while ImClone claims that the redacted portion of the agreement is relevant to "the potential motivations and biases of key witnesses," that claim was apparently based on ImClone's misunderstanding that the redacted portion of the agreement contained a clause relating to inventors' compensation. The redacted portion of the agreement contains no such language.

Like the remainder of ImClone's assertions, ImClone's claim that full production of the "Recovery" section of the Licensing Agreement will "lead to the production of other

discoverable evidence concerning RepliGen's standing in the case" is unsupported by either facts or a cogent argument. Obviously, any questions regarding either MIT or RepliGen's standing to bring this suit are not answered by the "Recovery" section, but rather by examining at the provisions of the license in which rights are granted (Pages 3 and 4). Plaintiffs have produced the entire "Grant of Rights" portion of the agreement to ImClone in unredacted form, and that section of the agreement should be sufficient to answer any of ImClone's remaining questions about the standing of either Plaintiff to bring this lawsuit.

**II.    Plaintiffs' Fee Agreements Are Not Relevant To The Claims Or Defenses Of The Parties In This Case.**

ImClone has also sought production of Appendix "B" to the agreement, which is Plaintiffs' fee agreement with its counsel. In attempting to explain the relevance of Plaintiffs' fee agreement, ImClone again cites no authority, and instead argues simply that "even if the redacted information relates only to fee agreements, ImClone should be able to review that information to assess the motivations and possible biases of potential witnesses in the case." (ImClone Br. at 6.)

As with the issue of "motivation to sue" evidence, the weight of authority holds that discovery of fee agreements (including contingent fee agreements such as this one) is not permitted, at least in this stage of the litigation. In *Banks v. Office of Senate Sergeant at Arms*, 222 F.R.D. 7, 13 (D.D.C. 2004), the District of Columbia court laid out its reasoning for shielding fee agreements from discovery during the liability phase:

> Plaintiff refuses to produce his fee agreement with his counsel. While I agree that agreements as to fees are not privileged, they become relevant, at best, when plaintiff prevails and seeks a fee. Whether such agreements are discoverable . . . can wait until then.

5

*Id.* at 7; *see also Williams v. Kopko, Inc.*, 162 F.R.D. 670, 673 (D. Kan. 1995) (refusing to order production of contingent fee agreement, noting that the Court "can see no relevance to the disclosure of the full body of the agreement."); *Scutellaro v. The Walt Disney Co., Inc.*, 1993 WL 393003 (D. Del. Sept. 24, 1993) (denying production of fee agreement with counsel as premature).

Here, ImClone's only possible motivation in attempting to obtain information relating to Plaintiffs' fee agreement is that ImClone plans to later use that information in an attempt to smear Plaintiffs and their attorneys in front of the jury. Indeed, ImClone has told Plaintiffs' counsel that it intends to use the unredacted agreement as a trial exhibit. The fee agreement has nothing to do with the central issues that the jury needs to decide – namely, whether the '281 patent is valid and infringed – and ImClone's transparent efforts to obtain information relating to Plaintiffs' fee agreement with their counsel should be rejected.[3]

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny ImClone's First Motion to Compel Production of Documents.

---

[3] To the extent ImClone claims the fee agreement is relevant to ImClone's claim that this is an exceptional case, that claim is premature. A determination as to whether this case is exceptional within the meaning of the statute cannot be awarded until a "prevailing party" in the litigation has been determined. *See* 35 U.S.C. §285.

6

| | |
|---|---|
| Dated: May 6, 2005 | /s/ Michael J. Kane<br>Michael J. Kane (pro hac vice)<br><br>Gregory A. Madera (BBO #313,020)<br>FISH & RICHARDSON P.C.<br>225 Franklin Street<br>Boston, MA  02110-2804<br>Telephone:  (617) 542-5070<br>Facsimile:  (617) 542-8906<br><br>Jonathan E. Singer<br>Michael J. Kane<br>Chad A. Hanson<br>William R. Woodford<br>FISH & RICHARDSON P.C., P.A.<br>3300 Dain Rauscher Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Telephone:  (612) 335-5070<br>Facsimile:  (612) 288-9696<br><br>Juanita R. Brooks<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego. CA  92130<br>Telephone:  (858) 678-5070<br>Facsimile:  (858) 678-509<br><br>Attorneys for Plaintiffs<br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY AND REPLIGEN CORPORATION |

4D947A5D.DOC