UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS INC.,<br><br>Defendant. | Civil Action No.  04 10884 RGS |

**IMCLONE'S OPPOSITION TO PLAINTIFFS' FOURTH MOTION TO COMPEL DISCOVERY FROM IMCLONE**

Defendant Imclone Systems Inc. ("ImClone") opposes Plaintiffs' Fourth Motion to Compel Discovery from ImClone on the grounds that the topics at issue in Plaintiffs' Rule 30(b)(6) deposition notice of ImClone violate Rule 30(b)(6) and Rule 26(b) in that they are overbroad, irrelevant or duplicative of Plaintiffs' earlier interrogatories.

On July 1, 2005, Plaintiffs served their Amended 30(b)(6) Notice containing 18 topics, many of which had already been covered in Plaintiffs' interrogatories. In response, ImClone properly objected to a number of the topics on various grounds.  First, as drafted, it would be impossible for witnesses to sufficiently familiarize themselves with all the facts necessary to testify as to the full scope of a number of those topics.  Second, ImClone properly objected to the discovery sought with respect to a number of these topics as irrelevant to any claim in this action.

Finally, ImClone objected to the discovery sought by certain topics as having already been provided in ImClone's responses to Plaintiff's interrogatories.[1]

In a good faith effort to resolve this issue, ImClone met and conferred with Plaintiffs' counsel on July 27th to discuss these topics. During that conference, Plaintiffs' counsel agreed to restrict the scope on a number of the objectionable topics which allowed ImClone to designate witnesses for those topics. However, for several topics which are at issue in this motion, Plaintiffs refused to either identify with reasonable specificity the discovery sought, or to limit the topics to relevant information. Also, with respect to two topics that ImClone has already provided detailed information in responses to Plaintiffs' contention interrogatories, Plaintiffs refused to withdraw its request for witnesses on these topics.

For the reasons detailed below, ImClone respectfully requests that the Court deny Plaintiffs' Fourth Motion to Compel in its entirety.

**ARGUMENT**

The topics which are the subject of the pending motion to compel suffer from one or more basic infirmities. First, certain topics do not satisfy the requirement of Rule 30(b)(6) that the topics be described with "reasonable particularity." Second, some topics are directed towards information not relevant to any claim or defense in this action in violation of the requirements of Fed. R. Civ. P. 26(b). Finally, a number of these topics are duplicative of contention interrogatories to which ImClone has fully responded.

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides that:

---

[1] ImClone does not address the noisy rhetoric in Plaintiff's opening paragraphs, but needless to say, strongly disagrees with its accusations of discovery obstruction. Also, by agreement and contrary to Plaintiff's misstatement, fact discovery is continuing into September and expert discovery has been extended until November 16, 2005.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation…and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers or directors, or managing agents, or other persons who consent to testify on its behalf[.]

Fed. R. Civ. P. 30(b)(6).

Rule 30(b)(6) places obligations on both parties: "the effectiveness of the Rule [30(b)(6)] bears heavily upon the parties' reciprocal obligations." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000). While the noticed party does have a duty to produce a witness familiar with the subject matter of a proper topic, Rule 30(b)(6) also reciprocally requires that the topics be described "with reasonable particularity." As the court pointed out in *Prokosch*:

> [A] corporation should not be confronted with a seemingly endless sequence of depositions which necessarily interfere with the capacity of its officers and employees to properly discharge their employment duties, and which imposes substantial financial costs.
> Accordingly, to allow the rule to effectively function, the requesting party must take care to designate, with *painstaking specificity*, the particular subject areas that are intended to be questioned, and *that are relevant to the issues in dispute.*

*Id.* at **15. (emphasis added, citations omitted).

Unless Plaintiffs clarify the scope of these topics with "reasonably particularity," ImClone cannot possibly comply with its duty to provide a prepared witness. During the meet-and-confer between the parties on July 27, ImClone repeatedly requested that Plaintiffs more specifically define the scope of their requests. Plaintiffs narrowed or clarified the scope of some topics, and ImClone designated witnesses accordingly.[2] With respect to the topics at issue

---

[2] During this same meet and confer, ImClone discussed its pending Rule 30(b)(6) topics and Plaintiffs' objections and refusal to provide witnesses on 18 of 38 topics. Plaintiffs' refusal to reconsider even one of those 18 topics is telling, considering that Plaintiff asserted many of the same objections that it now contends are improperly asserted by ImClone. (See O'Hara Decl. Exhibits A through D).

3

Plaintiffs have refused to appropriately specify what testimony is sought to allow ImClone to prepare and present an appropriate witness.

A second fundamental problem with a number of Plaintiffs' topics at issue is that they are not relevant to any issue in this action and, thus, do not comply with Fed. R. Civ. P. 26(b)(1). As the court in *Prokosch* noted:

> This often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear on the issues of the case.

*Id.* at **4. (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992)).

The court in *Prokosch* went on to state that:

> Therefore, despite the liberality of discovery, "we will remain reluctant to allow any party to 'roam in the shadow of relevancy and to explore matter which does not appear germane on the theory that it may conceivably become so.'"

*Id.* at **4. (citations omitted).

The topics upon which Plaintiffs may examine ImClone must, at the very least, have some relevance to the claims or defenses in the case. As discussed in detail below, a number of Plaintiffs' topics that are the subject of the pending motion are exclusively directed toward wholly irrelevant subject matter.

Finally, several of Plaintiffs' topics have been thoroughly and more properly addressed through ImClone's responses to Plaintiffs' contention interrogatories. Undoubtedly, it is black letter law that Courts may allow parties to answer contention interrogatories in lieu of participating in Rule 30(b)(6) depositions: Fed. R. Civ. P. 1 states that the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action," while Federal Rule 26(c) permit courts to "make *any order* which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

4

expense, including [an order]…that discovery may be had only by a method of discovery other than that selected by the party seeking discovery." (emphasis added) Whether contention interrogatories are more appropriate than Rule 30(b)(6) depositions "will be a case by case factual determination." *Taylor*, 166 F.R.D. at 363 n.7. In making this determination, the Court should determine "which device would yield most reliably and be the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this." *McCormick-Morgan*, 134 F.R.D. at 286.

Where an interrogatory is a more appropriate vehicle for efficient discovery, that is the means that should be utilized. For specific topics addressed below, it would be unduly burdensome and unnecessary for ImClone to prepare a 30(b)(6) witness on those topics that have already been addressed at length through interrogatories.[3] The waste of a potential witness's time to provide the *exact same* testimony as has already been provided through an interrogatory is the height of inefficiency. Indeed, as we highlight below, Plaintiffs have taken the identical position with respect to a number of ImClone's 30(b)(6)topics.

ImClone's argument with respect to the specific topics at issue follows:

**Topic 2: Communications between ImClone and the National Cancer Institute and/or the National Institute of Health regarding the C225 cell line.**

This topic clearly exemplifies the breadth and lack of particularity in Plaintiff's Rule 30(b)(6) topics. ImClone has had "communications" with the NCI and NIH relating to the C225 cell line over the past 15 years, beginning in the early 1990's. In fact, most of ImClone's communications with these entities have related in some manner to the C225 cell line and the antibody produced by the C225 cell line. Moreover, since the early 1990's, most of the ImClone

---

[3] Plaintiffs make the unsubstantiated claim on page 8 of their Memorandum that ImClone's interrogatory responses do not satisfy the Local Rules. ImClone strenuously opposes this claim and has attached its Supplemental Interrogatory Responses (O'Hara Decl. Exhibit F) should the Court wish to examine them.

5

employees involved in these communications have left ImClone. Indeed, Plaintiffs have already deposed the former ImClone employees who had the most contact with these entities.[4]

ImClone has requested that Plaintiffs more particularly define this topic by specifying, for example, particular subject matter, particular letters or communications, etc. Plaintiffs have refused to do so which makes it impossible for ImClone to adequately prepare any current ImClone employee to testify about 15 years of communications.[5] Plaintiffs are disingenuous in their argument on this topic (See Memorandum at p.3), when they identify for the first time, an example of the specific information they seek, namely, ImClone's acquisition of the C225 cell line from the NCI. As Plaintiffs already know, the source of ImClone's C225 cell line has never been an issue. ImClone has provided the details of how and when it acquired the C225 cell line in its responses to interrogatories and in numerous fact depositions. (*See generally* O'Hara Decl. Exhibit F, Interrogatory Response No. 5). Nevertheless, had Plaintiff narrowed Topic 2 to that specific issue during the meet and confer, there would be no motion on this topic -- ImClone would have designated a witness.

**Topic 12: All negotiations of patent licenses or potential patent licenses for the manufacture and sale of Erbitux, including negotiations that failed to result in a patent license.**

As with Topic 2 above, this topic does not state with "reasonable particularity" the information it seeks concerning a substantial number of licenses and license negotiations covering the past 15 years. As discussed above with respect to Topic 2, there is no one

---

[4] For example, Harlan Waksal, John Gilly, John Landes, and Irving Feit – none of whom are currently employed by ImClone.

[5] Most of the ImClone employees who would have had any communications with the NIH or NCI in the early 1990's are no longer with the company. Accordingly, it would be necessary to familiarize a current employee with respect to such communications, an enormous task in the absence of any definition of what is sought by Plaintiffs.

individual presently at ImClone who would have knowledge with respect to all of these negotiations. Given the lack of specificity of this request and the unavailability of one individual with substantial knowledge of all such license negotiations, it would be necessary for ImClone to identify a witness to review, study and investigate 15 years of negotiations to be in position to testify on this topic, an enormously burdensome task. Without the required specificity in this topic, e.g., specific licenses, royalty rates, etc. it is nearly impossible for ImClone to prepare a witness to testify with respect to *all* licenses and negotiations. Further, to the extent any individuals have knowledge of these negotiations, they have already been, or are scheduled to be, deposed as fact witnesses.

Finally, this topic is overly broad in that it seeks discovery irrelevant to any claim in this litigation. Plaintiffs are asserting the '281 patent that allegedly covers a biological product that is used in the production of Erbitux (the C225 cell line). Contrary to Plaintiffs' present misstatements (See Memorandum at p.6-7), Plaintiffs have never alleged that ImClone's Erbitux product infringes the '281 patent. Nevertheless, ImClone has produced numerous documents related to its licenses and negotiation of licenses on other patents concerning its Erbitux product. Plaintiffs rely on *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) for allegedly supporting the relevance of these unrelated license negotiations. But, the only factor in *Georgia-Pacific* related to the issue of licenses unrelated to the patent in suit concern "the rates paid by the licensee [ImClone] for the use of other patents comparable to the patent in suit." *Id.* at 1120. The patent licensing documents that ImClone has produced show the royalty rates ImClone is paying under these licenses. To the extent that Topic 12, as drafted, extends to *all* negotiations of all patent licenses and is not restricted to relevant subject matter, such as royalty rates, it is clearly overbroad. Moreover, Plaintiffs have already taken the

deposition of Michael Howerton, ImClone's CFO who has testified regarding the various licenses and royalty rates which ImClone makes payments on in relation to the manufacture and sale of Erbitux. ImClone had designated Mr. Howerton to provide 30(b)(6) testimony regarding these costs (See O'Hara Decl., Exhibit E, Topic 9). There is no additional relevant discovery remaining for this topic.

> **Topic 14: Facts concerning ImClone's defenses under the doctrines of laches and estoppel including the following:**
> **(a) ImClone's allegation that Plaintiffs knew that ImClone was in the possession of C225 as early as 1993;**
> **(b) ImClone's allegation that Repligen accused ImClone of infringing the '281 patent and identification of the individuals involved in these alleged accusations;**
> **(c) The license of the '281 patent allegedly offered to ImClone by Repligen and any discussions of the license offer;**
> **(d) ImClone's alleged inference that Plaintiffs had abandoned its claims against ImClone; and**
> **(e) ImClone's alleged prejudice.**

This topic embraces the same discovery requested in Plaintiffs' contention Interrogatories 3, and 4, and, to that extent, is duplicative. ImClone has provided its complete corporate position regarding the facts concerning these issues in multiple responses to interrogatories. (See O'Hara Decl. Exhibit F). Plaintiffs have failed to identify any discovery that is lacking in ImClone's interrogatory responses or other discovery provided to date, so as to enable ImClone to prepare a witness to provide the company's testimony. Rather, Plaintiffs' argument now seems to be that they are entitled to a Rule 30(b)(6) witness despite the fact that they have obtained the discovery they seek from another more convenient, less burdensome source. This is in stark contrast to the position Plaintiffs have taken in response to a number of ImClone's Rule 30(b)(6) topics. As one example, ImClone's Topic 12 requests:

> 12.     The basis for Plaintiffs' contention that they possess intellectual property rights in material(s) that were produced by Damon for NCI under Master Agreement Order N01-CM-87253-01.

8

In refusing to designate a witness, Plaintiff stated:

> Repligen objects to topics 12 and 13 to the extent they seek a legal interpretation of statutes or the application of law to facts, which is inappropriate in a Rule 30(b0(6) deposition. *Repligen also objects to topics 12 and 13 as duplicative and cumulative in that the information sought has already been provided to ImClone in Plaintiffs' answers to ImClone's interrogatories. Repligen will not make a witness available to testify on these topics.*

(See O'Hara Decl. Exhibit B)

Plaintiffs should not be heard to argue that they are entitled to duplicative discovery through interrogatories and depositions at the same time they deny ImClone's request for the same.

**Topic 15: Facts concerning ImClone's defense to Plaintiffs' claim of willful infringement.**
**Topic 17: The advice of counsel defense raised by ImClone in its letter to Plaintiffs' counsel dated April 29, 2005.**

Both of these topics concern ImClone's advice of counsel defense to Plaintiffs' claim of willful infringement. With respect to the facts underlying these issues, ImClone has waived privilege with respect to counsel's opinions as they relate to the issue of patent exhaustion and has produced its opinions of counsel. In addition, as with topic 14 above, ImClone has set forth the basis for its defense in its detailed responses to Interrogatories 5 and 9 (O'Hara Decl. Exhibit F). Moreover, Plaintiffs have taken the deposition of ImClone's opinion counsel as well as the corporate recipients of the opinions. In fact, ImClone has agreed to make these same witnesses available for a second deposition in the coming weeks. What further information Plaintiffs seek from ImClone on this topic is unclear, and, in any event, would be duplicative of discovery ImClone has already provided through interrogatory responses and deposition testimony.

9

**Topic 16: ImClone's dealings with MRC collaborative center.**

Plaintiffs rely upon their letter of August 2nd, 2005 (O'Hara Decl. Exhibit G) in an attempt to salvage this overly broad request. However, this letter is insufficient in setting forth the relevance of such testimony. Plaintiffs state that they "will focus our questioning on ImClone's dealings with MRC regarding its attempt to re-express C225, the contract sequencing it performed on ImClone's behalf, its attempt to humanize the 225 antibody, and its consulting regarding the '281 patent."

MRC is a specialized research facility located in the United Kingdom that worked and consulted on various projects for ImClone over the years. However, none of those projects ever resulted in the creation of any commercial product let alone the Eribtux product at issue in this case. As there is no dispute that ImClone uses the C225 cell line it obtained from NCI to produce Erbitux (in fact, this is the sole basis for Plaintiffs' allegations of infringement in this case), these research projects are absolutely and entirely irrelevant.

Finally, with respect to the issue of consulting performed between MRC and ImClone relating to the '281 patent, this information was gathered by ImClone's in-house counsel in connection with potential litigation with respect to the '281 patent. Accordingly, ImClone's corporate knowledge regarding this issue is covered by the attorney work product privilege. In fact, this Court has already ruled as such in its rejection of Plaintiffs' Third Motion to Compel (O'Hara Decl. Exhibits H and I).

## **CONCLUSION**

For all the reasons set forth above, ImClone respectfully requests that the Court deny Plaintiffs' Fourth Motion to Compel in its entirety.

                                                IMCLONE SYSTEMS, INC.
                                                By its Attorneys,

Dated: August 24, 2005                          /s/ Michael R. Gottfried
                                                Michael R. Gottfried (BBO# 542156)
                                                Anthony J. Fitzpatrick (BBO# 564324)
                                                Christopher S. Kroon (BBO# 660286)
                                                DUANE MORRIS LLP
                                                470 Atlantic Avenue, Suite 500
                                                Boston, Massachusetts 02110
                                                Tel: (617) 289-9200
                                                Fax: (617) 289-9201

                                                Michael D. Loughnane
                                                Paul M. Richter
                                                Antony Pfeffer
                                                Anthony Giaccio
                                                KENYON & KENYON
                                                One Broadway
                                                New York, NY 10004-1050
                                                Tel: (212) 425-7200
                                                Fax: (212) 425-5288
                                                Attorneys for Defendant
                                                ImClone Systems, Inc.