KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

Attorneys for Defendant
ImClone Systems, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>IMCLONE SYSTEMS INC.,<br><br>　　　　　　　　　Defendant. | Civil Action No. 04 10884 RGS |

### AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF MIT

TO:
FISH & RICHARDSON
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN
55402

Attorneys for Plaintiffs RepliGen Corp. and MIT

COUNSEL:

　　　　PLEASE TAKE NOTICE that defendant, ImClone Systems Incorporated ("ImClone") will take the depositions of Massachusetts Institute of Technology ("MIT") commencing on **July 29, 2005** on the categories listed in Schedule A attached hereto at 9:00 a.m. and continuing from day to day thereafter until completed, at the offices of Kenyon & Kenyon,

One Broadway, New York, New York, or such other time and location as may be mutually agreed to by counsel, before a Notary Public or other officer duly authorized to administer oaths.

NOTICE IS HEREBY GIVEN that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Abbott is required to designate one or more appropriate persons to testify on its behalf with respect to each of the matters set forth in Schedule A attached hereto, and the person(s) so designated shall be required to testify as to each of those matters known or reasonably available to the corporation. The person(s) so designated is required to bring all documents related to the subject matter set forth in Schedule A.

The depositions will be recorded stenographically, by audio tape(s), and/or by video tape(s). You are invited to attend and cross-examine.

DATED: July 15, 2005

By: Michael R. Gottfried, BBO 542156
Anthony J. Fitzpatrick, BBO 564324
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 022 10
Tel: (617) 289-9200
Fax: (617) 289-9201

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Anthony Giaccio
KENYON & KENYON
One Broadway
New York, NY 10004-1050
Tel: (212) 425-7200
Fax: (212) 425-5288

*Attorneys for Defendant ImClone Systems Incorporated*

## SCHEDULE A

A. "MIT" means and refers to Massachusetts Institute of Technology, its officers, directors, trustees, employees, counsel, agents, representatives, or other Persons under its control, and is meant to include, without limitation, any predecessor-in-interest, successor, division or subsidiary;

B. "Repligen" means and refers to Repligen Corporation, its officers, directors, employees, counsel, agents, representatives, or other Persons under its control, and is meant to include, without limitation, any predecessor-in-interest including, but not limited to, Damon Biotech, Inc., Damon Corp., and any successor, and any division or subsidiary thereof;

C. "Damon" means and refers to Damon Corporation and Damon Biotech, Inc., its officers, directors, employees, counsel, agents, representatives, or other Persons under its control, and is meant to include, without limitation, any predecessor-in-interest, successor, division or subsidiary;

D. "Abbott" means and refers to Abbot Laboratories and Abbott Biotech, its officers, directors, employees, counsel, agents, representatives, or other Persons under its control, and is meant to include, without limitation, any predecessor-in-interest, successor, division or subsidiary;

E. "NIH" means and refers to the U.S. National Institutes of Health;

F. "NCI" means and refers to the National Cancer Institute, a federal agency within the NIH;

G. "'281 patent" means and refers to U.S. Patent No. 4,663,281, U.S. Patent Application No. 592,231, and any and all related patents and any and all related patent applications;

H. "NIH" means the National Institute of Health;

I. "The MAA" means Master Agreement Announcement No. NCI-CM-87253-48, issued by NCI on January 22, 1988;

J. "The First RFP" means Request for Proposal NCI-CM-87253-48;

K. "The MA Proposal" means Damon's Technical and Business Proposal submitted to the NCI in response to The First RFP;

L. "The MA" means the Master Agreement N01-CM-87253-48;

M. "The Second RFP" means Request for Proposal MAO/RFP NCI-CM-87253-48 MAO #01;

N. The MAO Proposal" means Damon's Technical and Business Proposal submitted to the NCI in response to The Second RFP;

O. "The MAO" means Master Agreement Order N01-CM-87253-01;

P. "The 1987 License Agreement" means the 1987 license agreement between MIT and Damon for the '281 patent.

## Categories of Testimony

1. All communications between MIT, and Damon, Abbott, RepliGen, ImClone, or the United States Government concerning the '281 patent from 1980 until present.

2. The terms of the license given to the US government by MIT for the '281 patent.

3. The current terms of licenses presently given to the US government for technology developed with federal funding.

4. The factual basis for Plaintiffs' contention in Plaintiffs' Response to Interrogatory No. 2 that the Bayh-Dole Act (35 USC 200-212) would have precluded NIH from obtaining a license broader than the pre-existing license based upon the original NIH grant to MIT unless the NIH followed a "very specific and public process for obtaining rights to such a non-subject invention (the '281 patent)", including specifically what that "public process" might be.

5. The invention of US patent No. 4,663,281, including but not limited to:

   a. It's conception and reduction to practice, including the whereabouts of the lab notebooks that were produced during this time;

   b. The invention disclosure;

   c. Any testing or experimentation;

   d. Communications between the inventors;

   e. The prosecution of the '281 patent;

   f. Communications with others, including Vernon Oi and Sherie Morrison;

   g. Any publications related to the invention.

6. Prior art to the '281 patent, including but not limited to prior art cited on the face of the '281 patent and the inventorship of the '281 patent, including any decisions on the inventorship.

7. The Patent Term Extension application for the '281 patent, including but not limited to:

   a. ImClone's alleged "agency relationship" with MIT for the purposes of pursuing the Patent Term Extension Application;

   b. MIT's communications and dealings with RepliGen, Abbott, Susumu Tonegawa, and Steven Gillies concerning the Patent Term Extension Application; and

    c. RepliGen's alleged "agency relationship" with MIT for the purposes of pursuing the Patent Term Extension Application.

8. Licensing of the '281 patent, including but not limited to:

    a. Any license between MIT and Damon, Abbott, RepliGen or any other party;

    b. Any sublicense(s) between Damon and any other party;

    c. Any sublicense(s) between Abbott and RepliGen or any other party;

    d. Any amendments to or communication concerning any licensing or sublicensing agreements;

    e. Any and all parties who expressed interest in licensing the '281 patent;

    f. Any communications between MIT and Abbott concerning potential sublicensees or infringers;

    g. The scope of Damon's, Abbott's, RepliGen's, and MIT's rights in the '281 patent from 1990 until present;

    h. The May, 2004 License Agreement of the '281 patent between RepliGen and MIT, including any discussions between MIT, RepliGen, Susumu Tonegawa, and Stephen Gillies leading up to this agreement and the terms of the agreements.

    i. MIT's 2004 communications with Abbott concerning the attempted termination of the licensing agreement for the '281 patent and the resolution of that issue.

9. The respective rights concerning efforts to enforce the '281 patent from 1984 until present by MIT, Damon, Abbott, and RepliGen.

10. Recovery for infringement of the '281 patent, including but not limited to the allocation of any damage award.

11. Payments made by Damon, Abbot, or RepliGen to MIT in relation to the '281 patent, including Royalty payments.

12. Payments made to Susumu Tonegawa or Steven Gillies in relation to the '281 patent, including Royalty payments.

13. The factual and/or contractual basis for Plaintiffs' contention that NCI or NIH did not have a license to the '281 patent to sell or distribute the material(s) covered by the '281 patent such as but not limited to the material(s) produced under Master Agreement Order N01-CM-87253-01.

14. Contracts between MIT and NCI, NIH, or any other federal agency concerning or relating to the '281 patent technology, including any and all solicitations, proposals, awards, appendices, addenda, attachments, and amendments thereof.

15. The factual basis for MIT's claim, if any, to property rights in the material(s) produced by Damon for NCI under Master Agreement Order N01-CM-87253-01.

16. MIT's efforts to produce documents, including documents responsive to ImClone's First, Second, and Third Sets of Requests for Documents and Things, including the details of searches of electronic document and email archives, documents requested at the depositions of Lita Nelsen and Daniel Witt, and documents requested by counsel.

17. The decision by MIT to terminate the 1987 License Agreement with Abbott for the '281 patent, including:

    a. All communication with Abbott concerning the termination;

    b. The persons at MIT responsible at MIT for the decision to terminate the 1987 License Agreement;

    c. The reasons for the termination.

18. Each analysis, evaluation, or test of any kind directed to determining whether any material made, used, or sold by ImClone (including the cell line used by ImClone to make the C225 antibody) falls within the scope of any claim of the '281 patent and any document that refers or relates to it.

19. Responses to all interrogatories.