UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>　　　　　Defendant. | Civil Action No. 04-10884-RGS<br><br>**FILED UNDER SEAL** |

**MEMORANDUM OF REASONS IN SUPPORT OF PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY FROM IMCLONE**

### INTRODUCTION

Consistent with its strategy of "hiding the ball" in discovery, ImClone refuses to produce documents that go to the heart of this case. ImClone claims these documents are protected under the attorney-client privilege and/or attorney work-product immunity, but after numerous opportunities, has failed to establish that either privilege applies.

Many of the disputed documents are memoranda to "File" written by John Landes, ImClone's former in-house counsel. Initially, ImClone claimed that the Landes memos were protected under the work-product doctrine. But when pressed to substantiate its privilege claims, ImClone reversed course. ImClone dropped its contention that the work-product doctrine applied and switch to the attorney-client privilege—even though these documents are not communications and, thus, cannot qualify for protection.

ImClone also claims attorney-client privilege and work-product protection for communications between two scientists—one at ImClone and the other at the Medical Research Council ("MRC"), a British firm that provides technical and research services. Because these

communications were conducted by scientists and there is no attorney-client relationship between ImClone and MRC, ImClone's claim of attorney-client privilege is dead on arrival.

ImClone's work product claim for the MRC documents suffers a similar fate. According to ImClone's log, the MRC communications concern the "ownership and rights to the C225 cell line" or the "ownership of C225"—issues at the heart of this lawsuit. However, the C225 antibody and C225 cell line were created by Damon Biotech under a contract with the National Cancer Institute ("NCI"). How a British research organization, not involved in the transaction between Damon Biotech and NCI, could have anything to say about the ownership of the C225 antibody or the C225 cell line is entirely unexplained. The only logical conclusion is that ImClone has contrived its privilege claims to avoid the production of these documents.

The problems with ImClone's privilege claims were raised by Plaintiffs months ago. With discovery nearing its end, Plaintiffs asked ImClone to provide a 30(b)(6) witness regarding its privilege log to determine once and for all whether ImClone could establish its privilege claims. ImClone refused, but said it would respond to any of Plaintiffs' concerns. Playing along, Plaintiffs sent ImClone a final letter that once again set forth the deficiencies in ImClone's privilege claims. ImClone did not respond, which left Plaintiffs no choice but to file the instant motion to resolve the issue before the end of fact discovery.

## ARGUMENT

**A.    Plaintiffs Have Repeatedly Identified the Deficiencies in ImClone's Privilege Claims, But ImClone Refuses to Produce the Documents at Issue.**

On November 17, 2004, Plaintiffs received ImClone's first privilege log, which contained entries for 120 documents ImClone contends are protected by the attorney-client privilege and/or

attorney work-product immunity. (Woodford Decl. Ex. A.)[1] While ImClone's log identified the claimed privilege for every entry (with the exception of entry 24), the log failed to explain how the privilege applied to each document as required. (*Id.*) For example, eleven documents at issue in the instant motion (entries 8, 9, 13, 23, 24, 77, 79, 92, 94, 100, and 119) are memoranda authored by ImClone's in-house attorney John Landes for his "File." (*Id.*) ImClone claimed that the Landes memos were protected under the attorney-work product doctrine, but failed to identify an actual or impending litigation that formed the basis of its claim. (*Id.*) ImClone also claimed protection under the attorney-client privilege for a memo (entry 82) authored by Dr. John Gilly, ImClone's Vice President of Biopharmaceutical Operations, even though the memo was neither sent nor received by an attorney. (*Id.*)

In a four-page letter dated January 31, 2005, Plaintiffs identified the deficiencies in ImClone's privilege claims for the twelve documents at issue here, as well as scores of others. (Ex. B.) Plaintiffs asked ImClone to produce these documents by February 14, 2005, and in the event that ImClone was unwilling or unable to comply, requested a discovery conference to meet and confer on the issue. (*Id.* at 1.) ImClone did not produce the documents, but agreed to meet and confer on February 14. (Ex. C at 1.)

On February 24, 2005, the parties conferred and ImClone agreed to provide a revised privilege log.[2] (Ex. D at 1.) Plaintiffs received ImClone's revised log on March 4. (Ex. E.) ImClone, however, failed to resolve the log's deficiencies. Instead, ImClone abandoned its privilege claim under the attorney work-product doctrine for nine of the eleven Landes memos to

---

[1] All exhibits cited herein are attached to the Declaration of William R. Woodford in Support of Plaintiffs' Third Motion to Compel Discovery from ImClone filed herewith.

[2] The various discovery conferences referenced in this memorandum occurred during business hours and lasted anywhere from a few minutes to an hour or more. On these calls, Michael Kane and Chad Hanson represented MIT and Repligen, and one or more of Richard DeLucia, Paul Richter, Jr., Michael Loughnane, and Anthony Giaccio represented ImClone.

"File" (entries 8, 9, 13, 23, 24, 77, 79, 92 and 94)—and now alleges the basis of protection is the attorney-client privilege, even though the memos were never communicated to anyone. (*Id.*) ImClone's revised log also included fifteen new documents that are responsive to document requests from July 2004, but did not appear in the first log. (*Id.*) Three of the new documents are Landes memos (entries 123, 126, and 127) that were never communicated to anyone, but as with the others, ImClone contends are protected under the attorney-client privilege. (*Id.*) Three other documents (121, 132, and 133) are communications between individuals at ImClone and a scientist at MRC of London, England. (*Id.*) Despite the fact that none of the individuals involved in these communications were attorneys, and MRC was merely a business partner that supplied technical and research services, ImClone's log claims these documents are protected under both the attorney-client privilege and attorney work-product doctrine. (*Id.*)

On March 11, Plaintiffs sent another letter to ImClone that addressed some of the changes in its revised log—namely the switch in privilege claims for the Landes memos and the improper inclusion of communications with MRC. (Ex. F at 2.) Plaintiffs once again requested production of these documents. (*Id.*) To resolve the dispute over ImClone's privilege log once and for all, on March 15, Plaintiffs served a 30(b)(6) deposition notice on ImClone with a single topic—"the sufficiency of ImClone's claims to attorney-client privilege and attorney work-product immunity on its privilege logs." (Ex. G.) Because ImClone had not responded to the deposition notice, Plaintiffs inquired as to whether ImClone was planning to identify its corporate designee before the April 1 deposition. (Ex. H.) Later that day, ImClone indicated it would not provide a witness in response to Plaintiffs' deposition notice. (Ex. I.)

Although Plaintiffs had identified the problems with ImClone's privilege log entries numerous times in the past, on March 25, Plaintiffs sent yet another letter outlining the

deficiencies in ImClone's log. (Ex. J.) Because John Landes's deposition was only five days away, Plaintiffs asked ImClone to immediately produce the Landes memos and the other documents at issue. (*Id.*) ImClone, once again, refused to produce the requested documents and refused to address the issues raised by Plaintiffs.

The fact remains that ImClone's privilege log entries for eighteen documents—namely, fourteen Landes memos (entries 8, 9, 13, 23, 24, 77, 79, 92, 94, 100, 119, 123, 126, and 127), the Gilly memo (entry 82), and three communications with MRC (entries 121, 132, and 133)—each fail to establish a proper claim under the attorney-client and/or attorney work-product privileges. Because ImClone has refused to produce these documents after repeated requests, and has refused to comply with Plaintiffs' deposition notice on the topic of its privilege log entries, Plaintiffs have no choice but to move the Court for an order to compel production.

    **B.    ImClone Has Failed to Establish that Eighteen Documents on its Log Are Privileged and the Court Should Order Their Immediate Production.**

ImClone claims a number of documents responsive to Plaintiffs' requests for production are privileged under the attorney-client privilege and/or attorney work-product doctrine. As the party invoking the privilege, ImClone has the burden of establishing that it applies to each of the documents at issue and that it has not been waived. *In re Keeper of the Records v. United States*, 348 F.3d 16, 22 (1st Cir. 2003). ImClone has not done so.

    **1.    The Landes memos are not protected by the attorney-client privilege because they are not "communications."**

In its first privilege log, ImClone claimed that several memos authored by attorney John Landes were protected under the attorney work-product doctrine. (Ex. A.) However, after Plaintiffs challenged ImClone to demonstrate how these memos were prepared in anticipation of litigation or trial, ImClone abandoned its claims of attorney work-product for all but two of these

memos (which are addressed in the next section), and instead, claimed the memos are attorney-client communications:

| Log | Sender/Author | Addressee | Subject | Basis |
|---|---|---|---|---|
| 8 | John Landes, Esq., ImClone | FILE | Confidential communication by ImClone's counsel to client for the purpose of providing legal advice to client concerning negotiations with NCI. | ACP |
| 9 | John Landes, Esq., ImClone | FILE | Confidential communication by ImClone's counsel to client concerning legal advice for client regarding negotiations with NCI. | ACP |
| 13 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding negotiations with NCI. | ACP |
| 23 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding negotiations with NCI. | ACP |
| 24 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding negotiations with NCI and University of California. | ACP |
| 77 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding ownership and rights to the C225 cell line. | ACP |
| 79 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding ownership and rights to the C225 cell line. | ACP |
| 92 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding ownership and rights to the C225 cell line. | ACP |
| 94 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice regarding communications with RepliGen concerning C225 and the '281 patent. | ACP |
| 123 | John Landes, Esq., ImClone | | Communication between attorney to client for the purpose of providing legal advice concerning the marketing and ownership of C225. | ACP |
| 126 | John Landes, Esq., ImClone | | Communication from attorney to client for the purpose of providing legal advice concerning prior art search results for the '281 patent. | ACP |
| 127 | John Landes, Esq., ImClone | | Communication from attorney to client for the purpose of providing legal advice concerning intellectual property review of Erbitux. | ACP |

(Ex. E.) ImClone has failed to establish all of the elements of the attorney-client privilege for the Landes memos at issue.

6

An attorney-client privilege exists "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997). Although the "Subject" field for each of the twelve entries above states that the Landes memos are "communications," the other information provided in the log belies this claim. The log indicates that the first nine Landes memos were not communicated to anyone, but rather were placed in the "File." For the last three entries above, the "addressee" field has been left blank. Because the Landes memos were never communicated to anyone, they cannot find protection under the attorney-client privilege. *E.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95-C-0673, 1996 WL 732522, at *5 (N.D. Ill. Dec. 18, 1996) ("Memos to files prepared by non-legal personnel containing business information are clearly not privileged. . . . The same reasoning applies with equal force to memos to file prepared by counsel because, once again, the intent to confidentially communicate with the client is missing."); *Hogan v. Zletz*, 43 F.R.D. 308, 316 (N.D. Ok. 1967) (finding an attorney memorandum with no addressee "not privileged because it does not appear to be a communication between attorney-client").

Moreover, to qualify for protection under the attorney-client privilege, ImClone must demonstrate the Landes memos are confidential. *State of Maine v. United States Dept. of the Interior*, 298 F.3d 60, 71-72 (1st Cir. 2002). Here, ImClone's privilege log states that the Landes memos associated with the first nine entries in the above table are confidential. However, the log also indicates the Landes memos in the last three entries (123, 126, 127) were not. Accordingly, ImClone's claims of attorney-client privilege for all twelve Landes memos should be rejected for

failure to establish a communication, and the Landes memos relating to entries 123, 126, and 127 should also be rejected on the additional ground that they were not confidential.

### 2. The Court should not allow ImClone to hide relevant facts under the guise of the attorney work-product doctrine.

For the following two Landes memos, ImClone did not abandon its claims to attorney work-product protection. Instead, ImClone revised the "Subject" field for the documents and added a claim of protection under the attorney-client privilege:

| Log | Sender/Author | Addressee | Subject | Basis |
|---|---|---|---|---|
| 100 | John Landes, Esq., ImClone | FILE | Confidential memorandum concerning conference call with Daniel Witt of Repligen and Doug Kline of Testa Hurwitz communicated to client for the purpose of providing legal advice and prepared in anticipation of litigation with RepliGen. | ACP AWP |
| 119 | John Landes, Esq., ImClone | FILE | Confidential communication from attorney to client for the purpose of providing legal advice concerning conversation with Daniel Witt of RepliGen, prepared in anticipation of litigation with RepliGen. | ACP AWP |

(Ex. E.) As with the other Landes memos to "File," ImClone's claim to attorney-client privilege can be easily dismissed because the memos were never communicated to anyone. *E.g.*, *Heidelberg Harris*, 1996 WL 732522, at *5; *Hogan*, 43 F.R.D. at 316. The only issue to address here is ImClone's claim of protection under the attorney-work product doctrine.

The purpose of the attorney work-product privilege is to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." Fed. R. Civ. P. 26(b)(3). In other words, the privilege protects "the adversary trial process itself." *State of Maine*, 298 F.3d at 66. However, the privilege "does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1996); *Phillips Electronics N. Am. v. Universal Electronics, Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995) ("[P]laintiff may not rely on Rule 26(b)(3) or claims of work

product as a basis for refusing to respond to discovery requests seeking the disclosure of non-privileged facts.").

The fact that ImClone retained its work-product claims for the two Landes memos has little to do with the protection of mental impressions, conclusions, opinions, or legal theories as ImClone's log would suggest. Rather, ImClone's motive here is to hide Landes's contemporaneous notes recording what was said during a call with Daniel Witt of Repligen and Mr. Witt's attorney regarding the patent-in-suit[3]—which directly relates to ImClone's allegations that Plaintiffs' patent infringement claims are barred under the doctrines of laches, estoppel, implied license, and exhaustion. In addition, the information relates to ImClone's state of mind, which is relevant to Plaintiffs' charge of willful infringement. As set forth in Plaintiffs' Memorandum in Support of its Second Motion to Compel Discovery filed on April 8, ImClone has generally alleged that "Repligen" accused ImClone of infringement, that "Repligen" offered ImClone a license, and that ImClone relied upon "Plaintiffs" actions in proceeding to market its infringing product, but provided none of the details required under LR 26.5(c)(8). (Ex. K at 6-7, 9-10.) The underlying facts in the Landes memos have become even more important since Landes has testified that he has no recollection of either call with Mr. Witt.[4] (Ex. L at 26-32.) Accordingly, the Court should order ImClone to produce the Landes memos.

---

[3] In its first privilege log, ImClone indicated that Landes memo 100 pertained to "[n]otes on conference call with Daniel Witt of RepliGen and Doug Kline of Testa Hurwitz." (Ex. A.) Similarly, ImClone's log stated that Landes memo 119 pertained to "[c]all from Daniel Witt, RepliGen." (*Id.*)
[4] Likewise, Irving Feit, Imclone's outside counsel at the time who likely participated in the call, testified that he has no recollection of the discussion. (Ex. M at 19, 22-23, 26.)

9

### 3. A memo prepared by a non-lawyer and distributed to an "Executive Group" cannot be protected by the attorney-client privilege.

ImClone's privilege log claims a memorandum prepared by Dr. Gilly for ImClone's "Executive Group" warrants protection under the attorney-client privilege as set forth below:

| Log | Sender/Author | Addressee | CC | Subject | Basis |
|---|---|---|---|---|---|
| 82 | John Gilly, ImClone | Executive Group | Neil Goldstein, ImClone | Confidential communication from attorney liaison to attorney and client for the purpose of providing legal advice regarding negotiations with MRC Collaborative Center in London, UK. | ACP |

(Ex. E.) Here again, ImClone's claims of protection under the attorney-client privilege are improper.

The two individuals named in ImClone's privilege log are Dr. Gilly, who was Vice President of Biopharmaceutical Operations (Ex. N at 1), and Neil Goldstein, who was Director of Immunology. Needless to say, an attorney-client communication requires an attorney—and neither of these two individuals meet the criteria. But that does not stop ImClone. To get around this problem, it claims that Dr. Gilly was a "liaison" for some unnamed attorney, which apparently anoints him with the ability to give "legal advice." Because Dr. Gilly's memo was not an *attorney-client* communication, the Court should reject ImClone's privilege claim.

ImClone's log also asserts, without foundation, that Gilly's memo was provided to an attorney. For this assertion to be true, one of the members of the unnamed "Executive Group" must be an attorney. However, should ImClone assert that an attorney is part of the mysterious "Executive Group," the result here will not change. Merely adding an attorney to a document's distribution list does not make the document privileged. *E.g., City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000); *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 186 (D. N.J. 2003).

Accordingly, ImClone has failed to meet its burden of establishing attorney-client privilege and the Court should order the production of the Gilly memo.

### 4. ImClone's communications with MRC, a supplier of research services in England, are not privileged.

ImClone's privilege log also claims a fax and two letters exchanged between ImClone and MRC of London, England are protected under the attorney-client and work-product privileges:

| Log | Sender/Author | Addressee | CC | Subject | Basis |
|---|---|---|---|---|---|
| 121 | Tarran Jones, MRC | Tom Gallagher, ImClone [Patent Agent in Legal Department] | Katy Kettleborough, MRC, John Gilly, ImClone | Confidential communication from attorney liaison to attorney liaison for the purpose of providing legal advice regarding ownership and rights to the C225 cell line. Also prepared by attorney liaison in anticipation of litigation with RepliGen and MIT. | ACP AWP |
| 132 | John Gilly, ImClone | Tarran Jones, MRC | | Confidential communication from attorney liaison John Gilly acting under direction of attorney Irving Feit to attorney liaison Tarran Jones for the purpose of providing and obtaining legal advice to client concerning the ownership of C225. Prepared in anticipation of litigation with RepliGen and MIT. | ACP AWP |
| 133 | John Gilly, ImClone | Tarran Jones, MRC | | Confidential communication from attorney liaison John Gilly acting under direction of attorney Irving Feit to attorney liaison Tarran Jones for the purpose of providing and obtaining legal advice to client concerning the ownership of C225. Prepared in anticipation of litigation with RepliGen and MIT. | ACP AWP |

(Ex. E.) As it has for the other documents at issue in the instant motion, ImClone claims protection by manufacturing facts necessary to superficially satisfy its burden of proof. However, when the true nature and facts regarding these communications are revealed, ImClone's privilege claims do not hold up.

11

The attorney-client privilege exists only where there is an attorney-client relationship, and only covers communications for the purpose of seeking legal advice. *Mass. Inst. of Tech.*, 129 F.3d at 684. ImClone's assertion that an attorney-client relationship existed between itself and MRC is meritless. MRC is a public research center located in London, whose mission is to "encourage and support high-quality research with the aim of improving human health." (Ex. O at 1.) In early 1996, several months before the communications at issue here, ImClone and MRC entered into an agreement wherein MRC would carry out experiments to determine the DNA sequence of C225 (which was required for FDA approval of Erbitux™) and to create a "humanized" version of the C225 antibody that is the subject of the patent-in-suit. (Ex. N at 2.). Thus, the relationship between ImClone and MRC was purely for business purposes.

Indeed, the individuals involved in the communications between MRC and ImClone further demonstrate these two entities did not have an attorney-client relationship. All three communications involved Dr. Tarran Jones, a scientist who was the head of MRC's Antibody Engineering Group. (*See* Ex. N at 1.) On ImClone's side, the two letters at issue (132 and 133) were written by Dr. Gilly, Vice President of Biopharmaceutical Operations, and the fax from Dr. Jones (121) was received by Tom Gallagher.[5] None of these individuals were attorneys. However, as it did for the Gilly memo, ImClone attempts to sidestep this problem by contending all of these individuals are somehow "attorney liaisons" when that is plainly not the case. But even then, for Tom Gallagher and Dr. Jones, ImClone fails to identify the attorney under whose direction they are allegedly acting. The Court should reject ImClone's claim of protection under the attorney-client privilege.

---

[5] ImClone contends Tom Gallagher was a "patent agent" in ImClone's legal department. (Ex. E at 121.) Even accepting that as true, this Court has held that the attorney-client privilege does not extend to patent agents. *Afga Corp. v. Creo Prods., Inc.*, No. 00-10836, 2002 WL 1787534, at *2-*3 (D. Mass. Aug. 1, 2002).

12

ImClone's claim of privilege under the attorney work-product doctrine similarly fails. The attorney work-product privilege "protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." *State of Maine*, 298 F.3d at 66. Documents are prepared for litigation "if the light and nature of the document and the factual situation in the particular case, the document can fairly said to have been prepared or obtained *because of* the prospect of litigation." *Id.* at 68.

Here, ImClone claims all three communications between itself and MRC were prepared in anticipation of litigation with MIT and Repligen. However, as stated previously, none of the "work" in the documents at issue was done by an attorney. Thus, the attorney-work product privilege does not apply. In addition, ImClone fails to explain how MRC, a research company in the United Kingdom, could have anticipated litigation as a result of MIT's United States patent.

To add further confusion, ImClone's log states that the communications concerned the ownership of C225 and rights to the C225 cell line. The C225 antibody and C225 cell line was produced by Damon Biotech, who had licensed the patent-in-suit, which covers the C225 cell line, from MIT. Damon provided the C225 cell line to NCI, who had a pre-existing royalty-free license to practice MIT's patent for governmental purposes. ImClone came into possession of the C225 cell line through an arrangement with NCI and began using it to develop Erbitux™ without a license to MIT's patent. Consequently, MRC would have had absolutely no idea who owned the rights to the C225 antibody or the C225 cell line, nor would it have cared.

Accordingly, ImClone has failed to satisfy its burden for both the attorney-client and attorney work-product privileges for the communications between itself and MIT.

## CONCLUSION

For the foregoing reasons, the Court should order the production of the documents that correspond to entries 8, 9, 13, 23, 24, 77, 79, 82, 92, 94, 100, 119, 121, 123, 126, 127, 132, and 133 of ImClone's privilege log attached herewith as Exhibit E to the Woodford Declaration.

Dated: April 14, 2005

_____
Gregory A. Madera (BBO #313,020)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Of Counsel:

Jonathan E. Singer
Michael J. Kane
Chad A. Hanson
William R. Woodford
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-5070

Attorneys for Plaintiffs
Massachusetts Institute of Technology and
Repligen Corporation

60287389.doc

**FedEx | Ship Manager | Label 7904 9408 5012**

From:   Origin ID: (617)542-5070
Karen Longval
Fish & Richardson
225 Franklin Street
32nd Floor
Boston, MA 02110

SHIP TO: (212)908-6225            BILL SENDER
Richard L. DeLucia
Kenyon & Kenyon
One Broadway
New York, NY 10004

Ship Date: 19APR05
Actual Wgt: 1 LB
System#: 1925920/INET2000
Account#: S ********

REF: 00231-002LL1

Delivery Address Bar Code

STANDARD OVERNIGHT
TRK# 7904 9408 5012        FORM 0201
10004  -NY-US              EWR   A1

WED
Deliver By:
20APR05

Z1 SXYA

Federal Express®

Page 1 of 1