UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

          Plaintiffs,

v.

IMCLONE SYSTEMS INC.,

          Defendant.

Civil Action No. 04 10884 RGS

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

Defendant ImClone Systems Inc. (hereinafter "ImClone") opposes Plaintiffs', Massachusetts Institute of Technology and Repligen Corporation (hereinafter "Plaintiffs" or "Repligen"), Combined Third Motion to Compel of April 19, 2005 on the grounds specified herein, including Plaintiffs' failure to comply with the conference requirements of Local Rules 7.1(a)(2) and 37.1(b).

Indeed, in their Third Motion to Compel, Plaintiffs continued their disturbing pattern of filing such motions prematurely, prior to making a reasonable attempt to settle matters with ImClone as expressly required by the Local Rules. These inexplicable tactics are only further wasting the time and resources of the parties and the Court that could otherwise be spent litigating this case.

Had Plaintiffs properly followed the Local Rules and actually met and conferred with ImClone, they would have found that ImClone had reexamined and was willing to produce the

documents appearing on its privilege log at entry nos. 8, 9, 13, 94, 100, and 119. ImClone will now voluntarily produce those documents in due course. However, the nature of the challenges to the privilege log entries raised in Plaintiffs' motion are entirely lacking in legal basis. It is readily ascertained from the detailed descriptions provided on ImClone's privilege log that the documents that are the subject of Plaintiffs' motion are unquestionably privileged. As such, Plaintiffs' Third Motion to Compel should be denied in its entirety.

## ARGUMENT

I.  **The Plaintiff's Combined Third Motion to Compel Fails to Comply With the Conference Requirements of Local Rules 7.1(a)(2) and 37.1(b).**

Plaintiffs' First Motion to Compel should be denied in its entirety for the failure of the Plaintiffs to properly and fully confer with ImClone, as required by Local Rules 7.1(a)(2) and 37.1, prior to filing their motion. On every occasion that the Plaintiffs have raised concerns with respect to ImClone's privilege log, ImClone has responded and attempted to address all concerns in order to avoid unnecessary motion practice. Unfortunately, the Plaintiffs have chosen to file this motion anyway, without making a reasonable attempt to settle this issue with ImClone.

As Plaintiffs note on pages 3 and 4 of their memorandum in support of their motion, the last occasion on which they raised the issue of ImClone's privilege log was in a letter from Michael Kane to Anthony Giaccio dated March 25, 2005. (Ex. A). Tellingly absent from Plaintiffs' memorandum, however, is the fact that their March 25, 2005 letter stated that they wished to meet and confer on this issue *at the deposition of John Landes*. (Ex. A). ImClone then examined their complaints and was fully prepared to discuss this issue again with the Plaintiffs at that time in order to address their concerns. However, on the day of Mr. Landes' deposition, the Plaintiffs never raised the issue at all and ImClone heard nothing more about it from them.

That failure by Plaintiffs to raise these issues at the deposition, coupled with the fact that Plaintiffs in their own privilege log had made many of the same types of entries about which they complained with regard to ImClone's privilege log, led ImClone to understand that Plaintiffs' had dropped their complaints altogether. ImClone pointed out Plaintiffs' contradictory positions in a letter to them dated April 1, 2005. (Ex. B). For example, the Plaintiffs, on their own privilege logs, also assert privilege over fourteen separate documents addressed to "FILE", just like Landes documents that they complain about. ImClone understood as of April 1, 2005, that the Plaintiffs realized their complaints were frivolous and unfounded and, therefore, that Plaintiffs had dropped the matter entirely.

Finally, the Plaintiff's motion asks that the Court compel the production of entry 119 on the ImClone's privilege log. However, the Plaintiffs made no mention of this entry in their letter of March 25, 2005, and thus have not even attempted to satisfy Local Rules 7.1(a)(2) and 37.1(b) with regard to this document.

ImClone respectfully submits then that the Plaintiffs motion should be denied in its entirety for the Plaintiffs failure to meet and confer as required by Local Rules 7.1(a)(2) and 37.1(b). In addition, as a result of the Plaintiffs repeated flouting of this rule, ImClone has incurred unnecessary expenses associated with opposing this motion and asks that the Court award ImClone its reasonable attorneys fees.

**II.     Entries 23, 24, 77, 79, 92, 123, 126, 127 Are "Communications" and Are Thus Privileged Attorney-Client Communications.**

Plaintiffs argue disingenuously that John Landes' Memorandums addressed to "FILE" are not communications, ignoring the fact that this contradicts both common sense and their own position concerning their privilege claims over at least fourteen of their own documents.

-3-

Mr. Landes was the general counsel of ImClone. His memoranda to file were clearly communications to his client, ImClone Systems, *as a corporation,* and embodied the legal advice that he was providing to the corporation at the time of their writing. These memoranda were on placed on file at ImClone, so that they could be referenced as needed. They have always been in ImClone's possession and available to those at the company (with the proper authority) to review periodically, whenever the occasion arose.

Mr. Landes advised ImClone on a variety of topics throughout its formative years. He prudently and thoroughly documented his legal advice to the company throughout those years in memoranda that he kept addressed to "FILE." The suggestion by Plaintiffs that his memoranda are not communications to his client, ImClone, is utterly lacking in merit. Indeed, under Plaintiffs' theory of privilege law, even something as sensitive as a transcript of a board meeting at which the general counsel of a major corporation provided critical legal advice to the corporation through its officers could never be privileged if it were addressed to the corporation's "file," since it is not then a "communication." That is neither the law nor the reality of how corporations and people work.

Nevertheless, in trying to prop up their argument, Plaintiffs cite two cases that barely touch upon this privilege issue and, in any event, were never cited in any other case for the proposition proffered by Plaintiffs. Other, more authoritative, cases eviscerate their position entirely and persuasively.

For example, in the case of *Alexander v. FBI*, 186 F.R.D. 154 (D.D.C. 1999), the court refused to compel a clients personal notes in a diary because they memorialized communications with his attorney. *Id.* at 161. The court in *Alexander* felt that even though this was not a "communication" as such (in fact, unlike the Landes memoranda, it was not a communication at

all), to compel production of this document would reveal confidential and privileged attorney-client communications. *Id.* The same problem arises in this case with Plaintiffs' theory: to compel production of the Landes memorandums *will reveal privileged communication* to the Plaintiffs.

Notably, Plaintiffs already have deposed John Landes and wasted their own opportunity to address their so-called "concerns" with ImClone's privilege log. Not only did they completely fail to "meet and confer" at that time on their concerns with ImClone's privilege logs, as they had stated in their letter of March 25, 2005 (Ex. A), but they never raised any of their concerns with John Landes himself. This certainly cuts dramatically against Plaintiffs' bombastic assertion in the very first sentence of their memorandum that the documents they seek through their motion go to "the heart of this case." If that were true (which it is not), certainly Plaintiffs would have made an effort to meet and confer with ImClone at Mr. Landes' deposition or at least inquired of Mr. Landes' regarding this matter. In truth, the documents on ImClone's privilege log that the Plaintiffs seek through their motion are on the periphery of this case, as Plaintiffs are well aware but ignore to try to add urgency to their motion.

**III.   Entries 123, 126, and 127 Are Confidential, Internal ImClone Communications and Are Thus Privileged.**

Plaintiffs raise the issue that the descriptions of these documents do not indicate that they were "confidential." This was inadvertent. These documents were and are internal, highly confidential ImClone documents and at no time communicated to any third-parties. Again, Plaintiffs had not raised this as a concern prior to this motion. Had they done so, ImClone would have assured them that this was so, showing once more that Plaintiffs' failure to comply with the Local Rules is wasting time and resources in this case.

**IV.    Entry 82 Was Communicated to John Landes, ImClone's General Counsel, and Is, Therefore, Privileged.**

The Plaintiff's claim that this e-mail is not privileged because they claim that it is not clear that it was communicated to an attorney. This assertion is frivolous, as Plaintiffs know that Mr. Landes was ImClone's general counsel at the relevant time. This document is privileged because it was communicated to Mr. Landes in his role as ImClone's general counsel for the purpose of obtaining legal advice for the corporation.

Nevertheless, trying to support their argument, Plaintiffs cite two cases which purport to hold that "merely adding an attorney to a document distribution list does not make the document privileged." That is simply not what happened here with regard to document 82. Rather, all of the requirements to establish attorney-client privilege in this case are satisfied by this document. John Gilly was acting at the behest of the legal department at ImClone in obtaining outside technical advice concerning the '281 patent. More importantly, the document reflects confidential legal advice in response to the corporation's request for same. Its production should not be compelled.

**V.    Entries 121, 132, and 133 Are Privileged Since MRC Was Acting As An Agent of ImClone and Providing Technical Information on Which Legal Advice was Based.**

Plaintiffs' brazen assertion that ImClone has "manufactured facts as necessary" to establish privilege over these communications (nos. 121, 132 and 133 on the ImClone privilege log) is so baseless it is not worthy of appearing in a motion to this Court. Plaintiffs likely made that assertion because, aside from that crude attempt to "throw mud" at ImClone, Plaintiffs have no legitimate argument to challenge these entries. For example, in trying to challenge privilege, they make the nebulous accusation that "[t]he relationship between ImClone and MRC was

purely for business purposes" (page 12). So what? A business relationship and the communications flowing therefrom certainly can be privileged.

In any event, the facts here are this: ImClone indeed had a business relationship with MRC. That is no secret. The MRC provided ImClone with technical advice on projects related to the C225 antibody and the '281 patent. The documents in question relate to that subject matter and result from requests stemming from ImClone's attorneys. Thus, they are protected by the attorney-client privilege and attorney work-product privilege.

## CONCLUSION

For the forgoing reasons, the Plaintiffs motion should be disallowed. The Plaintiffs motion lacks substance and is premature. Should the Court wish however, ImClone is prepared to submit the documents in question to the Court for an *in camera* review. Finally, ImClone respectfully asks the Court to award ImClone with reasonable attorneys fees associated with ImClone's expenses incurred in association with opposing the Plaintiffs premature motion, in violation of the Local Rules.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | IMCLONE SYSTEMS INC. |
|  | By its Attorneys, |
| Dated: May 3, 2005 | /s/ Jeremy P. Oczek |
|  | Mark W. Batten (BBO #566211) |
|  | Jeremy P. Oczek (BBO #647509) |
|  | PROSKAUER ROSE LLP |
|  | One International Place |
|  | Boston, MA 02110-2600 |
|  | Tel: (617) 526-9600 |
|  | Fax: (617) 526-9899 |
|  | |
|  | Richard L. DeLucia |
|  | George E. Badenoch |
|  | Michael D. Loughnane |
|  | Paul M. Richter, Jr. |
|  | Anthony Giaccio |
|  | KENYON & KENYON |
|  | One Broadway |
|  | New York, NY 10004-1050 |
|  | Tel: (212) 425-7200 |
|  | Fax: (212) 425-5288 |

**Certificate Of Service**

I hereby certify that on May 3, 2005, a true and correct copy of the foregoing document was served on counsel for Plaintiffs by use of the Court's ECF system.

/s/ Jeremy P. Oczek
Jeremy P. Oczek