**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>        Defendant. | Civil Action No. 04-10884-RGS |

**MEMORANDUM OF REASONS IN SUPPORT OF PLAINTIFFS' MOTION FOR MODIFICATION AND ENFORCEMENT OF THE PROTECTIVE ORDER**

Throughout the fact discovery process in this patent infringement action, Defendant ImClone Systems, Inc. has grossly overdesignated its discovery production by marking the majority of its recent production of documents with the highest designation under the protective order—with no regard for the actual nature of the information contained in those documents. ImClone has taken the same approach with deposition discovery by marking the entirety of nearly every transcript with the highest designation. As a result of ImClone's refusal to comply with the terms and spirit of the Protective Order, Plaintiffs' in-house counsel and management have been denied access to relevant information necessary to effectively manage this case.

In an effort to amicably resolve this issue, Plaintiffs proposed to ImClone that the parties allow a limited number of in-house attorneys from each side access to all discovery materials. ImClone refused to cooperate, insisting instead that Plaintiffs identify specific documents that they believe ImClone overdesignated. After a month-long meet and confer, counsel for ImClone finally acknowledged that it had overdesignated at least some of the documents, and informed counsel for Plaintiffs that it is "in the process" of reviewing ImClone documents to determine

whether any documents can be redesignated. However, ImClone has maintained its objection to allowing in-house counsel access to all discovery materials.

With expert reports due within a month, Plaintiffs request that this Court issue an Order modifying the Protective Order to allow two of Plaintiffs' in-house counsel (namely, Fred Nemeth for Repligen and Karin Rivard for MIT) access to ImClone's discovery production in its entirety. Additionally, Plaintiffs request that this Court issue an order requiring ImClone to properly designate all discovery it has produced in this litigation (including documents, deposition testimony and discovery responses) within 10 days of the Court's Order.

## INTRODUCTION

In October 2004, the parties negotiated the terms of a Protective Order. ImClone proposed a two-tier system for protection of the parties' confidential information: CONFIDENTIAL and RESTRICTED CONFIDENTIAL. (Kane Decl. ¶ 2.)[1] Counsel for ImClone insisted that a RESTRICTED CONFIDENTIAL designation was needed because ImClone was concerned about its secret manufacturing processes being disclosed to Repligen and MIT's personnel. (*Id.* at ¶ 2, Ex. A.) Plaintiffs' counsel expressed their concerns with overdesignation, noting that the tendency of marking everything RESTRICTED CONFIDENTIAL would effectively result in a one-tier system. (*Id.* Ex. A.) As a compromise, and believing that ImClone would exercise good faith in applying the designation, Plaintiffs agreed to ImClone's proposal that the RESTRICTED CONFIDENTIAL designation only be reserved for proprietary technical information, financial data, business plans and marketing information. (*Id.* ¶ 2.) The final stipulated Protective Order expressly incorporated this limitation. (*Id.* Ex. B at ¶ 5.)

---

[1] "Kane Decl." refers to the Declaration of Michael J. Kane in Support of Plaintiffs' Motion for Modification of the Protective Order.

For roughly the first 20,000 documents it produced, ImClone lived up to its obligations under the protective order, and in large part, ImClone took care to mark only that discovery as RESTRICTED CONFIDENTIAL which fell into the definition. But once deposition discovery started, ImClone began blanket-designating all discovery it produced as RESTRICTED CONFIDENTIAL, including the overwhelming majority of its next 30,000 plus pages of production. Now, many documents that are relevant to issues at the very center of this case—but that are inappropriate for the highest level of protection—have been marked as RESTRICTED CONFIDENTIAL when ImClone knows full well that it has no right to do so. ImClone also designated the entirety of nearly every deposition as RESTRICTED CONFIDENTIAL, even though many of the deponents had not worked at ImClone for years. In effect, ImClone has attempted to build a wall around its production with overdesignation so that people most familiar with the disputed matters will have no chance of any real input and direction in this litigation.

This is unacceptable. Expert reports are due in less than three weeks. Client input at this juncture is crucial. To avoid filing discovery motions at this very late stage and in an effort to efficiently resolve the dispute, during a telephonic meet and confer on July 27, 2005, counsel for Plaintiffs suggested that the parties allow a two in-house counsel for each side access to the other side's discovery production in its entirety.[2] (*Id.* ¶ 4.) Counsel for ImClone stated that they would consult with their client and get back to Plaintiffs' counsel. (*Id.*) Counsel for Plaintiffs promptly followed up with numerous e-mails. (*See generally id.* Ex. C.) After providing Plaintiffs with only vagueries and posturing, ImClone rejected Plaintiffs' proposal without

---

[2]    During the July 27, 2005 meet and confer, John Adkisson, William Woodford, and Michael Kane represented Plaintiffs and Mike Loughnane, Paul Richter Jr., Antony Pfeffer, and Anthony Giaccio represented ImClone. (Kane Decl. ¶ 4.)

articulating any clear concern, and insisted that Plaintiffs identify specific RESTRICTED CONFIDENTIAL material that Plaintiffs believe ImClone had misdesignated. (*Id.* Ex. C at 1-2.)

It took another two weeks of meet and confer and the threat of a motion before counsel for ImClone finally acknowledged that ImClone had overdesignated at least some of the documents. (*Id.* Ex. D at 1, 5.) Counsel for ImClone indicated that it is now "in the process" of reviewing ImClone's document production to determine whether any documents can be redesignated, but remained vague as to how long this "process" is going to take. (*Id.* Ex. D at 1.) Meanwhile, ImClone maintains its objection to Plaintiffs' proposal that each side allows one in-house attorney access to the discovery in its entirety. (*Id.*)

Although ImClone has agreed to review and redesignate its discovery documents and deposition transcripts, absent an Order from the Court, it is under no pressure, and has no incentive, to conduct the review and redesignation process in a prompt manner. To this date, Plaintiffs have not received any redesignated documents from ImClone. Nor has counsel for ImClone advised counsel for Plaintiffs the progress of this review process. Plaintiffs' in-house counsel and management still have no access to critical information that should not have been designated as RESTRICTED CONFIDENTIAL in the first place. With the close of discovery now having passed and expert reports due in less than three weeks, Plaintiffs have no choice but to move this Court for an Order modifying the Protective Order to allow its in-house attorneys—namely Mr. Nemeth and Ms. Rivard—access to ImClone's entire discovery production, and to request that this Court issue an order requiring ImClone to properly designate all discovery it has produced in this litigation (including documents, deposition testimony and discovery responses) within 10 days of the Court's Order.

**ARGUMENT**

I.  **Mr. Nemeth and Ms. Rivard Are Not Competitive Decisionmakers and Allowing Them Access to All Discovery Material Will Not Create a Serious Risk of Confidentiality.**

"[S]tatus as in-house counsel cannot alone create [a] probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984); *accord Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991). Instead, whether to allow access to any individual under a protective order is determined by balancing the risk of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In balancing these competing interests, courts look at whether access to the confidential information creates "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp.*, 730 F.2d at 1468. The primary consideration in making this determination is whether the individual requesting access to the confidential information is involved in "competitive decisionmaking," that is, whether the individual's "activities, association, and relationship with a client [] are such as to involve [the individual's] advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n.3.

In this case, the balance of the risk of inadvertent disclosure of ImClone's allegedly confidential information against the risk that the current Protective Order will unfairly impair the Plaintiffs' ability to litigate their claims warrants a modification of the Protective Order.

5

**A.   Denying Mr. Nemeth and Ms. Rivard Access to ImClone's Discovery Production Has And Will Continue To Severely Impair the Prosecution of Plaintiffs' Claims.**

Mr. Nemeth and Ms. Rivard both function as litigation managers. Mr. Nemeth is Associate General Counsel for Repligen. (Nemeth Decl. ¶ 1.)[3] He is responsible for developing the litigation and settlement strategy, retaining and managing outside counsel, and supervising litigation activities for Repligen. (*Id.* at ¶ 2.) He is also required to assess the strength of Repligen's position in litigation, and to use that assessment to advise Repligen management regarding the strengths and weaknesses of ongoing cases. (*Id.* at ¶ 3.) Ms. Rivard is Assistant Director and Counsel for MIT's Technology Licensing Office. (Rivard Decl. ¶ 1.)[4] She has similar responsibilities and obligations to MIT as Mr. Nemeth to Repligen. (*Id.* at ¶¶ 2, 3.) Both Mr. Nemeth and Ms. Rivard have been actively involved in this litigation. (Nemeth Decl. ¶ 4; Rivard Decl. ¶ 4.)

Expert reports are due in less than three weeks. The current Protective Order, coupled with ImClone's pervasive overdesignation, has the effect of excluding Mr. Nemeth and Ms. Rivard from the litigation process. And the consequences are untenable. For example, Mr. Nemeth and Ms. Rivard are prohibited from access to ImClone's financial information designated as RESTRICTED CONFIDENTIAL. Consequently, they will almost certainly be unable to read an expert report on damages or have full input in Plaintiffs' expert report on damages. The same is true with respect to relevant technical or commercial information designated as RESTRICTED CONFIDENTIAL that finds its way into an infringement or invalidity expert report or into substantive briefs. Such lack of information has inhibited, and

---

[3] "Nemeth Decl." refers to the Declaration of Fred Nemeth in Support of Plaintiffs' Motion for Modification of the Protective Order.
[4] "Rivard Decl." refers to the Declaration of Karin Rivard in Support of Plaintiffs' Motion for Modification of the Protective Order.

6

will continue to inhibit, Mr. Nemeth and Ms. Rivard from their ability to advise Plaintiffs as to the merits of this case, which would in turn inhibit Plaintiffs from developing an appropriate and informed litigation strategy. (Nemeth Decl. ¶¶ 4, 8; Rivard Decl. ¶¶ 4-5.)

Finally, if there are ever to be any meaningful settlement discussions in this case, Mr. Nemeth and Ms. Rivard must be allowed to see, for example, ImClone's sales data and Plaintiffs' expert reports on damages. It goes without saying that, without that information, Mr. Nemeth and Ms. Rivard cannot give an accurate reading on the value of this case to their respective clients. Any settlement negotiations on the point would be substantially hindered without Mr. Nemeth and Ms. Rivard being privy to that information.

**B.    Allowing Mr. Nemeth and Ms. Rivard Access to ImClone's Discovery Production Will Not Create a Serious Risk to Confidentiality.**

Importantly, in Mr. Nemeth's role as Associate General Counsel for Repligen, he does not do—or indeed have any involvement—in any of the following: (1) setting pricing of products or services sold by Repligen; (2) directing or controlling the sales, advertising, and/or marketing of products or services sold by Repligen; (3) providing any input in Repligen's product development; or (4) preparing or prosecuting patent applications on behalf of Repligen. (Nemeth Decl. ¶ 7.) Mr. Nemeth is not a competitive decisionmaker. *See U.S. Steel Corp.*, 730 F.2d at 1468 n.3. His responsibilities with respect to Repligen are no different than any outside counsel—he provides legal advice to the company.

With respect to Ms. Rivard, MIT is a nonprofit academic and research institution, and is not in the business of manufacturing, marketing, or distributing biopharmaceuticals in a commercial capacity. (Rivard Decl. ¶ 7.) Like Repligen, MIT does not compete with ImClone in any product market. (*Id.* ¶ 7.) Moreover, like Mr. Nemeth, Ms. Rivard does not prepare or

7

prosecute patent applications on behalf of MIT. (*Id.* at ¶ 8.)  ImClone cannot credibly argue that Ms. Rivard is a competitive decisionmaker.  *See U.S. Steel Corp.*, 730 F.2d at 1468 n.3.

In fact, in response to Plaintiffs' proposal to allow the parties' in-house counsel access to all discovery material, ImClone has only identified a vague Repligen-specific concern with regard to confidentiality, and has provided no argument whatsoever as to why Ms. Rivard should be denied access the discovery material.  (*See generally* Kane Decl. Ex. C.)  With respect to Mr. Nemeth, ImClone has not articulated any legitimate basis as to why it does not believe that Mr. Nemeth could abide by the terms of the Protective Order.  (*Id.*)

Both Mr. Nemeth and Ms. Rivard are officers of this Court.  It goes without saying that they will strictly adhere to the terms of the Protective Order, just as Plaintiffs' outside counsel does.  Mr. Nemeth and Ms. Rivard have been included on protective orders in the past, and have never been accused by anyone of violating a protective order in this District or anywhere else.  (Nemeth Decl. ¶ 6; Rivard Decl. ¶ 6.)  Permitting Mr. Nemeth and Ms. Rivard access to discovery material produced in this litigation will not create a serious risk of inadvertent disclosure.

**II.     Plaintiffs Request A Court Order Requiring ImClone To Appropriately Designate All Discovery It Has Produced in This Litigation Within 10 Days of the Order.**

In addition to allowing Mr. Nemeth and Ms. Rivard access to ImClone's highest level of confidential documents, Plaintiffs request that this Court issue an Order requiring ImClone to review and appropriately redesignate its discovery production, deposition transcripts, and discovery responses within 10 days of the Court's Order, limiting its designation of "RESTRICTED CONFIDENTIAL" information to "proprietary technical information, financial data, business plans and marketing information" in accordance with the Protective Order.

Although allowing Mr. Nemeth and Ms. Rivard access to the Protective Order will assuage certain of Plaintiffs' concerns, non-attorneys at Repligen and MIT who are working on this case should have access to much of the crucial information that ImClone has overdesignated as "RESTRICTED CONFIDENTIAL." While ImClone has agreed to review and properly redesignate its discovery production and deposition transcripts, it has not yet provided Plaintiffs with any redesignated documents. Nor has it given Plaintiffs any indication as to how promptly ImClone will conduct the promised review. With the expert reports due in less than three weeks, it is critical that Plaintiffs' in-house counsel as well as the management have immediate access to all relevant information that should not have been designated as "RESTRICTED CONFIDENTIAL" in the first place. Any further delay will impair Plaintiffs' ability to prepare for the expert reports and prosecute their claims.

As such, Plaintiffs respectfully request that this Court order ImClone to redesignate its discovery production in accordance with the Protective Order within 10 days of when the Court enters an Order on this issue.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order modifying the Protective Order to allow Mr. Nemeth and Ms. Rivard access to ImClone's discovery production in its entirety, including material designated as RESTRICTED CONFIDENTIAL. Plaintiffs further request that this Court Order ImClone to redesignate production documents, deposition transcripts, and discovery responses as it should have done in the first place and limit the designation "RESTRICTED CONFIDENTIAL" to documents and information that constitute "proprietary technical information, financial data, business plans and marketing information" within 10 days of the issuance of the Order.

Dated:  September 2, 2005                              /s/ Michael J. Kane
                                              Michael J. Kane (*pro hac vice*)
                                              3300 Dain Rauscher Plaza
                                              60 South Sixth Street
                                              Minneapolis, MN 55402
                                              Telephone:  (612) 335-5070
                                              Facsimile:  (612) 288-9696

*Of Counsel***:**

| Gregory A. Madera | Jonathan E. Singer | Juanita Brooks |
|---|---|---|
| FISH & RICHARDSON P.C. | Chad A. Hanson | FISH & RICHARDSON P.C. |
| 225 Franklin Street | William R. Woodford | 12390 El Camino Real |
| Boston, MA 02110-2804 | FISH & RICHARDSON P.C., P.A. | San Diego, CA 92130 |
| Telephone:  (617) 542-5070 | 3300 Dain Rauscher Plaza | Telephone:  (858) 678-5070 |
| Facsimile:  (617) 542-8906 | 60 South Sixth Street | |
| | Minneapolis, Minnesota 55402 | |
| | Telephone:  (612) 335-5070 | |
| | Facsimile:  (612) 288-9696 | |

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

PO Brief.DOC

10