UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and
REPLIGEN CORPORATION,

    Plaintiffs,

v.

IMCLONE SYSTEMS, INC.,

    Defendant.

Civil Action No. 04-10884-RGS

## DECLARATION OF HOWARD W. BREMER

I, Howard W. Bremer, declare and state as follows:

1. I received a B.S. in Chemical Engineering from the University of Wisconsin in 1944. I received my L.L.B. from the University of Wisconsin in 1949.

2. I was employed as a Patent Attorney by Procter & Gamble Co. from 1949 to 1960. In 1960, I joined the Wisconsin Alumni Research Foundation (WARF) as Patent Counsel. WARF is responsible for the licensing and technology transfer associated with the University of Wisconsin. In 1988, I retired from WARF after 28 years. I currently consult on licensing and technology transfer issues.

3. A true and correct copy of my curriculum vitae is attached to this declaration as Exhibit A.

4. In 1960s, it was presumed that the title to any inventions developed with government funding remained with the government. However, it became clear that a great many of these government owned inventions were not being commercially developed and made available to the public. In addition, because the government retained title to these inventions,

The private sector was reluctant to license from the government because of the susceptibility of such license to the vagaries of bureaucratic and political pressure.

5. In 1968, on behalf of the University of Wisconsin I and Professor William Young negotiated the first new Institutional Patent Agreement (IPA) with the Department of Health, Education, and Welfare (HEW), which includes the National Institutes of Health. A true and correct copy of the University of Wisconsin IPA is attached as Exhibit B. A large number of other research institutions followed suit and entered into IPAs with HEW. I, along with Mr. Reuben Lorenz of the University of Wisconsin, also negotiated a similar agreement with the National Science Foundation.

6. Under the IPAs the research institutioncould exercise the right to elect to file patent applications on "subject inventions", as defined in the agreement, administer the inventions and receive title to them. The rights obtained by the research institution included the rights to control licensing of the inventions for commercial development. In accord with the Agreement the government received only a royalty-free, non-exclusive license to practice the invention by or on behalf of the government. The government did not have the right to commercialize or control the commercialization of the inventions where the research institution acquired the principal rights.

7. The IPAs used by HEW and NSF were quite successful in stimulating technology transfer and the commercialization of inventions developed during research funded by those agencies. However, research institutions were required to negotiate an agreement dealing with patent rights with other government agenciesfrom which it was receiving funding. In addition, because of the co-mingling of funds from various agencies, the most restrictive agency policy controlled.

8. In the late 1970s, Congress considered legislation to codify and standardize parties' rights with respect to patentable inventions developed during government funded research. This legislation was known as the University and Small Business Patent Procedures Act. I testified before Congress with respect to this legislation in both 1979 and 1980. Congress passed the legislation in 1980, which later became known as the Bayh-Dole Act after its sponsors in the Senate.

9. The Bayh-Dole Act was effectively a codification of the IPAs that had been negotiated for the University of Wisconsin. The Act reversed the presumption of government ownership and control of inventions made during government funded research. The contractors had the first option to retain title and principal rights to the inventions with the government receiving a royalty-free, non-exclusive license to practice the invention by or on behalf of the government. The government did not have the right generally, to commercialize the inventions, those rights remained with the contractors. The scope of the government's license under the IPAs and under Bayh-Dole were the same. Neither license gave the government commercial rights. In fact, the purpose of the IPAs and the Bayh-Dole Act was to leave the right to license the inventions and administer the commercialization of the inventions with the contractors.

10. The Bayh-Dole Act has been very successful in stimulating technology transfer from the university and small business sectors in particular and has resulted in much greater commercialization of inventions made with government funding so that these inventions have become and are available to the public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September  14 , 2005           _____
                                      Howard W. Bremer