Ex. B

INSTITUTIONAL PATENT AGREEMENT
GOVERNING GRANTS AND AWARDS FROM THE
DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE


This Agreement made and entered into this __1st__ day of
__December__, 19 68 , by and between the United States of
America as represented by the Assistant Secretary (Health
and Scientific Affairs) of the Department of Health, Education,
and Welfare, hereinafter sometimes referred to as the Grantor,
and The Regents of the University of Wisconsin, hereinafter referred to as
the Grantee;


### WITNESSETH:

WHEREAS, the Regulations of the Department of Health,
Education, and Welfare, covering inventions resulting from
research grants, fellowship awards, and contracts for
research (45 CFR Parts 6 and 8), provide in Secs. 8.1 through
8.5 that upon approval by the Assistant Secretary (Health and
Scientific Affairs), the ownership and disposition of domestic
and foreign rights to inventions arising out of activities
assisted by grants and awards may be left to the Grantee
pursuant to its approved established patent policy, with such
modifications as may be agreed upon; and

WHEREAS, the Grantee is desirous of entering into an
agreement whereby it has a first option to retain principal
rights in and to administer inventions made in the course of
or under research supported by grants and awards from the
Department of Health, Education, and Welfare, pursuant to the
aforesaid Regulations; and

WHEREAS, the Assistant Secretary (Health and Scientific
Affairs) has reviewed the patent policy of the Grantee as
set forth in the University's letters dated April 18, 1967 and
September 25, 1968 and the enclosures thereto, and its practices
thereunder, and has found them to be acceptable, subject to the
provisions of this Agreement, and that said policy provides
for administration by the Grantee of patents in the public
interest and is consistent with the stated objectives of the
President's Statement and Memorandum of Government Patent
Policy, issued October 10, 1963;


October 1968

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree as follows:

## I.    Scope of Agreement

This Agreement shall define the rights of the parties hereto regarding disposition of title to inventions made in the course of or under research supported by grants and awards from the Department of Health, Education, and Welfare, which are subject to the Department Patent Regulations and are issued after the date hereof.

## II.   Definitions

(a)  The term "subject invention" as used in this Agreement means any process, machine, manufacture, composition of matter or design, or any new or useful improvement thereof, and any variety of plant which is or may be patentable under the Patent Laws of the United States made in the course of or under research supported by grants and awards from the Department of Health, Education, and Welfare.

(b)  The term "made" when used in relation to any invention or discovery means its conception or first actual reduction to practice.

## III.  Disposition of Principal Rights to Subject Inventions

The Grantee shall have the right to elect to file patent application in the United States and in foreign countries on any subject invention and to administer such invention pursuant to the provisions of this Agreement.  Grantee shall notify Grantor at the time each subject invention is reported to Grantor as required by paragraph V hereof, if it intends to file patent application(s) on and to administer the invention.  If Grantee does not elect to file a U.S. patent application on and to administer a subject invention, it shall notify Grantor in sufficient time to permit Grantor to file a U.S. patent application thereon.  In such event, all rights in and to such invention, except rights in any

October 1968

3

foreign patent application filed by Grantee, shall be subject
to disposition by the Grantor in accordance with its Regula-
tions then in effect.

IV.  Supplementary Patent Agreements

(a)  The Grantee shall obtain patent agreements from all
persons who perform any part of the work under a grant or
award from the Department of Health, Education, and Welfare,
exclusive of clerical and manual labor personnel, requiring
that such persons promptly report and assign all subject
inventions to Grantee or its approved patent management
organization.

(b)  The Grantee shall include the following provision
in any contract it enters into involving research and/or
development for which DHEW research grant or award funds
are utilized.

"The Contractor hereby agrees to report fully and
promptly to _____
                          (Grantee)
any invention conceived or first actually reduced
to practice in performance of this contract
(hereinafter referred to as "such invention(s)"),
and to assign all right, title and interest in and
to such invention to _____
                          (Grantee)
or its designee.

"In addition, the Contractor agrees to furnish the
following materials, disclosures and reports:

"(i)  Upon request, such duly executed
instruments (prepared by the _____
                          (Grantee)
or its designee) and such other papers as are deemed
necessary to vest in the _____
                          (Grantee)
or its designee the rights granted under this clause
and to enable the _____
                          (Grantee)
or its designee to apply for and prosecute any
patent application, in any country, covering such
invention.

October 1968

2330

"(ii)  Interim reports on the first anniversary
of this contract where extended or renewed and every
year thereafter listing all such inventions made
during the period whether or not previously reported
or certifying that no inventions were conceived or
first actually reduced to practice during the ap-
plicable period.

"(iii) Prior to final settlement of this contract,
a final report listing all such inventions including
all those previously listed in interim reports, or
certifying that no inventions were conceived or first
actually reduced to practice under the contract."

## V.    Report of Invention

(a)  The Grantee shall submit a written invention report
to the Grantor of each subject invention promptly after con-
ception or first actual reduction to practice.

(b)  Such invention report shall be furnished directly
to the Grantor in addition to any other requirement under
any grant or award for the submission of progress or
financial reports, and whether or not reference to subject
invention has been made in any progress or other report
furnished to the Grantor; such report shall include descrip-
tion of such invention, appropriately illustrated by a simple
sketch or diagram, to permit the invention to be understood
and evaluated, and such other information as Grantor may
require.

(c)  The report shall specify whether or not Grantee
intends to file a U.S. patent application or any foreign
patent application on the invention.  Notice of an election
not to file a U.S. patent application shall be given Grantor
not less than ninety (90) days prior to the date a statutory
bar becomes effective.

(d)  If the Grantee specifies that no U.S. patent
application will be filed (or having specified that it
intends to file, thereafter notifies the Grantor to the
contrary), the Grantee shall promptly inform the Grantor

October 1968

2331

5

of the date and identification of any known publication of
subject invention made by or known to the Grantee or, where
applicable, of any contemplated publication to be made by
or known to the Grantee, and also the date subject invention
or any embodiment thereof was first in public use or on sale
in the United States and shall furnish such other information
(and have executed such documents as provided in VIII(f) as
may be required to enable the Grantor to make disposition of
subject invention rights).

VI.  Administration of Inventions on Which the Grantee
     Elects to File Patent Applications

     (a)  The Grantee shall require assignment to it of all
right, title and interest in and to each subject invention on
which it elects to file any patent application for administra-
tion by it in accordance with and subject to the terms and
conditions herein set forth.  Assignments from the inventor
to the Grantee under U.S. patent applications shall be promptly
obtained and recorded by the Grantee in the United States
Patent Office and copies of the recorded assignment shall be
furnished to the Grantor.

     (b)  The Grantee shall grant to the Government of the
United States a nonexclusive, irrevocable, royalty-free
license for governmental purposes and on behalf of any foreign
government, pursuant to any existing or future treaty or
agreement with the United States under each U.S. or foreign
patent application it elects to file on a subject invention.
The form of the license to be granted shall be as set forth
in Exhibit "A", attached hereto, and by this reference made
a part hereof.  Any license issued by Grantee shall be made
expressly subject to the license to the Government of the
United States.

     (c)  The Grantee shall administer those subject inventions
to which it elects to retain title in the public interest and
shall, except as provided in paragraph (d) below, make them
available through licensing on a nonexclusive, royalty-free
or reasonable royalty basis to qualified applicants.

October 1968

6

(d)  The Grantee may license a subject invention on an exclusive basis if it determines that nonexclusive licensing will not be effective in bringing such inventions to the commercial market in a satisfactory manner.  Exclusive licenses should be issued only after reasonable efforts have been made to license on a nonexclusive basis, or where the grantee has determined that an exclusive license is necessary as an incentive for development of the invention or where market conditions are such as to require licensing on an exclusive basis.  Any exclusive license issued by Grantee under a U.S. patent or patent application shall be for a limited period of time and such period shall not, unless otherwise approved by the Assistant Secretary (Health and Scientific Affairs), exceed three years from the date of the first commercial sale in the United States of America of a product or process embodying the invention, or eight years from the date of the exclusive license, whichever occurs first, provided that the licensee shall use all reasonable effort to effect introduction into the commercial market as soon as practicable, consistent with sound and reasonable business practices and judgment.  Any extension of the maximum period of exclusivity shall be subject to approval of the Grantor.  Upon expiration of the period of exclusivity or any extension thereof, licenses shall be offered to all qualified applicants at a reasonable royalty rate not in excess of the exclusive license royalty rate.

(e)  Any license granted by the Grantee to other than the Government of the United States under any patent application or patent on a subject invention shall include adequate safeguards against unreasonable royalty and repressive practices. Royalties shall not, in any event, be in excess of normal trade practices.  Such license shall also provide that all sales to the U.S. Government shall be royalty free.

(f)  If permitted by its patent policies and the terms of the grant or award under which an invention is made, the Grantee may share royalties received with the inventor(s), provided that the Grantee shall not pay the inventor(s) more than (1) fifty percent (50%) of the first $3,000 gross royalty paid under the patent, (2) twenty-five percent (25%)

October 1968

7

of the gross royalty income between \$3,000 and \$13,000, and
(3) fifteen percent (15%) of the gross royalty in excess of
\$13,000. <u>The balance of the royalty income after payment of
expenses incident to the administration of all inventions
assigned to it pursuant to the provisions of this Agreement
shall be utilized for the support of educational and research
pursuits.</u>

(g) All licenses issued by the Grantee to other than
the Government of the United States under any patent applica-
tion or patent on a subject invention shall be subject to
the conditions of this Agreement and shall specifically
reserve to Grantor those rights specified in paragraph XII
hereof. The Grantee shall, upon request, promptly furnish
copies of any license agreements entered into by it to the
Department.

*(h) - new paragraph - see letter dated 2/15/83*

## VII. Patent Management Organizations

*"nonprofit"
deleted by
letter
dated
9/20/79*

The Grantee shall not assign any subject invention to
parties other than the Grantor in circumstances as set forth
in this agreement except it may assign rights in the invention
to a ~~nonprofit~~ patent management organization, provided that
the patent administration agreement between such organization
and Grantee is approved by the Grantor. Any reference to a
Grantee in this Agreement shall also include a patent manage-
ment organization when applicable and an assignment to such
an organization shall be subject to all the terms and condi-
tions of this Agreement.

## VIII. Patent Applications

(a) Grantee shall promptly furnish Grantor with a copy
of each U.S. patent application filed in accordance with this
Agreement specifying the filing date and the serial number.
Grantee shall promptly notify Grantor of each foreign patent
application filed, including filing date and serial number,
and shall furnish a copy of each application upon request.

(b) Upon request, Grantee shall fully advise the
Grantor concerning all steps and actions taken during the
prosecution of any patent application covering a subject
invention and shall, upon request, furnish copies of any
final actions, amendments, petitions, motions, appeals, or
other papers relating to the prosecution of said application.

October 1968

8

(c)  Upon request, the Grantee shall promptly furnish to the Grantor an irrevocable power of attorney granting the right to inspect and make copies of any patent application covering a subject invention or any of the final actions, amendments, petitions, motions, appeals, or other papers relating to the prosecution of said application.

(d)  The Grantee shall include the following statement in the first paragraph of the specification following the abstract of any patent application filed on a subject invention:

"The invention described herein was made in the course of work under a grant or award from the Department of Health, Education, and Welfare."

(e)  The Grantee shall not abandon any U.S. patent application filed on a subject invention without first offering to transfer all rights in and to such application to the Grantor not less than forty-five (45) days prior to the date a reply to the Patent Office action is due.  If the Grantor does not request assignment within thirty (30) days of receipt of this offer, the Grantee may permit the application to go abandoned.

(f)  If the Grantee elects to file no patent application or to abandon prosecution of a U.S. patent application on a subject invention, he shall, upon request, execute instruments or require the execution of instruments (prepared by the Grantor) and such other papers as are deemed necessary to vest in the Grantor all right, title and interest in the subject invention to enable the Grantor to apply for and prosecute patent applications in any country.

IX.  Invention Reports and Certifications

Notwithstanding the provisions of this Agreement, the Grantee shall provide invention reports and certifications as may be required by the terms of any grant or award.

X.  Disclosure and Publication

The Grantee shall not bar or prohibit publication of disclosures of inventions on which patent applications have been filed.

October 1968

2335

9

The Grantor shall have the right to publish and make disclosure of any information relating to any subject invention whenever deemed to be in the public interest, provided that upon request reasonable opportunity shall be afforded the Grantee to file U.S. and foreign patent applications.

## XI. Reports on Development and Commercial Use

The Grantee shall provide a written annual report to the Department on or before ~~September 30~~ December 31 of each year covering the preceding year, ending ~~June 30,~~ September 30, regarding the development and commercial use that is being made or intended to be made of all subject inventions left for administration by the Grantee. Such reports shall include information regarding development, the date of first commercial sale, gross sales by licensees, gross royalties received by the Grantee, and such other data and information as the Department may specify.

*amended letter 9/20/7*

## XII. Additional Licenses

(a) The Grantee agrees that if it, or its licensee, has not taken effective steps within three years after a United States patent issues on a subject invention left for administration to the Grantee to bring that invention to the point of practical application, and has not made such invention available for licensing royalty-free or on terms that are reasonable in the circumstances, and cannot show cause why he should retain all right, title and interest for a further period of time, the Grantor shall have the right to require (1) assignment of said patent to the United States, as represented by the Grantor; (2) cancellation of any outstanding exclusive licenses under said patent; or (3) the granting of licenses under said patent to an applicant on a nonexclusive, royalty-free basis or on terms that are reasonable in the circumstances.

(b) The Grantor reserves the right to license or to require the licensing of other persons under any U.S. patent or U.S. patent application filed by the Grantee on a subject invention on a royalty-free basis or on terms that are reasonable in the circumstances, upon a determination by the Assistant Secretary (Health and Scientific Affairs) that

October 1968

10

the invention is required for public use by governmental
regulations, that the public health, safety, or welfare
requires the issuance of such license(s), or that the
public interest would otherwise suffer unless such
license(s) were granted.  The Grantee and its licensees
shall be given written notice of any proposed determination
pursuant to this subparagraph not less than thirty (30) days
prior to the effective date of such determination, and that
if-requested, shall be granted a hearing before the deter-
mination is issued and otherwise made effective.

## XIII. Inventions by Federal Employees

Notwithstanding any provision contained in this Agreement,
inventions made by Federal employees, or by Federal employees
jointly with others, shall be subject to disposition under
provisions of Executive Orders, Governmental and Department
Regulations applicable to Federal employees.

## XIV. Termination

This Agreement may be terminated by either party for
convenience upon thirty (30) days written notice.  Disposi-
tion of rights in, and administration of inventions made
under grants or awards entered into during and subject to
this Agreement will not be affected by such a termination
except that in the event the Department terminates this
Agreement because of a failure or refusal by Grantee to
comply with its obligations under Articles V or VI of this
Agreement, the Department shall have the right to require
that the Grantee's entire right, title and interest in and
to the particular invention with respect to which the breach
occurred be assigned to the United States of America, as
represented by the Secretary of the Department of Health,
Education, and Welfare.

## XV. Limitation

It is agreed and understood that this Agreement shall
not apply to any grants or awards issued under statutes con-
taining requirements for disposition of invention rights with
which the provisions of this Agreement are inconsistent.  It
is further agreed that any constituent agency of the Depart-
ment of Health, Education, and Welfare may, with the approval

October 1968

11

of the Assistant Secretary (Health and Scientific Affairs),
provide as a condition of any grant or award that this
Agreement shall not apply thereto.  It is also agreed that
any constituent agency of the Department of Health, Education,
and Welfare may provide, subject to approval by the Assistant
Secretary (Health and Scientific Affairs); that this Agree-
ment shall apply to specific research contracts.

IN WITNESS WHEREOF, each of the parties hereto has
executed this Agreement as of the day and year first above
written.

UNITED STATES OF AMERICA

By _____

Assistant Secretary for
Title _Health and Scientific Affairs

(Corporate Seal)

THE REGENTS OF
THE UNIVERSITY OF WISCONSIN

By _____
Fred Harvey Harrington

Title President of the
University of Wisconsin

CERTIFICATE

I, Clarke Smith _____, certify that I am the
Secretary of  The Regents of the University of Wisconsin  ,
named above; that _____ Fred Harvey Harrington _____,
who signed this Agreement on behalf of said corporation, was
then _President of the_  University of Wisconsin  _____;
and that this Agreement was duly signed for and in behalf of
said corporation by authority of its governing body and is
within the scope of its corporate powers.

Witness my hand and the seal of said corporation this __22nd__
day of ___November___ , 19 68 .

(Corporate Seal)               By _____
                                  Clarke Smith, Secretary
(October 1968)

EXHIBIT "A"

### LICENSE TO THE UNITED STATES GOVERNMENT

WHEREAS, _____, of
(Inventor)
_____, has invented _____
_____ and filed a patent
(Invention)
application thereon in _____, bearing
(Country)
Serial No. _____, filing date_____; and

WHEREAS, the invention was made in the course of research
supported by grant(s) from the Department of Health, Education,
and Welfare; and

WHEREAS, the United States Government is entitled to
certain rights in and to said invention and application by
reason of the terms of said grant(s); and

WHEREAS, the _____,
(Institution)
hereinafter called the "Licensor" has acquired by assignment
from the inventor the entire right, title, and interest of
the inventor to such invention;

NOW, THEREFORE:

1.    The Licensor, in consideration of the premises and
other good and valuable consideration, hereby grants and
conveys to the United States Government a royalty-free, non-
exclusive and irrevocable license for governmental purposes
on behalf of any foreign government pursuant to any existing
or future treaty or agreement with the United States under
the aforesaid patent application and any and all divisions
or continuations, and in any and all patents or reissues which
may be granted thereon during the full term or terms thereof.
As used herein, "governmental purpose" means the right of
the Government of the United States (including any agency
thereof, state or domestic municipal government) to practice
and have practiced (made or have made, used or have used, sold
or have sold) throughout the world by or on behalf of the
Government of the United States.

October 1968

239

EXHIBIT "A"                                                                    2

    2.    The Licensor covenants and warrants that he has the right to grant the foregoing license, and that any assignment or license which he may make of the invention or the said patent applications or patents thereon, shall expressly be made subject to this license.

    3.    The Licensor agrees that the Government shall not be estopped at any time to contest the enforceability, validity, scope of, or title to, any patent or patent application herein licensed.


                                                      (Institution)
                                                      (Signature)

                                                      (Print or type name)

Date_____                  _____
                                                      (Official Title)


### CERTIFICATE

    I, _____, certify that I am the _____ of the Institution named as Licensor herein; that _____, who signed this License on behalf of the Institution is _____ of said Institution; and that said License was duly signed for and in behalf of said Institution by authority of its governing body, and is within the scope of its corporate powers.


October 1968