**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

          Plaintiffs,

    v.

IMCLONE SYSTEMS INC.,

          Defendant.

Civil Action No. 04 10884 RGS

**DEFENDANT'S MOTION TO STRIKE**
**THE EXPERT REPORT OF MR. BREMER**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 37, and Fed. R. Evid. 403, 702 and 802, Defendant ImClone

Systems Incorporated  ("ImClone") respectfully moves for an order barring Plaintiffs Repligen

Corporation ("Repligen") and Massachusetts Institute of Technology ("MIT"), from offering

legal testimony from Howard W. Bremer, an attorney retained by Plaintiffs who has submitted a

rebuttal "expert" report in this litigation.  In his report, attorney Bremer provides his opinions on

the law and his own legal interpretation of various licensing agreements at issue, thereby

improperly seeking to invade the province of the Court.  Barring his testimony is appropriate

because Mr. Bremer is nothing more than a lawyer offering opinions on legal issues, no different

than the trial counsel that plaintiffs have engaged for this matter.  Thus, his "expert" report is

more akin to a legal brief than a proposal for any legitimate expert testimony.[1]  If Mr. Bremer

wishes to enter an appearance as "of counsel" in this case and help argue Plaintiffs' position to

this Court, he should ask to do so.  His presentation of  "legal expert" testimony to the jury,

however, is not permitted.

Moreover, independent of the impropriety of proffering a legal expert opinion, ImClone

asks the Court to preclude Plaintiff from introducing Mr. Bremer's "rebuttal" expert report

because it does not rebut anything that ImClone's experts have said in their opening expert

reports, in contravention of the federal discovery rules and the scheduling order in this case.

Fed. R. Civ. P. 26(a)(2)(C).  Thus, Plaintiffs are attempting to improperly inject brand new,

untimely expert opinion relevant to the issue of infringement.  By tendering Mr. Bremer's new

---

[1]        Indeed, the very subject matter of Mr. Bremer's "expert" report concerns one of the two issues briefed in the pending motions for summary judgment.  In these motions, neither party has raised as an issue of fact the meaning of terms in the license agreements and applicable statute.  Rather, each party recognizes that it is the province of  the Court, not the jury, to interpret the terms of the license agreements and statute at issue. Consequently, the legal issue addressed in Mr. Bremer's report should be resolved in the Court's ruling on the pending summary judgment motions.

opinion at the close of the time period for expert reports, Plaintiffs have foreclosed any

opportunity for ImClone to provide any countering rebuttal opinion. This is precisely the type of

tactical ambush that the federal rules intended to prevent. Mr. Bremer's new "rebuttal" expert

testimony should not be allowed.

## BACKGROUND

### I.    Plaintiffs' Expert Report Of Mr. Bremer Contains Nothing But Legal Opinion

According to his rebuttal expert report, Howard Bremer has been a practicing patent

attorney for over forty years specializing in licensing and technology transfer. Bremer Rpt. ¶1,

attached as Exhibit 1.[2] Mr. Bremer is also a member of the patent bar and the bar of the State of

Wisconsin. Exh. 1. However, rather than retain Mr. Bremer as a lawyer to assist in the

presentation of Plaintiffs' case to this Court, Plaintiffs have hired him as an "expert" and

proposes to have him testify to the jury as to what the law is and how it should be applied. This

is not permissible. *See* Argument Section, I.A., *infra*.

Plaintiffs initiated this lawsuit against ImClone alleging infringement of United States

Patent No. 4,663,281 ("the '281 patent"). As one of its defenses, ImClone has asserted since this

litigation began that it cannot infringe the '281 patent because Plaintiff MIT and its first two

licensees under the '281 patent long ago exhausted—in two separate licenses—any patent rights

as to the accused cell line used to make ImClone's anti-cancer drug, Erbitux.[3] In fact, ImClone

had informed Plaintiffs of the fact that ImClone did not infringe the '281 patent due to this patent

exhaustion many years prior to the filing of this lawsuit. This issue has been extensively briefed

---

[2]    Attached as Exhibit 1 to this motion is a true and correct copy of Mr. Bremer's expert report as received from counsel for Plaintiffs.

[3]    Under the doctrine of "patent exhaustion," an authorized sale of a patented product "exhausts" the patent rights over the product sold, and the buyer may resell or use the patented product free of any control or conditions of the patent.

for the Court's consideration in dispositive motions, D.I. 73 and 87, and the facts pertinent to the

Court's determination need not be reprinted here.

.

       For purposes of this motion,  it is worth noting that one of the issues relevant to that

determination is whether the 1984 license between Plaintiff MIT and the U.S. Government and

its agencies, restricts the government's use of the '281 patent for any purpose (whether

commercial or not).  ImClone maintains that the express language of the agreement that MIT and

the government executed grants the government the right, without restriction as to

commerciality, to "make or have made, use or have used, [and] sell or have sold."  Ignoring this

express language in the government's license, Plaintiffs have pinned their hopes on the

legislative history (some dating back to 1963 and beyond) behind the subsequently enacted

Bayh-Dole Act to conjure extra-contractual language that, they assert, evinces a statutory

intention to restrict the government's right to use the patented invention to non-commercial

purposes.

       In support of their attempt to recast the contractual language to fit their arguments,

Plaintiffs have offered Mr. Bremer's "expert" testimony as to the law.  In his report, Mr. Bremer

recounts legislative history dating back to the 1960s to support his opinion on the legal meaning

of certain terms in the licensing agreements relevant to this litigation.  But Mr. Bremer does not

stop there.  He makes no secret of the fact that he intends at trial to also interpret the various

government licenses at issue, to testify about the scope of the parties' rights under those licenses,

and offer his views on the "correct" interpretation of the law relating to licensing and the transfer

of technology under the Bayh-Dole Act and its alleged influence on the licensing agreement at

issue.  Exh. 1 at ¶2.  Listed below are just a few of the legal issues on which Mr. Bremer

.

proposes to offer his "expert opinion," thus highlighting the mischief allowing such testimony

would cause:

- The scope of legal rights conferred to research institutions and the government, respectively, under the licensing agreements relevant here, including the scope of "commercial rights" and restrictions on those rights. *Id.,* ¶35; *see also* ¶26.

- The lack of any controlling legal effect of the express language in the "Confirmatory License" in this litigation because such license is pre-empted by the provisions of the Bayh-Dole Act and "are unnecessary and on their own do not control the disposition of rights in federally-funded inventions." *Id.,* ¶36.

- The legal effect of a licensee's omission in transferring or retaining "commercial rights" in the section entitled "Additional Licenses" in the license agreements relevant here. *Id.,* ¶24.

- The legal interpretation and meaning of the term "governmental purposes" and its application to the licensing agreements relevant here . *Id.,* ¶37; *see also* ¶¶21-22, 27, 32.

- The legal interpretation and meaning of the term "principal rights" and its application to the licensing agreements relevant here  *Id.,* ¶20, 22.

- The governing law under the Bayh-Dole Act and its authority in defining and restricting the scope of the government's rights. *Id.,* ¶¶38-39.

- The legal effect and "distribution of rights between universities and the government under … the Bayh-Dole Act." *Id.,* ¶¶2, 8.  Also, "the disposition of rights in inventions made under the aegis of [governmental patent agreements]." *Id.,* ¶5.

- The legal interpretation and meaning of the Bayh-Dole Act's "terms and provisions and corresponding regulations" based on the legislative history behind the codification of the act, including hearsay testimony of Mr. Norman J. Latker's view of the legislative history behind the Bayh-Dole Act and legislation leading up to the codification of the act. *Id.,* ¶¶6-9, 14-19, 29-31, 33.

## II.    Plaintiffs' *Rebuttal* Expert Report Of Mr. Bremer Rebuts None Of ImClone's Expert's Opinions, As ImClone Offered No "Expert" Opinions Or Reports On Such Purely Legal Matters

Pursuant to this Court's Order, the parties were required to provide opening expert

reports on September 7, 2005, disclosing all opinions and data from which the parties' experts

were to rely upon at trial on all issues for which the parties, respectively, had to carry the burden

of proof.[4] [D.I. 50]. In complying with the Court's Order, ImClone offered its opening expert reports relevant to the issue for which it bore the burden of proof, namely, invalidity.[5] ImClone's expert on invalidity offered <u>no opinion</u> whatsoever on the doctrine of patent exhaustion. ImClone's expert offered no opinion whatsoever about the parties' contractual obligations under the relevant licensing agreements or any of the subject matter raised in Mr. Bremer's "rebuttal" report. Plaintiffs offered two opening expert reports, one on the issue of infringement and one on damages. None of Plaintiffs opening reports addresses the parties' licensing contracts and the effect such contracts would have on the issue of ImClone's alleged infringement of the patent-in-suit. Plaintiffs did not proffer any expert report by Mr. Bremer on any issue.

Under the Court's revised Scheduling Order, rebuttal expert reports were due on October 3, 2005. By agreement of the parties, this date was moved to December 12, 2005. On that date, Plaintiffs for the first time provided the purported "<u>rebuttal</u>" expert report of Mr. Bremer.[6] His report was proffered allegedly "in rebuttal to ImClone's patent exhaustion defense, and specifically on the distribution of rights between universities and the government" under the licensing agreements in this litigation. Exh. 1 at ¶2. However, Mr. Bremer's brand new expert testimony—presented as <u>rebuttal</u> expert testimony—does not contradict any opinion offered by any of ImClone's experts. It does not even cite to or identify any opening expert report that was submitted by ImClone that it is purportedly rebutting. Indeed, to the extent Mr. Bremer's report is relevant to any issue in this litigation, it goes to the issue of infringement, and should have been presented with Plaintiffs' opening reports.

---

[4]    By agreement of the parties, the date for exchange of opening expert reports was extended to October 14, 2005.

[5]    ImClone presented the expert reports of Dr. Stuart Aaronson on invalidity.

[6]    Neither of ImClone's rebuttal expert reports addressed any of the issues opined on in Dr. Bremer's report.

During discussions between counsel on December 22, 2005, counsel for Plaintiffs refused to withdraw Mr. Bremer's report, and made it clear that Mr. Bremer intends to testify about the contractual interpretation of the relevant licensing agreements and the parties' legal obligations under those agreements as rebuttal testimony. Plaintiffs offered no explanation, or even a pretense of one, as to which of ImClone's expert's opinions that Mr. Bremer allegedly is offered to rebut. Nor did Plaintiffs meaningfully explain their failure to provide Mr. Bremer's report on October 14, 2005, when opening reports were due. Attempts to resolve this issue were unsuccessful.

## ARGUMENT

### I.    Mr. Bremer's Expert *Legal* Opinion Should Be Barred.

#### A.    Expert Legal Testimony is Improper

The First Circuit has joined nearly every other Circuit in repeatedly condemning the practice of attempting to introduce law as evidence through reliance on self-anointed "experts." Expert testimony proffered to interpret the law is presumptively improper. *U.S. v. Mikutowicz*, 365 F. 3d 65, 73 (1st Cir. 2004). The appellate court's position on this subject is explicit:

> It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule.
>
> *            *            *
>
> In our legal system, purely legal questions and instructions to the jury on the law to be applied … is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible. As the Second Circuit has noted, "The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge-surely an impermissible inference in our system of law."

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1977) (citations to caselaw in the 2d, D.C., 5th, 6th, 9th, 10th and 4th Circuits omitted). Thus, the presumptive ban on

legal "expert" testimony is both long-standing and universally recognized, which, of course, begs the question of why a legal "expert" would knowingly submit such an improper report.

The courts have uniformly held that expert testimony on issues of U.S. law is improper because the role of an expert is to interpret and analyze factual evidence—not to testify about the law. "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact … because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Id.* at 100; *see also United States v. Brody*, 858 F.2d 492, 497 (9th Cir. 1988) ("The law would be a curious state if jurors received their instructions on the law from an expert witness as well as from the trial judge. Resolving doubtful questions of law is the distinct and exclusive province of the trial judge. Expert testimony here would have been not only superfluous but mischievous.")

Moreover, it is equally improper for an expert witness to purport to apply the law to the facts of the case. Fed. R. Evid. 403. The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The application of the law to the facts of the case, of course, is precisely the province of the "untrained layman"—that is, the jury. Consequently, "expert" testimony that seeks to apply the relevant law to the facts in evidence is improper as it "circumvents the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988); *see also Cooley v. United States*, 501 F.2d 1249, 1253-54 (9th Cir. 1974) ("It is the function of the jury to determine the facts from the evidence and apply the law as given by the court to the facts as found by them from the evidence.").

Finally, where, as here, a party proffers an expert to provide testimony over legal rights and responsibilities involving contractual or licensing issues, courts have barred the legal testimony. Expert testimony delineating the parties' "legal obligations ... under [a] contract" and "legal opinions as to the meaning of the contract terms at issue" is improper. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977). Such testimony usurps the role of the judge and jury; it is unhelpful and highly prejudicial. Fed. R. Evid. 403. "The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony." *Marx & Co.,* 550 F.2d at 510.

### B.    Mr. Bremer Should Not be Permitted to Testify Because He is a Lawyer Offering Nothing More Than Legal Opinion

As detailed above (*see* Background Section, I., *supra*), Mr. Bremer's proposed testimony focuses exclusively on purely legal issues. In his report, Mr. Bremer seeks to position himself as an expert on any issue relating to the interpretation of the government licenses relevant here, including whether the license restricts "commercial rights;" whether express language in the license is pre-empted by the provisions of the Bayh-Dole Act; whether the legal effect of a licensee's failure to retain patent rights in a subsequent sale ends any restriction of use; whether the terms "governmental purposes" or "principal rights" as used in the license restricts use; and whether the provisions of the Bayh-Dole Act govern the license here. Such legal testimony is presumptively improper and has been roundly barred in nearly every jurisdiction. *Nieves-Villanueva*, 133 F.3d at 99-100. The same should happen here.

Even more insidious, Mr. Bremer applies his legal understanding of the license to the facts in this case. After providing his opinion as to the legal meaning of certain terms, Mr. Bremer provides his opinion as to the legal scope of the parties' rights under the relevant license and offers his interpretation of how it restricts the parties' activities under the license. His

8

testimony is improper. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d at 508-10 (barring expert opinion on contractual legal obligations and contract interpretation).

Permitting Mr. Bremer to testify as to how he would interpret or apply the law would usurp not only the role of this Court (as the arbitrator of what the law means) but of the jury as well, given the fact finder's charge to apply the law to the facts of the case. *Accord, e.g., Cooley*, 501 F.2d at 1253-54. Moreover, allowing Mr. Bremer to testify as to the meaning of the law would run the very real risk of having the jury adopt a view of the law that is <u>contrary</u> to this Court's ultimate instructions, thereby making meaningful appellate review of any subsequent jury verdict impractical at best. Mr. Bremer's proposed testimony should be precluded in its entirety and his expert report should be stricken.

## II.    Mr. Bremer's "*Rebuttal*" Expert Opinion Should Be Barred.

### A.    Rebuttal Opinion That Fails To Rebut Any Opening Expert Opinion Is Improper

As noted above, Plaintiffs' proffer of Mr. Bremer's <u>legal</u> testimony requires excluding his report in its entirety. However, the federal discovery rules governing expert <u>rebuttal</u> testimony also independently preclude Mr. Bremer's new opinion. Federal Rule of Civil Procedure 26 requires experts to include in their opening expert reports "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). In certain circumstances, an expert may also issue a rebuttal expert report, provided that the evidence and proposed testimony disclosed in such a report "is intended solely to contradict or <u>rebut</u> evidence on the <u>same subject matter</u> identified <u>by another party under paragraph (2)(B)</u> [Rule 26(a)(2)(B)], within 30 days <u>after the disclosure made by the other party</u>." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added); *accord Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 2005 WL 1300763, *2

(N.D. Ill. 2005); *Crowley v. Chait,* 323 F.Supp.2d 530, 550 (D.N.J. 2004). Here, Mr. Bremer's "rebuttal" report does not respond to any Rule 26(a)(2)(B) opening report submitted by ImClone.

Federal Rule of Civil Procedure 37 provides that a court can exclude expert testimony if the party proffering the expert failed to follow the requirements of Rule 26. *See* Fed. R. Civ. P. 37(c)(1)[7]; *accord Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992); *Poulis-Minott v. Smith,* 388 F.3d 354, 358 (1st Cir. 2004). As a result, a court may prohibit an expert from testifying on issues or opinions where a party failed to offer an initial report providing the expert's complete and detailed statement of opinions to be expressed and the basis for these opinions. *Id.*

> **B.    Plaintiffs Cannot Raise Brand New Opinion Testimony Through A New Expert In A "*Rebuttal*" Report**

It is axiomatic that <u>rebuttal</u> expert testimony must rebut other expert testimony. As Rule 26(a)(2)(C) makes clear, rebuttal expert opinions may be submitted only to rebut Rule 26(a)(2)(B) initial expert opinion proffered "<u>by another party</u> under paragraph (2)(B) … <u>after the disclosure made by the other party</u>." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). A party, "in its rebuttal expert report, [] presents expert opinions refuting the arguments made by the opposing party <u>in [their] initial expert report</u>. The rebuttal expert report is no place for presenting <u>new arguments</u>, unless presenting those arguments is substantially justified and causes no prejudice." *Baldwin Graphic Sys.,* 2005 WL 1300763 at *2 (emphasis added). Thus, a rebuttal report that fails to contradict or rebut an opening expert report tendered under Fed. R. Civ. P. 26(a)(2)(B) improperly presents new, untimely expert opinion.

---

[7]    Federal rule 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) …, is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Yet that is exactly what Plaintiffs propose to do. Two months after opening expert disclosures were due, Plaintiffs have trotted out a new legal expert who has submitted, under the guise of a "rebuttal" report, what is tantamount to a legal brief. Putting aside the impropriety of submitting a legal opinion, Mr. Bremer through his report offers his ultimate legal conclusion on a host of licensing issues in this case. However, none of his "rebuttal" report contradicts or rebuts any of ImClone's opening expert opinions. It is brand new opinion testimony on topics that were not raised in any opening expert reports, and it is wholly improper.

Plaintiffs' untimely submittal of Mr. Bremer's new testimony in his alleged "rebuttal" report violates their duty under the federal discovery rules. Fed. R. Civ. P. 26(a)(2)(B); 26(a)(2)(C). Their failure results in the automatic exclusion of his "rebuttal" report, absent substantial justification or harmlessness. Fed. R. Civ. P. 37(c)(1). The First Circuit has maintained that Rule 37(c) "contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998); *see also Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 19-20 (1st Cir. 2001).

Mr. Bremer's report, even assuming it was otherwise proper (which it is not), should have been included in the opening reports submitted by Plaintiffs since his opinions go to the heart of Plaintiffs' infringement case. Indeed, nothing prevented Mr. Bremer from conducting his interpretation and analysis of the legal principles behind the various licensing agreements in this litigation back in October. Nothing prevented him from undertaking his legal analysis of the licensing rights and obligations under the Bayh-Dole Act and dusting off the legislative history behind the act this past summer and fall. In fact, Mr. Bremer had already opined on these issues

11

in his September 14, 2005 declaration in support of Plaintiffs' opposition to ImClone's motion for summary judgment. Fed. R. Civ. P. 26(a)(2)(C).

Plaintiffs cannot show any justification for their procrastination in failing to timely submit Mr. Bremer's report in October. Plaintiffs had been completely aware of ImClone's position on non-infringement due to patent exhaustion for years. Mr. Bremer had ample time to complete his expert report in a timely fashion. The only possible pretext which has been offered by Plaintiffs to justify belatedly submitting this report related to infringement is that Mr. Bremer is purportedly "rebutting" ImClone's defense of patent exhaustion. Plaintiffs' excuse provides them no relief. First, the federal discovery rules allow rebuttal reports only to contradict opinions offered in initial expert reports by another party. His "rebuttal" report is not offered to contradict any of ImClone's expert's testimony. Second, the complete thrust of Mr. Bremer's "rebuttal" opinion is offered "specifically on the distribution of rights between universities and the government" under the relevant licensing agreements. Exh. 1 at ¶2. That opinion regards MIT's possession of rights under the '281 patent with respect to the accused product and is not rebuttal testimony. Finally, although Mr. Bremer purports to offer his opinion "in rebuttal to ImClone's patent exhaustion defense," he nowhere addresses any of ImClone's points on patent exhaustion that ImClone submitted in its summary judgment briefs. Nor could he. That is because the patent exhaustion defense is a legal issue here ripe for the Court's determination, and not the proper subject for any expert testimony.

Allowing testimony by Mr. Bremer about the legal issues surrounding the government licenses would not be harmless. Setting aside the prejudicial nature of any such legal testimony, Plaintiffs have foreclosed ImClone's experts from rebutting Mr. Bremer's legal testimony because the period for submission of rebuttal expert reports has ended. Also, allowing Mr.

Bremer's belated report would tax ImClone's resources as it prepares for trial. Because discovery is also closed, ImClone cannot chase down the several third parties identified in Mr. Bremer's report that allegedly supplied him with various (hearsay) statements as to the legislative history behind the Bayh-Dole Act. The prejudice to ImClone is clear. His expert report should be struck.

## CONCLUSION

For the foregoing reasons, ImClone's motion to strike in its entirety the purported rebuttal expert report of Mr. Bremer should be granted.

Dated: January 12, 2006                    Respectfully submitted,

                                           IMCLONE SYSTEMS, INC.

                                           By its Attorneys,

                                           /s/ Michael R. Gottfried____ __ _____
                                           Michael R. Gottfried (BBO# 542156)
                                           Anthony J. Fitzpatrick (BBO# 564324)
                                           Christopher S. Kroon (BBO# 660286)
                                           DUANE MORRIS LLP
                                           470 Atlantic Avenue, Suite 500
                                           Boston, Massachusetts 02210
                                           Tel: (617) 289-9200
                                           Fax: (617) 289-9201

                                           Richard L. DeLucia
                                           George E. Badenoch
                                           Michael D. Loughnane
                                           Paul M. Richter, Jr.
                                           Anthony Giaccio
                                           KENYON & KENYON
                                           One Broadway
                                           New York, NY 10004-1050
                                           Tel: (212) 425-7200
                                           Fax: (212) 425-5288

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via First Class Mail to those indicated as non registered participants on January 12, 2006.

/s/ Michael R. Gottfried
Michael R. Gottfried (BBO# 542156)