UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS INC.,<br><br>Defendant. | Civil Action No. 04 10884 RGS |

**DEFENDANT'S MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE REFERENCE AT TRIAL TO TESTING PERFORMED BY DR. GILLIES AND TO STRIKE TESTIMONY OF DR. STRUHL REGARDING TEST DATA UNTIMELY DISCLOSED BY PLAINTIFFS**

Defendant ImClone Systems Inc. ("ImClone") respectfully moves pursuant to Local Rule 7.1 for leave to file a short reply memorandum in support of its motion to exclude reference at trial to testing performed by Dr. Gillies and to strike testimony of Dr.Struhl regarding test data untimely disclosed by Plaintiffs. A reply brief is necessary to address Plaintiffs' mischaracterization of facts and erroneous legal propositions. The reply brief does not raise any new issues.

In their Opposition, Plaintiffs distort the law governing the respective burdens of the parties in patent infringement suits and blame their untimely submission of test data on ImClone for allegedly not contesting infringement during discovery. It is incredible that, after twenty months of discovery, Plaintiffs feign ignorance as to whether or not ImClone admits

infringement of the asserted claims. The record is clear, beginning with ImClone's Answer to the Complaint and continuing through its responses to written discovery, that ImClone not only denied infringement, but also alleged that Plaintiffs had failed to carry their burden of showing that certain claimed elements are in the accused product. ImClone need not prove non-infringement, as that burden plainly falls on Plaintiffs. Plaintiffs' failure to elicit admissions or evidence from ImClone concerning the accused product during discovery is no excuse for waiting until discovery *closed* to purportedly *begin* belated and secretive testing[1] that they needed all along to meet their undeniable burden of proving infringement. Plaintiffs' argument that they did not know that ImClone was contesting certain elements of the claims and, therefore, they were excused from their obligation to prove that the accused product meets each and every element of the asserted claims is preposterous. The law is crystal clear on this issue -- the burden of proof on infringement is always on the patentee and Plaintiffs know, or should have known, that they needed this testing to meet their burden.[2]

Just as Plaintiffs cannot blame ImClone for their apparent utter failure to timely conduct testing that they needed to prove infringement, Plaintiffs also cannot blame ImClone for, or otherwise justify, (1) their further failure to include any mention of this testing in their opening expert report on infringement; and (2) their attempt to claim privilege and work product protection with respect to this testing. Plaintiffs cannot use privilege as a shield and a sword.

---

[1] Plaintiffs are disingenuous in their argument that this test data was necessary to rebut ImClone's expert on invalidity. If that were true, all Plaintiffs had to agree to during the December 19, 2005 meet and confer, was not to offer the offending test data in its case-in-chief on infringement. Plaintiffs rejected that proposed compromise.

[2] ImClone also contends that the test data proffered in Dr. Struhl's expert report is technically and legally insufficient to carry Plaintiffs' burden on the issue of infringement.

I.  **ImClone Is Not To Blame For Plaintiffs' Failure To Timely Establish Evidence Of Infringement**

It is indisputable that Plaintiffs, as patentees, bear the burden of proof on infringement. *See, e.g., Centricut, LLC v. ESAB Group Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 1994). At trial, Plaintiffs must supply sufficient evidence to prove that the accused products contain *every* limitation of the claim. *See, Seal Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Contrary to this basic principle of patent law, Plaintiffs argue that their burden should be shifted to ImClone. Plaintiffs posit that their belated disclosure of testing is ImClone's fault, because ImClone allegedly had not asserted non-infringement to Plaintiffs' satisfaction, and therefore effectively conceded infringement.[3] The law and facts are clear, Plaintiffs have *always* had the burden of proving that ImClone infringed particularly where, like here, ImClone has not conceded anything with respect to infringement.

According to the facts set forth by Plaintiffs in their Opposition, unsupported by declarations or other evidence, Plaintiffs did not even *begin* any testing until September 2005, despite filing suit in this litigation in March 2004. *Opp. Br.* at 4. No explanation is given for this 18 month period during which Plaintiffs performed no testing, yet continued to publicly claim that ImClone infringed.

Even worse, once Plaintiffs began testing in September of 2005, Plaintiffs continued to block any discovery on this testing under a claim of privilege. *Pfeffer Decl.* Exh. J. Now, Plaintiffs also incredibly blame ImClone for their assertion of privilege and refusal to produce the testing materials and witnesses, by implying that ImClone should have more strenuously

---

[3] While it is not ImClone's legal responsibility to inform Plaintiffs that they have not met their evidentiary burden, ImClone did exactly that in its interrogatory responses, beginning way back in November of 2004. *Kane Decl.*, Exh. Q at 6.

demanded production of the materials which Plaintiffs claimed were privileged. *Opp. Br.* at 4. This misses the point. It is Plaintiffs' responsibility to produce materials they intend to use at trial, and it is Plaintiffs' assertion of privilege and lack of disclosure that precludes them from now introducing this evidence. Under Plaintiffs' theory, they could refuse to comply with discovery requests with a claim of privilege, and then waive that privilege at trial and introduce reams of previously undisclosed, yet previously requested, evidence. The Federal Rules are designed to prevent exactly this type of ambush.

Plaintiffs are solely to blame for their decision to not perform any of the testing necessary to possibly prove infringement until September 2005 (18 months after filing suit). Plaintiffs are solely responsible for their decision to claim privilege with respect to this testing once it began, and their steadfast refusal to produce all of the materials and witnesses relating to this testing. Any attempt by Plaintiffs to blame ImClone for Plaintiffs' outrageous behavior should be seen for the desperate ploy it is, and rejected outright.

## II.     Plaintiffs' Failure To Timely Produce The Requested Data Is Not Harmless

Plaintiffs' exclamations that ImClone cannot show prejudice are contradicted by what was said, and not said, in Plaintiffs' carefully-worded brief. Nowhere in their opposition brief do Plaintiffs respond to the issue of whether they have waived privilege with respect to the undisclosed test data and all communications concerning such data. Neither do Plaintiffs provide the full extent of the undisclosed evidence. Their silence is telling. ImClone can only surmise that Plaintiffs, through their muted response, still possess a significant amount of yet-to-be-produced "privileged" material.

The only statement Plaintiffs did make as to the extent of the undisclosed data is that they provided "[a]ll the data related to the testing *that was in Plaintiffs' possession*." *Opp. Br.* at 7 (emphasis added). However, Plaintiffs' qualified statement does not aver whether Dr. Gillies or Dr. Struhl (or plaintiffs' lawyers) themselves possess additional evidence. Dr. Gillies, a third-party, may have only provided select, beneficial data to Plaintiffs, while secreting the injurious data now that fact discovery is completed. And it is clear from the few conclusory graphs of data disclosed thus far that more evidence exists. Thus, even if ImClone were able to re-depose Dr. Gillies and Plaintiffs' expert on the testing, as well as be permitted to file a supplemental expert report to address this testing, as Plaintiffs' suggest, (*Opp. Br.* at 6), it would not palliate the harm because Plaintiffs have not yet disclosed the identity of all those involved in the testing or the decision to test, nor has Plaintiffs produced the bulk of test data carried out for purposes of this litigation.

In their brief, Plaintiffs rely on *Johnson v. H.K. Webster*, 775 F.2d 1 (1st Cir. 1985), for the proposition that a moving party's failure to seek a continuance of trial, or a less severe remedy than preclusion, somehow bars ImClone from now seeking exclusion of the belated testing data. *Opp. Br.* at 9-10. However, as the First Circuit later explained, a lesser remedy is preferred only "after there has been some belated, *subtle notice, of a change* in an expert's testimony." *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 366 (1st Cir. 1998) (emphasis added). The Court should also consider whether the surprise testimony is "on an arguably peripheral matter [or if] it went to the heart" of a case, and "whether the new testimony is a departure from the general scheme of the expert's report. In *Johnson,* it was not." *Id.* Contrary to the challenged testimony in *Johnson*, Plaintiffs propose changes that are neither subtle, nor peripheral, nor

consistent with the general scheme of the original expert's report.[4] Finally, the First Circuit noted that, subsequent to *Johnson*, it should also consider an "important factor identified by *Thibeault*: the incentive system created for counsel to engage in violations of their Rule 26(e). If continuances [or lesser remedies] were granted as a matter of course for violations of Rule 26(e), the rule could always be disregarded with impunity." *Licciardi*, 140 F.3d at 366-67.

What is noteworthy from *Johnson* however is that testimony and evidence are properly excluded where there is "some evasion or concealment, intentional or not, on the part of the litigant offering the evidence." *Johnson*, 775 F.2d at 8. As discussed above, Plaintiffs' concealment, whether intentional or not, is ongoing, and that alone warrants preclusion of the testing evidence.

Plaintiffs also cannot credibly claim that the exclusion of testing evidence would unduly prejudice their trial preparations. If Dr. Gillies' testing goes to the heart of validity and infringement as Plaintiffs assert, then they should have asked Dr. Gillies to perform the testing more than one year earlier. Plaintiffs offer no plausible explanation for not having Dr. Gillies conduct the testing sooner. Even if Plaintiffs wished to use the test data solely for invalidity, they have still offered no reason why Dr. Gillies, a *fact* witness, failed to conduct his testing during *fact* discovery. Plaintiffs have only themselves to blame.

Thus, re-opening discovery cannot ameliorate the prejudice that ImClone would face due to the volume of the associated fact and expert discovery required, and the negative impact that conducting such discovery would have on ImClone's trial preparations. Moreover, the exclusion of the testing evidence would not unduly prejudice Plaintiffs. Plaintiffs, having kept this

---

[4] Indeed, Plaintiffs, themselves, characterize the test data as "devastating." While ImClone puts little value in this sparse data, ImClone is disturbed by the belated disclosure and ambush tactics.

evdience secret throughout discovery, and having failed to produce, even today, all materials and witnesses related to the testing, could not possibly have expected that they would be allowed to rely on this evidence at trial.

### III. Plaintiffs' Expert Provided No Opinions of Infringement Based on the Late-Produced Testing Data, and Accordingly Should be Precluded From Providing Any Testimony of Infringement Relying on This Data.

Under the scheduling order in this case, as modified by the consent of the parties, Plaintiffs' expert report on infringement was due on October 12, 2005. At that time Plaintiffs were required to provide an expert report which contained their expert's opinions as well the bases and reasons for the opinions including all data or other information considered by the expert. Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs' expert's report on infringement was completely devoid of any reliance on any testing, and did not even indicate that any such testing might be then occurring or relied upon in the future. As a result of Plaintiffs' violation of Rule 26, a court may prohibit an expert from testifying on issues where the initial report failed to provide the expert's complete and detailed statement of opinions and the basis for these opinions. Fed. R. Civ. P. 37(c)(1); *accord Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992); *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004).

In an attempt to excuse the failure to provide any of this test data during fact discovery, Plaintiffs attempt to cast Dr. Gillies as an expert performing expert testing that was only properly disclosed during expert discovery. *Opp. Br.* at 8. This is flat-out wrong. The scheduling order called for an identification of experts at the time that the expert reports for an issue were due, and Dr. Gillies was not identified when Plaintiffs submitted their expert reports on infringement.

Additionally, Dr. Gillies has not submitted an expert report in this litigation. Dr. Gillies cannot be considered an "expert" under Fed. R. Civ. P. 26, or under the Federal Rules of Evidence.

Like the decision to not begin testing for the first year and a half of this litigation, the decision to not include any testing related to infringement in their expert reports on the issue of infringement was a decision made solely by Plaintiffs. Plaintiffs' attempts to lay blame for this decision on ImClone should be rejected.

IV. **In the Alternative, Plaintiffs' Expert Testimony Should Be Limited to the Opinion Provided in his Report, Namely, To Attempt To Rebut ImClone's Patent Obviousness Assertion**

As noted above, Plaintiffs should not be able to rely upon the undisclosed test data (or any opinions of Dr. Struhl based thereon) because the test material and witnesses have not been produced, Plaintiffs are still apparently claiming some form of privilege with respect to this testing and their control of it, and Plaintiffs' expert reports on infringement do not mention this testing or how it supports their theory of infringement. Alternatively, however, Dr. Gillies's test data should be used at trial solely for the purposes of attempting to rebut any case presented by ImClone regarding the obviousness of the patent in suit. In other words, if the Court determines that Plaintiffs' failure to produce this data earlier is somehow excusable (which it is not), and that its admission is harmless (which it is not), the Court should still limit Plaintiffs' reliance to the purposes set forth in Plaintiffs' expert report, namely with respect to the narrow issue of objective indicia of supposed patent non-obviousness. Further, even this should not be allowed until after Plaintiffs have completely waived all claims of privilege or work product with respect to any testing they had performed, provided all materials related in any way to such testing, and allowed the depositions of all people who performed, requested, or possibly influenced such

testing.[5] Additionally, adequate protections should be put in place to prevent a jury from improperly considering this evidence for supposed non-obviousness in connection with Plaintiffs' case-in-chief on infringement.

Plaintiffs have made numerous legally and factually flawed propositions in the hope of confusing the Court on the real issues. The issue here is not ImClone's conduct, but rather Plaintiffs' deliberate and intentional decision to block discovery regarding their "proof" of infringement by initially denying the existence of this proof, and then through subsequent claims of privilege. Accordingly, ImClone respectfully requests that the Court grant leave to file this short reply brief.

---

[5] If the plaintiffs are allowed to use this testing for purposes of proving infringement (which they should not) ImClone must further be given time to conduct its own testing and file additional expert reports in rebuttal.

## **LOCAL RULE 7.1 CERTIFICATION**

Undersigned counsel certifies that, before filing this motion, counsel for the Defendant conferred with counsel for Plaintiffs in a good faith attempt to resolve or narrow the issue presented in this motion.

                                         Respectfully submitted,

                                         IMCLONE SYSTEMS, INC.
                                         By its Attorneys,

Dated: January 26, 2006            /s/ Michael R. Gottfried
                                         Michael R. Gottfried (BBO#542156)
                                         Anthony J. Fitzpatrick (BBO#564324)
                                         Christopher S. Kroon (BBO#660286)
                                         DUANE MORRIS LLP
                                         470 Atlantic Avenue, Suite 500
                                         Boston, MA  02110
                                         Tel: (617) 289-9200
                                         Fax: (617) 289-9201

                                         Richard L. DeLucia
                                         George E. Badenoch
                                         Michael D. Loughnane
                                         Paul M. Richter, Jr.
                                         Anthony Giaccio
                                         KENYON & KENYON
                                         One Broadway
                                         New York, NY  10004-1050
                                         Tel: (212) 425-7200
                                         Fax: (212) 425-5288

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 26, 2006.

/s/ Michael R. Gottfried
Michael R. Gottfried