**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>            Plaintiffs,<br><br>      v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>            Defendant. | Civil Action No. 04-10884-RGS |

**PLAINTIFFS' COMBINED OPPOSITION TO IMCLONE'S AND KENYON & KENYON LLP'S MOTIONS TO COMPEL PRODUCTION OF E-MAIL CORRESPONDENCE SUBMITTED TO THE COURT IN CONNECTION WITH PLAINTIFFS' MOTION FOR SANCTIONS**

**INTRODUCTION AND BACKGROUND**

On March 16, 2006, Plaintiffs Massachusetts Institute of Technology and Repligen Corporation filed a motion asking the Court to sanction Defendant ImClone Systems, Inc. and its counsel for intimidating a witness, violating the Protective Order, and attempting to suppress evidence. At the May 4, 2006 hearing on Plaintiffs' motion, Plaintiffs submitted and the Court accepted two privileged e-mail communications *in camera*. One e-mail, from Dr. Stephen Gillies (the former MIT inventor/witness who was the subject of the intimidation), showed the direct consequence of ImClone's and its counsel's misconduct. The other e-mail, between Mr. Kane and Jason Kravitz, counsel for Dr. Gillies, rebutted ImClone's allegation that Plaintiffs' counsel improperly contacted Dr. Gillies.

On July 24, 2006, the Court issued an Order holding that "the court is of the tentative view that the allegations of ethical misconduct are extremely serious and that the conduct of defendant's counsel may have prejudiced the ability of MIT to fully litigate its Complaint." [D.I.

142 at 1.] The Court also ordered a hearing to give ImClone's counsel "the opportunity to show cause why sanctions should not be imposed, or if imposed, why a lesser penalty than disqualification might be adequate." [*Id.*]

ImClone and its outside counsel, Kenyon & Kenyon ("Kenyon"), now both move to compel the production of the e-mails submitted *in camera*. ImClone and Kenyon assert that (1) Plaintiffs have waived the privilege by the *in camera* disclosure, (2) access to the privileged communications is necessary for their preparation for the show cause hearing, and (3) ImClone and Kenyon would be unduly prejudiced.

But the law is clear that an *in camera* disclosure does not destroy any applicable privilege. Moreover, ImClone and Kenyon will suffer no prejudice by Plaintiffs' non-disclosure of privileged information. Indeed, the communication between Mr. Kane and Mr. Kravitz has no bearing on the issue of whether and how ImClone or its counsel should be sanctioned for their misconduct. As for the e-mail from Dr. Gillies, Plaintiffs do not object to producing a redacted version that would allow ImClone and Kenyon access to the non-privileged facts contained in the communication, provided this is not held to be a waiver of privilege. Accordingly, Plaintiffs respectfully request that the Court deny ImClone's and Kenyon's motions.

## ARGUMENT

A.  **The Court Accepted Plaintiffs'** *In Camera* **Submission, and that Submission Did Not Destroy Any Applicable Privileges.**

ImClone and Kenyon only partially quote the hearing transcript. The full passage makes clear that the Court accepted Plaintiffs' offer to submit the e-mails at issue *in camera*:

> THE COURT: Just to clarify one matter, do I have anything that's been submitted from Mr. Kravitz indicating whether he implicitly authorized contact with Dr. Gillies?
> MS. BROOKS: We do have, your Honor, it is email communication between Mr. Kane and Mr. Kravitz which we would ask to submit in camera, since it is pursuant to a joint defense agreement. We also have email

>communication from Dr. Gillies, after this email by Mr. Gallagher was sent to Merck, showing exactly what took place at Merck because of Imclone's email, and for no other reason. That is also attorney-client, and we would ask to submit that in camera, your Honor.
>
>>MR. DeLUCIA: I don't know what went on at Merck. I don't have -- she's showing you documents of what went on with Merck, and we're supposed to be pulling Merck's strings? I have no idea what went on at Merck. How does she know?
>
>>THE COURT: Who knows. *Do submit the documents, and you may submit them in camera*, but you had something else you wanted to say?

[May 4, 2006 Hr'g Tr. at 26:6-27:1 (emphasis added).]

ImClone and Kenyon point to no case in which *in-camera* submission of privileged material has been held to be a waiver of the asserted privilege. Indeed, the law is precisely the opposite. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 568-569 (1989) (*in camera* review to determine the merits of a privilege claim did not destroy the privileged nature of the contested communications); *SEC v. Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1997) (a voluntary submission to the court for *in camera* review of transcripts of taped conversations to establish marital communication privilege did not waive privilege); *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) ("*in camera* review of documents does not destroy the attorney-client privilege"); *Terkel v. AT&T Corp.*, -- F. Supp. 2d --, 2006 WL 2088202, at *11 (N.D. Ill. 2006) (noting that the court could not disclose the contents of the documents submitted *in camera* by the government to support its claim of state secret privilege); *United States v. DeCay*, 406 F. Supp. 2d 679, 682 (E.D. La. 2005) (*in camera* disclosure to resolve the question of whether counsel's prior representation created a conflict would not result in a waiver of the attorney-client privilege); *Flint Hills Scientific, LLC. v. Davidchack*, No. Civ.A.00-2334-JAR, 2002 WL 975881, at *8-9 (D. Kan. March 21, 2002) (same).

Moreover, the cases ImClone and Kenyon rely on, in addition to being inapposite, are all outside the *in-camera* context. For example, in *Goss Int'l Americas, Inc. v. MAN Roland, Inc.*,

3

Case No. 03-cv-513-SM, 2006 U.S. Dist. LEXIS 36245 (D.N.H. June 2, 2006), the disclosures alleged to have waived the privilege were comprised of information elicited by a party from its former in-house counsel during a deposition and certain documents produced in response to document requests. *Goss*, 2006 U.S. Dist. LEXIS 36245, at *4.  The court found that there was no waiver because there was no disclosure of privileged information. *Id.* at *7-*9.  In *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16 (1st Cir. 2003), the disclosures that allegedly constituted a waiver of the attorney-client and/or work product privilege were disclosed by the corporation during a conference call with the Food and Drug Administration, and in the corporation's pre-indictment proffers. 348 F.3d at 20.  The First Circuit held that the corporation's extrajudicial disclosure did not give rise to a broad subject matter waiver. *Id.* at 29.  And in *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987), the disclosures that led to a claim of waiver involved publication of a book by von Bulow's attorney that chronicled the events surrounding von Bulow's first criminal trial, the appeal, and ultimate acquittal. *In re von Bulow*, 828 F.2d at 96.

     In recognition of the special nature of an *in camera* disclosure, ImClone and Kenyon wrongly contend that Plaintiffs are somehow using the privilege as both "sword and shield."  As an initial matter, the cases ImClone and Kenyon rely on again merely recite the general proposition that a litigant cannot use the privilege as both a sword and a shield.  Not only do they not involve *in camera* disclosures, they do not even involve a situation where the court actually found that the litigant unfairly used the privileged information and thus effectuated a broad subject matter waiver. *See In re Keeper of the Records*, 348 F.3d at 16-29; *In re von Bulow*, 828 F.2d at 94-104; *Goss*, 2006 U.S. Dist. LEXIS 36245, at *1-*12.  As such, they do not stand for a

general waiver of the privilege, and provide no guidance as to under what circumstances one's reliance on privileged information would result in a waiver of the privilege.

On the other hand, the Kansas district court's decision in *Flint Hills Scientific* is directly on point. In *Flint Hills Scientific*, plaintiff Flint Hills Scientific ("FHS") brought a motion before the magistrate judge to disqualify the law firm Blackwell Sanders Peper Martin ("Blackwell Sanders") from representing defendant intervenor Mr. Alexei Nikitin, alleging that Blackwell Sanders had a conflict of interest. *Flint Hills Scientific*, 2002 WL 975881, at *1. In support of its motion to disqualify, FHS submitted a box of documents to the magistrate judge for *in camera* review as evidence of the conflict of interest, but nonetheless claimed that the contents of the documents were protected by the attorney-client privilege and the attorney work product doctrine. *Id.* Thereafter, Nikitin filed a motion to compel FHS to produce the documents submitted *in camera*. *Id.* The magistrate judge granted Nikitin's motion to compel, finding that FHS directly put the confidential and privileged communications at issue when it filed the motion to disqualify, and accordingly, FHS had waived the attorney-client privilege with regard to those communications. *Id.* at *4-*5.

The presiding district court judge disagreed. In reversing the magistrate judge's decision, the court reasoned:

> The "at issue" waiver principle provides that, "the attorney-client privilege is waived only to the extent that waiver is necessary to prevent the shield from being used as a sword. *One must consider the nature of the sword and the extent of the wounds the litigant claiming the privilege seeks to inflict with it.*"

*Id.* at *8 (quoting *IMC Chems., Inc. v. Niro Inc.*, 2000 WL 1466495, at *23 (D. Kan. 2000)) (emphasis added). The court distinguished a motion to disqualify from an "advice of counsel" defense or a medical malpractice claim, noting that in those examples, the litigant claiming the privilege was seeking to prove a claim or defense based on the advice of counsel. *Id.* The court

5

held that a former client should not have been required to disclose such confidences to the adversary as the price of obtaining disqualification. *Id.*

Similarly, in this case, Plaintiffs did not submit the e-mails to prove a claim or defense based on advice of counsel. Plaintiffs submitted Dr. Gillies' e-mail to show what happened at Merck KGaA as a result of ImClone and its in-house counsel's misconduct. [May 4, 2006 Hr'g Tr., at 26:14-18.] The e-mail between Mr. Kane and Mr. Kravitz was submitted to refute ImClone's allegation of misconduct against Plaintiffs' counsel. [*Id.* at 26:10-13.] Plaintiffs should not be forced to disclose privileged information to remedy the prejudice to Plaintiffs caused by ImClone and its counsel's misconduct or to defend against baseless charges of ethical violations. Plaintiffs' *in camera* disclosure did not result in a waiver of privilege.

**B.    Neither ImClone Nor Kenyon Will Suffer Any Prejudice From Non-Disclosure of Privileged Communications.**

**1.    Production of a Redacted Version of the E-Mail from Dr. Gillies Will Suffice to Prevent Any Prejudice to ImClone and Kenyon While Protecting Applicable Privileges.**

Plaintiffs have no objection to producing a redacted version of the e-mail communication from Dr. Gillies, provided such disclosure is not held to be a broad subject matter waiver of applicable privileges.[1] This redacted disclosure will protect the applicable joint defense privilege while allowing ImClone and Kenyon full access to the underlying, non-privileged facts of what took place at Merck KGaA because of ImClone and its in-house counsel's misconduct.[2] Thus,

---

[1] Although the parties met and conferred regarding the production of the e-mails in June, at that meet and confer, ImClone never raised the issue of producing a redacted copy of the e-mail at issue. The first time ImClone and Kenyon raised the request for a redacted copy of the e-mails was in their respective briefs filed on September 7, 2006.

[2] To the extent the Court orders the e-mail to be produced in redacted form, Plaintiffs request that the e-mail be designated "Restricted Confidential" under the Protective Order.

6

ImClone and Kenyon will not be prejudiced in any way in preparing for the show cause hearing and responding to charges of serious litigation misconduct and ethical violations.

### 2. The E-Mail Between Mr. Kravitz and Mr. Kane is Irrelevant to the Show Cause Hearing.

Plaintiffs submitted the e-mail communication between Mr. Kravitz and Mr. Kane *in camera* to rebut ImClone's baseless allegations of improper *ex parte* communications. [*Id.* at 26:10-13.] Whether Plaintiffs counsel's contact with Dr. Gillies was proper is not an issue at the show cause hearing, and has no bearing on whether ImClone and its counsel should be sanctioned. [*See* D.I. 142, at 1.] The mere fact that ImClone and Kenyon have not seen that e-mail does not make it relevant to the issues currently at hand. *Cf. Flint Hills Scientific*, 2002 WL 975881, at *9 ("Although Nikitin objects to in camera submission because it is unable to respond to the documents, [the magistrate judge] will take this into account when weighing the evidence."). And as in the *Flint Hills* case, plaintiffs are permitted to present to the Court the most pertinent evidence in defense of charges of ethical violations without waiving the attorney-client privilege. ImClone and Kenyon's claims to the contrary simply find no support in the law.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny both ImClone and its counsel Kenyon's Motions to Compel. As stated above, Plaintiffs have no objection to producing to ImClone and Kenyon a redacted version of the e-mail from Dr. Gillies that will provide access to non-privileged facts while preserving the integrity of applicable privileges.

7

Dated:  September 14, 2006                          s/ John C. Adkisson
                                                    John C. Adkisson (*pro hac vice*)
                                                    3300 Dain Rauscher Plaza
                                                    60 South Sixth Street
                                                    Minneapolis, MN 55402
                                                    Telephone:  (612) 335-5070
                                                    Facsimile:  (612) 288-9696

*Of Counsel***:**

| Gregory A. Madera | Jonathan E. Singer | Juanita Brooks |
| --- | --- | --- |
| FISH & RICHARDSON P.C. | Michael J. Kane | FISH & RICHARDSON P.C. |
| 225 Franklin Street | William R. Woodford | 12390 El Camino Real |
| Boston, MA 02110-2804 | FISH & RICHARDSON P.C. | San Diego, CA 92130 |
| Telephone:  (617) 542-5070 | 3300 Dain Rauscher Plaza | Telephone:  (858) 678-5070 |
| Facsimile:  (617) 542-8906 | 60 South Sixth Street | |
| | Minneapolis, Minnesota 55402 | |
| | Telephone:  (612) 335-5070 | |
| | Facsimile:  (612) 288-9696 | |

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

**Certificate of Service**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants:

    Thomas F. Maffei
    Griesinger, Tighe & Maffei, LLP
    176 Federal Street
    Boston, MA  02110-2214
    tmaffei@gtmllp.com

via electronic mail and Federal Express on September 14, 2006.

                        s/ John C. Adkisson
                        John C. Adkisson

60380849.doc