UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>　　　　　Defendant. | Civil Action No. 04-10884-RGS |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS**

　　　　In their original motion, Plaintiffs asked this Court for a handful of specifically-tailored sanctions, including an evidentiary sanction permitting the jury to draw an adverse inference from ImClone's ethical misconduct.  Now that this Court has reached "the tentative view that the allegations of misconduct are extremely serious and that the conduct of defendant's counsel may have prejudiced the ability of MIT to fully litigate its Complaint" (Docket No. 142), Plaintiffs respectfully submit that their requested sanctions are more important than ever.  Absent the imposition of those sanctions, ImClone will be able to shield from the jury its flagrant efforts to intimidate Dr. Gillies, despite the fact that ImClone's misconduct has ended Dr. Gillies' voluntary cooperation with Plaintiffs.

　　　　Plaintiffs take no position on the additional sanction contemplated by this Court, namely the disqualification of ImClone's current law firm, Kenyon & Kenyon.  However, whatever ruling the Court makes on the disqualification of outside counsel, in Plaintiffs' view, it was ImClone's *in-house* counsel and Vice President of Intellectual Property, Thomas Gallagher, who bears responsibility for Dr. Gillies' intimidation by violating the protective order and sending the

threatening e-mail that is at the heart of this motion. Because of Mr. Gallagher's conduct, ImClone *itself* should be sanctioned in a manner that attempts to remedy the prejudice to Plaintiffs.

Whatever sanctions the Court deems appropriate, Plaintiffs ask that ImClone not be allowed to use such sanctions as an excuse to further delay Plaintiffs' day in Court. This case is now 28 months old, fact and expert discovery are complete, and the Court entered summary judgment against ImClone on the one defense that ImClone's counsel promised the Court would be dispositive at the outset of this litigation. With summary judgment motions decided, the case is now ready for trial. Whether the Court finds that ethical violations were committed by ImClone's in-house counsel, ImClone's outside counsel or both, no sanction should serve as an excuse for ImClone to delay the setting of a trial date at the Court's earliest opportunity.

## ARGUMENT

**I.     The Sanctions Requested By Plaintiffs Are Appropriate and Tailored to Mitigate Prejudice to Plaintiffs.**

Plaintiffs agree with the Court's tentative view that ImClone's conduct "may have prejudiced MIT's ability to fully litigate its Complaint." Dr. Gillies – who was cooperating with Plaintiffs until Mr. Gallagher sent the e-mail at issue – is no longer cooperating with Plaintiffs. While disqualification of ImClone's outside counsel may well be warranted, unfortunately it can do nothing to change the fact that Dr. Gillies is no longer cooperating with Plaintiffs.  As such, the additional sanctions requested by Plaintiffs are not only appropriate, but necessary to mitigate the damage caused by ImClone's misconduct.

Under its inherent powers, a court has wide discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). These implicit powers include the judicial authority to sanction counsel for litigation

abuses which threaten to impugn the district court's judicial integrity or disrupt its efficient management of the proceedings. *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999).

In their motion, Plaintiffs requested sanctions that fit into four general categories. Those sanctions, and Plaintiffs' position on those sanctions in light of the Court's July 24 Order (as well as the record that has been developed since Plaintiffs submitted their initial motion on March 16) will be discussed briefly below:

### A.  Sanction 1:  An Adverse Inference that Dr. Gillies' Tests Were Damaging to ImClone on the Issues of Infringement and Validity.

Mr. Gallagher contacted Dr. Gillies' boss in a direct effort to intimidate Dr. Gillies and to suppress his testimony and testing. As a result of Mr. Gallagher's contact with Merck KGaA, Dr. Gillies is no longer cooperating with Plaintiffs. In short, Mr. Gallagher's conduct has deprived Plaintiffs of their ability to "fully litigate their complaint." As a sanction for ImClone's misconduct, Plaintiffs ask the Court to allow Plaintiffs to lay the foundation at trial for an adverse inference that the tests called out by Mr. Gallagher in his e-mail were damaging for ImClone on the issues of infringement and validity.

While witness intimidation cases in the civil context are rare, the result of Mr. Gallagher's conduct – namely the loss of Dr. Gillies' cooperation and the inability to prepare Dr. Gillies for trial – can be equated to the harm suffered by a party whose opponent has intentionally destroyed documentary evidence. In both instances, the aggrieved party loses the ability to put on evidence central to its case solely as a result of misconduct by its adversary aimed at suppressing evidence.

In the destruction of evidence context, the First Circuit has held that "when a document relevant to an issue in a case is destroyed, the trier of fact sometimes may infer that the party who obliterated it did so out of a realization that the contents were unfavorable." *Nation-Wide*

3

*Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217 (1st Cir. 1982).  There are at least three rationales for allowing an adverse inference:  (1) A general evidentiary rationale, in that the evidence must have some relevance to the claim if the party charged with the spoliation went to the trouble to destroy it; (2) a policy-based punitive rationale, in that allowing the inference deters future destruction and penalizes the spoiler; and (3) a remedial rationale, suggesting the inference should restore the prejudiced party to the same position he would have been absent the wrongful destruction of evidence.  *See Pelletier v. Magnusson*, 195 F. Supp. 2d 214, 235-36 (D. Me. 2002) (citations omitted).

      To avail itself of the adverse inference, a party must provide evidence sufficient for a trier of fact to conclude that the defendants knew of the litigation or the potential of litigation and of the document's potential relevance to the litigable claim.  *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996).  A party "need not offer evidence of a cover-up to set the stage for the adverse inference." *Id.*

      Here, all of the underlying rationales and foundation for an adverse inference are conspicuously present.  Obviously, ImClone knew of the importance of Dr. Gillies' testing – Mr. Gallagher references it specifically in his e-mail, and ImClone itself moved to strike the testing just a month before Mr. Gallagher sent the e-mail.  Only an adverse inference allowing the jury to judge for itself ImClone's true view of the testing will put Plaintiffs in the place they were in before the e-mail was sent, with a fully cooperative expert witness and inventor.

      Plaintiffs' request to lay the foundation for their requested adverse inference at trial is consistent with previous rulings by this Court in the document destruction context.  For example, Magistrate Judge Collings allowed the aggrieved party to do just that:

> I will at trial permit the plaintiffs to lay the foundation which will entitle them to an instruction on a permissive adverse inference against [the defendant] with respect to the destruction of documents.

*Kelley v. United Airlines, Inc.,* 176 F.R.D. 422, 428 (D. Mass. 1997). Here, Plaintiffs ask that they be allowed to lay the foundation for an adverse inference that the testing referenced in Mr. Gallagher's e-mail to Dr. Gillies' boss was negative for ImClone both with respect to validity and infringement.

### B. Sanction 2: Enjoining ImClone and Its Counsel From Further Communication with Merck KGaA Concerning Dr. Gillies and/or the Testing at Issue.

Nothing ImClone has said can excuse the fact that Mr. Gallagher violated the protective order, and that he sent the e-mail that led directly to the action that caused Dr. Gillies to stop cooperating with Plaintiffs. Because Mr. Gallagher knowingly intimidated Dr. Gillies by improperly using information he learned under the protective order, ImClone should be prohibited from any further communication with Merck KGaA regarding Dr. Gillies and/or the testing at issue.

In defense of his intimidating e-mail, Mr. Gallagher has stated that "I did not ask, suggest, or anticipate that Merck KGaA would take any action against Dr. Gillies, to prevent him for testifying, or suppress or retrieve any testing data that Plaintiffs had received from Dr. Gillies." (Gallagher 3/30 Decl., ¶ 12). That explanation strains credulity. It is beyond dispute that Mr. Gallagher sent the e-mail to Dr. Gillies' boss at Merck demanding an explanation as to why Merck "would authorize EMD Lexigen and its employees to engage in such activities." What did Mr. Gallagher think would happen as a result of that e-mail?

As Plaintiffs noted at oral argument, Mr. Gallagher's excuse is precisely the type of excuse posited by the attorney in *Sanderson v. Boddie-Noell Enterprises, Inc.*, 227 F.R.D. 448,

5

453 (E.D. Va. 2005). In that case, the attorney – who telephoned the employer of the opposing party's expert, who in turn threatened the expert's job and told the expert he could no longer work on the case – argued that he should not be sanctioned because he did not intend to bring about that result. The district court disagreed:

> [The attorney] deliberately set into motion a series of events that had the effect of obstructing the defendant's ability to use the services of its designated expert witness. Whether he intended that result is not dispositive of the issue because [the attorney] is chargeable with knowledge of the reasonably foreseeable consequences of the acts in which he deliberately engaged.

*Id.* at 454. Here, "the series of events" that led to Dr. Gillies' noncooperation with Plaintiffs numbered just three: (1) Kenyon & Kenyon asking improper questions of Dr. Gillies at his deposition; (2) Mr. Gallagher sending the e-mail to Dr. Gillies' boss reporting the answers to those questions and demanding a response; and (3) Dr. Gillies being threatened because of the information Mr. Gallagher shared with Dr. Gillies' boss. Mr. Gallagher's claim that he did not "anticipate" the result of his e-mail is even more incredible than the claim made by the sanctioned attorney in *Sanderson*.

Although damage has already been done, further communication between ImClone and Merck KGaA about Dr. Gillies' testing will only exacerbate Dr. Gillies' unwillingness to work with Plaintiffs in advance of trial. As such, a sanction in the form of an order prohibiting ImClone and its counsel from any further contact with Merck KGaA on the subject of Dr. Gillies and the testing at issue is appropriate.

### C. Sanction 3: Barring Mr. Gallagher From Receiving Further "Restricted Confidential" Or "Confidential" Information.

Mr. Gallagher violated the protective order by unilaterally sharing deposition testimony with Merck KGaA that had been marked as "Restricted Confidential" at Dr. Gillies' deposition. Although Mr. Gallagher claims in his declaration that he did not believe the deposition testimony

6

contained "Restricted Confidential" information, Mr. Gallagher knows full well that if ImClone wanted to question that designation, there is a specific procedure under the protective order enabling ImClone to do so:

> 11.    In the event that any party to this litigation disagrees at any stage of these proceedings with such a designation, such party shall provide to the producing party ten (10) days prior written notice of its disagreement with the designation.

(Docket No. 22).

Mr. Gallagher ignored this provision of the protective order, and instead unilaterally determined that he was free to share Dr. Gillies' testimony with Merck KGaA. As a result of that violation, Mr. Gallagher should be prohibited from further access to information marked by Plaintiffs or third parties as "Confidential" or "Restricted Confidential." Plaintiffs ask that the Court enter a sanction requiring Mr. Gallagher to return all information marked "Restricted Confidential" or "Confidential," and barring Mr. Gallagher from further access to such discovery.

### D.    Sanction 4:  Awarding Plaintiffs Attorneys Fees and Costs.

"It is beyond serious dispute that a district court may use its inherent powers to assess attorneys' fees against a party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002) (citations omitted). Here, this Court has already found that the conduct of ImClone's counsel may have impaired Plaintiffs' ability to fully litigate their complaint, and Mr. Gallagher's conduct presents a textbook example of ImClone acting for "oppressive reasons."

Plaintiffs were forced to bring this motion solely as a result of ImClone's misconduct, and Plaintiffs should not be forced to bear the fees and costs associated with bringing ImClone's violation to the Court's attention. Courts have granted the moving party fees and costs in

7

analogous circumstances. *See, e.g., Sanderson*, 227 F.R.D. at 455 (among other sanctions, awarding the plaintiff its fees in prosecuting its motion for witness tampering); *Ty Inc. v. Softbelly's, Inc.*, 2005 WL 326974, Case No. 00 C 5230 (N.D. Ill. Feb. 9, 2005) (awarding moving party its "expenses and attorneys fees" incurred in prosecuting its motion relating to witness tampering). Plaintiffs respectfully request that the Court award Plaintiffs their costs and attorneys fees associated with the filing and prosecution of their motion for sanctions.

## II.    A Trial Date Should Be Set.

Plaintiffs filed this case on May 4, 2004. Summary judgment motions have now been decided, and ImClone itself represented to the Court in January that "the parties are fully engaged in pretrial preparations." (Doc. No. 115 at 10). On that much, the parties agree. Plaintiffs are ready to try this case, and Plaintiffs ask that the Court set a firm trial date as part of the September 26 hearing, consistent with the Court's availability.

While Plaintiffs defer to the Court on whether the disqualification of ImClone's current outside counsel is appropriate, Plaintiffs ask the Court not to allow that disqualification to affect the setting of a trial date. Plaintiffs should not have their day in Court delayed further because ImClone may need to engage new litigation counsel as a result of its present counsel's ethical violations. As explained above, the violations at issue are also the result of the actions of *ImClone's* in-house counsel, and ImClone itself should not be allowed to further delay proceedings as a result of its own misconduct. To the extent that trial is delayed even further as a result of ImClone's violation, this Court should take that delay into account in imposing sanctions against ImClone. *Sanderson*, 227 F.R.D. at 455 (awarding moving party "fees proximately caused by the delay that necessarily will occur" as a result of party needing to obtain a replacement expert as a result of witness tampering).

8

                                                             FISH & RICHARDSON P.C.

Dated: September 19, 2006                    s/ John C. Adkisson
                                                             John C. Adkisson (*pro hac vice*)
                                                             3300 Dain Rauscher Plaza
                                                             60 South Sixth Street
                                                             Minneapolis, MN 55402
                                                             Telephone: (612) 335-5070
                                                             Facsimile: (612) 288-9696

*Of Counsel*:

| Gregory A. Madera | Jonathan E. Singer | Juanita Brooks |
|---|---|---|
| FISH & RICHARDSON P.C. | Michael J. Kane | FISH & RICHARDSON P.C. |
| 225 Franklin Street | FISH & RICHARDSON P.C. | 12390 El Camino Real |
| Boston, MA 02110-2804 | 3300 Dain Rauscher Plaza | San Diego, CA 92130 |
| Telephone: (617) 542-5070 | 60 South Sixth Street | Telephone: (858) 678-5070 |
| Facsimile: (617) 542-8906 | Minneapolis, Minnesota 55402 | |
| | Telephone: (612) 335-5070 | |
| | Facsimile: (612) 288-9696 | |

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

9

CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 19th day of September, 2006.

                                                    s/ John C. Adkisson
                                                    John C. Adkisson

60379242.doc