## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

               Plaintiffs,

     v.

IMCLONE SYSTEMS INC.,

            Defendant.

Civil Action No. 04 10884 RGS

### KENYON AND KENYON LLP AND IMCLONE SYSTEMS INC.'S
### REPLY TO PLAINTIFFS' POST-HEARING MEMORANDUM

I.      <u>Introduction.</u>

With one exception of serious note, plaintiffs' October 20, 2006 Response to

Kenyon & Kenyon LLP and Imclone Systems Inc.'s Post-Hearing Memorandum on

Plaintiffs' Motion for Sanctions simply reargues points that plaintiffs previously made in

support of their motion for sanctions. The exception, however, concerns the contents of a

new, post-hearing declaration by plaintiffs' counsel that places further evidence before

the Court in a manner intended to deprive Kenyon and ImClone, once again, of any

meaningful opportunity to respond. After briefly addressing the issue of whether Mr.

Kravitz was present in the courthouse on September 26, this Reply will address plaintiffs'

post-hearing filing.[1]

---

[1] Plaintiffs' latest filing of another hearsay declaration from Mr. Kane about an October 16, 2006 conversation he had with Mr. Kravitz is improper, in light of the fact that the Court gave the parties sufficient opportunity at the September 26 hearing to present live witnesses, who were subject to cross-examination.

II.    <u>Counsel Was Honestly Mistaken Regarding Mr. Kravitz's Presence.</u>

Undersigned counsel for Kenyon and ImClone object to the irresponsible charge that they made an "outright falsehood" to the Court regarding the presence of Mr. Kravitz in the courthouse on the day of the hearing.  Rather than leveling yet another serious charge of ethical misconduct against reputable counsel, plaintiffs' counsel should have assumed, as is the case, that the statement about Mr. Kravitz's presence was a mistake. Notions of professionalism should have caused plaintiffs' counsel to raise the issue directly with counsel for Kenyon and ImClone before launching yet another assault on opposing counsels' character.

The fact is that undersigned counsel, Thomas Maffei, who has no memory of ever meeting Mr. Kravitz, was told by two other lawyers present that day that Mr. Kravitz was in the courtroom, as well as in the cafeteria at the courthouse, talking with plaintiffs' counsel.[2]  Undersigned counsel, Kenyon, and ImClone accept the representation of Mr.

---

[2]  Two of the lawyers for ImClone and Kenyon, Anthony Fitzpatrick (a partner in the Boston office of the Duane Morris law firm) and Paul Richter (a partner at Kenyon), each independently believed that a gentleman who was in the audience at the hearing was Mr. Kravitz.  Mr. Fitzpatrick was in the same class in law school as Mr. Kravitz, and believed that he saw Mr. Kravitz in the courtroom.  Mr. Fitzpatrick later observed the same person he believed was Mr. Kravitz in the court's cafeteria talking with plaintiffs' counsel.  Mr. Richter, who had only met Mr. Kravitz in July and August 2005, at Dr. Gillies' first two depositions, and had not seen Mr. Kravitz in the full year since that time, also independently believed that the same gentleman in the courtroom audience was Mr. Kravtiz.  Based on Mr. Kane's most recent declaration, it appears that both Mr. Fitzpatrick and Mr. Richter were mistaken.  However, two weeks before the hearing, on September 13, 2006, Mr. Kravitz telephoned Mr. Maffei to say that Mr. Kane had told him of the filing of the motion for sanctions.  During that conversation, Mr. Kravitz stated that the matter to be dealt with at the hearing was important to his client, Dr. Gillies, that Mr. Kravitz considered his communications in the matter to be privileged, and that he wanted access to memoranda filed in advance of the September 26 hearing.  Mr. Maffei declined to share the confidential memoranda with Mr. Kravitz.  Based on this background, it did not surprise Mr. Maffei to hear (albeit mistakenly) that Mr. Kravitz was present on the day of the hearing.  Indeed, during the September 26 hearing, the entire team representing ImClone and Kenyon assumed that the purpose of Mr. Kravtiz attending the hearing was to testify for plaintiffs.

Kane to the Court that Mr. Kravitz was not at the courthouse on September 26 and that he was not conferring with plaintiffs' counsel during the hearing. Undersigned counsel, Kenyon, and ImClone regret having mistakenly stated that Mr. Kravitz was present and seek the Court's indulgence.[3]

III.    The Latest Declaration From Mr. Kane Confirms The Fact That No Restrictions Have Been Placed On Dr. Gillies As A Result of Anything That Kenyon, ImClone Or Merck Did Or Said.

In their initial motion for sanctions, plaintiffs told this Court, in the form of a declaration from plaintiffs' counsel and argument of counsel, that solely because of (1) the manner in which Mr. Richter conducted Dr. Gillies' third deposition, and (2) Mr. Gallagher's two emails to Arno Hartmann, Dr. Gillies was "shuttered" and "intimidated," that he was instructed by his employer, Merck, that he could not voluntarily deal with plaintiffs, and that the results of the testing he had done at Merck in the Fall of 2005 could not be used at the trial of this case. All of these allegations were based solely on Mr. Kane's declaration dated March 16, 2006.

At the hearing on September 26, the Court heard *for the first time* that several days before plaintiffs' counsel filed his declaration, he had received a call from the outside counsel for Merck, Mr. Golden,[4] informing plaintiffs' counsel that Merck was

---

[3] The issue is beside the point in terms of helping the Court understand what actually occurred with respect to Dr. Gillies. Whether Mr. Kravitz was in the courthouse on the day of the hearing or at his office in Boston, it remains the case that he was available to testify and plaintiffs chose not to call him to testify, despite knowing from the pre-hearing memorandum filed by Kenyon and ImClone that Mr. Golden was planning to testify as to his conversations with Mr. Kravitz and Mr. Kane. Moreover, Kenyon and ImClone's belief at the time that Mr. Kravitz was at the September 26 hearing was hardly the central focus of their post-hearing brief, notwithstanding the significant time plaintiffs chose to devote to it in their opposition paper to that brief.

[4] Mr. Golden, who appeared at the hearing voluntarily and at his own expense, testified that he was retained specifically to represent Merck in connection with the testing done at EMD Lexigen at Dr. Gillies' request. Plaintiffs make the nonsensical point that Mr. Golden was speaking on

upset that plaintiffs had gone around Merck and Dr. Gillies' personal counsel, Mr.

Kravitz. Hr. Tr. 18. Mr. Golden also testified that had contact been made with Dr.

Gillies' counsel, Mr. Kravitz would have advised Dr. Gillies not to have the tests done at

Merck, and that Mr. Kravitz actually proposed ways to permit plaintiffs to have use of the

vector in question for testing purposes. Hr. Tr. 20-21. The Court also heard *for the first*

*time* that Mr. Golden never told Mr. Kane or anyone else that Dr. Gillies could not

cooperate with plaintiffs, but only that any contact with Dr. Gillies should be made

through his counsel. Hr. Tr. 25. Finally, the Court heard Mr. Golden testify, without

contradiction, that he never told Mr. Kane that the tests results could not be used at the

trial. Hr. Tr. 24. Most of what Mr. Golden testified about was left out of Mr. Kane's

original declaration of March 16, 2006 and his supplemental declaration of April 7, 2006.

At the hearing, plaintiffs chose not to present any evidence that Merck's position

*vis-à-vis* Dr. Gillies and the test results themselves was other than as described by Mr.

Golden. The latest filing by plaintiffs, in the form of yet another hearsay declaration

from Mr. Kane, concedes that Dr. Gillies is available to testify at the hearing, provided he

is subpoenaed, and now also concedes that Dr. Gillies is free to meet with the plaintiffs

prior to the trial as long as his counsel, Mr. Kravitz, and his employer, Merck, say he may

do so. *Remarkably, the declaration also says that Mr. Kravitz will recommend that Dr.*

*Gillies meet with plaintiffs' counsel prior to trial.* See October 20, 2006 Kane

Declaration, ¶ 4. Based on Mr. Golden's testimony, we know that Merck has no

opposition to Dr. Gillies' working with plaintiffs to prepare his testimony. Hr. Tr. 25.

Thus, when all is said and done, the only person left to decide whether Dr. Gillies will

_____

behalf of his law firm, and not on behalf of his client, when he communicated Merck's position
regarding the testing to Fish & Richardson. See Plaintiffs' Oct. 20, 2006 Mem., at 4.

meet with plaintiffs' counsel before the trial is Dr. Gillies, who, as the Court knows, has a substantial economic stake in the outcome of this case.

IV.    Conclusion.

Many months and hundreds of hours and thousands of dollars later, it is now clear, based on the testimony from Mr. Golden, which has been confirmed by Mr. Kane's most recent declaration, that, as far as ImClone, Kenyon, Merck, and Mr. Kravitz are concerned, Dr. Gillies can testify at the trial if subpoenaed *and* is free to meet with plaintiffs' counsel beforehand if he wishes to do so. Accordingly, it is clear that Dr. Gillies has not been shuttered.

Respectfully submitted,


KENYON & KENYON LLP

By its attorneys,

/s/ Thomas F. Maffei P.C.
Thomas F. Maffei P.C. (BBO#13220)
Sara Jane Shanahan (BBO#567837)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110-2214
(617) 542-9900

IMCLONE SYSTEMS INC.

By its attorneys,

/s/ Michael R. Gottfried
Michael R. Gottfried (BBO#542156)
Anthony J. Fitzpatrick (BBO#564324)
Christopher S. Kroon (BBO#660286)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, Massachusetts  02110
(617) 289-9200

Richard L. DeLucia
George E. Badenoch
Michael D. Loughnane
Paul M. Richter, Jr.
Anthony Giaccio
KENYON & KENYON LLP
One Broadway
New York, NY  10004-1050
(212) 425-7200

Dated: October 23, 2006