## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

Plaintiffs,

v.

Civil Action No. 04-10884-RGS

IMCLONE SYSTEMS, INC.,

Defendant.

---

## PLAINTIFFS' OPPOSITION TO IMCLONE'S MOTION FOR A *MARKMAN* HEARING AND FOR CONTINUANCE OF THE TRIAL DATE

---

### INTRODUCTION

Plaintiffs filed this lawsuit on May 4, 2004—more than three years ago—and have since been waiting for their day in court. On June 8, 2007, the Court issued an Order setting the trial date for September 10, 2007. (Doc. No. 174.) While ImClone has never before formally requested that the Court construe any claim term in the asserted '281 patent and has been virtually silent in the case for almost a year, ImClone now asks the Court to continue the trial date indefinitely, citing (1) the unavailability of its technical expert for the first week of trial; (2) the unavailability of two of its local attorneys, and (3) the need for a full-blown *Markman* hearing on an unspecified set of claim terms. ImClone's motion is nothing more than a ploy to delay trial, and should be denied.

### ARGUMENT

### I.   UNAVAILABILITY OF IMCLONE'S TECHNICAL EXPERT AND LOCAL COUNSEL IS NOT AN EXCUSE FOR DELAY.

The Court's June 8, 2007 Order gave the parties three months' advance notice of the trial date. Plaintiffs' witnesses and counsel have since diligently adjusted their schedules to make

themselves available for the trial. So can ImClone's witnesses and counsel. For example, Ms. Lita Nelson, the representative from MIT, was on the organizing committee and scheduled to be a moderator for a conference on global health issues at Oxford University from September 9th to the 13th. (Nelsen Decl.) Ms. Nelsen rearranged her schedule and arranged for others to cover her responsibilities at the conference so that she could testify at the trial. (*Id.*) Instead, ImClone waited for more than two and half weeks and only then raised the issue of its purported need for delay. Neither the unavailability of ImClone's technical expert for the first week of trial nor the unavailability of two of ImClone's local attorneys justifies a continuance of the trial date.

ImClone's technical expert, Dr. Stewart Aaronson, apparently is available for the second week of the trial, when he will almost certainly testify.[1] Nonetheless, ImClone claims that it is "vital" for Dr. Aaronson to be present during the presentation of Plaintiffs' case because ImClone would otherwise "be substantially prejudiced in its ability to effectively present its affirmative case on invalidity and its defense of non-infringement." But ImClone identifies no particular prejudice. And there is none. Dr. Aaronson knows what the inventors and Plaintiffs' experts are going to say. Both inventors have been deposed in this case—Dr. Gillies has been deposed multiple times; and Plaintiffs' experts have provided expert reports, in addition to deposition testimony. Moreover, Dr. Aaronson is free to read trial transcripts or watch video of the testimony from the first week.[2] Unlike the jury, Dr. Aaronson is not charged with the responsibility of making credibility determinations. His presence during the first week of the trial is not "vital."

---

[1]    *See* ImClone's Mot. (Doc. 181), at 5. Notably, there is no affidavit from Dr. Aaronson about his "overseas professional commitments."

[2]    Plaintiffs will not oppose any motion by ImClone to videotape the trial testimony for purposes of providing Dr. Aaronson access, if necessary.

2

ImClone's argument based on the unavailability of Messrs. Fitzpatrick and Gottfried is equally unpersuasive. ImClone does not explain why its "recent substitution of lead trial counsel" necessitates the presence of Messrs. Fitzpatrick and Gottfried, two Boston attorneys who have neither taken or defended any depositions nor made any substantive argument at any hearing in this case.[3] Moreover, ImClone does not claim that both Fitzpatrick and Gottfried are lead trial counsel in those other matters, necessitating their participation. Indeed, in the Amgen case in front of Judge Young (that Mr. Gottfried is planning to attend), the Court's docket records the appearance of no less than 59 attorneys representing Amgen in that matter.[4] To the extent that those other commitments are vital and ImClone wants "continuity," ImClone has not two, but at least three, local counsel who have appeared in this case. ImClone does not claim that Mr. Christopher S. Kroon, also from Duane Morris LLP, has any scheduling conflicts. And if ImClone believes it needs the assistance of more than one local counsel, Duane Morris is "one of the 100 largest law firms in the world," and has 26 other attorneys in its Boston office alone, in addition to Messrs. Fitzpatrick, Gottfried, and Kroon. *See* http://www.duanemorris.com (last visited July 5, 2007).

---

[3] In any event, ImClone's change of counsel is entirely of its own doing. According to ImClone's statement to the press, it decided to change counsel *before* the Court issued its sanctions Order, and the Court specifically decided in its ruling *not* to force ImClone to change counsel. (Ex. A (quoting ImClone spokesperson saying ImClone decided to proceed with new counsel before the Court's ruling).) Plaintiffs should not be deprived of their trial date simply because ImClone chose to switch law firms. Plaintiffs raised this precise concern in response to the *pro hac vice* motions for ImClone's new counsel. (Doc. No. 172.)

[4] In contrast, should the Court delay the currently scheduled trial, as ImClone has requested, Plaintiffs' lead trial counsel, Ms. Juanita Brooks, will run into conflicts with other trials until December of 2007. At present, Ms. Brooks is lead trial counsel in another trial scheduled in the Northern District of California on October 22, with a pretrial conference on October 16, and then a third trial, as lead counsel, in the District of Delaware on November 27, with a pretrial conference on November 1. (Brooks Decl. at ¶¶ 2-4.)

3

## II.   IMCLONE'S ELEVENTH-HOUR REQUEST FOR A *MARKMAN* HEARING IS NOTHING BUT A DELAY TACTIC.

ImClone's request for a *Markman* hearing is yet another transparent attempt to delay the trial. Notably, ImClone identifies in its brief only *one term* that it contends needs construction: "tissue specific." And it does this to advance an alleged "non-infringement" position that would require this Court to accept that Dr. Gillies, an esteemed molecular biologist, did not employ his patented invention in the C225 cell line despite: (a) testifying that he did; (b) informing the government that he did when he made it, and (c) confirming that he did in the testing that was the subject of ImClone's previous motion to strike and witness intimidation.

Simply put, there is no credibility to this request. ImClone has known of the '281 patent since at least 1996. Plaintiffs filed this lawsuit in May 2004, served their opening expert report regarding infringement in October 2005, and served their rebuttal expert report regarding validity and produced Dr. Gillies' testing data confirming tissue specificity of the enhancer in the C225 vector in December 2005. If it were truly important and truly "case dispositive" as ImClone now claims, ImClone could have requested a *Markman* hearing at any time during the past three years. Yet ImClone never did. Not in August 2005, when it passed on this non-infringement argument in its summary judgment motion and instead relied on its then "dispositive" defense of patent exhaustion. (Doc. No. 74.) Nor in January 2006, when it filed its motion to exclude Dr. Gillies' testing results, and repeatedly argued that the testing data should be excluded because trial was imminent and inclusion of Dr. Gillies' test results would disrupt ImClone's trial preparation. (Doc. No. 115 at 11-12.) And not from September 2006 through the present, despite ImClone's counsel heavy reliance on this non-infringement argument during the September hearing on Plaintiffs' motion, and sworn testimony that ImClone was anxious to prove its non-infringement defense *at trial*. (9/26/06 Hr'g Tr. at 47.)

4

This years-long delay simply demonstrates that there is no real claim construction issue in dispute. Rather, as counsel for ImClone testified at the sanctions hearing, the parties apparently have a factual dispute, with ImClone claiming that Dr. Gillies, despite all the evidence demonstrating the opposite, did not employ his patented invention in the C225 cell line. This factual dispute is a classic example of a matter for trial, exactly as counsel for ImClone already testified. (*See* 9/26/06 Hr'g Tr. at 47 ("Obviously the plaintiffs disagree with us [on the issue of tissue specificity], and we'd like a trial on that issue, because we think we'd carry the day.").)

Moreover, with respect to this and the other unidentified terms, to the extent necessary, any minor claim construction issues can be resolved at trial. ImClone asserts that dealing with claim construction issues at trial "is untenable and contrary to law." (ImClone's Mot. at 3.) ImClone is wrong, and tellingly, cites no authority to support its argument. That is because the law is well-established that *Markman* does not obligate the trial court to conduct a separate claim construction hearing before trial:

> *Markman* does not require a district court to follow any particular procedure in conducting claim construction. It merely holds that claim construction is the province of the court, not a jury. To perform that task, some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue. Such a procedure is not always necessary, however. If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties. District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol. As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.

*Ballard Med. Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001); *see also CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("[T]he district court has considerable latitude in determining when to resolve issues of claim

5

construction.") (citation omitted); *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed.Cir.1996) (stating that "*Markman* does not obligate the trial judge to interpret claims at an early stage in a case" and that "[a] trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art").

Indeed, in the *Markman* case itself, the trial court provided its construction of the claim terms *after* the trial, in connection with Westview's deferred motion for judgment as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 973 (Fed. Cir. 1995); *see also Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1308-09 (Fed. Cir. 2001) (affirming trial court's claim construction, commenting that "[t]he district court took considerable care in construing the claims at issue, particularly the means-plus-function limitations" construed after the close of evidence).

Thus, there is no need to adjust the trial schedule to accommodate a separate hearing just to construe the plain and ordinary meaning of one claim term that ImClone previously said raised an issue for "trial" and other alleged terms that it declines to identify.[5] If necessary, claim construction can be handled in the context of trial. This will not only allow the trial to proceed, but also conserve judicial resources, as well as the resources of the parties.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny ImClone's motion for continuance of the trial date and for a *Markman* hearing.

---

[5] Ironically, ImClone requests a hearing on claim construction on September 10, 2007, the scheduled trial date. (ImClone's Mot. at 4.) Apparently, there is no need for Dr. Aaronson, ImClone's "only technical expert," to be at a hearing that, in Dr. Aaronson's opinion, allegedly could be case dispositive.

6

Dated: July 11, 2007

/ S/ Michael Kane

per MK

Michael J. Kane (*pro hac vice*)
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

*Of Counsel*:

Gregory A. Madera
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Jonathan E. Singer
John C. Adkisson
William R. Woodford
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita Brooks
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on this 11th day of
July, 2007.

/ S/ Michael Kane

Michael J. Kane

by SF
per MK

7