# EXHIBIT E

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>                 Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS INC.,<br><br>                 Defendant. | Civil Action No. 04 10884 RGS |

I.    **EXPERT REPORT OF STUART A. AARONSON, M.D.**

    1.    I, Stuart A. Aaronson, M.D., submit this expert report on behalf of ImClone Systems, Inc. ("ImClone").

II.    **BACKGROUND AND QUALIFICATIONS**

    2.    I am a citizen of the United States of America residing at 40 E. 94th Street #23B, New York, NY 10128. I am currently the Jack and Jane B. Aron Professor and Chairman of the Department of Oncological Sciences at Mount Sinai School of Medicine.

    3.    I received my M.D. from UCSF in 1966, joined the National Institute of Health in 1967 and became Chief of the Laboratory of Cellular and Molecular Biology at the National Cancer Institute in 1977. I joined Mount Sinai School of Medicine in 1994.

    4.    I have been the recipient of numerous awards including the Distinguished Service Medal from the U.S. Public Health Service, the Rhoads Memorial Award from the American Association of Cancer Research, and the Paul Ehrlich Award. I have also authored over 530

34.     Claim 12, which depends upon claim 10, further states that the vector comprises an expressable DNA which corresponds to a gene coding for a selectable marker. The pSV2-S107 vector of Oi, contains the selectable marker gpt gene. (Oi, Page 826, Fig.1). Therefore, claim 12 of the '281 patent is anticipated by Oi's gpt gene disclosure.

35.     Claim 13, which depends upon claim 10, further states that the vector comprises a member selected from the group consisting of plasmids and viruses. The pSV2-S107 vector of Oi is a plasmid based vector. (Oi, Page 826, Fig.1). Therefore, claim 13 of the '281 patent is anticipated by Oi's gpt gene disclosure.

36.     Claims 15 and 20, which depend from claim 10 and 18, respectively, further state that the enhancer element, when present in the endogenous genome of a lymphoid cell, is operative naturally to enhance production of immunoglobulin. The pSV2-S107 vector of Oi contains an enhancer that functions in the endogenous genome of a lymphoid cell to enhance production of the immunoglobulin kappa light chain. (Oi, Page 828, Fig. 3 and 4). Therefore, it is my opinion that claim 15 and 20 of the '281 patent are anticipated by Oi's gpt gene disclosure.

37.     Claims 21, which depends upon claim 18, further recites that the transformant comprises a stably transformed cell. Oi demonstrates the production of stable cell lines transformed with the pSV2-S107 vector. (Oi, Page 827, Col. 2, lines 1-3). It is the expression of the gpt gene that allows for the production of such stable cell lines. Therefore, it is my opinion that claim 21 of the '281 patent is anticipated by Oi's gpt gene disclosure.

38.     Claims 17 and 22, which depend upon claim 10 and 20, further specify that the enhancer element of claims 10 and 20 comprises at least a portion of the nucleotide sequences set forth in FIG. 10 of the '281 patent. The term "portion" is not defined in the specification, but it is my opinion that a person of ordinary skill in the art would understand that a "portion" of a nucleotide sequence (such as that of Fig. 10) could refer to a small nucleotide sequence,

including a nucleotide sequence as small as two or three nucleotides. Given this meaning of the term "portion," it is my opinion that the sequences that enhance the expression of the gpt gene would comprise at least a portion of the enhancer element set forth in FIG. 10 of the '281 patent. Therefore, claims 17 and 22 are anticipated by Oi's gpt gene disclosure.

    2.    **Oi's Teaching of Enhancer Mediated Tissue Specific Expression of the Immunoglobulin Kappa Light Chain Gene Anticipates Each of Claims 10-13, 15 & 17-22**

39. Oi's teaching of enhancer mediated tissue specific expression of the immunoglobulin kappa light chain gene ("Oi's kappa light chain gene disclosure") anticipates each of claims 10-13, 15 and 17-22 of the '281 patent.

40. Claim 10 reads as follows:

10. A vector for transfecting a mammalian cell derived from a selected tissue type to produce a cell line which secretes a proteinaceous material, said vector comprising an exon encoding said proteinaceous material or a precursor thereof and a promoter sequence, and recombined therewith, tissue specific mammalian cellular enhancer element at a site within an active region of said vector sufficiently close to said transcription unit to enhance production of mRNA independent of its orientation and position within said active region, said tissue specific cellular enhancer element, when present in the endogenous genome of a cell from said selected tissue type, being operable naturally to increase production of an endogenous proteinaceous substance.

Oi's kappa light chain gene disclosure recites each element of claim 10. Oi teaches the preparation of a vector (pSV-S107, myeloma) for transfecting a mammalian cell (J558L, also myeloma) derived from a selected tissue type (myeloma) to produce a cell line which secretes a proteinaceous material (the kappa light chain protein), said vector comprising an exon encoding said proteinaceous material (kappa light chain) and a promoter sequence (kappa light chain promoter), and recombined therewith, a tissue specific mammalian cellular enhancer element (kappa light chain enhancer) at a site within an active region of said vector sufficiently close to said transcription unit to enhance production of mRNA (kappa light chain RNA) independent of its orientation and position within said active region (the kappa light chain enhancer functions

15

> A: I can't define that. I don't think it was defined in the patent.

Gillies Dep. 95-14 to 96-7.

> Q: Do you believe that the term is definite in its meaning as used in the '281 patent? And by "the term" I mean "tissue specificity."
>
> A: I think it's a vague and ambiguous question.
>
> Q: What is vague and ambiguous about it?
>
> A: The term.
>
> Q: What term?
>
> A: "Tissue"

Gillies Dep. 98-18 to 99-2.

103. Claims 10-13, 15 and 17-22 also all require that an enhancer element be sufficiently close to a transcription unit. The specification provides no information regarding how close it needs to be to be "sufficiently close", nor does it provide any guidance on any minimum or maximum distance. Further, the claims all state that the "enhancer element" enhances "independent" of its position, which is directly contrary to the recited need to be "sufficiently close." Additionally, Claim 17 and claim 22 are directed to all enhancer elements which contain any "portion of the nucleotide sequences" in Figure 10. The number of potential genetic sequences that could contain any "portion" of Figure 10 is enormous, especially considering the fact that no limits are provided with respect to how large or small these portions might be.

104. Based on all of the above, it is my opinion that the named inventors testified that the asserted claims are indefinite.

## XIII. SUPPLEMENTATION AND ADDITIONAL INFORMATION

105.    I may supplement this report in view of additional information, testimony or reports of others. In addition, I may testify in rebuttal to the testimony of witnesses appearing for the defendants in this case. At trial, I may give a tutorial on the basic principles of molecular biology applicable to the issues in this case. I may also use as exhibits portions of the documents I reviewed for this report or other documents made available to me and demonstrative exhibits that collect data or information from same.

DATED: October 14, 2005

Stuart A. Aaronson, M.D.