# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 04-10884-RGS |

**REBUTTAL EXPERT REPORT OF DR. KEVIN STRUHL
RE VALIDITY OF UNITED STATES PATENT NUMBER 4,663,281**

1

Aaronson's definition of "portion" nonsensical and contradictory to the claims and the specification of the '281 patent. Under Dr. Aaronson's definition of "portion," any enhancer element of claims 10, 18, and 20 would necessarily contain a "portion" of the sequence set forth in Figure 10 because the sequence set forth in Figure 10 contains sequences of any conceivable combination of any two nucleotides. Therefore, under Dr. Aaronson's definition, the scope of claims 17 and 22 would be identical to that of claims 10 and 20, respectively. I was informed by counsel that an interpretation that fails to differentiate dependent and independent claims violates the principal of claim construction.

The specification provides examples of expression vectors (*e.g.* pSV-γ2b3'RΔ1) and cell transformants (*e.g.* cell lines stably transformed with pSV-γ2b3'RΔ1) having enhancer elements that contain a portion of the sequence set forth in Figure 10. (The '281 patent, at 7:56-10:40.) The specification also teaches methods for testing enhancer activity of such portion of sequences. Therefore, it is my opinion that a person skilled in the art in March 1984 would understand the term "a portion of the nucleotide sequences set forth in Fig. 10" to require that the portion of the sequences set forth in Figure 10 incorporated by the vector have enhancer activity, i.e. be able to increase the production of the mRNA in interest independent of its orientation and position within an active region.

### 2. The prosecution history does not show that Oi anticipates the asserted claims of the '281 patent

Dr. Aaronson claims that the prosecution history of the '281 patent confirms that the disclosure of S107 κ light chain gene expression using pSV2-S107 vector in Oi anticipates the asserted claims. I disagree.

Dr. Aaronson relies solely on a statement made by the inventors in their Rule 131 Declaration, in which the inventors referred to their 1983 Cell paper, Gillies et al., *A Tissue-Specific Transcription Enhancer Element Is Located in the Major Intron of a Rearranged*

Based on my review of the patent specification, it is my opinion that the meaning of the claim term "tissue specific" can be clearly discerned from the specification. For example, the specification teaches transfecting the recombined DNA containing the tissue specific enhancer element "into a cell line derived from the same tissue type as the cell in which the enhancer is active[.]" (The '281 patent, at 2:53-56. *See also id.* at 3:19-21.) The specification also teaches that the enhancer element used in the novel vectors or contained in the novel cell transformants of the invention "must be operative in a cell from the same tissue type as the cell to be transformed." (*Id.* at 3:26-28, 3:31-35.) "The enhancer sequences function to greatly increase transcription, but only in a specific tissue-type or cell-type; the enhancer function of the sequences is greatly diminished or totally absent in other types of cells." (*Id.* at 5:63-67.) The tissue-specific enhancer elements of the invention "typically do not function, or function only at very low or undetectable levels when transfected into cell lines derived from tissues different from the tissue in which they are normally active." (*Id.* at 6:23-28.) In addition, the specification provides examples of testing tissue specificity of an enhancer element. (*See, e.g., id.* at 11:2-55, 12:50-65.)

Therefore, in my opinion, the specification of the '281 patent makes it abundantly clear that the term "tissue specific" means that the mammalian cellular enhancer element of the invention is active in particular tissue types but this activity is greatly diminished or absent in other tissue types.

Dr. Aaronson seems to suggest that the term "sufficiently close" renders the claims indefinite because the specification "provides no information regarding how close it need to be to be 'sufficiently close[,]" or "any guidance on any minimum or maximum distance." In my view, Dr. Aaronson's statements are plainly contradicted by the specification and the claims themselves.

The claims are directed to expression vectors or cell transformants used for producing proteins. The claims require that the enhancer element be "at a site within an active region of

I may assist in the development of animation, demonstratives, and in-court demonstrations to support and explain my opinions.

At or before trial, I may use any of the foregoing materials as exhibits (e.g., any of the documents, data, and other information reviewed by me or made available to me) to support my opinions, in whole or in part. I may also create summaries of documents, data, and other information reviewed by me, or made available to me, to support my opinions.

DATED: December 12, 2005

Kevin Struhl, Ph.D.

50311849.doc

Page 39
REBUTTAL EXPERT REPORT OF DR. KEVIN STRUHL
RE VALIDITY OF UNITED STATES PATENT NUMBER 4,663,281