# EXHIBIT L

# REGULAR UTILITY

FORM PTO-436
(Rev. 8/78)

| SERIAL NUMBER (series of 1978) | PATENT DATE | | PATENT NUMBER | |
|---|---|---|---|---|
| 592231 | MAY 05 1987 | | 4663281 | |

| SERIAL 06/5 | 74 | a DATE | CLASS | SUBCLASS | GROUP AR |
|---|---|---|---|---|---|
| | | 2/84 | 435 | 6-8 | 474 |

APPLICANTS: STEPHEN D. GILLIES, SCITUATE, MA; SUSUMU TONEGAWA, CHESTNUT HILL, MA.

**CONTINUING DATA**********************
VERIFIED
None

**FOREIGN/PCT APPLICATIONS***********
VERIFIED
None

FOREIGN FILING LICENSE GRANTED 04/17/84

| | | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| □ priority claimed ☐yes ☒no 35 USC 119 conditions met ☐yes ☐no Verified and Acknowledged  Examiner's Initials | | | MA | 3 | 28 | 4 | $ 410.00 | DBH-466 |

LAHIVE AND COCKFIELD
50 STATE STREET
BOSTON, MA 02109

Edmund V. Pitchen, Esquire

OK

ENHANCED PRODUCTION OF PROTEINACEOUS MATERIALS IN EUKARYOTIC CELLS

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10/78)

241-98-61
12
7-33-5 -5-3

| PARTS OF APPLICATION FILED SEPARATELY | | | PREPARED FOR ISSUE | |
|---|---|---|---|---|
| | | | Thomas D. Mays  (Assistant Examiner) | Vi Marr  (Docket Clerk) |
| AT ALLOWANCE | | | EXAMINED AND PASSED FOR ISSUE | |

| SHEETS DRWGS. | FIGURES DRWGS. | CLAIMS | CLASS | SUBCLASS |
|---|---|---|---|---|
| 3 | 10 | 25 | 435 | 68 |

THOMAS G. WISEMAN
SUPERVISORY PATENT EXAMINER    127
(Primary Examiner)  ART UNIT 127    (Art Unit)

| Estimate of printed pages | | |
|---|---|---|
| Drawing(s) | Spec(s) | Issue fee due (est.) |
| | | $40.00 |

Notice of allowance and issue fee due (est.)

| Date mailed | Date paid |
|---|---|
| | 1-12-87 |

RETENTION LABEL    453

MIT000014



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 06/592,231 | 03/22/84 | GILLIES | S | DBH-466 |

LAHIVE AND COCKFIELD
60 STATE STREET
BOSTON, MA 02109

MAYS, T

| EXAMINER |
|---|
| MAYS, T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 127 | 3 |

DATE MAILED 1/22/85

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), __days__ from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I     THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☒ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II     SUMMARY OF ACTION**

1. ☒ Claims _1–28_ are pending in the application.

   Of the above, claims _26_ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1–25, 27 + 28_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____. has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7 - 82)                    EXAMINER'S ACTION

MIT000073

Serial No.   592231                    -2-

Art Unit     127


Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.  Claims 1-25, 27 and 28, drawn to a process for the production of a proteinaceous material by the transformation of a eucaryotic cell with a recombinant DNA cloning vector that includes enhancer elements and the vector therefore, classified in Class 435, subclasses 68, 240 and 317.

II.  Claim 26, drawn to protenaceous material, classified in Class 260, subclass 112R.

The inventions are distinct, each from the other, because of the following reasons:

Inventions of Group I and of Group II are related as process of making and product made.

The inventions are distinct if either (1) the process as claimed can be used to make another and materially different product, or (2) the product as claimed can be made by another and materially different process.  MPEP 806.05(f).

In this case, the product as claimed can be made by a materially different process such as a fractionation and extraction from the original source.

Because these inventions are distinct for the reasons given above and have acquired a separate status in the art as shown by their different classification and the search required for Group I is not required for Group II restriction for examination purposes as indicated is proper.

MIT000074

Serial No.   592231                          -3-

Art Unit     127.


During a telephone conversation with Mr. David J.
Powsner, 31868 on 10-25-85 a provisional election was
made with traverse to prosecute the invention of Group
I, claims 1-25, 27 and 28.  Affirmation of this election
must be made by applicant in responding to this Office
action.  Claim 26 stands withdrawn from further con-
sideration by the examiner as being drawn to a none-
lected invention.  See 37 CFR 1.142(b).

Applicant is reminded that upon the cancellation of
claims to a non-elected invention, the inventorship must
be amended in compliance with 37 CFR 1.48(b) if one or
more of the currently named inventors is no longer an
inventor of at least one claim remaining in the applica-
tion.  Any amendment of inventorship must be accompanied
by a diligently-filed petition under 37 CFR 1.48(b) and
by the fee required under 37 CFR 1.17(h).

The disclosure is objected to because of the
following informalities:

The discription on page 11 of figure 8 is unclear.
Does applicant mean that cells transfected with plasmid
ppL$\gamma$ 2b-tk (line 2) and cells transfected wtih plasmid
ppL$\gamma$ 2b X$_2$/$_{\chi 3}$ tk (lane 3) are mouse Ltk cells as stated
on page 26?

Explanation and appropriate correction of the
disclosure is required.

MIT000075

Serial No.   592231                              -4-
Art Unit     127

     Claims 1-25, 27 and 28 are rejected under 35 U.S.C.
112, first paragraph, as the disclosure is enabling only
for claims limited to information or data for the
enhancer element mapped between the VDJ and Cγ2b exons
in mouse DNA and disclosed on pages 18 through 29 of the
specification.  The lack of homology and applicants' own
admission of tissue spejcificity would (e.g. page 13 and
Example III) not enable the isolation and cloning of any
other enhancer elements.  See MPEP 706.03(n) and
706.03(z).

     Claim 6 is rejected under 35 U.S.C. 112, first
paragraph, as the disclosure is enabling only for claims
limited to the creation and use of the Vectors
exemplified.  In view of the delicate and unpredictable
nature of the biochemical and genetic actions involved and
applicant's failure to exemplify integration of the
cloning vectors into the host chromosome, there is no
enablement for the claimed procedure.  See MPEP
706.03(n) and 706.03(z).

     Claim 1 is rejected under 35 U.S.C. 112, second
paragraph, as being indefinite for failing to par-
ticularly point out and distinctly claim the subject
matter which applicant regards as the invention.  The
comma after "competent" appears to be misplaced.

     The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office
action:

Serial No.   592231                        -5-

Art Unit     127.

A person shall be entitled to a patent unless-

(a) the invention was known or used by others in
this country, or patented or described in a printed
publication in this or a foreign country, before
the invention thereof by the applicant for patent.

Claims 1-5, 7-9, 11-17, 19-21, 23-25, 27 and 28 are

rejected under 35 U.S.C. 102 a as being anticipated by

deVilliers et al who teach the use of a transfection process

with a recombinant DNA cloning vector containing

enhancer DNA sequences from polyama virus for the pro-

duction of a protein (hemoglobin β-1) in a eucaryotic

cell (see pp. 6252-6254.)  With regard to claims 5 and

23 it is considered that the transfomed cell is

inherently stable absent evidence to the contrary.  With

regard to claims 9, 19 and 24, it is pointed out that

deVilliers et al present a DNA sequence containing a

TATA region which is a portion of the instant sequence

(bp 746-749) of figure 10.

Claims 1,3-5, 7-9, 11, 12, 14-16, 19, 20, 23-25, 27

and 28 are rejected under 35 U.S.C. 102 a as being anti-

cipated by Laimins et al who teach the use of a trans-

fection process with a recombinant DNA cloning vector

containing enhancer DNA sequences from murine sarcoma

virus for the production of T antigen as well as

chloramphenicol acetyl transferase protein in a

eucaryotic cell (see pp.  6453-6456.)  With regard to

claims 5 and 23, it is considered that the transformed

MIT000077

Serial No.  592231                                -6-

Art Unit    127


cell is inherently stable absent evidence to the
contrary.  With regard to claims 9, 19, and 24, it is
pointed out that Laimins et al present a DNA sequence
containing a TATA region which is a portion of the
instant sequence (bp 746-749) of figure 10.

Claims 1, 2, 3-5, 7-9, 11, 12, 14, 15, 19, 20,
23-25, 27 and 28 are rejected under 35 U.S.C. 102 a as
being anticipated by Levinson et al who teach the use of
a transfection process using enhancer DNA sequences from
SV40 virus to produce hepatitis B antigen in a
eucaryotic cell (see pp 7-9).  With regard to claims 5
and 23, it is considered that the transformed cell is
inherently stable.  With regard to claims 9, 19 and 24,
it is pointed out that Levinson et al present a DNA
sequence containing a TATA region which is a portion of
the instant sequence (bp 746-749) of figure 10.

Claims 1-5, 7-25, 27 and 28 are rejected under 35
U.S.C. 102 e as being anticipated by Vande Woude et al
who teach the use of a transformation process using
enhancer sequences of the LTR sequence from murine sar-
coma virus for the production of "any gene" in a
eucaryotic cell (See column 7, line 20 to column 11,
line 64.)   With regard to claims 5 and 23, it is con-
sidered that the transformed cell is inherently stable.
With regard to claims 9, 19 and 24 it is pointed out
that Vande Woude et al present a DNA sequence containing

MIT000078

Serial No.   592231                        -7-

Art Unit     127


a TATA region (inherent in the LTR sequence) which is a

portion of the instant seqences (bp 746-749) of figure

10.

    The following is a quotation of 35 U.S.C. 103 which
forms the basis for all obviousness rejections set forth
in this Office action:

> A patent may not be obtained though the invention
> is not identically disclosed or described as set
> forth in section 102 of this title, if the dif-
> ferences between the subject matter sought to be
> patented and the prior art are such that the sub-
> ject matter as a whole would have been obvious at
> the time the invention was made to a person having
> ordinary skill in the art to which said subject
> matter pertains.  Patentability shall not be nega-
> tived by the manner in which the invention was
> made.

> Subject matter developed by another person, which
> qualifies as prior art only under subsection (f)
> and (g) of section 102 of this title, shall not
> preclude patentability under this section where the
> subject matter and the claimed invention were, at
> the time the invention was made, owned by the same
> person or subject to an obligation of assignment to
> the same person.

    Claim 6 is rejected under 35 U.S.C. 103 as being

unpatentable over either deVilliers et al or Vande Woude

et al taken in view of Krueger et al or Bentvelzen.

Each of deVilliers and Vande Woude teaches the claimed

process but does not teach the intergration of the recom-

binant DNA into the host chromosomal DNA of the cell

line.  The use of bacteriophage mu as a recombinant DNA

cloning vector which integrates into the host chromosome

is well known in the art (Krueger et al.). Also the

ability of animal tumor viruses (e.g. SV40) to

MIT000079

Serial No.   592231                          -8-

Art Unit    127


integrate into the host chromosome is well known in the

art (Bentvelzen.)  It would be obvious to use the mu or

SV40 vector of the secondary references to cause the

integration of genes of primary references into the

host chromosome.

    Applicant has failed to explain the relevance of

the prior art submitted under the terms of MPEP 609.

Accordingly, the lined through references have not been

considered.

    Any inquiry concerning this communication should be
directed to Tom D. Mays at telephone number
703-557-3920.

Mays:tgh

A/C 703

557-3920

11-9-85:retyped:11-15-85

ALVIN E. TANENHOLTZ
PRIMARY EXAMINER
ART UNIT 127

MIT000080

*39/... - 117-*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Stephen D. Gillies et al

Serial No. 592,231                     Examiner:  Mays/Tanenholtz

Filed:    March 22, 1984         Group Art Unit:  127

For:  ENHANCED PRODUCTION OF PROTEINACEOUS      Paper No:
       MATERIALS IN EUCARYOTIC CELLS

                          AMENDMENT          RECEIVED

Commissioner of Patents and Trademarks       MAY 1 6 1986
Washington, D.C.  20231
                                             GROUP 120
Sir:

        A check for $390.00 to cover the cost of three months

extension of time is enclosed.

        Responsive to the Office Action dated November 22,

1985, kindly amend the application as indicated below and

consider the following remarks.

In the Specification

        Page 26, line 16, insert the symbol -- $\gamma$ -- before "2b."

        Page 11, line 13 - between "and" and "cells", insert

-- mouse L cells --.

In the Claims

        Claim 1, line 4 - prior to "enhancer" insert --

cellular --.

        Claim 1, line 7 - prior to "enhancer" insert --

cellular --.

        Claim 1, line 7, delete ",".

        Delete claim 6.

MIT000085

Claim 12, line 5 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 12, line 9 - before "enhancer" insert -- cellular --.

Claim 20, line 8 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 20, line 11 - before "enhancer" insert -- cellular --.

Claim 27, line 5 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 27, line 8 - before "enhancer" insert -- cellular --.

Delete claim 26.

## Remarks

Applicant hereby affirms the election, with traverse, of the subject matter of Group I, i.e., claims 1-25, 27, and 28, for prosecution in this application while expressly reserving the right to file a divisional application on the subject matter of claim 26.

Responsive to the Examiner's helpful remainder that inventorship must be amended in compliance with 37 C.F.R. 1.48b, if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application, it is believed that all of the claimed subject matter was the joint invention of Messrs. Gillies and Tonegawa.

The Examiner is thanked for pointing out the lack of clarity between the description of figure 8 and the text on page 26. As indicated on page 26, lanes 1 and 2 show the results of northern gel blotting analysis on total cell RNA

- 2 -

MIT000086

content in mouse L cells which had been transfected with the plasmids listed. The foregoing amendment to page 11 is submitted to clarify this point.

The adjective "cellular" has been added to the claims to make more explicit what was already implicit in the claims - namely, that the enhancer elements used in the claim subject matter are of cellular origin, as opposed to viral origin. Numerous bases for the added language appear throughout the specification.

On page 4 of the Office Action, claim 6 was rejected under 35 U.S.C. 112, first paragraph. This claims has now been deleted. Claim 1 was rejected under 35 U.S.C. 112, second paragraph. The foregoing amendment is submitted to obviate this rejection.

Claims 1-25, 27 and 28 were rejected under 35 U.S.C. 112 first paragraph. The Examiner states his position that "the disclosure is enabling only for claims limited to information or data for the enhancer element mapped between the VDJ and C$\gamma$2b exons in mouse DNA and disclosed on pages 18-29 of the specification", and refers applicant to MPEP section 706.03(ñ) and 9z). This rejection is respectfully traversed for the reasons which follow. Reconsideration is requested.

The discovery upon which the claimed subject matter of this application is based is that tissue specific cellular enhancer elements present in the genome of animal cells comprise one significant genetic mechanism by which certain cells are able to produce extraordinarily large quantities of protein. Prior to applicants' discovery, as far as they are aware, the reasons why certain types of cells in mammals

- 3 -

expressed some specific protein at high levels was unknown. With knowledge of the existence of viral DNAs which served to enhance transcription of adjacent viral and other genes, applicants conducted a systematic investigation to determine whether enhancer sequences might exist in certain mammalian cells, and if so whether their existence might explain, at least in part, why those cells produce very large quantities of mRNA encoding proteins that are produced in abundance in such cells. Applicants chose an established murine lymphoid cell line as a test system, and succeeded in demonstrating that a primary reason why such cells produced large quantities of antibody was the existence of a cellular enhancer element present in the mouse genome. Furthermore, they discovered that the action of such cellular enhancers is tissue-specific, showed that such enhancers could be cloned, and demonstrated that their function could be exploited to produced improved expression vectors and transformants.

As disclosed in detail at pages 13-18 of the specification, applicants' invention involves the construction of expression vectors containing a cellular enhancer element derived using methods disclosed in the application from mammalian genomes, preferably a particular cell line, and most preferably one which produces large amounts of protein. The vectors are then transvected into the same cell line or a cell line from the same tissue type. Culturable mammalian and other animal cells can thereby be induced to express amounts of exogenous protein comparable to the high level expression of an endogenous protein.

- 4 -

MIT000088

To restrict applicants' claims to the particular enhancer element used as a model system is submitted to be improper in this case. The effect of narrowing the claims in this way would be to invite those skilled in the art to appropriate applicants' invention without infringing their claims.

This conclusion necessarily follows from the fact that the specification contains a disclosure sufficient to enable those skilled in the art to practice the invention as currently claimed. The specification teaches skilled persons how to locate cellular enhancers, and how to exploit them using conventional techniques in engineered eucaryotic cells. Applicants submit that in view of the teaching of the specification this can be done without the exercise of invention and with only routine experiment of the type specifically outlined in the specification.

Thus, those skilled in the art, with knowledge of the state of the art, are taught in the specification, particularly at pages 13-18, 1) where active cellular enhancers can be found, 2) how they can be identified 3) how they can be isolated, 4) how one can produce test vectors to screen for such enhancers, 5) how the enhancers may be excised, 6) where and how they may be recombined in expression vectors, 7) how such vectors can be used to transform cells, and 8) which cells should be transformed. Details disclosed by way of example of all necessary procedures are set forth on pages 18-29. Applicants disclose that active enhancers can be found in a variety of animal cell types which normally produce large quantities of protein. Non limiting examples as set forth on

- 5 -

page 2 include cells of the circulatory system which produce
globulins or fibrinogen, liver cells which produce serum
albumin, and the beta cells of islets of langerhans which
produce insulin. Those skilled in the art with knowledge of
cell biology can readily gain access to numerous other cell
types which naturally produce large amounts of protein and can
isolate and exploit cellular enhancers found using the methods
disclosed in the specification.

MPEP sections 706.03(n) and 706.03(z) have been
reviewed. The instant specification and claims are submitted
to fully comply with both sections. Should the Examiner
disagree with this conclusion, it is respectfully requested
that in his next Office Action he specify in what respect the
disclosure is considered deficient.

All claims remaining in this application stand
rejected under 35 U.S.C. 102(a) in view of the deVilliers et
al, Laimins et al, or Levinson references, and under 102e as
anticipated by the Vande Woude reference.

The Examiner contends deVillers et al teach the
exploitation of enhancer DNA sequences from polyoma virus,
Laimins et al teach the exploitation of enhancer DNA sequences
from murine sarcoma virus, Levinson et al teach exploitation of
enhancer DNA sequences from SV 40 virus, and Vande Woude et al
teach exploitation of enhancer sequences from the LTR sequence
of murine sarcoma virus, all to produce proteins. These
rejections are respectively traversed for the reasons which
follow.

All of the claims as amended in this application
require the use of a cellular enhancer element, which "when

- 6 -

MIT000090

present in the endogenous genome of a cell from said selected
tissue type [is] operable naturally to increase the production
of an endogeneous proteinaceous substance."  See line 7-10 of
claim 1, 9-12 of claim 12, 11-14 of claim 20, and 8-11 of claim
27.  This language limits the scope of all of the claims
presented for examination to vectors, transformants, or methods
which employ a cellular enhancer, that is, an enhancer element
which is endogenous to the genome of a eucaryotic cell, and
normally operates to enhance production of an endogeneous
proteinaceous substance.

   The claimed cellular enhancers are separate and
distinct from the viral enhancers disclosed in the references.
Such cellular enhancers consist of different sequences of base
pairs than the viral enhancers, are significantly different
compositions of matter, and, perhaps most fundamentally,
function to significantly promote expression only in particular
animal cell types.  Furthermore, the enhancement of
transcription effected by the cellular enhancers in animal
cells of the proper tissue type is far greater than the
activity of viral enhancers.  Viral enhancers, in contrast,
display enhancement activity in essentially any cell which the
virus can normally infect.

   While, as exemplified by the references cited by the
Examiner, the skilled genetic engineer is familiar with the
existence and exploitation of viral enhancers, it was not until
applicants' discoveries that the existence of enhancer elements
in mammalian genomes was demonstrated.  Thus, applicants submit
that nothing in the cited references noted above discloses,
suggests, or is sufficient to enable a person skilled in the

- 7 -

art to make or practice the invention as claimed.  That the
TATA region is present in the enhancer sequence disclosed in
the drawing herein and in some of the sequences disclosed in
the cited prior art is not regarded as significant in assessing
patentability of the instant claims.

These references are pertinent to the claimed subject
matter in that they indicate the level of skill in the art and
disclose that enhancement of transcription is known to occur in
cells.  However, while there has been speculation that cellular
enhancers having a function similar to viral enhancers may
exist, to applicants' knowledge the art is devoid of the
teachings set forth in the instant specification.  The cited
references do not so much as recognize the existence of
cellular enhancers and accordingly cannot properly be used as a
basis for rejecting the claims.

Claim 6 is rejected under 35 U.S.C. 103 as
unpatentable over either deVilliers et al or Vande Woude et al
taken in view of Krueger et al or Bentvelzen.  This dependent
claim has now been deleted to promote prosecution.

It is noted that the lined-through patent document
references set forth on PTO-1449 and submitted previously in
the file of this case have not been considered by the
Examiner.  These references were submitted in an effort to
comply with 37 C.F.R. 1.56.  All of the references were
considered during preparation of this application.  All deal
with methods and vectors for expressing foreign DNA in
culturable cells.

Carey et al disclose a plasmid having an insertion
site for a eucarytic DNA fragment adjacent a bacterial promoter
and downstream from a procaryotic ribosome binding site and

- 8 -

initiator codon.  In effect, the plasmid may be used as a
"cassette" vector for inserting genes encoding mammalian
protein in procaryotic cells.

Tiolias et al disclose vectors for expressing DNA in
bacterial cells such that the reading of the DNA fragment will
occur in phase after transfection.

Sinsky et al disclose extrachromosomal elements
subject to external modulation for controlling expression of a
gene producing a polyaminoacid product.  Nothing in Sinsky et
al suggests that which applicants have claimed.

Axel et al disclose a process for inserting
recombinant DNA into eucaryotic cells, but does not disclose or
suggest the use of cellular enhancer elements.

Ptashne et al disclose a process for producing protein
in bacteria.  The expression vector is designed to have a
hybrid ribosome binding site.

Applicants do not have full copies of the listed
references printed in countries foreign to the United States.
However, based on a reading of the EPO, PCT, or GB title page
of each of the published applications, and on a reading of the
printed abstracts, it appears that none of these references
disclose the use of or suggest the existence of cellular
enhancer elements.

In summary, the references cited by applicants and not
considered by the Examiner are considered to be no more
pertinent than those applied in this Office Action.  However,
it is respectfully requested that the Examiner independently
review each of these references and cite any he regards as
pertinent.

- 9 -

MIT000093

In view of the foregoing, all claims are submitted to be in condition for allowance.  Early favorable action is respectfully requested.

Respectfully submitted,

LAHIVE & COCKFIELD

*Edmund R. Pitcher*

Edmund R. Pitcher
Reg. No. 27,829

60 State Street
Boston, MA  02109
(617)  227-7400

Date:

- 10 -

MIT000094

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of the application of

Stephen D. Gillies et al                    Examiner:  Tanenholtz

Serial No.  592,231                         Group Art Unit:  127

Filed:  March 22, 1984

For:  ENHANCED PRODUCTION OF
      PROTEINACEOUS MATERIALS IN
      EUCARYOTIC CELLS

                    Rule 131 Declaration

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

        We, Stephen D. Gillies and Susumu Tonegawa, hereby

declare as follows:

        We are named as coinventors of the above-referenced

application.  We are familiar with its specification and

claims, and with the disclosure of the Banerji et al paper

published in the same volume of Cell as the paper authored by

us, and naming other individuals as contributors.

        Prior to the publication of the above-referenced

Banerji article cited by the Examiner as a basis for his

obviousness rejection of the claims pending in the

MIT000136

above-referenced application, we jointly conceived of the existence of cellular enhancer sequences in mammalian genomes which might explain at least in part the reasons why certain types of mammalian cells exhibit high levels of expression of protein encoded in their genome. We jointly devised a strategy by which such cellular enhancers might be discovered and selected as the focus of our efforts a mouse myeloma cell line designated J558L supplied by Sherie L. Morrison, and Vernon T. Oi.

The nature and results of our experimental work, all of which was conducted in the laboratories of Massachusetts Institute of Technology in Cambridge, Massachusetts, and which resulted in the isolation and exploitation of a mammalian cellular enhancer element to produce a foreign protein in a transformed cell, was disclosed in Cell, V. 33, pgs. 717-728, in July, 1983. The date of receipt of our paper by the Publishers of Cell (May 2, 1983) is one piece of evidence that we were fully in possession of the subject matter thereof before the July 1, 1983 publication of Banerji et al, and, as discussed below, the data in our publication demonstrate that we had actually reduced to practice several embodiments of the invention of claims 1, 12, and 20 before either paper was submitted.

The experimental work conducted in that laboratory, all at a time prior to April 28, 1983, resulted in the discovery of a DNA sequence located in the intron of the rearranged $\gamma$2b immunoglobulin gene of the MOPC 141 mouse myeloma cell which constitutes an enhancer element whose enhancing function is tissue specific and independent of its orientation with respect to the expressed gene. This sequence

- 2 -

MIT000137

was demonstrated by us to be the sequence responsible for the observed high level expression of immunoglobulin in the MOPC-141 cells and in J558L transfectants. It was inserted into mouse lymphoid cells and used to enhance expression of a foreign gene. We demonstrated that the enhancer operates at the level of DNA to RNA transcription; we produced vectors comprising the enhancer and a transcriptionally competent gene; we inserted these vectors into cells of the same tissue type from which the enhancer was derived, we produced transformants exhibiting enhanced expression of a protein not normally expressed by the cell, and we produced enhanced levels of the protein.

Copies of notebook pages authored by Dr. Gillies, our Cell paper, and the manuscript submitted to Cell, all of which are authentic and true copies of the originals (except that all dates are deleted from the notebook pages) evidence this work, are attached hereto as exhibits, and are interpreted below. Many of the specific procedures employed in reducing our invention to practice were conducted in the laboratory by Ms. Lena Angman, who is acknowledged in our paper at p. 727, and whose declaration is also being submitted as corroborating evidence. Dr. Takagaki was also present in the laboratory during the course of the work, took part in numerous scheduled discussions concerning its nature and progress, and was informed by us of our results as they were obtained. Dr. Takagaki and Ms. Angman observed the progress of our work first hand, and discussed the work with Dr. Gillies privately from time to time. Dr. Takagaki's declaration is also enclosed. Every date on each of the attached notebook pages is a date preceding April 28, 1983, the date the Banerji paper was received.

- 3 -

MIT000138

That various embodiments of the claimed invention had actually been reduced to practice before April 28, 1983 is evidenced by the attached manuscript (Exhibit M) and notebook pages (Exhibits A-E). The text of the manuscript corresponds identically to the text of our <u>Cell</u> paper. Accordingly, for convenience, references herein to the text of our paper are to the columns and pages of the printed publication resulting from it.

As disclosed in the paper, page 718, column 1, we subcloned the γ2b gene fragment from MOPC 141 into plasmid pSV2gpt and, using a modified protoplast fusion process, transfected J558L mouse myeloma cells. These transformants were found to express high levels of the exogenous γ2b heavy chain protein together with the lamda light chain normally secreted by the cell line. This experiment itself turned out to be an actual reduction to practice of pending method claim 1, vector claim 12, and transformant claim 20, as it resulted in the enhanced production of a proteinaceous material, specifically γ2b heavy chain protein, in a mammalian cell line, the J558L cell line, derived from lymphoid tissue. The construction of the vector involved combining a mammalian, cellular enhancer element, specifically, the heavy chain immunoglobulin enhancer element from MOPC 141 (a cell from the same tissue type as J558L), with DNA comprising a transcription unit encoding a proteinaceous material, here the DNA encoding the γ2b heavy chain gene, to produce transcriptionally competent recombinant DNA, here the plasmid pSV γ2bVC, depicted in Figure 1 of the paper in column 2, page 718 and as Figure 1 of our application.

- 4 -

MIT000139

As we subsequently demonstrated, the enhancer element present in this construct, when present in the endogenous genome of cell MOPC 141 (the selected tissue type, here lymphoid), was operable naturally to increase the production of a protein endogenous to that cell, specifically the γ2b heavy chain. Also, the recombinant DNA fitting the precise description of paragraph 1 of claim 1 was transfected into J558L cells, a mammalian cell line, as required by paragraph 3 of claim 1. Furthermore, as disclosed in the paper, column 1, page 718, the transformants produced enhanced levels of exogenous γ2b protein.

At this time in our work we had not yet demonstrated that the high level expression of the γ2b protein was caused by the existence of a mammalian cellular tissue specific enhancer element present in the γ2b gene fragment that had been incorporated in the plasmid. Accordingly, we next prepared deletion mutants of the parent plasmid as set forth in the paper at page 718, column 2. The deletions were located between the VDJ and C γ2b exons. Two of the deletion mutant plasmids, labelled RΔ1 and RΔ2, contained overlapping deletions around the unique Eco R1 site of the parent plasmid. Cell lines obtained by transfection with the RΔ1 deletion mutant synthesized high levels of γ2b heavy chain mRNA whereas the deletion mutant RΔ2 synthesized only low levels. We therefore concluded that if an enhancer element was present, it was absent from the RΔ2 plasmid but present in the RΔ1 plasmid. This conclusion was based on the data set forth at page 719 of the paper as figures 2 and 3 disclosing the results of electrophoresis of immuno precipitated $S^{35}$ methionine labelled protein produced by the various

- 5 -

MIT000140

transformants (Figure 2) and Northern gel blotting analysis for total cell RNA content. As shown by the data, myeloma cells transformed with the parent γ2bVC plasmid (lanes 2-5) showed high level of expression of γ2b protein; transformants containing the RΔ1 deletion from the RΔ1 vector, (lanes 6-9) also exhibited high levels of γ2b protein expression; whereas transformants containing the RΔ2 deletion mutant vector (lanes 10-13) contained far lower amounts of the γ2b protein. These results were further verified by electrophoresis of proteins produced in cell lines subcloned from the transfected cell line. (See Figure 2B of the paper).

Figure 3 in the paper at page 719, column 2, depicts the results of Northern gel blotting analysis for the total intracellular RNA from MOPC 141 (Lane 1), untransformed J558L cells (Lane 2), J558L cells transfected with parent plasmid pSV γ2bVC (Lanes 3 and 4), J558L cells transfected with deletion mutant RΔ1 (Lanes 5 and 6), and J558L cells transfected with deletion mutant RΔ2, (Lanes 7 and 8). As illustrated, mRNA encoding the protein was present at high levels in MOPC 141, was absent from the untransformed J558L cells and the same cells transfected with the RΔ2 mutant, but present at high levels in the cells transfected with the parent plasmid or the RΔ1 mutant.

These data demonstrate that the 1Kb fragment labelled X2-X3 in Figure 1 at page 718, column 2 of the paper contains a DNA sequence operative to enhanced transcription of the γ2b heavy chain gene when transfected into J558L cells. More specifically, the data demonstrated that the operative sequence in the 1Kb fragment was disposed in the 470 base pairs restricted from the RΔ2 deletion mutant. The complete

- 6 -

MIT000141

sequence of this 1Kb fragment, designated X 2/3 in the paper,
is disclosed at page 723 in Figure 7 of our paper, and in
Figure 10 in the above-referenced application.  As indicated in
the legend of Figure 7, the DNA sequencing was carried out
according to standard procedures.

That all of the foregoing work was done in the United
States by us or under our direction is further evidenced by the
attached Exhibits A-E.

Exhibit A consists of pages of a notebook containing
data in the handwriting of Stephen Gillies relating to the
sequencing of a portion of the X 2/3 fragment.  In these notes,
the XbaF fragment refers to the fragment identified as X 2/3 in
our paper, i.e., the fragment containing the enhancer; XF refer
to a plasmid containing the enhancer fragment; 2X Hinc IIRB is
a 2X concentrated buffer for restriction digests.  HinfI is the
restriction site which is present on either side of the
majority of the enhancer sequence which was used here for
labelling DNAs by filling the sticky ends with radioactive
deoxyribonucleotides (Klenow label).  As indicated in Exhibit
A, the resulting, radiolabelled fragments were "run on 5% gel"
indicating that the 220 base pair Hinf-Hinf radioactive
fragment was purified by electrophoresis on 5% polyacryamide
gel.  The bands were eluted by the "crush-soak method" and
precipitated with 5 micrograms tRNA, resuspended in 400
microliters TE (Tris-EDTA), 40 microliters 3 molar sodium
acetate, and 1 ml ethanol.  These were washed 3 times with 70%
ethanol and "denatured" (separated into single strands) in 40
microliters 30% DMSO, 1 ml EDTA, BPB (Bromphenol blue), and XC
(xylene cyanol).  The two single stranded DNAs resulting from
the denaturing which were labelled on their 3' ends were then

- 7 -

MIT000142

separated on a gel.  The autoradiogram of the 2 strands is shown as bands 1 and 2 on page 2 of Exhibit A.  The restriction map set forth near the bottom of page 1 of Exhibit A corresponds to the restriction sites present on the X 2/3 fragment set forth in Figure 10 of this application and Figure 7 of our paper.

The sequence written was read from sequencing gels containing chemically degraded strand 1 and strand 2 DNA.  Both strands were read from the two different fragments (which were complementary).  Page 3 of Exhibit A shows a portion of the derived sequence of the X 2/3 fragment.  It corresponds to bases 362-688 set forth in Figure 7 of our paper and Figure 10 of our application.  Page 4 of Exhibit 1 are notes taken by Stephen Gillies on additional sequencing involving other regions of the X 2/3 fragment.  The diagram at the top of the page illustrates the $X_{2/3}$ fragment, some of the various ways it was restricted, and the restriction enzymes used in each case.  The data below the diagram describe the components of the reaction mixtures used for sequencing.  These data demonstrate that the enhancer element had been isolated and sequenced before April 28, 1983.

That the enhancer sequence was operative irrespective of its orientation and position about the gene was determined as disclosed at page 720 of our paper. As therein indicated, we constructed a plasmid with most of the intron sequences deleted, and then inserted the X 2/3 fragment containing those intron sequences with enhancer activity into either of two sites in either of two orientations.  Four plasmids were obtained which contained the X 2/3 fragment in the normal or reversed orientation, either upstream or downstream of the mRNA

- 8 -

MIT000143

start site.  Maps of these plasmids are set forth in Figure 5,
page 721 of our paper, Figure 4 of the above-referenced
application, and on the enclosed new print (Exhibit B) of a
slide which we prepared originally and which has been in the
possession of Dr. Tonegawa since before April 28, 1983.
Compare Part B of the print enclosed to Figure 5A of the paper
and Figure 4 of the application.  J558L cells obtained by
transfecting these plasmids were analyzed for the expression of
γ2b heavy chain as set forth below.  The data in Figure 5B of
our paper, page 721, also set forth as Figure 5 in the
above-referenced application, and on Exhibit B, demonstrate
that the plasmid having most of the intron deleted did not
synthesize significant levels of γ2b protein (Lanes 3 and 4)
but that the insertion of the X 2/3 fragment containing the
enhancer restored the expression in both the normal or reversed
orientations either upstream (5') or downstream (3') of the V
gene segment.  These data demonstrated that the sequences
deleted in the RΔ2 mutant plasmid had a direct orientation
independent enhancing effect on transcription.

        All of the plasmids containing the X 2/3 fragment
described in Figure 5 of the paper, Figure 4 of the
application, and at B in Exhibit B, constitute vectors
embodying the invention of claim 12.  The resulting
transformants embody the invention of claim 20.  The process
described constituted an embodiment of the method of claim 1.
This work met every limitation of each of these claims, and was
completed prior to April 28, 1983.

        The tissue specificity of the enhancer element was
determined as set forth in our paper beginning at the bottom of
the second column of page 720 and extending through the top of

- 9 -

the first column of page 722. As indicated therein, we
demonstrated that the enhancer element had greatly reduced
activity in fibroblasts (Ltk⁻ cells) as compared with myeloma
cells. We also demonstrated that a smaller restriction
fragment of $X_{2/3}$, a 140 base pair Pvu II-Dde I fragment
containing some of the sequences deleted in plasmid RΔ2, was
found to increase the transformation frequency of plasmids pSER
by 20-fold in J558L cells but not in mouse L cells.

As further evidence of our actual reduction to
practice of the claimed subject matter of the above-referenced
application, we attach Exhibit C which comprises two pages of a
notebook containing data entered prior to April 28, 1983 in the
handwriting of Stephen Gillies. Page 1 of Exhibit C discloses
transfection experiments describing in shorthand the fusion of
bacteria containing the plasmids having the deletions in the
intron between the V region and the γ2b constant region of
the rearranged gene discussed above. Short forms used in the
notebook which are not present in the paper have the following
meaning: MEM-modified Eagles medium, PEG-polyethylene glycol,
MEM 10-MEM plus 10% fetal calf serum, H-hypoxanthine,
T-thymidine. "Spin method" refers to the fusion method
described in our paper, p. 726, col. 2.

Page 2 of Exhibit C is a copy of a page of a notebook
setting forth restriction analysis data of 3'Δ clones of
plasmid pSVγ2bVC discussed in our paper. 3'Δ refers to
deletions that were made by cutting the plasmid with Eco Rl and
then treating the DNA with Bal 31 exonuclease. This shortens
the DNA progressively. The DNA is then reclosed and analyzed.
The size of the deletions roughly are shown by these analyses.
The autoradiogram at the bottom of page 2 illustrates

- 10 -

separation of the fragments of the plasmids cut with the various enzymes. For example, lanes 7-10 were cut with Hind III. Smaller fragments run toward the bottom of the autoradiogram. The smaller of the fragments in each lane are progressively smaller with the increasing size of the deletion. These original data relate directly to the production of the deletion mutants described in our paper and discussed above, and to the localization of the sequence having enhancer activity as described therein, in our application, and above.

Exhibit D is a true copy of two pages of a notebook containing entries in the handwriting of Stephen Gillies, illustrating data involved in the S35 labelling experiments discussed above, and comprise a portion of the data demonstrating enhanced levels of protein production with our transformants. See p. 726, bottom column 2 and page 719, Fig. 2, of our paper. The cells were those obtained from transfections with RΔ deletion mutants described with reference to Exhibit A and are not clones, but rather separate pools of many clones. Those numbered from 1 to 10 are from the undeleted (normal or positive control) vector. Those numbered 11, 12, 13, 14, and 15 represent cells transfected with deletion mutant RΔ1. Cells labelled 21, 22, 23, and 24 are from transfections with deletion mutant plasmid RΔ2. As noted on page 1 of Exhibit D, the cells were incubated in methionine free RPMI with radioactive methionine S35 which was incorporated into the protein (γ2b heavy chain) which quickly binds with the lamba light chain already being made by the cell. The cells are lysed in the "3X detergent buffer" (a buffer containing 3 detergents) to release their intracellular proteins before they leave the cells. $\gamma$-IgG $F_c$ refers to

- 11 -

an anti-IgG antibody prepared specific for the $F_c$ portion
which was used to isolate the γ2b heavy chain and any
associated lamba chain.  Staph A refers to beads coated with
Staph A protein which bind the antibody-antigen complex.  The
complex is then boiled to release the radiolabelled methionine
(in this case γ2b heavy chain combined with the lambda light
chain).  This protein is then run on a gel under reduced
conditions to produce the two major bands seen on the
autoradiogram (page 2 of Exhibit D) produced by electrophoresis
of the purified products.  The autoradiogram corresponds to
Figure 2 of the above-referenced application and Figure 2A at
column 1, line 719 of our paper.

        Exhibit E consists of 6 pages of a notebook containing
entries in Stephen Gillies handwriting recorded prior to April
28, 1983 involving data on the construction of an enhancer
assay vector.  The data comprises notes on the construction of
two vectors with unique XbaI sites either upstream or
downstream from the γ2b promoter.  Linear, full-length
molecules were purified and used for insertion of the enhancer
fragment as shown on page 4 of Exhibit E.  Analysis of the
recombinant molecules is shown in the right panel on page 5 of
Exhibit E.  Also shown is the 4 combinations of enhancer
orientation and position used for transfection into J558L along
with the control vector (pSVγ2bΔXFD) which had no enhancer.

        The foregoing, together with the exhibits, demonstrate
that prior to April 28, 1983, we had succeeded in actually
reducing to practice in the United States embodiments of
independent claims 1, 12, and 20 of our application which
responded to the limitations of those claims in every detail.

- 12 -

MIT000147

Furthermore, the identity, function, and exploitation of the
enhancer element we discovered was substantially identical to
that disclosed in the Banerji et al cited references.  It is
accordingly our belief that the foregoing demonstrates an
actual reduction to practice of the various forms of our
claimed invention which was accomplished before publications of
the Banerji et al reference.

         We further declare that all statements made herein of
our own knowledge are true and all statements on information
and belief are believed to be true and further that these
statements are made with the knowledge that willful false
statements and the like so made are punishable by fine or
imprisonment, or both, under Section 1001 of Title 18 of the
United States Code and that such willful false statements may
jeopardize the validity of this application or any patent
issuing thereon.

Date: 10/8/86

Susumu Tonegawa

Date:

Stephen D. Gillies

- 13 -

MIT000148

## SEARCH NOTES

| | Date | Ex'r |
|---|---|---|
| Computer Search of CAS Dialog (Biosis) (by Author & subject) | 10-17-85 | 7 m |

## SEARCHED

| Class | Sub | Date | Ex'r |
|---|---|---|---|
| 435 | 68 | 10-16-85 | 7m |
| | 70 | 10-18-85 | 7m |
| | 71 | | |
| | 240 | | |
| | 241 | | |
| | 317 | | |
| | 172.1 | | |
| | 172.3 | | |
| 935 | 22 | 10-17-85 | 7m |
| | 23 | | |
| | 24 | | |
| | 26 | | |
| | 32 | 10-18-85 | 7m |
| | 33 | | |
| | 3 Y | | |
| | 36 | | |
| | updated | 5-28-86 | m |
| | updated Search | 10-8-86 | 7m |
| | updated | 11-21-86 | 7m |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Ex'r |
|---|---|---|---|
| 435 | 68, 241 | 11-21-86 | 7m |
| | 317, 172 | | |

### PRINT CLAIM(S):

/

## INDEX OF CLAIMS

| Claim | | Date | | | | | | | | | Claim | | Date | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | | | | Final | Original | | | | | | |
| / | 1 | ✓ | ✓ | ✓ | = | | | | | | | 26 | ~ | | | | | |
| 2 | 2 | ✓ | ✓ | ✓ | = | | | | | | | 27 | | ✓ | ✓ | ✓ | | |
| 3 | 3 | ✓ | ✓ | ✓ | = | | | | | | | 28 | | | | | | |
| 4 | 4 | ✓ | ✓ | ✓ | = | | | | | | | 29 | | | | | | |
| 5 | 5 | ✓ | ✓ | ✓ | = | | | | | | | 30 | | | | | | |
| | 6 | ✓ | | | | | | | | | | 31 | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | | | 32 | | | | | | |
| 6 | 8 | ✓ | ✓ | ✓ | = | | | | | | | 33 | | | | | | |
| 7 | 9 | ✓ | ✓ | ✓ | = | | | | | | | 34 | | | | | | |
| 8 | 10 | ✓ | ✓ | ✓ | = | | | | | | | 35 | | | | | | |
| 9 | 11 | ✓ | ✓ | ✓ | = | | | | | | | 36 | | | | | | |
| 10 | 12 | ✓ | ✓ | ✓ | = | | | | | | | 37 | | | | | | |
| 11 | 13 | ✓ | ✓ | ✓ | = | | | | | | | 38 | | | | | | |
| 12 | 14 | ✓ | ✓ | ✓ | = | | | | | | | 39 | | | | | | |
| 13 | 15 | ✓ | ✓ | ✓ | = | | | | | | | 40 | | | | | | |
| 14 | 16 | ✓ | ✓ | ✓ | = | | | | | | | 41 | | | | | | |
| 15 | 17 | ✓ | ✓ | ✓ | = | | | | | | | 42 | | | | | | |
| 16 | 18 | ✓ | ✓ | ✓ | = | | | | | | | 43 | | | | | | |
| 17 | 19 | ✓ | ✓ | ✓ | = | | | | | | | 44 | | | | | | |
| 18 | 20 | ✓ | ✓ | ✓ | = | | | | | | | 45 | | | | | | |
| 19 | 21 | ✓ | ✓ | ✓ | = | | | | | | | 46 | | | | | | |
| 20 | 22 | ✓ | ✓ | ✓ | = | | | | | | | 47 | | | | | | |
| 21 | 23 | ✓ | ✓ | ✓ | = | | | | | | | 48 | | | | | | |
| 22 | 24 | ✓ | ✓ | ✓ | = | | | | | | | 49 | | | | | | |
| 23 | 25 | ✓ | ✓ | ✓ | = | | | | | | | 50 | | | | | | |

SYMBOLS                              STATU

✓ .................. Rejected
▬ .................. Allowed
– (Through numeral)Canceled
+ .................. Restriction requirement
N .................. Nonelected Invention or spec
I .................. Interference
A .................. Appeal
O .................. Objected

MIT000178