# EXHIBIT B

C:\Documents and Settings\vwc145\Desktop\Cover A.pdf.doc

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Stephen D. Gillies et al

Serial No. 592,231　　　　　　　Examiner: Mays/Tanenholtz

Filed:　　March 22, 1984　　　　Group Art Unit: 127

For: ENHANCED PRODUCTION OF PROTEINACEOUS　　Paper No:
　　　MATERIALS IN EUCARYOTIC CELLS

AMENDMENT

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

　　　A check for $390.00 to cover the cost of ~~three months~~ extension of time is enclosed.

　　　Responsive to the Office Action dated November 22, 1985, kindly amend the application as indicated below and consider the following remarks.

In the Specification

　　　Page 26, line 16, insert the symbol -- ∫ -- before "2b."

　　　Page 11, line 13 - between "and" and "cells", insert -- mouse L cells --.

In the Claims

　　　Claim 1, line 4 - prior to "enhancer" insert -- cellular --.

　　　Claim 1, line 7 - prior to "enhancer" insert -- cellular --.

　　　Claim 1, line 7, delete ",".

　　　Delete claim 6.

050  05/13/86  592231　　　　1 117　　390.00 CK

Claim 12, line 5 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 12, line 9 - before "enhancer" insert -- cellular --.

Claim 20, line 8 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 20, line 11 - before "enhancer" insert -- cellular --.

Claim 27, line 5 - delete "an enhancer" and substitute -- a cellular enhancer --.

Claim 27, line 8 - before "enhancer" insert -- cellular --.

Delete claim 26.

### Remarks

Applicant hereby affirms the election, with traverse, of the subject matter of Group I, i.e., claims 1-25, 27, and 28, for prosecution in this application while expressly reserving the right to file a divisional application on the subject matter of claim 26.

Responsive to the Examiner's helpful remainder that inventorship must be amended in compliance with 37 C.F.R. 1.48b, if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application, it is believed that all of the claimed subject matter was the joint invention of Messrs. Gillies and Tonegawa.

The Examiner is thanked for pointing out the lack of clarity between the description of figure 8 and the text on page 26. As indicated on page 26, lanes 1 and 2 show the results of northern gel blotting analysis on total cell RNA

- 2 -

content in mouse L cells which had been transfected with the plasmids listed. The foregoing amendment to page 11 is submitted to clarify this point.

The adjective "cellular" has been added to the claims to make more explicit what was already implicit in the claims - namely, that the enhancer elements used in the claim subject matter are of cellular origin, as opposed to viral origin. Numerous bases for the added language appear throughout the specification.

On page 4 of the Office Action, claim 6 was rejected under 35 U.S.C. 112, first paragraph. This claims has now been deleted. Claim 1 was rejected under 35 U.S.C. 112, second paragraph. The foregoing amendment is submitted to obviate this rejection.

Claims 1-25, 27 and 28 were rejected under 35 U.S.C. 112 first paragraph. The Examiner states his position that "the disclosure is enabling only for claims limited to information or data for the enhancer element mapped between the VDJ and $C\gamma 2b$ exons in mouse DNA and disclosed on pages 18-29 of the specification", and refers applicant to MPEP section 706.03(n) and 9z). This rejection is respectfully traversed for the reasons which follow. Reconsideration is requested.

The discovery upon which the claimed subject matter of this application is based is that tissue specific cellular enhancer elements present in the genome of animal cells comprise one significant genetic mechanism by which certain cells are able to produce extraordinarily large quantities of protein. Prior to applicants' discovery, as far as they are aware, the reasons why certain types of cells in mammals

- 3 -

expressed some specific protein at high levels was unknown. With knowledge of the existence of viral DNAs which served to enhance transcription of adjacent viral and other genes, applicants conducted a systematic investigation to determine whether enhancer sequences might exist in certain mammalian cells, and if so whether their existence might explain, at least in part, why those cells produce very large quantities of mRNA encoding proteins that are produced in abundance in such cells. Applicants chose an established murine lymphoid cell line as a test system, and succeeded in demonstrating that a primary reason why such cells produced large quantities of antibody was the existence of a cellular enhancer element present in the mouse genome. Furthermore, they discovered that the action of such cellular enhancers is tissue-specific; showed that such enhancers could be cloned, and demonstrated that their function could be exploited to produced improved expression vectors and transformants.

As disclosed in detail at pages 13-18 of the specification, applicants' invention involves the construction of expression vectors containing a cellular enhancer element derived using methods disclosed in the application from mammalian genomes, preferably a particular cell line, and most preferably one which produces large amounts of protein. The vectors are then transvected into the same cell line or a cell line from the same tissue type. Culturable mammalian and other animal cells can thereby be induced to express amounts of exogenous protein comparable to the high level expression of an endogenous protein.

- 4 -

To restrict applicants' claims to the particular enhancer element used as a model system is submitted to be improper in this case. The effect of narrowing the claims in this way would be to invite those skilled in the art to appropriate applicants' invention without infringing their claims.

This conclusion necessarily follows from the fact that the specification contains a disclosure sufficient to enable those skilled in the art to practice the invention as currently claimed. The specification teaches skilled persons how to locate cellular enhancers, and how to exploit them using conventional techniques in engineered eucaryotic cells. Applicants submit that in view of the teaching of the specification this can be done without the exercise of invention and with only routine experiment of the type specifically outlined in the specification.

Thus, those skilled in the art, with knowledge of the state of the art, are taught in the specification, particularly at pages 13-18, 1) where active cellular enhancers can be found, 2) how they can be identified 3) how they can be isolated, 4) how one can produce test vectors to screen for such enhancers, 5) how the enhancers may be excised, 6) where and how they may be recombined in expression vectors, 7) how such vectors can be used to transform cells, and 8) which cells should be transformed. Details disclosed by way of example of all necessary procedures are set forth on pages 18-29. Applicants disclose that active enhancers can be found in a variety of animal cell types which normally produce large quantities of protein. Non limiting examples as set forth on

page 2 include cells of the circulatory system which produce globulins or fibrinogen, liver cells which produce serum albumin, and the beta cells of islets of langerhans which produce insulin. Those skilled in the art with knowledge of cell biology can readily gain access to numerous other cell types which naturally produce large amounts of protein and can isolate and exploit cellular enhancers found using the methods disclosed in the specification.

MPEP sections 706.03(n) and 706.03(z) have been reviewed. The instant specification and claims are submitted to fully comply with both sections. Should the Examiner disagree with this conclusion, it is respectfully requested that in his next Office Action he specify in what respect the disclosure is considered deficient.

All claims remaining in this application stand rejected under 35 U.S.C. 102(a) in view of the deVilliers et al, Laimins et al, or Levinson references, and under 102e as anticipated by the Vande Woude reference.

The Examiner contends deVillers et al teach the exploitation of enhancer DNA sequences from polyoma virus, Laimins et al teach the exploitation of enhancer DNA sequences from murine sarcoma virus, Levinson et al teach exploitation of enhancer DNA sequences from SV 40 virus, and Vande Woude et al teach exploitation of enhancer sequences from the LTR sequence of murine sarcoma virus, all to produce proteins. These rejections are respectively traversed for the reasons which follow.

All of the claims as amended in this application require the use of a _cellular_ enhancer element, which "when

- 6 -

present in the endogenous genome of a cell from said selected tissue type [is] operable naturally to increase the production of an endogenous proteinaceous substance." See line 7-10 of claim 1, 9-12 of claim 12, 11-14 of claim 20, and 8-11 of claim 27. This language limits the scope of all of the claims presented for examination to vectors, transformants, or methods which employ a <u>cellular</u> enhancer, that is, an enhancer element which is <u>endogenous</u> to the genome of a eucaryotic cell, and normally operates to enhance production of an endogeneous proteinaceous substance.

The claimed cellular enhancers are <u>separate</u> and <u>distinct</u> from the viral enhancers disclosed in the references. Such cellular enhancers consist of different sequences of base pairs than the viral enhancers, are significantly different compositions of matter, and, perhaps most fundamentally, function to significantly promote expression only in particular animal cell types. Furthermore, the enhancement of transcription effected by the cellular enhancers in animal cells of the proper tissue type is far greater than the activity of viral enhancers. Viral enhancers, in contrast, display enhancement activity in essentially any cell which the virus can normally infect.

While, as exemplified by the references cited by the Examiner, the skilled genetic engineer is familiar with the existence and exploitation of viral enhancers, it was not until applicants' discoveries that the existence of enhancer elements in mammalian genomes was demonstrated. Thus, applicants submit that nothing in the cited references noted above discloses, suggests, or is sufficient to enable a person skilled in the

art to make or practice the invention as claimed. That the TATA region is present in the enhancer sequence disclosed in the drawing herein and in some of the sequences disclosed in the cited prior art is not regarded as significant in assessing patentability of the instant claims.

These references are pertinent to the claimed subject matter in that they indicate the level of skill in the art and disclose that enhancement of transcription is known to occur in cells. However, while there has been speculation that cellular enhancers having a function similar to viral enhancers may exist, to applicants' knowledge the art is devoid of the teachings set forth in the instant specification. The cited references do not so much as recognize the existence of cellular enhancers and accordingly cannot properly be used as a basis for rejecting the claims.

Claim 6 is rejected under 35 U.S.C. 103 as unpatentable over either deVilliers et al or Vande Woude et al taken in view of Krueger et al or Bentvelzen. This dependent claim has now been deleted to promote prosecution.

It is noted that the lined-through patent document references set forth on PTO-1449 and submitted previously in the file of this case have not been considered by the Examiner. These references were submitted in an effort to comply with 37 C.F.R. 1.56. All of the references were considered during preparation of this application. All deal with methods and vectors for expressing foreign DNA in culturable cells.

Carey et al disclose a plasmid having an insertion site for a eucarytic DNA fragment adjacent a bacterial promoter and downstream from a procaryotic ribosome binding site and

- 8 -

initiator codon. In effect, the plasmid may be used as a "cassette" vector for inserting genes encoding mammalian protein in procaryotic cells.

Tiolias et al disclose vectors for expressing DNA in bacterial cells such that the reading of the DNA fragment will occur in phase after transfection.

Sinsky et al disclose extrachromosomal elements subject to external modulation for controlling expression of a gene producing a polyaminoacid product. Nothing in Sinsky et al suggests that which applicants have claimed.

Axel et al disclose a process for inserting recombinant DNA into eucaryotic cells, but does not disclose or suggest the use of cellular enhancer elements.

Ptashne et al disclose a process for producing protein in bacteria. The expression vector is designed to have a hybrid ribosome binding site.

Applicants do not have full copies of the listed references printed in countries foreign to the United States. However, based on a reading of the EPO, PCT, or GB title page of each of the published applications, and on a reading of the printed abstracts, it appears that none of these references disclose the use of or suggest the existence of cellular enhancer elements.

In summary, the references cited by applicants and not considered by the Examiner are considered to be no more pertinent than those applied in this Office Action. However, it is respectfully requested that the Examiner independently review each of these references and cite any he regards as pertinent.

In view of the foregoing, all claims are submitted to be in condition for allowance. Early favorable action is respectfully requested.

Respectfully submitted,

LAHIVE & COCKFIELD

*[signature: Edmund R. Pitcher]*

Edmund R. Pitcher
Reg. No. 27,829

60 State Street
Boston, MA  02109
(617)  227-7400

Date:

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D. C. 20231,

on ___May 5, 1986___

___Edmund R. Pitcher___
Name of Applicant, Assignee, or
Registered Representative

___[signature]___
Signature

___May 5, 1986___
Date of Signature

- 10 -