# EXHIBIT D

C:\Documents and Settings\vwc145\Desktop\Cover A.pdf.doc



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/592,231 | 03/22/84 | GILLIES  S | DBH-466 |

LAHIVE AND COCKFIELD
60 STATE STREET
BOSTON, MA 02109

| EXAMINER |
|---|
| MAYS, T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 127 | 3 |

DATE MAILED 01/22/85

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

[X] This application has been examined   [ ] Responsive to communication filed on _____   [ ] This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. [X] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice re Patent Drawing, PTO-948.
3. [X] Notice of Art Cited by Applicant, PTO-1449.
4. [ ] Notice of informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] _____

**Part II   SUMMARY OF ACTION**

1. [X] Claims __1-28__ are pending in the application.
   Of the above, claims __26__ are withdrawn from consideration.
2. [ ] Claims _____ have been cancelled.
3. [ ] Claims _____ are allowed.
4. [X] Claims __1-25, 27 + 28__ are rejected.
5. [ ] Claims _____ are objected to.
6. [ ] Claims _____ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on _____. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).

10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed _____, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. _____; filed on _____.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

PTOL-326 (Rev. 7-82)   EXAMINER'S ACTION

Serial No.    592231                                                         -2-

Art Unit     127


   Restriction to one of the following inventions is required under 35 U.S.C. 121:

   I. Claims 1-25, 27 and 28, drawn to a process for the production of a proteinaceous material by the transformation of a eucaryotic cell with a recombinant DNA cloning vector that includes enhancer elements and the vector therefore, classified in Class 435, subclasses 68, 240 and 317.

   II. Claim 26, drawn to protenaceous material, classified in Class 260, subclass 112R.

   The inventions are distinct, each from the other, because of the following reasons:

   Inventions of Group I and of Group II are related as process of making and product made.

   The inventions are distinct if either (1) the process as claimed can be used to make another and materially different product, or (2) the product as claimed can be made by another and materially different process. MPEP 806.05(f).

   In this case, the product as claimed can be made by a materially different process such as a fractionation and extraction from the original source.

   Because these inventions are distinct for the reasons given above and have acquired a separate status in the art as shown by their different classification and the search required for Group I is not required for Group II restriction for examination purposes as indicated is proper.

Serial No.   592231                                          -3-

Art Unit    127

During a telephone conversation with Mr. David J. Powsner, 31868 on 10-25-85 a provisional election was made with traverse to prosecute the invention of Group I, claims 1-25, 27 and 28. Affirmation of this election must be made by applicant in responding to this Office action. Claim 26 stands withdrawn from further consideration by the examiner as being drawn to a nonelected invention. See 37 CFR 1.142(b).

Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a diligently-filed petition under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(h).

The disclosure is objected to because of the following informalities:

The discription on page 11 of figure 8 is unclear. Does applicant mean that cells transfected with plasmid ppLγ 2b-tk (line 2) and cells transfected wtih plasmid ppLγ 2b $X_2/_{X3}$ tk (lane 3) are mouse Ltk cells as stated on page 26?

Explanation and appropriate correction of the disclosure is required.

Serial No.    592231                                -4-
Art Unit      127

Claims 1-25, 27 and 28 are rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited to information or data for the enhancer element mapped between the VDJ and $C\gamma 2b$ exons in mouse DNA and disclosed on pages 18 through 29 of the specification. The lack of homology and applicants' own admission of tissue spejcificity would (e.g. page 13 and Example III) not enable the isolation and cloning of any other enhancer elements. See MPEP 706.03(n) and 706.03(z).

Claim 6 is rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited to the creation and use of the Vectors exemplified. In view of the delicate and unpredictable nature of the biochemical and genetic actions involved and applicant's failure to exemplify integration of the cloning vectors into the host chromosome, there is no enablement for the claimed procedure. See MPEP 706.03(n) and 706.03(z).

Claim 1 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. The comma after "competent" appears to be misplaced.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

Serial No.   592231                                              -5-
Art Unit    127

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.

Claims 1-5, 7-9, 11-17, 19-21, 23-25, 27 and 28 are rejected under 35 U.S.C. 102 a as being anticipated by deVilliers et al who teach the use of a transfection process with a recombinant DNA cloning vector containing enhancer DNA sequences from polyama virus for the production of a protein (hemoglobin β-1) in a eucaryotic cell (see pp. 6252-6254.) With regard to claims 5 and 23 it is considered that the transfomed cell is inherently stable absent evidence to the contrary. With regard to claims 9, 19 and 24, it is pointed out that deVilliers et al present a DNA sequence containing a TATA region which is a portion of the instant sequence (bp 746-749) of figure 10.

Claims 1, 3-5, 7-9, 11, 12, 14-16, 19, 20, 23-25, 27 and 28 are rejected under 35 U.S.C. 102 a as being anticipated by Laimins et al who teach the use of a transfection process with a recombinant DNA cloning vector containing enhancer DNA sequences from murine sarcoma virus for the production of T antigen as well as chloramphenicol acetyl transferase protein in a eucaryotic cell (see pp. 6453-6456.) With regard to claims 5 and 23, it is considered that the transformed

Serial No.   592231                                                    -6-
Art Unit    127

cell is inherently stable absent evidence to the contrary. With regard to claims 9, 19, and 24, it is pointed out that Laimins et al present a DNA sequence containing a TATA region which is a portion of the instant sequence (bp 746-749) of figure 10.

Claims 1, 2, 3-5, 7-9, 11, 12, 14, 15, 19, 20, 23-25, 27 and 28 are rejected under 35 U.S.C. 102 a as being anticipated by Levinson et al who teach the use of a transfection process using enhancer DNA sequences from SV40 virus to produce hepatitis B antigen in a eucaryotic cell (see pp 7-9). With regard to claims 5 and 23, it is considered that the transformed cell is inherently stable. With regard to claims 9, 19 and 24, it is pointed out that Levinson et al present a DNA sequence containing a TATA region which is a portion of the instant sequence (bp 746-749) of figure 10.

Claims 1-5, 7-25, 27 and 28 are rejected under 35 U.S.C. 102 e as being anticipated by Vande Woude et al who teach the use of a transformation process using enhancer sequences of the LTR sequence from murine sarcoma virus for the production of "any gene" in a eucaryotic cell (See column 7, line 20 to column 11, line 64.) With regard to claims 5 and 23, it is considered that the transformed cell is inherently stable. With regard to claims 9, 19 and 24 it is pointed out that Vande Woude et al present a DNA sequence containing

Serial No.   592231                                          -7-

Art Unit     127

a TATA region (inherent in the LTR sequence) which is a portion of the instant seqences (bp 746-749) of figure 10.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claim 6 is rejected under 35 U.S.C. 103 as being unpatentable over either deVilliers et al or Vande Woude et al taken in view of Krueger et al or Bentvelzen. Each of deVilliers and Vande Woude teaches the claimed process but does not teach the intergration of the recombinant DNA into the host chromosomal DNA of the cell line. The use of bacteriophage mu as a recombinant DNA cloning vector which integrates into the host chromosome is well known in the art (Krueger et al.). Also the ability of animal tumor viruses (e.g. SV40) to

Serial No.    592231                                        -8-

Art Unit     127

integrate into the host chromosome is well known in the art (Bentvelzen.) It would be obvious to use the mu or SV40 vector of the secondary references to cause the integration of genes of primary references into the host chromosome.

Applicant has failed to explain the relevance of the prior art submitted under the terms of MPEP 609. Accordingly, the lined through references have not been considered.

Any inquiry concerning this communication should be directed to Tom D. Mays at telephone number 703-557-3920.

Mays:tgh

A/C 703

557-3920

11-9-85:retyped:11-15-85

ALVIN E. TANENHOLTZ
PRIMARY EXAMINER
ART UNIT 127