# EXHIBIT O

Case 1:04-cv-10884-RGS   Document 204-15   Filed 07/23/2007   Page 1 of 6

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of the application of

Stephen D. Gillies et al                    Examiner: Mays/Wiseman

Serial No. 592,231                          Group Art Unit: 127

Filed: March 22, 1984

For: ENHANCED PRODUCTION OF
     PROTEINACEOUS MATERIALS IN
     EUCARYOTIC CELLS

RECEIVED
NOV 1 4 1986
GROUP 120

INTERVIEW SUMMARY RECORD

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

On behalf of applicants, M.I.T., and the licensee of this application, Damon Biotech, Inc., the undersigned attorney wishes to thank Examiner Mays for the courtesy and exchange of views which took place during the interview of November 6. At that interview, the undersigned attorney and Dr. Gillies were informed of the Examiner's current thinking as to the basis for his outstanding 35 USC 112 rejection. Dr. Gillies and the undersigned attorney urged that the rejection is improper, stated the basis for this position, left copies of four additional recent publications which evidence that persons skilled in the art are fully enabled by the application, and spent some time discussing the disclosures of these and previously submitted publications and their relevance to the impropriety of the outstanding 112 rejection.

Examiner Mays stated that the basis for the 112 rejection, which remained under reconsideration at this time, was that he had not finally decided whether the specification (particularly pages 16 through 18 and the examples) was sufficient, as of its filing date, to enable those skilled in the art to locate tissue specific mammalian cellular enhancer elements in addition to the immunoglobulin enhancer described and set forth in detail in the specification. He agreed that this was the only basis for the current rejection and that the issue whether, once such additional enhancers were located, the specification enabled those skilled in the art to use the enhancer effectively and in accordance with the claims without undue experimentation, was not an aspect of the remaining outstanding rejection.

Dr. Gillies noted that the method of locating cellular enhancers in other types of cells was explained fully in the specification. It involves construction of an enhancerless test vector comprising DNA encoding a protein necessary to enable survival of transformants in a selective medium, which protein is not expressed unless an enhancer sequence is cloned into the vector. Restriction fragments of DNA of various sizes comprising various overlapping sections are then excised from about a gene expressed in abundance in a given cell type derived, for example, from a genomic library, and these restriction fragments are ligated into the test vector adjacent the gene encoding the required protein. The existence of an enhancer sequence is demonstrated if a transformant survives in the selected medium, as, in the absence of an enhancer activity, the required protein would not be expressed and the cell would die.

Following this, various deletion mutants can be constructed using conventional techniques to quantify the general boundaries of the enhancer sequence. A slight variation on this generalized enhancer locating procedure involves the so-called enhancer trap assay, which employs successful replication of a virus as the indicator of the presence of enhancer activity. Another variation involved expression of a marker protein (as opposed to a protein necessary for survival) which can be detected in a standard assay procedure as the indicator of the presence of enhancer activity.

Dr. Gillies also explained that the use of various overlapping segments in the enhancer locating protocol would obviate the difficulties which may be encountered should the digest site happen to intersect an enhancer sequence so as to reduce unduly its enhancing effect. He also indicated that those skilled in the art are well aware of where in the genome of various protein producing cells the enhancing sequences may be found.

In short, it was explained that applicants position on this issue is that the specification, and indeed applicant's published paper which preceded it, is clearly sufficient to enable those skilled in the art to find many other cellular enhancer sequences useful in the practice of the invention without undue experimentation, and furthermore that the direction of the routine experimentation required is precisely disclosed in applicants' specification.

Dr. Gillies also informed the Examiner that the reason why the immunoglobulin enhancer and the J558 cell line were employed as the prototype system in the reduction to practice

- 3 -

of the invention was that the regulation of expression of immunoglobulins, which express in abundance late in the maturation of B cells, was of scientific interest, and that applicants suspected that the activation of the assembled immunoglobulin gene might be traceable to the DNA rearrangements preceding expression.

As support for their position, the undersigned attorney and Dr. Gillies noted that the publications of Okazaki et al (EMBO Journal, 1985); Theisen et al (EMBO Journal, 1986); Boulet et al (Proc. Natl. Acad. Sci USA, 1986); Edlund et al (Science, 1985); and at least four of the articles submitted with the previous supplemental response including Kimura et al (Cell, 1986); Fujita et al (Cell, 1986); Garabedian et al (Cell, 1986); and Ciliberto et al (Cell, 1985) all evidence that applicants have in fact enabled those skilled in the art to location additional tissue specific cellular enhancer elements. Each of these articles acknowledge the Gillies et al seminal paper; each disclose the discovery of an additional cellular enhancer that exhibits tissue or cell specificity; and each disclose that the method used to locate the enhancer corresponded to the method disclosed in the specification. In at least two of these papers, the enhancers were avian, and as such, would not, if exploited, constitute practice of the claimed subject matter. Nevertheless, all of these papers, and many others, some of which were brought to the attention of the Examiner, clearly demonstrate that genetic engineers are fully enabled to isolate enhancers of the type claimed in this application.

- 4 -

Accordingly, it is sincerely urged that the 112 rejection is improper, and that all claims remaining in this application are in condition for allowance.

Respectfully submitted,

LAHIVE & COCKFIELD

*[signature]*

Edmund R. Pitcher
Reg. No. 27,829

60 State Street
Boston, MA 02109
(617) 227-7400

Date: Nov 13, 1981

- 5 -