# Plaintiffs' Construction Cannot Be Correct

Consider 3 cells (A, B, C) that show enhancement of 10000, 100, and 1.

If test A v. B, then conclude enhancer is "tissue specific" to A (**and therefore not B**).

If test B v. C, then conclude enhancer is "tissue specific" to B.

**Construction cannot allow "specific" and "not specific" depending on test**



# Plaintiffs' Construction Cannot Be Correct

This example shows two fundamental requirements:

1) The "tissue" must have some pre-defined characteristics (i.e., does it express in nature)

2) The key comparison is NOT between tissues but between the enhanced and unenhanced versions





# '281 Patent Teaches Which Cells To Compare

The patent teaches the important pre-known characteristic:

possible. Since each of the cell enhancers useful in the invention are tissue-type or cell-type specific, they typically do not function, or function only at very low or undetectable levels when transfected into cell lines derived from tissues different from the tissue in which they are normally active. In some cases, the enhancers

25

Key comparison is between cells that do naturally express the target protein and those that do NOT naturally express the target protein



# '281 Claims Recite The Key "Tissue" For Determining "Tissue Specific"

- Claims specifically recite this characteristic:

tation and position within said active region, said tissue specific cellular enhancer element, when present in the endogenous genome of a cell from said selected tissue type, being operable naturally to increase production of an endogenous proteinaceous substance.

11. The vector of claim 10 wherein said enhancer



- "Tissue specific" is related to the "endogenous proteinaceous substance"



# Two Key Characteristics Of "Tissue Specific"

In direct language, "tissue specific" requires:

(1) the enhancer "functions" when transfected into "tissue[s] in which [the enhancer] normally functions;" and

(2) the enhancer "do[es] not function or functions only at a very low or undetectable level when transfected into cell lines derived from tissues different from the tissue in which" the enhanced protein is not endogenously produced. '281 patent at 6:22-30.

**If the enhancer functions in any tissue in which the enhanced protein is not endogenous, then the enhancer is NOT TISSUE SPECIFIC under '281 definition.**







**Bottom Line: '281 Patent Test Must Be Able To Be Used To Prove Non-infringement.**

- Fairness and consistency

  - If '281 test (lymphoid v. fibroblasts) suffices to obtain patent, then it must suffice to show noninfringement

  - Claim construction cannot permit an undisclosed test to overcome '281 patent test



# Plaintiffs' "Any One" Construction Foreclosed by *Honeywell*

- Infringement determination cannot vary based on cherry-picked litigation inspired testing that was **not disclosed** in the patent



# Plaintiffs' Other Constructions

- "Enhancer"

  1. The parties appear to be in majority agreement, with one exception

  2. Plaintiffs' construction improperly seeks to import an "insertion into a vector" step

- "Vector"

  1. The parties appear to be in agreement, as to the definition's application to stable cell transformants (which are the subject of other claims in the '281 patent)

  2. Why are these claims (10-13, 15 and 17) still in the case?



# Plaintiffs' Other Constructions

- **"At least a portion of"**

  1. The parties generally agree that the ordinary meaning should control.

  2. However, Plaintiffs improperly seek to import additional requirements, such as the issue of "tissue specificity"

  3. This "tissue specific" limitation is a separate limitation from "at least a portion of" *See* 35 U.S.C. § 112, ¶ 4 ("a claim in dependent form shall contain a reference to a claim previously set forth and then specify <u>a further limitation of</u> the subject matter claimed." (emphasis added)).



# Plaintiffs' Other Constructions

- <u>"Recombined therewith"</u>

1. Plaintiffs' 131 Declaration submitted to overcome an anticipatory reference relies on tests that are at odds with Plaintiffs' proposed definition.

2. Either the Declaration is ineffective (which would impact the validity of the claims), or ImClone's definition applies.



# Plaintiffs' Reply Brief Mischaracterizes Dr. Aaronson As Agreeing To Their "Any One" Test (Depo. pp. 9-10)

Page 11

12 Q. What else did you get out of the
13 transcript when you read it yourself?
14 A. Well, I learned more about how
15 Dr. Struhl would define certain things.
16 Q. What, in particular, things did you
17 learn about -- what did you learn about how
18 Dr. Struhl defined certain things?
19 A. Dr. Struhl, you know, in his
20 discussion of what is, for example, a specific --
21 you know a -- I'm sorry -- a cellular derived
22 enhancer with tissue specificity.
23 Q. What do you understand Dr. Struhl's
24 definition to be of a cellular derived enhancer
25 with tissue specificity?

5 Q. What do you mean by that?
6 A. Well, I mean things like -- it seemed
7 to me from his definition, it would be difficult
8 to ever assign cell or tissue specific enhancer as
9 being other than tissue specific until, for
10 example, you would have tested an ever-
   increasing

11 number of cells.
12 It could work in A, B, C, D, E, F, G
13 cells, but you could keep testing it, and
14 eventually maybe if something didn't express
   in

15 response to that enhancer, it could
   conceivably

16 still be tissue specific.
17 Q. So what you're saying there is --
18 what I'm understanding is based on Dr.
   Struhl's

19 definition, it would be difficult to define
20 something as non-tissue specific?
21 A. I think so. I think it was pretty
22 indefinite

Page 11

1 A. One of the things that came out of
2 that transcript, to the extent I was able to read
3 it, was that that definition is almost specific to
4 what Dr. Struhl decides is tissue specific.



# Plaintiffs' Reply Brief Mischaracterizes Aaronson's Testimony With Respect To "Tissue Specific"

9 A. That in order to be either tissue
10 type or cell type specific, **you have to**
    **reproduce**
**11 the pattern of the gene's expression under**
    **natural**
**12 conditions**, and that would then vary for the
    gene
13 that you were talking about.
14 If we focus on immunoglobulin, then
**15 it really would be pretty much cell specific**
**16 focused on the cell in which it is normally**
**17 expressed, the B cell.**
…

3 Q. Is a B cell a lymphoid-type cell?
4 A. Yes, sir.
5 Q. So you're saying that if the
6 endogenous gene expresses in a B cell, **it should**
7 **not** --
8 A. -- **express in a fibroblast.**

Dr. Aaronson has always agreed
that, in the context of the '281
patent, the dividing line for
testing "tissue specific" is
what happens in "the pattern
of the gene's expression under
natural conditions."

This is fully consistent with the
claim language reciting "tissue
specific … being operable to
increase production of an
**endogenous proteinaceous**
**substance."**