**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>      Plaintiffs,<br><br>  v.<br><br>IMCLONE SYSTEMS INC.,<br><br>      Defendant. | Civil Action No.: 04-10884-RGS |

---

**IMCLONE'S COMBINED MOTION FOR MODIFICATION OF THE
COURT'S JUNE 8, 2007 ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS
TO REFLECT CHANGED CIRCUMSTANCES AND MOTION *IN LIMINE* (NO. 4) TO
EXCLUDE EVIDENCE RELATING TO SANCTIONS**

---

# I.
# INTRODUCTION

Defendant ImClone Systems Inc. ("ImClone") respectfully moves for modification of the Court's June 8, 2007 Order on Plaintiffs' Motion for Sanctions ("June 8, 2007 Order") based on changed circumstances, and moves *in limine* to preclude Plaintiffs from offering evidence relating to the subject matter of that Order. ImClone respectfully submits that, in view of recent correspondence confirming Plaintiffs' ability to present Dr. Gillies' test data and to work with Dr. Gillies to prepare his testimony for trial, the Court's June 8, 2007 Order has served to alleviate any prejudice to Plaintiffs that was the basis for the Court's sanction permitting Plaintiffs to present evidence of attorney misconduct as a foundation for an adverse inference jury instruction regarding Dr. Gillies' tests.

Accordingly, for the reasons explained below, ImClone requests that the Court modify its June 8, 2007 Order in light of this material change to exclude evidence relating to the sanctions motion. The extreme prejudice to ImClone that would result from such a presentation and/or jury instruction would be disproportionately punitive in light of the fact that Plaintiffs will be able to present Dr. Gillies' tests and prepare him as a witness at trial.

# II.
# BACKGROUND

On June 8, 2007, this Court concluded that ImClone's former in-house counsel, Thomas Gallagher, violated the Protective Order in this action and that the actions of ImClone's former outside counsel during discovery deprived Plaintiffs of Dr. Gillies' cooperation in preparing for trial. The Court ordered that:

(1)    ImClone was prohibited from communicating with Dr. Gillies and/or Merck regarding any matter involving this lawsuit without the Court's permission;

(2)  Mr. Gallagher was prohibited from further access to or use of information designated confidential under the Protective Order;

(3)  Plaintiffs would be "permitted to offer evidence of the improper conduct of ImClone's attorneys to lay a foundation for an instruction permitting the jury to draw an inference that ImClone believed that Dr. Gillies' 2005 test results supported MIT's claims in the litigation"; and

(4)  ImClone must reimburse Plaintiffs for the reasonable costs and attorneys' fees it incurred in prosecuting its motion for sanctions.

*See* Findings of Fact, Rulings of Law, and Order On Plaintiffs' Motion for Sanctions (Dkt # 173) at 12-13.  Importantly, the Court also noted in the Order that "MIT is, of course, under an ethical obligation to promptly inform the court should Dr. Gillies decide to renew his cooperation with the litigation."  *Id.* at 13, fn 16.

On June 15, 2007, in keeping with the Court's June 8 Order, ImClone sought and was granted permission to send a letter to Merck requesting that Merck assure Dr. Gillies that any cooperation with MIT would not adversely affect his career.  *See* Dkt # 175 (Request) and Dkt entry between Dkt #s 175 and 177 (Order).  In response to ImClone's letter, counsel for Merck, William R. Golden, Jr., replied that "Merck recognizes and respects Dr. Gillies' duty to cooperate with MIT in their search for the truth in this litigation, and will continue to urge Dr. Gillies, through his counsel, to cooperate in this endeavor."  *See* Dkt # 193 (July 17, 2007 Status Memorandum of ImClone Systems Inc. at Exhs. A and B).  Subsequently, ImClone requested the Court's permission to contact Dr. Gillies' counsel, Jason Kravitz, to inquire as to whether there were any continuing impediments to Dr. Gillies' cooperation with the Plaintiffs, and that permission was granted.  *See* Dkt # 196 (July 19, 2007 Order).

The same day the Court issued its Order permitting ImClone to contact Mr. Kravitz, Plaintiffs' counsel sent a letter to the Court stating that "counsel for Dr. Gillies, Jason Kravtiz, agreed to accept service of a trial subpoena for Dr. Gillies" and that "Mr. Kravitz . . . informed counsel that Dr. Gillies would meet with counsel for MIT and Repligen in the days immediately before trial." Dkt # 195 (July 19, 2007 letter from G. Madera to Judge Stearns). In its letter to Mr. Kravitz, ImClone specifically asked "whether there is any impediment that limits Dr. Gillies to meeting with counsel for the Plaintiffs only in the days immediately before trial." *See* Exh. 1 to the Declaration of Mark A. Pacella (Aug. 2, 2007 letter from M. Gottfried to J. Kravitz at 2). Having received no response, ImClone sent Mr. Kravitz a follow-up letter. Exh. 2 to the Pacella Decl. (Aug. 16, 2007 letter from M. Gottfried to J. Kravitz). Mr. Kravitz responded on August 17, 2007 that "[b]ased on my discussions with Mr. Golden, I am not aware of any impediments to Dr. Gillies cooperating with [plaintiffs'][1] counsel in connection with his trial testimony." *See* Pacella Decl. Ex. 46 (Aug. 17, 2007 letter from J. Kravitz to M. Gottfried).

## III.
## ARGUMENT

As noted by the United States Bankruptcy Appellate Panel for the First Circuit, a trial court has "inherent power to reconsider its own interlocutory orders." *Indian Motorcycle Co., Inc. v. Sterling Consulting Group*, 289 B.R. 269, 280 (2003). For example, courts have modified protective orders in light of changed circumstances during the time such orders are in effect. *See, e.g., United States v. Parke-Davis*, 210 F.R.D. 257 (D. Mass. 2002). *See also Wright v. Touhy*, 2003 U.S. Dist. LEXIS 22844 (N.D. Ill. 2003) (observing that reconsideration of an interlocutory order is appropriate "where the applicable law or the known facts have changed

---

[1]    Mr. Kravitz confirmed in an email that his letter contained a typographical error referring to cooperation with defendant's counsel whereas he intended to refer to plaintiffs' counsel.

since the decision"). Moreover, it is well settled that sanctions should be commensurate with the actual losses sustained by the injured party. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Goya Foods, Inc. v. Wallack,* 344 F.3d 16, 20 (1st Cir. 2003).

**A.     THERE IS NO PREJUDICE WITH RESPECT TO PLAINTIFFS' ABILITY TO PREPARE DR. GILLIES AND PRESENT HIS TESTS AT TRIAL, AND THEREFORE AN ADVERSE INFERENCE JURY INSTRUCTION IS NOT NECESSARY**

ImClone respectfully submits that the circumstances under which the Court entered its June 8, 2007 Order have materially changed in that the sanctions that have already been imposed have addressed any injury to Plaintiffs.  Specifically, Dr Gillies is now working with Plaintiff to prepare for trial and present his test data.

As the Court's June 8 Order recognizes, however, the sanction of allowing a foundation for an adverse inference instruction was intended to counter against prejudice preparing for, and at trial, to Plaintiffs as a result of Dr. Gillies' refusal to cooperate with them.  *See* Findings of Fact, Rulings of Law, and Order On Plaintiffs' Motion for Sanctions (Dkt # 173) at 13, fn 16 (noting that "MIT is, of course, under an ethical obligation to promptly inform the court should Dr. Gillies decide to renew his cooperation with the litigation").

Because as a result of the Court's June 8, 2007 Order there is no significant impediment to Dr. Gillies' cooperation with Plaintiffs in connection with their trial preparation and presentation, the imposition of a sanction designed to remedy a lack of cooperation is no longer necessary.  Plaintiffs have the ability to work with Dr. Gillies before trial, can call Dr. Gillies as their witness at trial, can present Dr. Gillies' test data at trial, and can present the testimony of both Dr. Gillies and their technical expert concerning Dr. Gillies' tests at trial.  In short, Plaintiffs have suffered no loss of evidence that would prevent them from fully presenting to the jury their theory of infringement.  Under such circumstances, a sanction designed to counteract a

- 5 -

prejudicial loss of evidence is not warranted. *See Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267 (8th Cir. 1993) ("Before a sanction for destruction of the evidence is appropriate, however, there must also be a finding that the destruction prejudiced the opposing party.").

In view of Plaintiffs' ability to fully present this evidence at trial through both Dr. Gillies and their expert, as confirmed by recent correspondence, permitting Plaintiffs to also present highly prejudicial evidence of attorney misconduct (by counsel who no longer represent ImClone in this matter) as well as an adverse inference instruction to the jury would unfairly tip the scales against ImClone. The interests of justice would best be served by permitting the jury to objectively judge the merits of Dr. Gillies' tests.

**B.  EVIDENCE RELATING TO THE SANCTIONS MOTION IS HIGHLY PREJUDICIAL AND HAS BEEN RENDERED IRRELEVANT, AND THEREFORE SHOULD BE EXCLUDED**

Plaintiffs have identified as "deposition" designations for use at trial nearly their entire cross examination of Mr. Gallagher during the September 26, 2006 show cause hearing (in total, more than 20 pages of testimony). *See* Pacella Decl. Ex. 11 (Plaintiffs' Initial Deposition Designations). In addition, Plaintiffs have listed at least five trial exhibits to establish facts related to their sanctions motion. *See* Pacella Decl. Ex. 12 (Plaintiffs' Amended Exhibit List at 12; citing PX 277, 278, 279, 280 and 282). It is conceivable that Plaintiffs could also seek to elicit testimony from Dr. Gillies on this issue at trial.

This evidence should be excluded because it has no relevance to any issue in the case other than to support the adverse inference instruction addressed above, which is no longer necessary to prevent prejudice to Plaintiffs at trial. In addition, the evidence Plaintiffs have identified is overbroad and would result in a mini-trial on the issue of attorney misconduct that goes well beyond what would reasonably be required to lay a foundation.

## IV.
## CONCLUSION

For the foregoing reasons, ImClone respectfully requests that the Court (1) modify the June 8, 2007 Order by clarifying that, in view of Plaintiffs' ability to work with Dr. Gillies, the sanction of permitting Plaintiffs to introduce evidence of misconduct as a foundation for an adverse inference instruction regarding Dr. Gillies' tests will not be imposed; and (2) enter an Order excluding from trial any evidence relating to the subject matter of Plaintiffs' motion for sanctions.

Respectfully Submitted,

IMCLONE SYSTEMS, INC.

By Its Attorneys,

Dated:  August 23, 2007

*/s/ Michael R. Gottfried*
Michael R. Gottfried (BBO #542156)
Anthony J. Fitzpatrick (BBO #564324)
Christopher S. Kroon (BBO #660286)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Phone: 857.488.4200
Fax: 857.488.4201

James H. Wallace, Jr. *(pro hac vice)*
Mark A. Pacella (BBO #60255)
Robert J. Scheffel *(pro hac vice)*
Kevin P. Anderson *(pro hac vice)*
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Phone: 202.719.7240
Fax: 202.719.7049

- 8 -

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

I certify that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion and no agreement was reached.

*/s/ Michael R. Gottfried*
Michael R. Gottfried

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Electronic Case Filing (ECF) system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, on August 31, 2007.

*/s/ Michael R. Gottfried*
Michael R. Gottfried