UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

        Plaintiffs,

v.

IMCLONE SYSTEMS, INC.,

        Defendant.

Civil Action No. 04-10884-RGS

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S COMBINED MOTION FOR MODIFICATION OF THE COURT'S JUNE 8, 2007 ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS TO REFLECT CHANGED CIRCUMSTANCES AND MOTION IN LIMINE (NO. 4) TO EXCLUDE EVIDENCE RELATING TO SANCTIONS**

In its motion in limine, ImClone argues that "based on changed circumstances" this Court should reverse its Order of June 8, 2007, which expressly permitted Plaintiffs to offer evidence of the improper conduct of ImClone's attorneys. Doc. No. 173 at 13. ImClone then goes a step further, asking this Court to exclude *all testimony* – including testimony from Dr. Gillies himself – that in any way relates to "the subject matter" of that Order.

What ImClone ignores is that the circumstances upon which this Court based its June 8 Order have *not* changed. ImClone, through its agents, attempted to muzzle a critical witness and that has not changed. ImClone, through its agents, engaged in misconduct and that has not changed. ImClone has been sanctioned for that misconduct and that has not changed.

While Plaintiffs have no intention of turning this case into "a mini-trial on the issue of attorney misconduct," the simple fact is that ImClone targeted Dr. Steven Gillies and his tests and engaged in a "deliberate stratagem" to eliminate both of them from this case. By its

motion, ImClone is asking this Court to reverse the most critical sanction imposed in the June 8, 2007 Order, and to instead escape by only paying the attorney fees involved in exposing its stratagem. ImClone should not be allowed to simply buy its way out from under its own misconduct, nor should ImClone be allowed to immunize itself from such misconduct by simply replacing its outside counsel, the one sanction which the Court did not impose. A corporation can only act through its agents and it was ImClone's agents that engaged in a deliberate attempt to sabotage Dr. Gillies, his tests and Plaintiffs' case. The fact that those agents "no longer represent ImClone" cannot undo what ImClone has already done. The jury should be allowed to hear about the facts that ImClone itself created.

## ARGUMENT

**I.    THIS COURT'S ORDER ALLOWING PLAINTIFFS TO EXPLORE IMCLONE'S CONDUCT IN REGARD TO DR. GILLIES SHOULD NOT BE SET ASIDE.**

ImClone's entire motion is based on the faulty premise that this Court's June 8, 2007 Order was "intended to counter against prejudice preparing for, and at trial, to Plaintiffs as a result of Dr. Gillies' refusal to cooperate with them." ImClone's citation for this premise is footnote 16 of this Court's opinion. Of course, ImClone chooses to ignore the entirety of the 13-page Order itself and the other 16 footnotes. For example, ImClone ignores the following findings of fact and conclusions of law that were directed at the actions of ImClone's *in-house* counsel, Thomas Gallagher:

- The Court found that Mr. Gallagher's e-mails to his counterpart at Merck, Arno Hartman, "emphasize Dr. Gillies' efforts on behalf of MIT in the instant litigation and for all intents and purposes demand that Merck rein Dr. Gillies in." (Order at 10).

- The Court found that Mr. Gallagher's assertion (in a sworn declaration) that his e-mails to Mr. Hartman did not suggest that Dr. Gillies'

2

> testimony or data would be harmful to ImClone in this litigation "is not supported by any fair reading of their texts." (*Id.*)

- The Court found that Mr. Gallagher violated this Court's December 23, 2004 Protective Order by disclosing information taken from Dr. Gillies' deposition to Mr. Hartman, and that Mr. Gallagher's conduct in contacting Dr. Hartman "served no legitimate purpose." (*Id.*)

- The Court found that Mr. Gallagher's contact with Mr. Hartman violated Massachusetts Rule of Professional Conduct 3.4, 4.4 and 8.4(d). *Id.* at 10-11.[1]

Quite simply, this is a mess of ImClone's own making. There is no good reason for this Court to depart from its June 8 ruling that Plaintiffs would be permitted to offer the evidence of ImClone's improper conduct at trial. The fact is that Plaintiffs had to file an emergency motion, write five briefs and conduct a full–day evidentiary hearing simply to secure Dr. Gillies' cooperation in this case. It was only after Plaintiffs shined a light on ImClone's misconduct and this Court handed down its Order that Plaintiffs were able to secure Dr. Gillies' full cooperation. The fact that Dr. Gillies is finally cooperating with Plaintiffs and coming to trial should only be reason for the Court not to hand down *additional* sanctions against ImClone, and it certainly does not provide any cause to remove the sanctions already handed down.

As the Court recognized, the fact that Mr. Gallagher tried to encourage Merck to "rein in" Dr. Gillies shows that ImClone believed that Dr. Gillies' tests were damaging – if not fatal – to ImClone's noninfringement defense. Assumedly, ImClone is not simply going to stipulate to infringement, and assumedly, ImClone is going to attack Dr. Gillies' test results through cross examination or otherwise. To the extent that ImClone does that, why should Plaintiffs not be able to show that ImClone itself thought that the tests were so damaging that

---

[1] The Court made similar findings about ImClone's former in-house counsel, Kenyon and Kenyon.

3

it took the extraordinary step of contacting Dr. Gillies' superior and asking Merck to rein Dr. Gillies in?

## II. IMCLONE'S ACTIONS WITH RESPECT TO THE GILLIES TEST DATA ARE RELEVANT, AND ANY PREJUDICE AS A RESULT OF INCLUSION OF THIS EVIDENCE IS OF IMCLONE'S OWN MAKING.

In support of its broad request to exclude from the jury "any evidence relating to the subject matter of Plaintiffs' motion for sanctions," ImClone claims that inclusion of evidence relating to ImClone's conduct "has no relevance to any issue in the case," and that inclusion of this evidence would "unfairly tip the scales against ImClone." While Plaintiffs agree that ImClone's attempts to shut down Dr. Gillies' testing do not reflect well on ImClone, there is no good reason to exclude that evidence.

ImClone's attempts to muzzle Dr. Gillies are directly relevant to the weight the jury should place on the test data itself, as an examination of Mr. Gallagher's actions will provide the jury with insight into what ImClone itself thought about the significance of the test data. Undoubtedly, ImClone will be arguing at trial that the test data is somehow flawed, and Plaintiffs should be allowed to show that Mr. Gallagher's actions showed ImClone's true views about the importance of this data.

As the First Circuit has noted, "virtually all evidence is prejudicial – if the truth be told, that is almost always why the proponent seeks to introduce it – but it is only *unfair* prejudice against which the law protects." *United States v. Pitrone*, 115 F.3d 1, 8 (1st Cir. 1997) (emphasis in original). Here, where ImClone, through its agents, engaged in a "deliberate stratagem" in an attempt to muzzle Dr. Gillies and to undermine his test results, it is difficult to see how it is unfair to ImClone to allow the jury to hear evidence pertaining to that stratagem. ImClone will have the chance to question Dr. Gillies, and ImClone can put

4

Mr. Gallagher on the stand to explain to the jury why he thought it necessary to contact Dr. Gillies' employer regarding Dr. Gillies' tests. Under Fed. R. Evid. 403, this evidence is highly probative of the weight that the jury should place on Dr. Gillies' tests results, and that probative value far outweighs any prejudice to ImClone.

## III. REVERSAL OF THE EVIDENTIARY SANCTION AGAINST IMCLONE WOULD ENCOURAGE THIS TYPE OF SANCTIONABLE CONDUCT FROM FUTURE LITIGANTS.

ImClone claims repeatedly that the Court's evidentiary sanction was "designed to counteract a loss of evidence," and because Dr. Gillies is now cooperating with Plaintiffs, this Court should vacate the evidentiary sanction against ImClone. That contention is wrong in two important respects.

First, nowhere does the June 8 Order state that this Court imposed the evidentiary sanction solely to counteract the possibility that Dr. Gillies would not be participating as a trial witness. The sanction itself is not contingent on Dr. Gillies' participation, and instead is focused on Plaintiffs being allowed to tell the jury "that ImClone believed that Dr. Gillies 2005 test results supported MIT's claims in the litigation." (Order at 13).

Second, Plaintiffs ask this Court to consider the message that the removal of the evidentiary sanction against ImClone would send to future litigants. As the Supreme Court has noted, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), *see also Figueroa Ruiz v. Alegria*, 896 F.2d 645, 649 (1st Cir. 1990) ("Penalties for noncompliance with Court orders serve not only to

5

punish the offending party but also to deter putative offenders in future cases."). In a case such as this – in which this Court has labeled ImClone's conduct as "disturbing" and ImClone's post-hoc arguments as the type which "give sophistry a bad name" – maintaining the evidentiary sanction against ImClone is not only appropriate, but the only deterrent to parties who are contemplating engaging in similar conduct in the future.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny ImClone's Motion for Modification of the Court's June 8, 2007 Order and its Motion in Limine to Exclude Evidence Relating to Sanctions.

Dated:  August 31, 2007

/s/ John C. Adkisson
John C. Adkisson (*pro hac vice*)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

*Of Counsel*:

| Gregory A. Madera | Jonathan E. Singer | Juanita Brooks |
| --- | --- | --- |
| FISH & RICHARDSON P.C. | Michael J. Kane | FISH & RICHARDSON P.C. |
| 225 Franklin Street | William R. Woodford | 12390 El Camino Real |
| Boston, MA 02110-2804 | FISH & RICHARDSON P.C. | San Diego, CA 92130 |
| Telephone:  (617) 542-5070 | 3300 Dain Rauscher Plaza | Telephone:  (858) 678-5070 |
| Facsimile:  (617) 542-8906 | 60 South Sixth Street | |
| | Minneapolis, Minnesota 55402 | |
| | Telephone:  (612) 335-5070 | |
| | Facsimile:  (612) 288-9696 | |

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on attorneys for ImClone Systems, Inc. on August 31, 2007 via email pursuant to the parties' service agreement.

/s/ John C. Adkisson
John C. Adkisson

60449738.doc