UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY and REPLIGEN CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>IMCLONE SYSTEMS, INC.,<br><br>　　　　Defendant. | Civil Action No. 04-10884-RGS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE (NO. 12) TO EXCLUDE ARGUMENT OR TESTIMONY SUGGESTING A NEXUS BETWEEN DR. TONEGAWA'S NOBEL PRIZE AND THE INVENTION CLAIMED IN THE '281 PATENT**

　　　　Dr. Susumu Tonegawa is a Nobel Laureate and a world-renowned scientist. In 1987, Dr. Tonegawa received the Nobel Prize in medicine and physiology for his milestone discovery that somatic rearrangement (*i.e.*, a random shuffling of the DNA) of immunoglobulin genes are responsible for generating the enormous diversity of antibodies.

　　　　In 1981, Dr. Tonegawa was appointed professor of biology at the Center for Cancer Research and Department of Biology of the Massachusetts Institute of Technology ("MIT"). Dr. Stephen Gillies was a postdoctoral fellow in Dr. Tonegawa's laboratory at the MIT. Their work that led to the discovery of a tissue specific mammalian cellular enhancer is a continuation of Dr. Tonegawa's earlier work on somatic rearrangement of immunoglobulin genes. As Dr. Tonegawa noted in his autobiography published on the Nobel Foundation's official website, the discovery of a tissue-specific transcriptional enhancer in the immunoglobulin heavy chain gene further contributed to the understanding of the role of somatic rearrangement in the activation of the rearranged immunoglobulin genes. (August 23, 2007 Declaration of Mark A. Pacella "Pacella

Decl.," Ex. 43 at 6).  In his Nobel lecture, Dr. Tonegawa again cited to his and Dr. Gillies's discovery of the transcriptional enhancer responsible for the activation of a high level expression of the rearranged heavy chain gene.  (August 30, 2007 Declaration of John C. Adkisson, Ex. 1 at 388, 405).  Thus, there is an obvious nexus between Dr. Tonegawa's discovery for which he was awarded the Nobel Prize and his and Dr. Gillies' discovery that led to the patented invention.

To exclude the evidence relating to Dr. Tonegawa's Nobel prize, ImClone wants to have this Court believe that there is no connection whatsoever between the two discoveries.  To do this, ImClone sets up a strawman, and claims that Plaintiffs will "portray the '281 patent to the jury as the product of work that led to a Nobel Prize[.]"  Plaintiffs will not argue—and have never argued—that the invention claimed in the '281 patent led to Dr. Tonegawa's Nobel Prize, and ImClone knows it.  But this is not to say that the two important discoveries have no relationship with each other.  Indeed, during his deposition, Dr. Tonegawa told ImClone just that:

> Q.  Okay.  Does your Nobel Prize subject matter have anything to do with the subject matter of the 281 patent?  Let me rephrase the –
>
> A.  Depend -- something to do with.  That's a very, very vague statement.  Okay.  If it's both an immunology subject, ***they have something to do with each other***, but the -- a specific discovery on which this patent is written has nothing to do with the top -- the discovery I made for which Nobel Prize was given.

(Pacella Decl., Ex. 42 at 16:2-11 (emphasis added)).

ImClone's portrayal of Dr. Tonegawa's Nobel Prize as something "entirely unrelated to his work on the '281 patent" is a misguided attempt to exclude relevant evidence, and it should be rejected.

I.   **EVIDENCE RELATING TO DR. TONEGAWA'S NOBEL PRIZE FOR HIS WORK ON IMMUNOGLOBULIN GENES IS HIGHLY RELEVANT.**

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without that evidence." Fed. R. Evid. 401. "The standard for admissibility under Federal Rule of Evidence 401 is a liberal one." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 6 (1st Cir. 2001); *see also* Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.").

Evidence relating to Dr. Tonegawa's Nobel Prize for his work on immunoglobulin genes is highly relevant for at least two reasons. First, as ImClone admits, Dr. Tonegawa's Nobel Prize "forms a part of his professional background[.]" (ImClone's motion *in limine* (No. 12), at 2). "Background evidence is generally considered relevant." *McElwain v. Harris*, No. 1:05-CV-93-JAW, 2006 WL 931920, at *2 (D.N.H. Apr. 06, 2006) (citing Fed. R. Evid . 401 advisory committee's note ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding.")).

Second, ImClone has asserted an obviousness defense. To prove that any of the asserted claims is invalid for obviousness, ImClone must establish by clear and convincing evidence that the "subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2000). Evidence that Dr. Tonegawa repeatedly cited to his and Dr. Gillies discovery of the immunoglobulin transcription enhancer in his Nobel lecture and his autobiography published on the Nobel Foundation's official website demonstrates that Dr. Tonegawa did not think that the invention of the '281 patent was obvious, and tends to show that the subject matter claimed in

3

the '281 patent would not have been obvious at the time the invention was made to a person having ordinary skill in the art. It is part of the objective evidence that must be considered in assessing obviousness or non-obviousness of the claimed invention. *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1734 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

## II.  RULE 403 DOES NOT SUPPORT IMCLONE'S ATTEMPT TO EXCLUDE RELEVANT EVIDENCE.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Rule 403 is a liberal rule under which relevant evidence generally is admitted." *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 516 (1st Cir. 1996) (quoting *United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir. 1991)); *see also United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (noting that Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and [t]he balance . . . should be struck in favor of admissibility"); *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission.").

ImClone contends, with no explanation, that evidence of Dr. Tonegawa's Nobel Prize would "unfairly prejudice ImClone." However, evidence is unfairly prejudicial only if it "invites the jury to render a verdict on an improper emotional basis." *United States v. Flemmi*, 402 F.3d 79, 86 n. 8 (1st Cir. 2005) (quoting *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000)). "Unfair prejudice" sufficient to warrant exclusion of relevant evidence must at a minimum have an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.

4

ImClone cannot seriously argue that evidence of Dr. Tonegawa's Nobel Prize for his work on immunoglobulin genes would invite the jury to render a verdict "on an improper emotional basis."  Indeed, ImClone identifies no particular prejudice beyond the mere rhetoric.

ImClone also argues that evidence of Dr. Tonegawa's Nobel Prize would "result in jury confusion."  The alleged confusion rests on a strawman argument that Plaintiffs have never made and will never make.  Plaintiffs are entitled to present evidence relating to Dr. Tonegawa's Nobel Prize to the jury for background evidence and to rebut ImClone's assertion of obviousness.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny ImClone's motion in limine (No. 12) in its entirety.

|  |  |
|---|---|
| Dated: August 31, 2007 | /s/ John C. Adkisson<br>John C. Adkisson (*pro hac vice*)<br>3300 Dain Rauscher Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Telephone:  (612) 335-5070<br>Facsimile:  (612) 288-9696 |

*Of Counsel*:

| | | |
|---|---|---|
| Gregory A. Madera<br>FISH & RICHARDSON P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804<br>Telephone: (617) 542-5070<br>Facsimile: (617) 542-8906 | Jonathan E. Singer<br>Michael J. Kane<br>William R. Woodford<br>FISH & RICHARDSON P.C.<br>3300 Dain Rauscher Plaza<br>60 South Sixth Street<br>Minneapolis, Minnesota 55402<br>Telephone:  (612) 335-5070<br>Facsimile:  (612) 288-9696 | Juanita Brooks<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego, CA 92130<br>Telephone:  (858) 678-5070 |

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 31st day of August, 2007.

/s/ John C. Adkisson
John C. Adkisson

60449760.doc