# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

          Plaintiffs,

   v.

IMCLONE SYSTEMS, INC.,

          Defendant.

Civil Action No. 04-10884-RGS

---

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

In compliance with the Court's Order Setting Civil Case for Jury Trial dated June 11, 2007, Plaintiffs Massachusetts Institute of Technology and Repligen Corporation submit the following proposed jury instructions.

Further to the Court's June 8, 2007 Order on Plaintiffs' Motion for Sanctions, Plaintiffs reserve the right to submit a jury instruction regarding an adverse inference that ImClone believed that Dr. Gillies' 2005 test results supported Plaintiffs' claims in the litigation. Plaintiffs will offer such an instruction consistent with the Court's rulings during the trial on this issue.

# TABLE OF CONTENTS

**Page**

A.  PRETRIAL INSTRUCTIONS .......................................................................1

    1.  PRELIMINARY INSTRUCTIONS ........................................................1

        1.1.  INTRODUCTION ..........................................................1

        1.2.  THE PATENT SYSTEM.................................................2

        1.3.  SUMMARY OF CONTENTIONS...................................4

        1.4.  THE PATENT AT ISSUE ..............................................6

        1.5   OUTLINE OF TRIAL ...................................................8

        1.6   JUROR'S CONDUCT ..................................................10

B.  INSTRUCTIONS AT THE CLOSE OF EVIDENCE........................................11

    2.  PRELIMINARY INSTRUCTIONS ......................................................11

        2.1.  INTRODUCTION ........................................................11

        2.2.  WHAT IS EVIDENCE.................................................12

        2.3.  WHAT IS NOT EVIDENCE........................................12

        2.4.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ...............................14

        2.5.  CREDIBILITY OF WITNESSES .................................15

        2.6.  IMPEACHMENT OF WITNESS TESTIMONY BY PRIOR CONVICTION...................................................126

        2.7.  IMPEACHMENT OF WITNESS TESTIMONY BY PRIOR BAD ACTS .......................................................127

        2.8.  EXPERT WITNESSES .................................................18

        2.9.  DEPOSITION TESTIMONY .......................................19

        2.10.  STIPULATED FACTS.................................................20

        2.11.  BURDENS OF PROOF................................................21

    3.  CLAIM CONSTRUCTION...................................................................22

        3.1.  THE ROLE OF THE CLAIMS OF A PATENT ....................................22

i

**TABLE OF CONTENTS (cont'd)**

**Page**

3.2.   HOW A CLAIM DEFINES WHAT IT COVERS ...................................23

3.3.   INDEPENDENT AND DEPENDENT CLAIMS ...................................25

3.4.   CLAIM MEANING ...................................................................26

4.   PATENT INFRINGEMENT ...................................................................28

4.1.   INFRINGEMENT GENERALLY.............................................................28

4.2.   LITERAL INFRINGEMENT ................................................................289

4.3.   INFRINGEMENT OF DEPENDENT CLAIMS.................................30

4.4.   35 U.S.C. § 271(e)(1) SAFE HARBOR ...............................................31

4.5.   WILLFUL INFRINGEMENT.............................................................313

5.   INVALIDITY ...................................................................................35

5.1.   INVALIDITY—BURDEN OF PROOF ...............................................35

5.2.   PRESUMPTION OF VALIDITY ........................................................36

5.3.   WRITTEN DESCRIPTION ...............................................................37

5.4.   ENABLEMENT ...............................................................................39

5.5.   DEFINITENESS ..............................................................................41

5.6.   PRIOR ART ....................................................................................43

5.7.   ANTICIPATION ..............................................................................44

5.8.   OBVIOUSNESS ..............................................................................46

5.9.   SCOPE AND CONTENT OF THE PRIOR ART...............................48

5.10.   DIFFERENCES OVER THE PRIOR ART.........................................49

5.11.   LEVEL OF ORDINARY SKILL IN THE FIELD ............................50

5.12.   ADDITIONAL CONSIDERATIONS ................................................51

6.   EQUITABLE DEFENSES ...................................................................54

6.1.   LACHES ........................................................................................54

ii

### TABLE OF CONTENTS (cont'd)

**Page**

    6.2.    EQUITABLE ESTOPPEL ...................................................................57

7.    DAMAGES.................................................................................................60

    7.1.    DAMAGES GENERALLY ...............................................................60

    7.2.    REASONABLE ROYALTY ...............................................................62

    7.3.    DATE OF THE HYPOTHETICAL NEGOTIATION ...........................66

8.    JURY DELIBERATIONS ...........................................................................67

    8.1.    DELIBERATIONS ...........................................................................67

    8.2.    RETURN OF VERDICT ...................................................................68

PROPOSED JURY INSTRUCTION 1.1

**A.      PRETRIAL INSTRUCTIONS**

     **1.      PRELIMINARY INSTRUCTIONS**

          **1.1.      INTRODUCTION**

MEMBERS OF THE JURY:

You have been sworn as the jury to try this case.  As the jury you will decide the disputed questions of fact.  As the judge, I will decide all questions of law and procedure.  From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

**AUTHORITY:** Fifth Circuit Pattern Civil Jury Instructions, No. 1.1 (2006) (modified).

1

PROPOSED JURY INSTRUCTION 1.2

### 1.2. THE PATENT SYSTEM

This case involves a dispute relating to a United States Patent. Before summarizing the positions of the parties and the legal issues involved in this dispute, let me take a moment to explain the United States patent system.

The United States Constitution and laws passed by Congress provide for the protection of inventions through the grant of patents. A patent is a property right that gives to the inventor the right to prevent others from using the patented invention for seventeen years from the date the patent issues.

The United States Patent and Trademark Office, which I will refer to as the Patent Office or PTO, is a government agency responsible for assuring that the requirements for patentability are met before patents are granted. Inventors apply to the Patent Office for a patent on their invention. The application is reviewed by a patent examiner who has training and a background in the area of technology related to the patent application and who has available for review collections of patents and literature. The patent examiner studies the application and these collections to determine whether the application meets the legal requirements for a patent. Not all inventions are entitled to a patent. An invention is patentable under United States law only if it is new, useful, and would not have been obvious to one of ordinary skill in the art at the time the invention was made. If the patent examiner concludes that the invention is new, useful and not obvious, and all the other disclosure requirements have been met, the examiner allows the patent to issue.

The claims of a patent are the numbered paragraphs which appear at the end of the patent. Each of the claims includes a number of elements. The claims define, in words, the inventions covered by the patent. They are separate. Each claim stands on its own for infringement

2

PROPOSED JURY INSTRUCTION 1.2

purposes.  Thus, even though some claims refer to another claim (sometimes referred to as a

"dependent claim") they include all of the elements they recite plus all of the elements in the

claims from which they depend.  It is only the claims of the patent that can be infringed.

**AUTHORITY:**  Jury Instruction in *Exergen Corp. v. Gentri Controls, Inc.*, Civ. Action No. 92-11127-S (D.Mass. 1995); 35 U.S.C. § 101, 102, 103, 282, 154; *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569-70 (Fed. Cir.), cert. denied, 481 U.S. 1052 (1987); *N.V. Akzo v. E.I. Dupont de Nemours & Co.*, 810 F.2d 1148, 1150 (Fed. Cir. 1987); *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986); *American Hoist and Derrick Co. v. Sowa and Sons, Inc.*, 725 F.2d 1350 (Fed. Cir.) cert. denied, 469 U.S. 821 (1984).

3

PROPOSED JURY INSTRUCTION 1.3

### 1.3. SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The Plaintiffs, or the parties that brought the case initially, are Massachusetts Institute of Technology, or MIT for short, and Repligen Corporation, or Repligen for short. The Defendant in this case is ImClone Systems, Inc., or ImClone for short.

This case involves United States Patent Number 4,663,281, which is owned by MIT, and exclusively licensed to Repligen. For convenience, the parties and I will often refer to this patent by its last three numbers, namely, as the "'281 patent."

MIT and Repligen filed suit in this Court seeking damages from ImClone for allegedly infringing the '281 patent by making and using in the United States a cell line that MIT and Repligen contend infringes claims 10-13, 15, and 17-22 of the '281 patent. MIT and Repligen also claim that ImClone's infringement was willful. I will instruct you later as to how a patent is infringed and how to determine whether that infringement was willful.

The cell line that is alleged to infringe is known as the C225 cell line, which ImClone uses to manufacture its pharmaceutical product Erbitux®, which is also known as C225.

ImClone denies that it has infringed any claims of the '281 patent. ImClone also contends that the claims are invalid. I will instruct you later as to the ways in which a party may prove that a patent is invalid.

Your job will be to decide whether or not any asserted claims of the '281 patent have been infringed and whether or not those claims are invalid. If you decide that any asserted claim of the '281 patent has been infringed and is not invalid, you will then need to decide any damages to be awarded to MIT and Repligen to compensate them for the infringement.

4

PROPOSED JURY INSTRUCTION 1.3

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. A.2 (2007) (modified).

PROPOSED JURY INSTRUCTION 1.4

### 1.4.    THE PATENT AT ISSUE

You have been provided with a copy of the '281 patent.  Please refer to the patent as I identify its different sections.

The cover page of the patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventors' names, the filing date, the assignee, and a list of the prior art publications considered by the Patent Office when the patent was applied for.

The specification of the '281 patent begins with an abstract, found on the cover page.  The abstract is a brief statement about the subject matter of the invention.

Next, are the drawings, which appear as Figures 1 to 10 on the next three pages.  The drawings depict various aspects or features of the invention.  They are described in words later in the patent specification.  The written description of the invention appears next.  In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered.  The written description of the '281 patent begins at column 1, line 1, and continues to column 13, line 30.  It includes a background section, a summary of the invention, a brief description of the drawings, and a detailed description of the invention, including some specific examples.

The specification ends with 25 numbered paragraphs.  These are called the claims. Each patent claim includes a number of words and phrases that make up the parts of the claim and are sometimes referred to as elements or limitations.  In the '281 patent, the claims begin at column 13, line 31 and continue to the end of the patent, at column 16, line 18.

The claims of a patent are the main focus of a patent case because it is the claims that define, in words, the inventions covered by the patent.  That is, the claims define what the

PROPOSED JURY INSTRUCTION 1.4

patent owner may exclude others from doing during the term of the patent.  In this case, we will

be concerned with claims 10-13, 15, and 17-22 of the '281 patent.  It is these claims that

Repligen and MIT contend are infringed by ImClone's manufacture and use of the C225 cell

line.

The language of patent claims may not be clear to you, or its meaning may be disputed

by the parties.  I will instruct you at the end of the case about the meaning of some of the claim

language.  You must use the meanings I give you when you decide the issues of infringement

and invalidity.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. A.3 (2007)
(modified).

PROPOSED JURY INSTRUCTION 1.5

### 1.5    OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline by the lawyers to help you understand what that party expects the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

This is different than standards that you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, MIT and Repligen will present their evidence in support of their contention that some of the claims of the '281 patent have been infringed by ImClone and that the infringement has been willful.  To prove infringement of any claim, MIT and Repligen must persuade you that it is more likely than not that ImClone has infringed that claim.  To persuade you that any infringement was willful, MIT and Repligen must prove that the infringement was willful by clear and convincing evidence.

PROPOSED JURY INSTRUCTION 1.5

ImClone will then present its evidence that the claims of the '281 patent are invalid. To prove invalidity of any claim, ImClone must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, ImClone will put on evidence responding to MIT and Repligen's proof of infringement and willfulness.

MIT and Repligen may then put on additional evidence responding to ImClone's evidence that the claims of the '281 patent are invalid, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. MIT and Repligen's "rebuttal" evidence may respond to any evidence offered by ImClone.

Finally, ImClone may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of some of the claims of the '281 patent by responding to any evidence offered by MIT and Repligen on that issue.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. A.5 (2007).

PROPOSED JURY INSTRUCTION 1.6

## 1.6    JUROR'S CONDUCT

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

It is now time for the opening statements.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.12 (2007).

PROPOSED JURY INSTRUCTION 2.1

**B.    INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

**2.    PRELIMINARY INSTRUCTIONS**

**2.1.    INTRODUCTION**

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case.  You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.1C (2007).

PROPOSED JURY INSTRUCTION 2.2

### 2.2.    WHAT IS EVIDENCE

I will first give you instructions on specific types of evidence.  The evidence you are to consider in deciding what the facts are consists of:

(1)    the sworn testimony of any witness;

(2)    documents and other things received as exhibits; and

(3)    any facts that have been stipulated to, that is, formally agreed to by the parties.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.6 (2007).

12

PROPOSED JURY INSTRUCTION 2.3

## 2.3.    WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.7 (2007).

13

PROPOSED JURY INSTRUCTION 2.4

## 2.4.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.9 (2007).

14

PROPOSED JURY INSTRUCTION 2.5

### 2.5.    CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness's testimony;

(6)    the reasonableness of the witness's testimony in light of all the evidence; and

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 1.11 (2007).

PROPOSED JURY INSTRUCTION 2.6

### 2.6.    IMPEACHMENT OF WITNESS TESTIMONY BY PRIOR CONVICTION

You heard evidence that _____ has been convicted of a crime.  You may consider

that evidence, together with other pertinent evidence, in deciding how much weight to give to

that witness's testimony.

**AUTHORITY:**  Pattern Criminal Jury Instructions for the District Courts of the First
Circuit, No. 2.04 (2007).

16

PROPOSED JURY INSTRUCTION 2.7

## 2.7.    IMPEACHMENT OF WITNESS TESTIMONY BY PRIOR BAD ACTS

You heard evidence that _____ has committed prior bad acts.  You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to that witness's testimony.

**AUTHORITY:**  Pattern Criminal Jury Instructions for the District Courts of the First Circuit, No. 2.04 (2007).

17

PROPOSED JURY INSTRUCTION 2.8

### 2.8.    EXPERT WITNESSES

You have heard testimony from expert witnesses who, because of their education or experience, are permitted to state opinions and the reasons for those opinions.  Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 2.11 (2007).

PROPOSED JURY INSTRUCTION 2.9

## 2.9.    DEPOSITION TESTIMONY

You have also heard testimony by way of recorded deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 2.4 (2007).

PROPOSED JURY INSTRUCTION 2.10

## 2.10.  STIPULATED FACTS

The parties have stipulated—that is, they have agreed—to the truth of certain facts.  You should, therefore, treat those facts as having been proved.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 2.2 (2007).

## 2.11.  BURDENS OF PROOF

As I told you at the beginning of the trial, there are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

This is different than standards that you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. A.5 (modified).

PROPOSED JURY INSTRUCTION 3.1

## 3.    CLAIM CONSTRUCTION

### 3.1.    THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define how broad or narrow the patent's coverage is. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.1 (2007).

22

PROPOSED JURY INSTRUCTION 3.2

### 3.2.    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or less requirements.  The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall within the scope of" that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.  Some terms used in a claim may have a specific meaning in patent law.  For example, a claim that reads: "A product comprising a seat and legs" covers all products that have both a seat and legs.  The word "comprising" in this claim is a special word in patent law meaning that the claim covers all products that have a seat and legs, regardless of whether or not they also have additional features.  For example, this claim would cover several different kinds of chairs, stools, and sofas, because there are several different kinds of chairs, stools, and sofas that have at least a seat and legs.

23

PROPOSED JURY INSTRUCTION 3.2

By understanding the meaning of the words in the claims and by understanding that the words in a claim set forth the requirements that must be met in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that are asked to decide, such as infringement and invalidity.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.2 (2007).

PROPOSED JURY INSTRUCTION 3.3

## 3.3.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met by a product or process in order for it to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  Asserted claims 10 and 18 of the '281 patent are independent claims.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  The law considers a dependent claim to incorporate all of the requirements of the claim or claims to which it refers.  The dependent claim then adds its own, additional, requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.  For example, claim 11 is a dependent claim.  It refers to claim 10.  To determine what dependent claim 11 covers, the words of that claim and the words of claim 10 must be read together.  A product or process that meets all of the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.  Asserted claims 11-13, 15, 17 and 19-22 are dependent claims.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.2a (2007).

25

PROPOSED JURY INSTRUCTION 3.4

### 3.4.    CLAIM MEANING

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their plain meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  Those issues are yours to decide.

The term "tissue specific mammalian cellular enhancer" means "a DNA sequence in a mammalian cell that functions to greatly increase transcription in a specific tissue-type or cell-type, but which barely works in other tissue or cell-types, or does not work at all."

The term "enhancer element at a site within an active region of said vector sufficiently close to said transcription unit to enhance production of the mRNA independent of its orientation and position within said active region" means "an enhancer element that is inserted into an active region of the vector site close enough to the transcription unit to enhance production of mRNA, and is operative in either position (upstream or downstream) and in either orientation with respect to the transcription unit."

The term "at least a portion of" means "at least a part of."

The term "vector" means "an agent (virus or plasmid) used to transmit genetic material to a cell or organism."

The other terms of the '281 patent have their plain meaning, as understood by those of skill in the art.

PROPOSED JURY INSTRUCTION 3.4

**AUTHORITY:**  Memorandum and Order on Claim Construction (Aug. 7, 2007); Federal Circuit Bar Association Model Patent Jury Instructions, No. 2.3. (2007); *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc).

PROPOSED JURY INSTRUCTION 4.1

## 4.    PATENT INFRINGEMENT

### 4.1.    INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not ImClone has infringed the '281 patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.

In this case, MIT and Repligen contend that ImClone literally infringed each of  the asserted claims 10, 11, 12, 13, 15, 17, 18, 19, 20, and 21.  I will now explain the circumstances under which you may find "literal infringement."

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 3.1 (2007).

PROPOSED JURY INSTRUCTION 4.2

### 4.2.    LITERAL INFRINGEMENT

A company infringes a claim by "literal infringement" if, during the time the patent is in force, the company makes, uses, sells, or offers to sell within, or imports into, the United States a product that meets all of the requirements of the claim and does so without the permission of the patent holder.  To determine whether a particular product or process meets all of the requirements of a claim, you must understand the meaning of the words in the claim and the requirements that these words impose.  I have already explained to you the meaning of some of the words of the claims in this case.  I have also explained to you that other words in the claims should be given their plain meaning.  You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.  When the product meets all of the requirements of a claim, it is said to "literally infringe" that claim.  If a product that literally infringes a claim is made, used, sold, offered for sale within, or imported into, the United States during the time the patent is in force, without the patent holder's authorization, it directly infringes the claim.

In order to prove infringement, Repligen and MIT must prove that the above requirements are met by the a preponderance of the evidence, i.e., that it is more likely than not that the C225 cell line meets all of the requirements of any claim of the '281 patent.

**AUTHORITY**:  Federal Circuit Bar Association Model Patent Jury Instructions, No. 3.1a (2007) (modified); *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1238 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996).

PROPOSED JURY INSTRUCTION 4.3

## 4.3.     INFRINGEMENT OF DEPENDENT CLAIMS

You must determine, separately, for each of the asserted claims, whether or not there is infringement.  However, as I have explained to you, a dependent claim includes all of the requirements of any of the claims to which it refers, plus additional requirements of its own.  Therefore, if you find that an independent claim is not infringed then you must also find that any claim that depends from it is not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the additional requirements of any claims that depend from the independent claim have also been infringed.  For example, if you find that independent claim 10 of the '281 patent has been infringed, you must separately determine whether dependent claim 11 has also been infringed.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 3.6 (2007); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001).

PROPOSED JURY INSTRUCTION 4.4

### 4.4.  35 U.S.C. § 271(e)(1) SAFE HARBOR

Congress has created a "safe harbor" for certain activities involved in developing and obtaining regulatory approval to market a drug.    Under this safe harbor, it is not an act of infringement to make, use, offer to sell, or sell a patented invention solely for uses reasonably related to the development and submission of information to the Food and Drug Administration (FDA).  Congress created this safe harbor so that companies can conduct the experiments, testing, clinical trials, and other actions reasonably related to obtaining FDA approval without being sued for patent infringement.  Activities covered by the safe harbor provision are not patent infringement and no damages can be awarded for those activities.  Activities not covered by the safe harbor can be patent infringement and can be the basis for a damage award, even if those activities occurred before FDA approval.

To show that a particular making or using of the C225 cell line was solely for uses reasonably related to development of information for the FDA, ImClone must prove by a preponderance of the evidence that it would be objectively reasonable for a party in ImClone's situation to believe that there was a decent prospect that the accused activities would contribute, relatively directly, to the generation of the kinds of information that are likely to be relevant in the processes by which the FDA would decide whether to approve the product in question. Accused activities not solely for this purpose, for example, making and using the C225 cell line for commercial purposes,  are not covered by the safe harbor.

Each of the accused activities must be evaluated separately to determine whether the safe harbor exemption applies.  ImClone does not need to show that the information gathered from a particular activity was actually submitted to the FDA.

31

PROPOSED JURY INSTRUCTION 4.4

**AUTHORITY**:  *See* 35 U.S.C. § 271(e)(1); *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1277, 1280 (N.D. Cal. 1991), *aff'd*, 991 F.2d 808 (Fed. Cir. 1993); *Biogen, Inc. v. Schering AG,* 954 F.Supp. 391 (D. Mass. 1996); *Abtox, Inc. v. Exitron Corp.*, 888 F. Supp. 6, 8 (D. Mass. 1995), *aff'd* 122 F.3d 1019 (Fed. Cir. 1997); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1030 (Fed. Cir. 1997); *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520 (Fed. Cir. 1992); *NeoRx Corp. v. Immunomedics, Inc.*, 877 F. Supp. 202, 206-77 (D.N.J. 1994) (citing *Intermedics Inc. v. Ventritex Co. Inc.*, No. 92-1076, 1993 WL 87405, at *3 (Fed. Cir. Feb. 22, 1993)).

PROPOSED JURY INSTRUCTION 4.5

## 4.5.    WILLFUL INFRINGEMENT

In this case, MIT and Repligen also contend that ImClone willfully infringed the '281 patent.  If you decide that ImClone has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

To prove willful infringement, MIT and Repligen must establish that ImClone willfully infringed by clear and convincing evidence.  That is, MIT and Repligen must prove willfulness in such a way that you are left with a clear conviction that the infringement was willful.

Specifically, MIT and Repligen must show, by clear and convincing evidence, that ImClone acted "recklessly" in infringing the '281 patent.  ImClone acted recklessly if:

(1)    there was an objectively high likelihood that ImClone's actions would constitute infringement of the '281 patent; and

(2)    ImClone either knew, or should have known, of this risk but started or continued the possibly infringing activity nonetheless.

You may consider whether or not ImClone relied on a legal opinion that advised ImClone that the C225 cell line did not infringe the '281 patent, or that the '281 patent was invalid.  In assessing ImClone's reliance on an opinion of counsel, you should consider whether the opinion was prepared by "in-house" counsel for the infringer, as opposed to independent outside counsel, when ImClone obtained the advice, the quality of the information ImClone provided to the lawyer, the competence of the lawyer's opinion, and whether or not ImClone relied upon the advice.

33

PROPOSED JURY INSTRUCTION 4.5

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 3.8 (2007) (modified); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, ___F.3d___ (Fed. Cir. 2007); *Knorr-Bremse v. Dana Corp.,* 383 F.3d 1337 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Intl Game Tech.,* 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993); *Read Corp. v. Portec, Inc., 970* F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

PROPOSED JURY INSTRUCTION 5.1

**5.    INVALIDITY**

**5.1.    INVALIDITY—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not ImClone has proven that any claims of the '281 patent are invalid.  To prove that any claim of a patent is invalid, ImClone must persuade you by clear and convincing evidence.  That is, in order to find a claim invalid you must be left with a clear conviction that the claim is invalid.

I will now instruct you on the invalidity issues that you have to decide in this case.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.1 (2007); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

PROPOSED JURY INSTRUCTION 5.2

### 5.2.    PRESUMPTION OF VALIDITY

Congress has enacted a law stating that, in lawsuits like this one, patents are presumed to be valid.  Therefore, you are to assume that the invention claimed in the '281 patent is new, useful, and non-obvious, and that the patent is valid.

**AUTHORITY:**  35 U.S.C. § 282 (2000).

PROPOSED JURY INSTRUCTION 5.3

### 5.3.    WRITTEN DESCRIPTION

ImClone may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the written description of the invention in the patent is not adequate.  In the patent application process, the applicant may change the claims between the time the patent application is first filed and the time a patent is finally granted.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The purpose of the written description requirement is to ensure that the patent provides an adequate description of the invention and to ensure that the scope of the claims that are eventually issued remain within the scope of the written description of the invention that was provided with the application as it was first filed.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person of ordinary skill in the field of technology of the patent.  The written description requirement is satisfied if a person of ordinary skill reading the patent application as originally filed would recognize that it describes the invention as it is finally claimed in the issued patent.

The written description requirement may be satisfied by the words, structures, figures, diagrams, formulas, etc., in the patent application, and any combination of them, as understood by one of ordinary skill in the field of the technology of the invention.  A requirement in a claim need not be expressly disclosed in the patent application as originally filed; Provided persons of ordinary skill in the field of technology of the invention would have understand that the missing requirement is inherent in the written description in the patent application.

PROPOSED JURY INSTRUCTION 5.3

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.2a (2007); 35 U.S.C. § 112(1) and (2); *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton,* 76 F.3d 1168, 1172 (Fed. Cir. 1996).

PROPOSED JURY INSTRUCTION 5.5

### 5.4.    ENABLEMENT

ImClone may establish that a patent claim is invalid by showing by clear and convincing evidence that the patent does not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed persons of ordinary skill in the field of the patent to make and use the invention at the time the patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons of ordinary skill in the field of technology of the patent to make and use the invention without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.

In deciding whether a person of ordinary skill in the field of technology relevant to this case would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)    the time and cost of any necessary experimentation;

(2)    how routine any necessary experimentation is in the field of biotechnology;

(3)    whether the patent discloses specific working examples of the claimed invention;

(4)    the amount of guidance presented in the patent;

(5)    the nature and predictability of the field;

(6)    the level of ordinary skill in the field of biotechnology; and

(7)    the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather you must make your decision whether or not the degree of experimentation required is excessive, based upon

PROPOSED JURY INSTRUCTION 5.5

the evidence presented to you.  You should weigh these factors and determine whether or

not, in the context of this invention and the state of the art at the time, you have a clear

conviction that a person of ordinary skill in the field of technology would have had to

experiment excessively to make and use the invention.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.2b
(2007); 35 U.S.C. § 112(1); *Union Pac. Resources Co. v. Chesapeake Energy Corp.,* 236
F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.,* 228 F.3d
1338, 1345-46 (Fed. Cir. 2000); *In re Wands,* 858 F.2d 731, 737 (Fed. Cir. 1988).

PROPOSED JURY INSTRUCTION 5.5

### 5.5    DEFINITENESS

The patent laws have requirements for the way in which patent claims are written.  Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover.  A person of ordinary skill, in this case, is a person with a doctorate degree in molecular biology, biochemistry, or a related field, or a Medical Degree, and two or more years of work experience in one of those fields.  If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover.  Simply because claim language may not be precise does not automatically mean that the claim is indefinite.  The claim language need only be as precise as the subject matter permits.  Claim language including "terms of degree" is not indefinite as long as the specification provides enough guidance to inform those skilled in the field of the invention whether a claim limitation is met.

ImClone contends that the claims of the '281 patent are invalid because the language of the claims is indefinite.  If you find that ImClone has proved that it is highly probable that claims of the patent are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.

PROPOSED JURY INSTRUCTION 5.5

**AUTHORITY:**  Former Federal Circuit Bar Association Model Patent Jury Instructions, No. 10.2; *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1357 (Fed. Cir. 2001); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1380-81 (Fed. Cir. 2001); *S3 Inc. v. nVIDIA Corp.,* 259 F.3d 1364, 1367 (Fed. Cir. 2001); *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1376 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.,* 236 F.3d 684, 692 (Fed. Cir. 2001); *Solomon v. Kimberly-Clark Corp.,* 216 F.3d 1372, 1378-80 (Fed. Cir. 2000); *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378-82 (Fed. Cir. 1999); *Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n,* 161 F.3d 696, 700 n.5, 705 (Fed. Cir. 1998); *In re Dossel,* 115 F.3d 942 (Fed. Cir. 1997); *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Eiselstein v. Frank,* 52 F.3d 1035, 1040-41 (Fed. Cir. 1995); *In re Donaldson Co.,* 16 F.3d 1189 (Fed. Cir. 1994); *N. Am. Vaccine, Inc. v. Am. Cynamid Co.,* 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1280 (Fed. Cir. 1988); *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 837 F.2d 1044, 1056 (Fed. Cir. 1988); *In re Marosi,* 710 F.2d 799, 803 (Fed. Cir. 1983); Expert Report of Stuart A Aaronson, M.D. at 6.

PROPOSED JURY INSTRUCTION 5.6

### 5.6.    PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

ImClone is relying on various items of prior art.  MIT and Repligen agree with ImClone that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '281 patent:

[List uncontested prior art]

**AUTHORITY:**  Former Federal Circuit Bar Association Model Patent Jury Instructions, No. 10.3.

PROPOSED JURY INSTRUCTION 5.7

### 5.7.   ANTICIPATION

ImClone may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention is not new.  For the claim to be invalid because it is not new, ImClone must show that all of the requirements of that claim are present in a single piece of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

 ImClone contends that the claims of the '281 patent are invalid because the invention was described in a printed publication before the invention was made by the inventor, in this case February of 1983.  A printed publication will not be anticipatory unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  That means that a person skilled in the field of the invention reading the printed publication would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in the field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is necessarily present in that prior art, and if a person skilled in the field of field of technology of the patent would understand that to be the case.  Something is not inherent in an item of prior art if it is only probably or possibly present.

To establish that the claimed invention is invalid for any of the above reasons, ImClone must establish by clear and convincing evidence, that the invention is not new.

PROPOSED JURY INSTRUCTION 5.7

That is, based on the evidence presented to you in this case, you must be left with a clear

conviction that the claim is not new.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3a1 (2007); Former Federal Circuit Bar Association Model Patent Jury Instructions, No. 10.8; 35 U.S.C. § 102(a), (b), (c), (d), (e), (f), and (g); *Flex-Rest, LLC v. Steelcase, Inc., 455* F.3d 1351 (Fed. Cir. 2006); *In re Klopfenstein,* 380 F.3d 1345 (Fed. Cir. 2004), *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002); *Rosco, Inc. v. Mirror Lite Co.,* 304 F.3d 1373, 1380 (Fed. Cir. 2002); *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.,* 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld,* 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.,* 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies,* 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer,* 655 F.2d 221, 226 (C.C.P.A. 1981). *Pfaff v. Wells Elec. Inc.,* 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1150 (Fed. Cir. 1983).

PROPOSED JURY INSTRUCTION 5.8

### 5.8.   OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

ImClone may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons of ordinary skill in the art at the time the invention was made.  For the claim to be invalid because it would have been obvious you must first evaluate the following factors:

(1)    The scope and content of the prior art;

(2)    The differences, if any, between the invention and the prior art;

(3)    The level of ordinary skill in the art at the time the invention was made; and

(4)    Any evidence there is, if any, of certain additional considerations relating to the obviousness or non-obviousness of the invention.

You must decide, in view of the evidence presented to you on these factors, whether or not the invention, considered as a whole, would have been obvious to one having ordinary skill in the art at the time the invention was made.  You must make this determination separately, for each of the inventions described in each of claims 10-13, 15, and 17-22.

In deciding obviousness, you must be aware of the distortion caused by hindsight and be cautious of using hindsight in assessing whether the invention is invalid for obviousness.  You should not find the invention obvious based on what persons of ordinary skill in the art know today.  Rather, you must put yourself in the place of a person

PROPOSED JURY INSTRUCTION 5.8

of ordinary skill in the filed of technology of the patent at the time the invention was made who is trying to address the issues or solve the problems faced by the inventors.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventors' field at the time the invention was made.

In this case, ImClone contends that the inventions are obvious in view of a combination of more than one prior art reference. You may not find the invention obvious merely because each of the invention's elements can be found independently in the prior art. Instead, in placing yourself in the shoes of a person having ordinary skill in the relevant field of technology at the time the invention was made, you must also consider whether such a person would have had a reason to combine these prior art references in order to arrive at the claimed invention.

I will now provide you more detailed instructions on each of the obviousness factors.

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3b (2007); 35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1740-43 (2007); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.,* 2005 U.S. App. Lexis 10672 at *10-*12 (Fed. Cir. June 9, 2005); *McNeil-PPC, Inc. v. L. Perrigo Co.,* 337 F.3d 1362 (Fed. Cir. 2003); *In re Kotzab,* 217 F.3d 1365 (Fed. Cir. 2000); *Monarch Knitting Machinery Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877 (Fed. Cir. 1998); *Graham v. John Deere Co.,* 383 U.S. 1 (1966).

PROPOSED JURY INSTRUCTION 5.9

### 5.9.  SCOPE AND CONTENT OF THE PRIOR ART

The first factor you must consider in determining whether or not the invention was obvious at the time it was made is the scope and content of the prior art at the time the invention was made.  As I told you earlier, ImClone is relying on various items of prior art. MIT and Repligen agree with ImClone that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '281 patent:

[List uncontested prior art]

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3bi (2007).

PROPOSED JURY INSTRUCTION 5.10

## 5.10.  DIFFERENCES OVER THE PRIOR ART

The second factor you must consider in determining whether or not the invention was obvious at the time it was made is what differences there are, if any, between the prior art and the patented invention.  In analyzing this issue, do not focus solely on the differences between the prior art and the invention because the test is not whether there are differences.  Rather, the test is whether or not the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

**AUTHORITY**:  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3bii (2007); *Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.,* 2005 U.S. App. Lexis 10672 at *11-*12 (Fed. Cir. June 9, 2005); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 935 (Fed. Cir. 1990).

PROPOSED JURY INSTRUCTION 5.11

## 5.11.   LEVEL OF ORDINARY SKILL IN THE FIELD

The third factor you must consider in determining whether the invention was obvious

at the time it was made is the level of ordinary skill in the field at the time.  The parties agree

that the level of ordinary skill in the field of biotechnology in February of 1983 was an

individual with a doctorate degree in molecular biology, biochemistry, or a related field, or a

Medical Degree, and two or more years of work experience in one of those fields.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3biii
(2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Brown & Williamson Tobacco Corp.
v. Philip Morris Inc.*, 229 F.3d 1120, *1125* (Fed. Cir. *2000); SIBIA Neurosciences, Inc. v.
Cadus Pharm. Corp.*, *225* F.3d 1349, 1355 (Fed. Cir. *2000); Ecolochem, Inc. v. S. Calif.
Edison Co.*, *227* F.3d 1361, 1379 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950
F.2d 714, 718-19 (Fed. Cir. 1991); Expert Report of Stuart A Aaronson, M.D. at 6.

PROPOSED JURY INSTRUCTION 5.12

## 5.12.  ADDITIONAL CONSIDERATIONS

The fourth factor you must consider in determining whether or not the invention was obvious at the time it was made is what evidence there is, if any, of additional considerations relating to the obviousness or nonobviousness of the invention.  You may consider in your analysis any evidence that was presented to you in this case regarding the presence or absence of the following factors in deciding whether or not the invention would have been obvious at the time it was made:

(1)    Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

(1)    Whether or not there was long felt but unresolved need in the art that was satisfied by the invention;

(2)    Whether or not others had tried but failed to make the invention;

(3)    Whether or not others copied the invention;

(4)    Whether or not the invention achieved any unexpected results;

(5)    Whether or not the invention were praised by others;

(6)    Whether or not other have taken licenses to use the invention;

(7)    Whether or not experts or those skilled in the art at the making of the invention expressed surprise or disbelief regarding the invention;

(8)    Whether or not products incorporating the invention have achieved commercial success; and

(9)    Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventors made the invention;

PROPOSED JURY INSTRUCTION 5.12

Evidence that you find establishes the existence of items 1 through 8 tends to show that the invention was not obvious at the time it was made. You may also consider the lack of evidence on these items to support a conclusion that the invention would have been obvious to persons of ordinary skill in the art at the time it was made.

Evidence of item 9, commercial success, also tends to show that the invention was not obvious at the time it was made; Provided the success is directly attributable to the unique characteristics of the invention or to the inclusion of the invention in the commercially successful product. If you do find that the commercial success of the product is attributable to other factors, such as advertising or commercial incentives, for example, the commercial success would not be attributable to the unique characteristics of the invention and any commercial success of products incorporating the invention has no bearing on whether the invention was obvious.

Evidence establishing item 10, independent making of the invention by others at about the same time as the inventors, may tend to show that the patented invention was obvious at the time; Provided the independent invention by others was done with no knowledge of the patented invention or the efforts that went into the making of the patented invention. The weight and relevancy of any independent making of the invention at about the same time as the inventors that you may find depends on all of the circumstances at the time, including the following:

(1)     The similarities between the inventors' conception of the patented solution and the independent inventors' conception of the independently developed solution;

(2)     The time between the identification of a need for a solution to a problem by the inventors of the patented invention and the conception of the patented solution;

PROPOSED JURY INSTRUCTION 5.12

(3)    The time between the identification of a need for a solution to a problem by the

independent inventors and the conception of the independently developed

solution; and

(4)    The sequence of and time between the inventors' conception of the patented

solution and the independent inventors' conception of the independently

developed solution.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 4.3biv (2007); *Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Merck & Co. v. Teva Pharmaceuticals USA, Inc.,* 395 F.3d 1364, 1376-77 (Fed. Cir. 2005); *Iron Grip Barbell Co., Inc. v. York Barbell Co., Inc.,* 392 F.3d 1317, 1324 (Fed. Cir. 2004); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1130 (Fed. Cir. 2000); *Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 833 (Fed. Cir. 1998); *In re Huang,* 100 F.3d 135, 140 (Fed. Cir. 1996); *Lindeman Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1460-61 (Fed. Cir. 1984); *Dennison Mfg. Co. v. Ben Clements & Sons, Inc.,* 467 F.Supp. 391, 419 (SDNY 1979).

PROPOSED JURY INSTRUCTION 6.1

**6.      EQUITABLE DEFENSES**

   **6.1.    LACHES**

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: 1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, 2) there was no excuse for the patent holder's delay in filing the lawsuit, and 3) the allegedly infringing party has been or will be prejudiced in a significant way due to the patent holder's delay in filing the lawsuit. This is referred to as laches, and it is a defense that ImClone contends prevents MIT and Repligen from recovering any damages. ImClone must prove each of the elements for laches by a preponderance of the evidence.

The delay that must be considered in this case is the period of time beginning when MIT and Repligen first knew of, or reasonably should have known of, ImClone's allegedly infringing activities and ending when MIT and Repligen filed this lawsuit. The period of delay cannot begin prior to the time that MIT and Repligen had a legally sufficient claim for infringement, that is, the period of delay cannot begin until ImClone's activities were no longer covered by the FDA exemption that I instructed you on earlier.

Whether MIT and Repligen's delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them. Whether any delay by MIT and Repligen was justified or should be excused also is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them. There is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit, and any particular justification or

PROPOSED JURY INSTRUCTION 6.1

excuse offered by MIT and Repligen in this case must be evaluated in light of the facts and circumstances that existed during the period of delay in this case.

ImClone must show, by a preponderance of the evidence, that it suffered material economic or evidentiary prejudice as a result of any delay by MIT and Repligen in filing this lawsuit to raise the defense of laches. ImClone may establish evidentiary prejudice by proving that an unreasonable delay by MIT and Repligen in filing this case prevented ImClone from presenting a full and fair defense on the merits to MIT and Repligen's infringement claim. The loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things may be evidence that ImClone was not able to present a full and fair defense. ImClone may establish economic prejudice by proving that an unreasonable delay by MIT and Repligen in filing this case caused ImClone to change its economic position in a significant way during the period of delay, that ImClone suffered losses as a result of that change in economic position, and that those losses could have been avoided if MIT and Repligen had filed this lawsuit sooner. Having to pay damages to MIT and Repligen if found to infringe on the '281 patent does not amount to economic prejudice.

The ultimate determination of whether laches should apply in this case is a question of fairness given all the facts and circumstances. Thus, while you may not find that laches applies if there is not a preponderance of the evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice), you may find that even though all of the elements of laches have been proved, it should not, in fairness, apply given all the facts and circumstances in this case.

Although the question of whether MIT and Repligen's right to damages is barred by

PROPOSED JURY INSTRUCTION 6.1

laches is one that I will decide, I will ask for your findings so that I can consider them in

making that decision.  You should make determinations on this issue as you would for any

other issue in this case because I will consider them seriously in making my

determination.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 5.2
(2007); 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020
(Fed. Cir. 1992)(en banc); *Bio-Tech. Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1564-65
(Fed. Cir. 1996); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770 (Fed. Cir.
1995).

### 6.2.  EQUITABLE ESTOPPEL

The owner of a patent may forfeit its right to any relief from an infringer where: 1) the patent holder has knowledge of the true facts about an issue but communicates something to the infringing party about that issue in a misleading way, 2) the infringer relies upon the misleading communication from the patent holder, and 3) the infringer will be significantly harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication about the issue.  This is referred to as an "equitable estoppel," and it is a defense that ImClone contends precludes any recovery by MIT and Repligen in this lawsuit.  ImClone must prove each of the elements for equitable estoppel by a preponderance of the evidence.

ImClone contends that MIT and Repligen made a misleading communication before MIT and Repligen filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact MIT and Repligen communicated with ImClone prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time and in the way that reasonably prudent businesspeople would have viewed them.

ImClone must show, by a preponderance of the evidence, that it suffered significant economic or evidentiary harm as a result of the alleged misleading communication.  ImClone may establish evidentiary prejudice by proving that its reliance on a misleading communication by MIT and Repligen prevented ImClone from presenting a full and fair defense on the merits to MIT and Repligen's infringement claim.  The loss of important

PROPOSED JURY INSTRUCTION 6.2

records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things may be evidence that ImClone was not able to present a full and fair defense.  ImClone may establish economic prejudice by proving that its reliance on a misleading communication by MIT and Repligen caused ImClone to change its economic position in a significant way during the period of delay, that ImClone suffered losses as a result of that change in economic position, and that those losses could have been avoided if MIT and Repligen had not made the alleged misleading communication.  Having to pay damages to MIT and Repligen if found to infringe on the '281 patent does not amount to economic prejudice.

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances.  While you may not find that equitable estoppel applies if a preponderance of the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

58

PROPOSED JURY INSTRUCTION 6.2


**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 5.3 (2007); 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960* F.2d 1020 (Fed. Cir. 1992)(en *banc*); *Bio-Tech. Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1564-65 (Fed. Cir. 1996); *Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60* F.3d 770 (Fed. Cir. 1995).

PROPOSED JURY INSTRUCTION 7.1

**7.      DAMAGES**

**7.1.    DAMAGES GENERALLY**

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that ImClone infringed any valid claim of the '281 patent, you must then determine the amount of damages to be awarded to MIT and Repligen to compensate them for the infringement.

The amount of those damages must be adequate to compensate MIT and Repligen for the infringement.  The damages you award are meant to compensate the patent holder and not to punish an infringer.  I will give you more detailed instructions on the calculation of a reasonable royalty shortly.

MIT and Repligen have the burden to establish the amount of their damages.  You should award only those damages that MIT and Repligen establish that they more likely than not suffered.  MIT and Repligen are not entitled to damages that are remote or speculative.  While Repligen and MIT are not required to prove their damages with mathematical precision, they must prove them with reasonable certainty.  To the extent ImClone contends that the amount of damages should be reduced or offset, ImClone must prove the amount of such reduction or offset.  When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against ImClone.  Any adverse consequences must rest on ImClone when the inability to ascertain damages is due to ImClone's own failure to keep or provide accurate records.

PROPOSED JURY INSTRUCTION 7.1

**AUTHORITY:** Federal Circuit Bar Association Model Patent Jury Instructions, No. 6.1 (2007)(modified); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGgaA,* 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. I Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co., 56* F.3d 1538, *1545* (Fed. Cir. *1995) (en banc); Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

PROPOSED JURY INSTRUCTION 7.2

### 7.2.    REASONABLE ROYALTY

If you find that MIT and Repligen have established infringement, they are entitled to a reasonable royalty to compensate them for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that the patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the patent was valid and infringed. In addition, you must assume that both the patent holder and infringer were willing to enter into an agreement. Your role is to determine what that agreement would have been. The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began. That evidence can be considered to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits ImClone made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits ImClone made.

PROPOSED JURY INSTRUCTION 7.2

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    Whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2)    The nature of the commercial relationship between the patent holder and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)    The established profitability of the patented product, its commercial success and its popularity at the time;

(4)    Whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5)    The size of the anticipated market for the invention at the time the infringement began;

(6)    The duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)    The rates paid by the licensee for the use of other patents comparable to the plaintiffs' patent;

(8)    Whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

63

PROPOSED JURY INSTRUCTION 7.2

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)    The extent to which the infringer used the invention and any evidence probative of the value of such use;

(11)    The portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12)    The portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    The opinion and testimony of qualified experts and of the patent holder; and

(14)    Any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The final factor establishes the framework which you should use in determining a reasonable royalty, i.e., the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.

**AUTHORITY:**  Federal Circuit Bar Association Model Patent Jury Instructions, No. 6.7 (2007); *Golight, Inc., v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.,* 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554

PROPOSED JURY INSTRUCTION 7.2

(Fed. Cir. 1995) *(en banc); Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions *9.8* (1999).

PROPOSED JURY INSTRUCTION 7.3

## 7.3.    DATE OF THE HYPOTHETICAL NEGOTIATION

In this case, the parties agree that the date of the hypothetical negotiation would have been in March or April of 2002.

PROPOSED JURY INSTRUCTION 8.1

**8.    JURY DELIBERATIONS**

**8.1.    DELIBERATIONS**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 3.1 (2007).

PROPOSED JURY INSTRUCTION 8.2

### 8.2.   RETURN OF VERDICT

A verdict form has been prepared for you.  [Explain verdict form.]  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions, No. 3.3 (2007).

Dated:  August 31, 2007

/s/ John C. Adkisson
John C. Adkisson (*pro hac vice*)
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

*Of Counsel*:

Gregory A. Madera
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

Jonathan E. Singer
Michael J. Kane
William R. Woodford
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Juanita Brooks
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070

*Attorneys for Plaintiffs Massachusetts Institute of Technology & Repligen Corporation*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 31st day of August, 2007.

/s/ John C. Adkisson
John C. Adkisson

Pltfs Proposed Jury Instructions.doc

69