UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY and REPLIGEN
CORPORATION,

                  Plaintiffs,

      v.

IMCLONE SYSTEMS INC.,

                  Defendant.

Civil Action No. 04-10884-RGS

## IMCLONE'S PROPOSED JURY INSTRUCTIONS

      Pursuant to Fed. R. Civ. P. 51 and this Court's pretrial order, ImClone Systems Inc.

hereby submits its proposed jury instructions.

                Respectfully Submitted,

                IMCLONE SYSTEMS, INC.

                By Its Attorneys,

Dated:  August 31, 2007

                /s/ Michael R. Gottfried
                Michael R. Gottfried(BBO #542156)
                Anthony J. Fitzpatrick (BBO #564324)
                Christopher S. Kroon (BBO #660286)
                DUANE MORRIS LLP
                470 Atlantic Avenue, Suite 500
                Boston, MA 02210
                Phone: 857.488.4200
                Fax: 857.488.4201

                James H. Wallace, Jr. *(pro hac vice)*
                Mark A. Pacella (BBO #60255)
                Robert J. Scheffel *(pro hac vice)*
                Kevin P. Anderson *(pro hac vice)*
                WILEY REIN LLP
                1776 K Street, NW
                Washington, DC  20006

Phone: 202.719.7240
Fax: 202.719.7049

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that a true copy of the foregoing document was served,

by hand, upon the attorneys of record for the plaintiffs on August 31, 2007.

/s/ Michael R. Gottfried
Michael R. Gottfried

## TABLE OF CONTENTS

Page

IMCLONE'S PROPOSED JURY INSTRUCTIONS .................................................................... I

PRELIMINARY INSTRUCTIONS .......................................................................................... 1

1.    GENERAL INSTRUCTIONS ........................................................................................ 1

      1.1    Introduction ....................................................................................................... 1

      1.2    What Is A Patent And How One Is Obtained ................................................... 2

      1.3    Burdens Of Proof ............................................................................................. 5

      1.4    The Parts Of A Patent ....................................................................................... 7

2.    ISSUES TO BE DECIDED .......................................................................................... 9

      2.1    Plaintiffs' Contentions .................................................................................... 10

      2.2    Defendant's Contentions ................................................................................. 12

      2.3    The Patent At Issue .......................................................................................... 15

      2.4    Overview Of Applicable Law ......................................................................... 16

3.    CONDUCT OF THE JURY AND THE TRIAL ........................................................ 19

4.    GENERAL INSTRUCTIONS ..................................................................................... 20

      4.1    Province Of The Court And The Jury ............................................................. 20

      4.2    Burdens Of Proof ............................................................................................ 21

      4.3    Inferences ........................................................................................................ 22

      4.4    Witness Credibility ......................................................................................... 23

      4.5    Impeachment of Witness Testimony By Prior Conviction .............................. 25

      4.6    Impeachment of Witness Testimony by Prior Bad Acts .................................. 26

      4.7    Cautionary and Limiting Instructions as to Particular Kinds of Evidence .......... 27

      4.8    Deposition Testimony ...................................................................................... 28

      4.9    Excluding Argument From Counsel and Comments From The Court ................. 29

5.      PATENTS IN GENERAL ..................................................................................30

6.      CLAIM CONSTRUCTION ................................................................................31

        6.1     The Role Of The Claims Of A Patent ...................................................... 31

        6.2     How A Claim Defines What It Covers ...................................................... 32

        6.3     Independent and Dependent Claims ...................................................... 34

        6.4     Claim Construction ................................................................................. 35

7.      PATENT INFRINGEMENT ...............................................................................37

        7.1     Direct Infringement by Literal Infringement ......................................... 38

        7.2     Infringement: Claim By Claim ................................................................ 40

        7.3     35 U.S.C. § 271(e)(1) Safe Harbor – Defense to Infringement ............. 41

        7.4     Willful Infringement ............................................................................... 43

8.      PATENT INVALIDITY .....................................................................................46

        8.1     Prior Art ................................................................................................. 47

        8.2     Prior Art – Prior Printed Publication ...................................................... 48

        8.3     Anticipation............................................................................................ 49

        8.4     Obviousness ........................................................................................... 51

        8.5     Claiming Requirements .......................................................................... 53

        8.6     Laches .................................................................................................... 58

        8.7     Equitable Estoppel ................................................................................. 61

9.      DAMAGES ......................................................................................................63

        9.1     Post-Expiration ...................................................................................... 65

        9.2     Reasonable Royalty ................................................................................ 66

10.     CLOSING REMARKS ......................................................................................69

        10.1    Duty To Deliberate ................................................................................. 69

        10.2    Verdict.................................................................................................... 70

10.3     Glossary: ............................................................................................................... 71

## PRELIMINARY INSTRUCTIONS

1.    General Instructions

   1.1    Introduction

   This is a patent case.  It involves United States Patent No. 4,663,281.  Patents are often referred to by their last three digits.  The patent in this case will be referred to as the '281 patent. The parties in this case are Repligen Corporation and Massachusetts Institute of Technology and ImClone Systems Incorporated.  MIT is the owner of the '281 patent and provided an exclusive license for the patent to Repligen on the day before the '281 patent expired.

   ImClone manufactures and sells an antibody, referred to as the C225 antibody, under the trademark Erbitux®, for the treatment of colorectal cancer and cancers of the head and neck. ImClone manufactures this antibody from a cell line, referred to as the C225 cell line.  ImClone conducted all the development, clinical, and regulatory work required to obtain FDA approval to sell Erbitux®.  It is the use of the C225 cell line that is at issue in this action, there is no contention that Erbitux® itself infringes the '281 patent.

   Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to first briefly explain what a patent is and how someone receives a patent, and then explain some basic principles concerning the burdens of proof that you will apply to the evidence presented at trial.


Authority:   *See* Federal Circuit Bar Association Model Patent Jury Instruction A.2, April 2007.

-1-

### 1.2    What Is A Patent And How One Is Obtained

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for a limited number of years (in this case 17 years from the date the patent issued) to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court. A person can only be found liable for infringement if the acts constituting infringement occurred during the term of the patent. Once a patent expires, anyone is free to use the invention covered by the patent. The '281 patent issued on May 5, 1987 and accordingly expired on May 5, 2004. Because the '281 patent has expired, the issues you will be considering in this trial relate only to actions allegedly taken prior to the patent's expiration. It is your job to consider the evidence presented by the parties and determine independently whether or not Plaintiffs have proven that the patent is infringed.

A patent is issued by the PTO after a patent examiner conducts an examination. The examination considers the patent application, scientific articles, prior patents and the like (called prior art) that were either found by an examiner's search or provided to the examiner by the Applicants or their attorneys. The examination further considers arguments made to the examiner by the Applicants. A patent cannot legally take away from people their right to use that which was known, or that which was obvious before the invention was made. Thus, a patent will not be valid if it deprives people of their right to use old or known products or of their right to use products that were obvious at the time the invention was made. Thus, in order to receive

patent protection, an invention must be new and useful, and not obvious. Anyone making, using, offering to sell, or selling the patented invention within the United States during the term of a valid patent without the permission of the patent holder is said to be infringing the patent. A patent gives the holder of the patent a right to seek damages for others' unauthorized use of the patented technology.

A patent is in many ways like a deed to a piece of property. The numbered paragraphs at the end of a patent are called "claims." The claims are what give the public notice of the boundaries of the invention. They are similar to the description of property you may have seen in a deed, referring to precise measurements taken on the ground. Often times, as is the case here, patent claims are amended by the Applicants during examination. Generally, these amendments serve to disclaim coverage for the subject matter that was originally covered by the the claims, but not by the amended claims. For example, if a claim originally covered all screws, but was later amended to cover only red screws, then the claims cannot be found to cover the use of a blue screw.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. For example, a patent cannot take away from people their right to use that which was known, or that which was obvious from what was known, before the invention was made. Thus, one reason a patent may be invalid is if it deprives people of the right to use old or known products or processes, or of their right to use products or processes that were obvious at the time the invention was made. It is your job to

consider the evidence presented by the parties and determine independently whether or not

ImClone has proven that the patent is invalid.


Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction A.1, April 2007; former Federal Circuit Bar Association Model Patent Jury Instruction 2.2.

1.3     Burdens Of Proof

In any legal action, all facts must be proven by the required standard of evidence, known as the burden of proof.  In a patent case such as this, there are two different burdens of proof that are used depending on the issue you are deciding.

The first burden is known as the preponderance of the evidence.  Preponderance of the evidence means that the party with this burden must produce evidence which leads you to believe that what that party claims is more likely true than not true.  To put it differently, if a party has the burden of proof by a preponderance of the evidence on an issue, and you were to put the competing evidence regarding that issue on opposite sides of balance scales, the party would meet its burden if the evidence supporting it makes the scales slightly tip to that side.

The second burden is known as clear and convincing evidence.  This burden is heavier than the "preponderance of the evidence" burden.  Clear and convincing evidence means that the party with this burden must produce evidence which leads you to believe that it is highly probable that what the party seeks to prove is true.  The clear and convincing evidence burden does not, however, require mathematical certainty and should not confused with the "beyond a reasonable doubt" standard in criminal cases, which is an even higher evidentiary standard and does not apply to patent cases.

For each issue, I will instruct you as to the burden of proof that will apply.  At the end of the trial I will review for you the burden of proof to apply, either the "preponderance of the evidence" standard or the "clear and convincing evidence" standard, to each issue.

I will now give you a copy of the '281 patent and identify the different sections found in the patent.

<u>Authorities</u>:  *See* Federal Circuit Bar Association Model Patent Jury Instruction A.5, April 2007; Former Federal Circuit Bar Association Model Patent Jury Instruction 1.1.

1.4     The Parts Of A Patent

A patent includes two basic parts, the written description and the claims which are both referred to as the specification.

The specification begins with the cover page.  The cover page of the '281 patent provides identifying information, including the date the patent issued and the serial number along the top, as well as the inventor's name, the filing date, an abstract of the alleged invention, and a list of the prior art publications considered by the Patent Office after the application was filed.  The list of publications considered by the Patent Office carries over to the second page.

Next, there are three sheets of drawings, which appear as Figures 1 to 10.  The drawings depict various aspects or features of the invention.  The drawings are described in greater detail later in the specification.

The written description of the invention appears next.  In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page.  The lines on each page are also numbered.  The written description of the '281 patent begins at column 1, line 1, and continues to column 13, line 30.  It includes a background section, a summary of the alleged invention, and a detailed description of the alleged invention, including some specific examples.

At the end of the specification are several numbered paragraphs.  These numbered paragraphs are called the claims, the second basic part of a patent.  The claims may be divided into a number of parts, referred to as claim limitations.  In the '281 patent, the claims begin at column 13, line 31 and continue to the end of the patent, at column 16, line 19.  The claims identify and limit the scope of patent protection.  Part of your job during this trial is to determine whether the actions of ImClone fall within the boundaries of these claims and thus infringe the '281 patent.  Part of your job is also to determine whether the scope of the claims are so broad

that they take away the right to use that which was known, or that which was obvious from what was known, before the date of the alleged invention found in the '281 patent.

Authority:  *See* Former Federal Circuit Bar Association Model Patent Jury Instruction 2.3.

2.     <u>Issues To Be Decided</u>

I will now give you some information about the issues that will be presented to you at this trial and the law that you must follow in reaching your verdict.  At the close of the trial, you will be given a verdict form and questions that you must answer in reaching your verdict.  I will give you more specific instructions at that time to follow as you deliberate to reach your verdict.

2.1     Plaintiffs' Contentions

I will first explain to you the contentions raised by the Plaintiffs, MIT and Repligen.

MIT is the owner of the '281 patent.  MIT provided an exclusive license to Repligen on the day

before the '281 patent expired.  The term of the '281 patent expired on May 5, 2004.  Plaintiffs

MIT and Repligen sued Defendant ImClone for the alleged infringement of the '281 patent.  For

the sake of simplicity, I will simply refer to MIT and Repligen collectively as Plaintiffs, and the

Defendant as ImClone.

(a)     Infringement

Plaintiffs contend that ImClone's manufacture of Erbitux®, which contains the C225

antibody as its main ingredient, infringed the '281 patent, and that ImClone's infringement was

willful.  Specifically, Plaintiffs contend that the C225 cell line used by ImClone to make

Erbitux® embodies the patented technology described in claims 10-13, 15, and 17-22 of the '281

patent.  Plaintiffs must prove by a preponderance of the evidence that ImClone has infringed one

or more claims of the '281 patent.

(b)     Damages

Plaintiffs contend that they are entitled to damages caused by ImClone's alleged

infringement.  Because Plaintiffs do not make a product that competes with Erbitux®, Plaintiffs

have not suffered any lost profits from ImClone's alleged infringement.  Instead, Plaintiffs seek

what is known as a reasonable royalty, equal to the amount ImClone would have paid had it

voluntarily taken a license to the '281 patent.  Plaintiffs must prove this amount by a

preponderance of the evidence.  I will explain to you at the end of the case in greater detail how

this amount is determined.

(c)     <u>Willful Infringement</u>

Plaintiffs also claim that the monetary relief should be enhanced, claiming that ImClone has knowingly and willfully infringed the '281 patent.  To prove willful infringement, Plaintiffs must prove by clear and convincing evidence that ImClone acted objectively reckless. Specifically, Plaintiffs assert that ImClone acted despite an objectively high likelihood that is actions constituted infringement of a valid patent and that ImClone knew or should have known of the objectively-defined risk.  In making this determination, you must be careful not to judge ImClone's actions in hindsight.

If you find that ImClone willfully infringed the patent, I will then determine whether enhanced damages are appropriate.  Plaintiffs' claim for willful infringement must be proven by clear and convincing evidence.  It is entirely possible that you may find that ImClone has infringed the patent, but then find that its infringement was not willful.  I will explain in more detail at the end of the case how you decide willful infringement.

2.2   Defendant's Contentions

I will now explain to you ImClone's contentions.

(a)   Infringement

ImClone denies that it has infringed the asserted claims of the '281 patent.   ImClone

contends that the C225 cell line it uses to make Erbitux® does not infringe the '281 patent

because: (1) it was designed by another company, Damon Biotech, in a manner that falls outside

the scope of the claims of the '281 patent; and (2) ImClone's use of the C225 cell line in part is

exempted from infringement because it was reasonably related to the submission of information

to the FDA in accordance with obtaining approval to market and sell Erbitux®.   ImClone also

contends that if it does infringe, that infringement was not, and cannot be, willful.

(b)   Willfulness

ImClone contends that if you do find that it infringed the claims of the '281 patent, that

such infringement is not willful in part because ImClone did not act objectively reckless.

Specifically, ImClone contends that Plaintiffs cannot prove by clear and convincing evidence

that it acted despite an objectively high likelihood that is actions constituted infringement of a

valid patent and that ImClone knew or should have known of the objectively-defined risk.

Rather, ImClone acted as reasonable business people.   ImClone further contends that any finding

of infringement cannot be willful because it informed Plaintiffs of its basis for not taking a

license to the '281 patent, and Plaintiffs made no further contact or arguments against ImClone's

position for seven years until filing this lawsuit on the last day before the patent expired.

(c)   Damages

The '281 patent expired on May 5, 2004.   ImClone contends that if you do find that it

infringed any claims of the '281 patent, that the damages are limited because ImClone's use of

the C225 cell line in part occurred after the '281 patent had already expired, or was reasonably related to the submission of information to the FDA for purposes of receiving regulatory approval of Eribitux®.  ImClone must prove by a preponderance of the evidence what portion of its use was reasonably related to the submission of information to the FDA.

(d)  Invalidity

ImClone also contends that that the '281 patent is invalid.  Although the '281 patent was granted by the Patent Office, it is your job to determine whether or not the legal requirements of patentability were met; that is, it is your job to determine whether or not the '281 patent is invalid.  ImClone contends that the '281 patent claims are invalid for not satisfying the legal requirements for patentability because they are either not new, obvious in view of the prior art, or invalid for indefiniteness.  It is ImClone's burden to prove that the '281 patent is invalid by clear and convincing evidence.  I will provide more details for each ground of invalidity in my final instructions.

(e)  Equitable Estoppel

ImClone contends that if you do find that it infringed, Plaintiffs are equitably estopped from seeking damages because ImClone informed Plaintiffs of its basis for not taking a license to the '281 patent, and Plaintiffs made no further contact or arguments against ImClone's position for seven years until filing this lawsuit on the last day before the patent expired.  ImClone must prove by a preponderance of the evidence that Plaintiffs are equitably estopped.

(f)  Laches

ImClone contends that Plaintiffs' claims for damages prior to the time they filed suit are barred by the doctrine of laches because Plaintiffs unreasonably delayed for seven years until filing this lawsuit on the last day before the patent expired.  Because Plaintiffs delayed for over

six years, Plaintiffs have the burden of presenting evidence to show that their delay was not unreasonable.  ImClone, however, has the burden of proving by a preponderance of the evidence that Plaintiffs' claims are barred.

2.3    The Patent At Issue

**[The Court may decide to hand out its claim construction and the glossary at this time]**

**[If the Court hands out its claim construction, ImClone proposes the following instruction:]**

I have already determined the meaning of several claim terms of the '281 patent. You have been given a document reflecting those meanings. For those words in the claim for which I have not provided you with a definition, you should apply their plain English meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

Authority: *See* Federal Circuit Bar Association Model Patent Jury Instruction A.3, April 2007.

2.4     Overview Of Applicable Law

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.  The first issue you will be asked to decide is whether Plaintiffs have proved by a preponderance of the evidence that ImClone has literally infringed the claims of the patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  In general, however, ImClone may infringe the '281 patent by making, using, selling or offering for sale in the United States, or by importing into the United States, a product or method that is covered by a claim of the '281 patent.  Even if you find merely an insubstantial difference between what ImClone practices and what is disclosed in any of the asserted claims, you must find that ImClone does not infringe.  I will provide you with more detailed instructions on infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '281 patent is invalid.  As I just instructed you, a patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.  One way that a claim may be invalid is if it is not new.  For a claim to be invalid because it is not new, ImClone must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous product or described in a single previous printed publication or patent.  We call these things "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious.  Even though every element of a claim is not shown or described in a single piece of "prior art" and the claim is, therefore, not anticipated, the claim may still be invalid if it would have been obvious to a

-16-

person of ordinary skill in the field of technology of the patent at the time the invention was made.  You will need to consider a number of questions in deciding whether the inventions claimed in the '281 patent are obvious.

A patent may also be invalid if the claims do not meet certain statutory requirements for patentability.  For example, to be valid, a patent claim must be sufficiently definite to allow an alleged infringer to reasonably determine whether the accused method or product falls within the scope of the claims.  This is referred to as the "definiteness" requirement.  If there are multiple accepted methods to test infringement, and one method results in a finding of infringement of the claims and another method results in a finding of non-infringement, then the claims are invalid for indefiniteness.

I will provide you detailed instruction on these questions of invalidity at the conclusion of the case.

If you decide that any claim of the '281 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Plaintiffs to compensate them for the infringement.  A damages award should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Plaintiffs would have received had they been paid a reasonable royalty.  The damages you award are meant to compensate the patent holder and not to punish an infringer.  You may not include in your award any additional amount as a fine or penalty in order to punish ImClone.  Moreover, to the extent that ImClone could have avoided infringement by using non-infringing products, the difference in production costs between infringing and non-infringing products effectively capped the reasonable royalty award.  In other words, the reasonable royalty cannot exceed the amount that ImClone could have paid to avoid

infringement.   I will give you more detailed instructions on the calculation of damages at the

conclusion of the case.


Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction A.4, April 2007;
*Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1341 (Fed. Cir. 2003); *Riles v. Shell Exploration &
Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).

3. <u>Conduct Of The Jury And The Trial</u>

The Court may desire to provide general instructions here.

# FINAL INSTRUCTIONS

4.    <u>General Instructions</u>

    4.1    <u>Province Of The Court And The Jury</u>

Members of the Jury, now that you have heard the evidence and the arguments, it becomes my duty to give you the instructions of the Court as to the law applicable to this case. It is your duty as jurors to follow the law, as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

The parties' counsels have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by me in these instructions, you are to be governed by my instructions. Nothing I say in these in these instructions is to be taken as an indication that I have any opinion about the facts of the case.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence and follow the law as it is now being given to you.

4.2     Burdens Of Proof

As mentioned at the beginning of the case, two burdens of proofs apply to the issues raised in this case.

The first burden is known as the preponderance of the evidence.   Preponderance of the evidence means that the party with this burden must produce evidence which leads you to believe that what that party claims is more likely true than not true.  To put it differently, if a party has the burden of proof by a preponderance of the evidence on an issue, and you were to put the competing evidence regarding that issue on opposite sides of balance scales, the party would meet its burden if the evidence supporting it makes the scales slightly tip to that side.

The second burden is known as clear and convincing evidence.  This burden is heavier than the "preponderance of the evidence" burden.  Clear and convincing evidence means that the party with this burden must produce evidence which leads you to believe that it is highly probable that what the party seeks to prove is true.  To put it differently, if a party has the burden of proof by a clear and convincing evidence on an issue, and you were to put the competing evidence regarding that issue on opposite sides of balance scales, the party would meet its burden only if the evidence supporting it makes the scales clearly tip to that side.  The clear and convincing evidence burden does not, however, require mathematical certainty and should not be confused with the "beyond a reasonable doubt" standard in criminal cases, which is an even higher burden.

For each issue, I will instruct you as to the burden of proof that should be applied.

4.3     <u>Inferences</u>

You are to consider only the evidence in the case.  However, in your consideration of the evidence, you are not limited to the bald statements of the witnesses.  In other words, you are permitted to draw, from facts that you find have been proven or stipulated, such reasonable inferences as seem justified in the light of your experience.

4.4     Witness Credibility

You as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, by the manner in which he or she testifies, or by the character testimony given. You should carefully scrutinize all testimony given and the circumstances under which each witness has testified.

Consider the witness's intelligence, state of mind, the witness's opportunity to know about the things testified to, his or her memory, their demeanor while testifying, the witness's financial interest in the outcome of the case and any bias or prejudice the witness may or may not have, whether the evidence contradicts the witness's testimony, or any other factor that bears on the believability of their testimony.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves. You may, in short, accept or reject the testimony of any witness in whole or in part.

The testimony of a single witness, which produces in your minds belief in the likelihood of truth, is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if after consideration all of the evidence in the case, you hold greater belief in the accuracy and reliability of that one witness.

Furthermore, a witness may be discredited or impeached by contradictory evidence, by a showing that they testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something – or has failed to say or do something – that is inconsistent with their present testimony. If you believe that any witness has been so discredited

or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

4.5     Impeachment of Witness Testimony By Prior Conviction

**[To be read only if such testimony is offered at trial]**

A particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose.

You have heard evidence that _____ has been convicted of a crime. You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to that witness's testimony. You may not use this evidence to infer that, because of this witness's character, ImClone carried out the acts of infringement charged in this case. Nor does the witness's prior conviction weigh in determining the issue of willfulness. You must not use that prior conviction as proof of the infringement charged in this case.

Remember, the only purpose for which you may consider evidence of _____'s conviction(s) is in deciding how much weight to give to that witness's testimony. Even if you find that _____ was convicted of a crime in the past, this is not to be considered as evidence to support an inference that ImClone committed the acts charged in this case.

Authorities:  *See* Pattern Criminal Jury Instructions For The District Courts Of The First Circuit 2.03-2.05, 3.07; Fed. R. of Evid. 609.

4.6     Impeachment of Witness Testimony by Prior Bad Acts

**[To be read only if such testimony is offered at trial]**

A particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose.

You have heard evidence that _____ has committed prior bad acts.  You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to that witness's testimony.  You may not impute these acts to ImClone.  That is, you may not use this evidence to infer that, because of that witness's character, ImClone carried out the acts of infringement charged in this case.  Nor do the witness's prior bad acts weigh in determining the issue of willfulness.  You must not use that prior conviction as proof of the infringement charged in this case.

Remember, the only purpose for which you may consider evidence of _____'s prior bad acts is in deciding how much weight to give to that witness's testimony.  Even if you find that _____ may have committed bad acts in the past, this is not to be considered as evidence to support an inference that ImClone committed the acts charged in this case.

Authorities:  *See* Pattern Criminal Jury Instructions For The District Courts Of The First Circuit 2.03-2.05, 3.07; Fed. R. Evid. 609.

4.7    <u>Cautionary and Limiting Instructions as to Particular Kinds of Evidence</u>

A particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I have told you when that occurred, and instructed you on the purposes for which the item can and cannot be used.

<u>Authorities</u>:  *See* Pattern Criminal Jury Instructions For the District Courts Of The First Circuit 3.07; Fed. R. of Evid. 609.

4.8     <u>Deposition Testimony</u>

During the trial of this case, certain testimony has been presented to you by way of deposition consisting of sworn, recorded answers to questions asked of witnesses in advance of the trial by one or more of the attorneys for the parties in the case.  Such testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand.

4.9    <u>Excluding Argument From Counsel and Comments From The Court</u>

As I told you earlier, it is your duty to determine the facts.  In doing so, you must consider only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits.  Remember that any statements, objections, or arguments made by the lawyers are not evidence.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice.  In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case.  Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

5.       Patents In General

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

6.      Claim Construction

6.1      The Role Of The Claims Of A Patent

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims but it is the claims that define how broad or narrow the patent's coverage is. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

Authority:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 2.1, April 2007.

6.2     <u>How A Claim Defines What It Covers</u>

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or less requirements.  The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall within the scope of" that claim.   In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.  Some terms used in a claim may have a specific meaning in patent law.  For example, a claim that reads: "A product comprising a seat and legs" covers all products that have both a seat and legs.  The word "comprising" in this claim is a special word in patent law meaning that the claim covers all products that have a seat and legs,

regardless of whether or not they also have additional features. For example, this claim would cover several different kinds of chairs, stools, and sofas, because there are several different kinds of chairs, stools, and sofas that have at least a seat and legs.

By understanding the meaning of the words in the claims and by understanding that the words in a claim set forth the requirements that must be met in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that are asked to decide, such as infringement and invalidity.

Authority:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 2.2, April 2007.

6.3     Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, only claims 10 and 18 of the asserted '281 patent claims are independent claims.

The remainder of the claims in the '281 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way the claim "depends" on another claim. The law considers a dependent claim to incorporate all of the requirements of the claims to which it refers. The dependent claim then adds its own, additional, requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A product that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 2.2a, April 2007; Former Federal Circuit Bar Association Model Patent Jury Instruction 7.2 (citing 35 U.S.C. § 112 ¶ 4 (1984); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc*., 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc*., 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.,* 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co.*, *Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989)).

6.4     Claim Construction

In deciding whether or not a patent is infringed, and whether or not patent is invalid, the

first step is to understand the meaning of the words used in the patent claims.  It is my job as the

Judge to determine what the patent claims mean and to instruct you about that meaning.  You

must accept the meanings I give you and use them when you decide whether or not the patent is

infringed, and whether or not it is invalid.  For any words in the claim for which I have not

provided you with a definition, you should apply their plain English meaning.  You should not

take my definition of the language of the claims as an indication that I have a view regarding

how you should decide the issues that you are being asked to decide, such as infringement and

invalidity.  Those issues are yours to decide.

I have previously determined that the following terms, used in one more of the claims

asserted by Plaintiffs, have the following meanings:

(1)     "tissue specific mammalian cellular enhancer" means "a DNA sequence in a

mammalian cell that functions to greatly increase transcription in a specific tissue-type or cell-

type, but which barely works in other tissue or cell-types, or does not work at all."

(2)     "enhancer element at a site within an active region of said vector sufficiently

close to said transcription unit to enhance production of mRNA independent of its orientation

and position within said active region" means "an enhancer element that is inserted into an active

region of the vector at a site close enough to the transcription unit to enhance production of

mRNA, and is operative in either position (upstream or downstream) and in either orientation

with respect to the transcription unit."

(3)     "at least a portion of" means "at least a part of."

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 2.3 (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett- Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*)); *Massachusetts Institute of Technology v. ImClone Systems Inc.*, --- F.Supp.2d ----, Civ. No. 04-10884-RGS, 2007 WL 2248051, at *4-*5 (D. Mass. Aug. 7, 2007) (Memorandum And Order On Claim Construction).

7.      Patent Infringement

I will now instruct you on the rules you must follow in deciding whether Plaintiffs have proven that ImClone has infringed one or more of the asserted claims of the '281 patent. To prove infringement of any claim, Plaintiffs must prove by a preponderance of the evidence that ImClone has infringed that claim.

Infringement is assessed on a claim-by-claim basis. Thus, you must consider each claim separately to determine whether there may be infringement as to one claim but not infringement as to another. In this case, Plaintiffs have alleged that ImClone directly infringes the '281 patent. Plaintiffs must prove by a preponderance of the evidence, *i.e.*, that it is more likely than not, that all of the requirements of literal infringement have been established.

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 3.1, April 2007.

7.1     Direct Infringement by Literal Infringement

This case concerns literal infringement.  While there are other types of infringement, such as the doctrine of equivalents, they are not at issue here.

A company literally infringes a claim if, during the time the patent is in force (i.e., before the patent has expired), the company makes, uses, sells, or offers to sell within, or imports into, the United States something that meets each and every requirement (also referred to as the limitations) of the claim and does so without the permission of the patent holder.  To determine whether ImClone's use of C225 cells to make Erbitux® meets all of the requirements of an asserted claim, you must understand the meaning of the words in the claim and the requirements that these words impose.  I have already explained to you the meaning of some of the words of the claims in this case.  I have also explained to you that other words in the claims should be given their plain English meaning.  With that understanding of the meaning of the claim, you must compare the C225 cells used by ImClone with each and every one of the requirements of each asserted claim to determine whether all of the requirements of that claim are met.  If any one or more of the requirements of a claim is not exactly present in the C225 cells used by ImClone, you must find that ImClone does not infringe that claim.  This means that even there is only a very minor difference between any requirement of an asserted claim and the C225 cell used by ImClone, you must find that ImClone has not infringed that claim.

In order to find that ImClone has infringed a claim of the '281 patent, you must find that Plaintiffs have proved by a preponderance of the evidence (i.e., that it is more likely than not) that the C225 cell line used by ImClone meets all of the requirements of the claim.  If you find that ImClone's use of the C225 occurred after the patent expired that use does not infringe the

claim even if the use meets the requirements of the claim.  Additionally, acts conducted by

ImClone that are reasonably related to obtaining approval from the FDA to market and sell its

Eribitux® product are legal exceptions, and cannot be deemed to be infringing.

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 3.1a, April 2007
(citing *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Wenger Mfg.,
Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1238 (Fed. Cir. 2001); *Cole v. Kimberly-Clark
Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996)); *NeoRx Corp. v. Immunomedics, Inc.*, 877 F. Supp.
202, 206-77 (D.N.J. 1994) (citing *Intermedics Inc. v. Ventritex Co. Inc.*, No. 92-1076, 1993 WL
87405, at *3 (Fed. Cir. 1993)).

7.2     <u>Infringement: Claim By Claim</u>

You must determine, separately, for each of the asserted claims, whether or not there is infringement.  However, as I have explained to you, a dependent claim includes all of the requirements of any of the claims to which it refers, plus additional requirements of its own.  Therefore, if you find that an independent claim is not literally infringed, then you must also find that any claim that depends from it is not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the additional requirements of any claims that depend from the independent claim have also been infringed.

<u>Authorities</u>:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 3.6, April 2007 (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)).

### 7.3     35 U.S.C. § 271(e)(1) Safe Harbor – Defense to Infringement

Congress has created a "safe harbor" for certain activities involved in developing and obtaining approval to market a drug.  Under this safe harbor, those activities cannot constitute infringement and no damages can be awarded for those activities.  Congress created this safe harbor so that companies could bring useful drug products to market without fear of patent infringement suits for all actions reasonably related to the possible submission of data to agencies such as the Food and Drug Administration (also referred to as the FDA).

To prevail on this defense, ImClone must prove by a preponderance of the evidence that it would be objectively reasonable for a party in ImClone's situation to believe that there was a decent prospect that the accused activities would contribute, relatively directly, to the generation of the kinds of information that are likely to be relevant in the processes by which the FDA would decide whether to approve the product in question.

Each of the accused activities must be evaluated separately to determine whether the exemption applies.

ImClone does not need to show that the information gathered from a particular activity was actually submitted to the FDA – only that the was reasonably related to the generation of kinds of information that was likely to be relevant in the processes by which the FDA would decide whether to approve the product.  A "reasonable relationship" is one that is not arbitrary or irrational.  Thus, as long as the relationship between ImClone's activities and the possible submission of data to the FDA for approval was not "arbitrary or irrational," those activities cannot constitute infringement.

Thus, ImClone's activities undertaken to ready itself for large scale entry into the commercial marketplace, including ImClone's increased production of the C225 cell line and Erbitux® in commercial-scale lots, cannot be found to constitute acts for which Plaintiffs may recover damages so long as the activities were reasonably related to FDA approval, such as FDA requests for further information or to establish sufficient production capacity.  If ImClone's creation of C225 cells reasonably related to FDA approval or information about that creation was submitted as part of the FDA approval process, then that creation cannot be found to be an infringing act.  Additionally, ImClone's use of the allegedly infringing technology in experiments that are not ultimately included in a submission to the FDA may not constitute acts for which Plaintiffs can seek damages because many uncertainties exist with respect to the development of a new drug and which research to include in a submission.

Authorities:  *See* 35 U.S.C. § 271(e)(1); *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1277, 1280 (N.D. Cal. 1991), *aff'd*, 991 F.2d 808 (Fed. Cir. 1993); *Abtox, Inc. v. Exitron Corp.*, 888 F. Supp. 6, 8 (D. Mass. 1995), *aff'd* 122 F.3d 1019 (Fed. Cir. 1997); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1030 (Fed. Cir. 1997); *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520 (Fed. Cir. 1992); *NeoRx Corp. v. Immunomedics, Inc.*, 877 F. Supp. 202, 206-77 (D.N.J. 1994) (citing *Intermedics Inc. v. Ventritex Co. Inc.*, No. 92-1076, 1993 WL 87405, at *3 (Fed. Cir. Feb. 22, 1993)).

7.4     Willful Infringement

In this case, Plaintiffs argue ImClone's alleged infringement was willful.  If you have decided that ImClone has not infringed, you need not address this issue.  If you have decided that InClone has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

To prove willful infringement, Plaintiffs must establish that ImClone willfully infringed by clear and convincing evidence.  That is, Plaintiffs must prove willfulness in such a way that you have been left with a clear conviction that the infringement was willful.  Proof of willfulness requires proof that ImClone acted objectively recklessly.  Proof of recklessness requires a higher level of culpability than that required to show negligence.

For Plaintiffs to prove willfulness, they must satisfy a two part test.  First, Plaintiffs must show, by clear and convincing evidence, that ImClone acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  ImClone's state of mind is not relevant to that inquiry.  If Plaintiffs can prove this first prong, then they must also prove by clear and convincing evidence that the objectively-defined risk was either known or so obvious that it should have been known to ImClone.

In considering whether Plaintiffs have proven the second prong (that the objectively defined risk was either known or so obvious that it should have been known to ImClone), you must consider all of the facts, including, but not limited to:

(1) Whether or not ImClone intentionally copied a product of Plaintiffs that is covered by the '281 patent;

(2) Whether ImClone acted objectively recklessly in creating Erbitux® after having received no communications from Plaintiffs for nearly seven years; and

(3) Whether or not ImClone acted objectively recklessly in relying on a legal opinion that was advised ImClone that its use of the C225 cell line did not require a license from Plaintiffs.

In determining whether or not ImClone acted in good faith, you should consider all of the circumstances, including as mentioned, whether or not ImClone obtained and followed the advice of a competent lawyer after learning of the '281 patent.  Obtaining and following the advice of counsel is often evidence that infringement was not willful.

In evaluating ImClone's reliance on the advice of counsel, you should consider when ImClone obtained the advice, the quality of the information ImClone provided to the lawyer, the competence of the lawyer's opinion, and whether or not ImClone relied upon the advice.

The advice of counsel needs only to be competent, it does not have to prove to be ultimately correct and should not be judged in hindsight.  Prior to trial, in addition to the defenses that ImClone presented during this trial, ImClone asserted a defense that a legal concept known as "patent exhaustion" barred Plaintiffs' claim of infringement.  You have not heard evidence in support of that defense in this trial because I have already considered the parties' evidence on that issue and have ruled that ImClone could not establish that defense under the applicable law.  You may not, however, consider my ruling against ImClone on that issue as an indication of my views with respect to the claims of infringement and willfulness asserted by Plaintiffs or any defenses asserted by ImClone in these proceedings.

In assessing these various factors and deciding whether or not ImClone willfully infringed the '281 patent, you need not find that all of the factors are present.  One factor alone may be enough to conclude that ImClone did not willfully infringe.  In addition, no one or more

of these factors are determinative.  Rather, you must decide, based on the evidence that is presented to you, whether you have a clear conviction that the alleged infringement was willful.

Additionally, I caution you that the issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather only to the amount of damages to which Plaintiffs are entitled.  A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages.  If you decide that ImClone willfully infringed the '281 patent, then it is my job to decide whether or not to award increased damages to Plaintiffs.

<u>Authorities</u>:  *In re Seagate Tech., LLC*, --- F.3d ----, Misc. No. 830, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007) (en banc) overruling *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983); *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007); *see* Federal Circuit Bar Association Model Patent Jury Instruction 3.8, April 2007 (citing 35 U.S.C. § 284; *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983), *overruled by In re Seagate Tech., LLC*, --- F.3d ----, Misc. No. 830, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007) (en banc); Former Federal Circuit Bar Association Model Patent Jury Instructions 9 (citing 35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988); *Underwater Devices, Inc. v. Morrison-Knudsen, Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983) *overruled by In re Seagate Tech., LLC*, --- F.3d ----, Misc. No. 830, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007) (en banc)).

8.      Patent Invalidity

Even if you find infringement, there can be no damages if the patent is determined to be invalid.  Even though the Patent Office issued the '281 patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the '281 patent are valid.  For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious.  A patent cannot take away from the public their right to use what was already known when the invention was made.  The terms new, useful, and non-obvious have special meanings under the patent laws.  I will explain these terms to you as we discuss ImClone's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description of the invention in the patent and how to make and use it and must include claims that fairly describe the scope of the patent so that the public can fairly determine whether a product or process falls within the scope of the claims.

ImClone has challenged the validity of the claims of the patents in this case on a number of grounds.  ImClone must prove that a patent claim is invalid by clear and convincing evidence.

Authorities:  *See* The Federal Circuit Bar Association Model Patent Jury Instructions 4.1, April 2007 (citing *Buildex, Inc. v. Kason Indus., Inc.*, 849 f.2D 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc*., 802 F.2d 1367, 1375 (Fed. Cir. 1986)); *see* Former Federal Circuit Bar Association Model Patent Jury Instruction 10.1 (citing *Morton Int'l v. Cardinal Chem. Co.,* 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983)).

8.1    Prior Art

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and not obvious in light of what was known by the public before the invention was made.  That knowledge which came before is referred to as the prior art.  Prior art includes anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.  Prior art also includes anything that was in the public use or on sale more than one year before the filing of the patent application.

Authority:  *See* Former Federal Circuit Bar Association Model Patent Jury Instruction 10.3

8.2     Prior Art – Prior Printed Publication

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.  Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims.  The date of invention is irrelevant to this category of prior art.

Authorities:  *See* Former Federal Circuit Bar Association Model Patent Jury Instruction 11 (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996); *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn*, 890 F.2d 1158, 1159-61 (Fed. Cir. 1989); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *Mass. Inst. of Tech. v. AB Fortia*, 774 F.2d 1104, 1108-09 (Fed. Cir. 1985); *In re Wyer*, 655 F.2d 221, 225 (C.C.P.A. 1981)).

8.3     Anticipation

A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection.  A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every element of the claim must be present within a single item of prior art, whether that prior art is a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.  However, you may rely on additional items of prior art to find that a single reference inherently anticipates limitations of a claim.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider what is expressly stated or present in the item of prior art, and also what is inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

Authorities:  *See* Federal circuit Bar Association Model Patent Jury Instruction 4.3a1, April 2007 (citing 35 U.S.C. § 102(a), (b), (c), (d), (e), (f), and (g); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351 (Fed. Cir. 2006); *In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004), *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985);

*Ralston Purina Co. v. Far-Mar- Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981). *Pfaff v. Wells Elec. Inc*., 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd*., 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc*., 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co*., 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp*., 714 F.2d 1144, 1150 (Fed. Cir. 1983)); *see* Former Federal Circuit Bar Association Model Patent Jury Instruction 11.1 (citing *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983)).

8.4     Obviousness

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the claimed invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. ImClone has the burden of proving by clear and convincing evidence that the asserted claims of the '281 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, or to me as a judge. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

Your conclusion about the question whether a claim is obvious must be based on several factual decisions that you must make. First, you must decide the scope and content of the prior art. Second, you must decide what difference, if any, exists between the claim and the prior art. Third, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Finally, you must consider any evidence of what are referred to as "secondary considerations," that has been presented which include: commercial success, long felt but unsolved needs, industry recognition, failure of others, and unexpected results.

If a person of ordinary skill can implement a predictable variation, then the patent claims are obvious, absent compelling secondary considerations. In other words, the critical inquiry is

whether the improvement is more than the predictable use of prior art elements according to their

established functions.

Authorities:  *See KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007); The Federal Circuit Bar
Association Model Patent Jury Instructions; April 2007, 4.3b (citing 35 U.S.C. § 103; *Graham v.
John Deere Co.*, 383 U.S. 1 (1966); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 2005
U.S. App. Lexis 10672 at *10-*12 (Fed. Cir. June 9, 2005); *McNeil-PPC, Inc. v. L. Perrigo Co.*,
337 F.3d 1362 (Fed. Cir. 2003); *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000); *Monarch Knitting
Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877 (Fed. Cir. 1998)); *see* Former Federal
Circuit Bar Association Model Patent Jury Instruction 11.2 (citing *Graham v. John Deere Co.*,
383 U.S. 1, 27-28 (1966); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347,
1359 (2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi
Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown &
Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000);
*Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*,
217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir.
1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *In re Deuel*, 51 F.3d 1552, 1557-
60 (Fed. Cir. 1995); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75
(Fed. Cir. 1986)).

8.5     <u>Claiming Requirements</u>

In addition to contending that the asserted claims of the '281 patent are invalid for being anticipated and/or obvious, ImClone contends that the '281 patent fails to comply with various claiming requirements designed to protect the public.

(a)    <u>Written Description</u>

A patent is invalid if it does not contain an adequate written description of the claimed invention.  In the course of the prosecution of the patent application, the claims may be changed between the time the patent application is first filed and the time the patent is finally granted.  An applicant may amend the claims in his or her original application or add new claims.  The changes may narrow the scope of the claims or may broaden their scope.  The purpose of the written description requirement is to make sure that the inventor had in mind the invention as claimed in the issued patent, at the time the application for the patent was originally filed.  The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  A requirement in a claim need not be specifically disclosed in the patent application as originally filed if persons of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

<u>Authorities</u>:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 4.2a, April 2007 (citing 35 U.S.C. § 112(1) and (2); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996)).

(b)    Enablement

A patent is invalid if it does not contain a description of the claimed invention that is sufficiently full and clear to enable persons of ordinary skill in the field to make and use the invention.  This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.  The patent is enabling only if it permits persons of ordinary skill in the field to make and use the invention without having to do excessive experimentation.  Enablement is tested as of the date the original patent application was first filed.

Authorities:  *See* The Federal Circuit Bar Association Model Patent Jury Instruction 4.2b; April 2007 (35 U.S.C. § 112(1); *Union Pac. Resources Co. v. Chesapeake Energy Corp*., 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co*., 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

(c)    <u>Indefiniteness</u>

The patent laws have requirements for the way in which patent claims are written.  Patent

claims must be sufficiently clear that a person of ordinary skill in the field of the invention

reading them is able to determine what the claims cover and what they do not cover.  A person of

ordinary skill is a person of average education and training in the field.  If a patent claim does not

meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular

invention, the prior art and the description of the invention contained in the patent.  A patent

claim, when read along with the rest of the patent, must reasonably inform those skilled in the

field of the invention what the patent claims cover.

If you find that there are at least two acceptable tests for determining infringement and

performing those tests results in inconsistent determinations of infringement then the claims are

indefinite.  If the patent specification discloses a particular test, however, by which a person of

ordinary skill in the art can determine what the claims cover, it is preferable to limit the claims to

using that test rather than finding the claims indefinite.

<u>Authorities</u>:  *See Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332 (Fed. Cir. 2003);
*Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 417 F.3d 1356, 1360 (Fed. Cir. 2005); Former
Federal Circuit Bar Association Model Patent Jury Instruction 10.2, April 2007 (citing *LNP
Eng'g Plastics, Inc. v. Miller Waste Mills, Inc*., 275 F.3d 1347, 1357 (Fed. Cir. 2001); *S3 Inc. v.
nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001); *Budde v. Harley-Davidson, Inc.*, 250 F.3d
1369, 1376 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d
684, 692 (Fed. Cir. 2001); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1378-80 (Fed. Cir.
2000); *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378-82 (Fed. Cir. 1999);
*Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 700 n.5, 705
(Fed. Cir. 1998); *In re Dossel*, 115 F.3d 942 (Fed. Cir. 1997); *Pall Corp. v. Micron Separations,
Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Eiselstein v. Frank*, 52 F.3d 1035, 1040-41 (Fed. Cir.
1995); *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994); *N. Am. Vaccine, Inc. v. Am. Cynamid*

*Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1280 (Fed. Cir. 1988); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1056 (Fed. Cir. 1988)).

8.6    <u>Laches</u>

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: 1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, 2) there was no excuse for the patent holder's delay in filing the lawsuit, and 3) the allegedly infringing party has been or will be prejudiced in a significant way due to the patent holder's delay in filing the lawsuit.  This is referred to as laches, and it is a defense that ImClone contends prevents Plaintiffs from recovering damages and from a finding of willful infringement.

The delay that must be considered in this case is the period of time between when ImClone communicated its basis for not taking a license until the date that Plaintiffs filed this lawsuit, which is a period of more than six years.

Whether Plaintiffs' delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent business people would have viewed them.  Whether Plaintiffs' otherwise unreasonably long delay was justified or should be excused also is a question that must answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them.  There is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit, and any particular justification or excuse offered by Plaintiffs in this case must be evaluated in light of the facts and circumstances that existed during the period of delay in this case.

Prejudice to ImClone as a result of any delay by Plaintiffs in filing this lawsuit can be economic or evidentiary in nature. Whether ImClone suffered evidentiary prejudice is a question

that must be answered by evaluating whether any unreasonable delay in filing this case resulted in ImClone not being able to present a full and fair defense on the merits to Plaintiffs' infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Whether ImClone suffered economic prejudice is a question that must be answered by evaluating whether any unreasonable delay in filing this case resulted in ImClone changing its economic position in a significant way during the period of delay, and also whether ImClone's losses as a result of that change in economic position could have been avoided if Plaintiffs had filed this lawsuit sooner.  Having to pay damages to Plaintiffs if found to infringe the '281 patent does not amount to economic prejudice by itself; rather, ImClone's liability for infringement damages or the other economic losses that may be incurred by ImClone if found to be an infringer must have been avoidable if Plaintiffs had filed this lawsuit sooner.

If you find that Plaintiffs delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that ImClone suffered no prejudice as a result of Plaintiffs' delay.  However, you may still find that all the elements of laches have been shown, even if the period of delay is less than six years.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness given all the facts and circumstances. Thus, while you may not find that laches applies if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice), you

may find that even though all of the elements of laches have been proved, it should not, in fairness, apply given all the facts and circumstances in this case.

Although the question of whether Plaintiffs' right to damages is barred by laches is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 5.2, April 2007 (citing 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)(*en banc*); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995)).

8.7    Equitable Estoppel

The owner of a patent may forfeit its right to any relief from an infringer where: 1) the patent holder has knowledge of the true facts about an issue but communicates something to the infringing party about that issue in a misleading way, 2) the infringer relies upon the misleading communication, or lack thereof, from the patent holder, and 3) the infringer will be significantly harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication, or lack thereof, about the issue. This is referred to as an "equitable estoppel," and it is a defense that ImClone contends precludes any recovery by Plaintiffs in this lawsuit and precludes any finding of willfulness.

A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action or inaction. Whether in fact Plaintiffs communicated with ImClone during this seven year period prior to the filing of this lawsuit, and whether in fact that communication, or lack thereof, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time and in the way that reasonably prudent business people would have viewed them.

Significant harm to ImClone can be economic or evidentiary in form. Whether ImClone suffered evidentiary harm is a question that must be answered by evaluating whether ImClone will be unable to present a full and fair defense on the merit's of Plaintiffs' infringement claims. Not being able to present a full and fair defense on the merits of Plaintiffs' claims can occur due to the loss of important records, the death or impairment of an important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Whether ImClone suffered economic prejudice is a question that

must be answered by evaluating whether ImClone changed its economic position in a significant way as a result of its reliance on any misleading communication, or lack thereof, from Plaintiffs, and whether ImClone's losses as a result of any change in economic position could have been avoided if Plaintiffs had not communicated with ImClone in a misleading way.  Having to pay damages to Plaintiffs if found to infringe the '281 patent does not amount to economic prejudice by itself; rather, ImClone's liability for infringement damages or any other economic losses that ImClone may incur if Plaintiffs are allowed to proceed with its claims must have been avoidable if Plaintiffs had not communicated with ImClone in a misleading way.

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances.  While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

Authorities:  *See* Federal Circuit Bar Association Model Patent Jury Instruction 5.3, April 2007 (citing 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)(*en banc*); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995)).

9.    <u>Damages</u>

I have now instructed you as to the law governing Plaintiffs' claims of patent infringement and ImClone's claims of invalidity.  If you find that ImClone has infringed a valid claim of the '281 patent, then you must determine what damages ImClone must pay to Plaintiffs for that infringement.  If, on the other hand, you find that ImClone has not infringed a valid claim of the '281 patent, then Plaintiffs are not entitled to any damages, and you should not make any findings about damages.  Damages may only be awarded for the period of time in which a patent is in force and not expired.  In other words, a patent owner may not collect damages for any actions occurring after that patent has expired.

If you find that any claim of the '281 patent is both valid and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement.  Because Plaintiffs do not manufacture a product that competes with Erbitux®, Plaintiffs have suffered no lost profits from ImClone's alleged infringement.  According, Plaintiffs may only recover the reasonable royalty it could have obtained from licensing the patent to ImClone.

Plaintiffs have the burden to establish the amount of its damages. You should award only those damages that Plaintiffs establish that they more likely than not suffered.  Plaintiffs are not entitled to damages that are remote or speculative.  While Plaintiffs are not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  To the extent ImClone contends that the amount of damages should be reduced or offset, ImClone must prove the amount of such reduction or offset.

Damages are only to compensate Plaintiffs by putting Plaintiffs into the position they would have been in if ImClone had not infringed.  You may not add anything to the amount of damages to punish ImClone or to otherwise set an example.

Finally, the fact that I am instructing you about damages does not mean that Plaintiffs are entitled to recover damages. These instructions are only to guide you in the chance you find that ImClone infringed a valid claim of the '281 patent.

<u>Authorities</u>:  *See Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964); The Federal Circuit Bar Association Model Patent Jury Instruction 6.1, April 2007 (citing *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. V. Merck KGgaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)); Former Federal Circuit Bar Association Model Patent Jury Instruction 12.1 (citing 35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995).

9.1     Post-Expiration

The '281 patent expired on May 5, 2004. A patent owner may not use the power of his

patent to charge for making, using, or selling products after the expiration of his patent. In other

words, during the hypothetical negotiation between Plaintiffs and ImClone before the expiration

of the patent, Plaintiffs could not have used the existence of the '281 patent at that time to coerce

ImClone to agree to pay royalties for any activities after the expiration of the patent. Any

attempt to extend royalty payments beyond the life of a patent would have been unlawful.

Plaintiffs could not have legally suggested any agreement that would have projected to activities

beyond the expiration of the patent.

Authorities: *See Brulotte v. Thys Co.*, 379 U.S. 29, 33 (1964); *reh'g denied*, 379 U.S. 985 (1964); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969); *Scott Paper Co. v. Marcalus Co.*, 326 U.S. 249, 256 (1945); *Meehan v. PPG Indus., Inc.*, 802 F.2d 881 (7th Cir. 1986).

9.2     Reasonable Royalty

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. The best measure of a reasonable royalty is an established royalty for the '281 patent such as that royalty found in other licenses granted by the patent holder for this patent. If there is no established royalty, a reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began. You may not limit or increase the royalty based on the actual profits ImClone made.

In deciding what is a reasonable royalty, you may consider the factors that Plaintiffs and ImClone would consider in setting the amount ImClone would pay. I will list for you a number of factors you may consider:

(1) whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty;

(2) royalties paid by ImClone or by others for patents comparable to the '281 patent;

(3) whether or not Plaintiffs had a policy of licensing or not licensing the patent;

(4) whether or not Plaintiffs and ImClone are competitors;

(5) the advantages and benefits of using the patented invention over features not claimed in the '281 patent; and

(6) whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the cancer therapy field for use of patented inventions comparable to the inventions claimed in the '281 patent.

None of these factors are dispositive. However, considerable weight may be given to evidence of royalty rates from prior licenses to the same patent as well as licenses to similar patents.

Additionally, when deciding what is a reasonable royalty from a hypothetical negotiation, you must consider any actions that ImClone could have taken to avoid infringement. If ImClone could have avoided infringement by using non-infringing alternatives to the patented technology, the difference in production costs between infringing and non-infringing alternatives effectively cap any reasonable royalty award. In other words, the reasonable royalty cannot exceed the amount that ImClone could have paid to develop or use non-infringing alternatives.

In this instance, Plaintiffs assert that certain damages should be paid for sales of Erbitux® that occurred after the patent expired. Since ImClone could have legally made C225 cells after the expiration of the patent without paying any royalty to Plaintiffs, the amount of damages for sales of Erbitux® occurring after the patent expired is capped by the cost to ImClone of making those cells.

In addition, you may consider whether, at the time that ImClone and Plaintiffs would have negotiated a license, ImClone could have negotiated with another party that had the right to license the patent.

<u>Authorities</u>:  *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983); *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445-46 (Fed. Cir. 1990); *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *see Clark v. Wooster*, 119 U.S. 322, 326 (1886); The Federal Circuit Bar Association Model Patent Jury Instruction 6.7; April 2007 (citing *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999)).

10.    Closing Remarks

10.1    Duty To Deliberate

Any verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate in an effort to reach agreement if you can do so without doing violence to individual judgment.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are not partisans.  You are judges - of the facts.  Your sole interest is to seek the truth from the evidence in the case.

10.2    <u>Verdict</u>

Upon retiring to the jury room you should first select one of your members to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court. Verdict forms have been prepared for your convenience.

You will take the verdict forms to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign it, and then signal for the clerk in preparation for your return to the courtroom.

If, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson, and summons one of my clerks, who will then bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.

10.3    Glossary:

Some of the terms in this glossary will he defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or

sold is designed specifically for infringing the patented invention and is not a common object suitable for non-infringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using or selling an invention for a term of 17 years from the date the patent issued. When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement**: A required part or step of an invention set forth in a patent claim The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention and includes the text in the patent, the drawings, and the claims.

Authority:  *See* Federal Circuit Bar Association Model Patent Jury Instructions Appendix, April 2007.